**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KATE REID and MEGAN HEENEY,** | ) | |
| **As Next Friends of A.O.A., M.C.A.,** | ) | |
| **Y.C.A., A.C.C., D.R.G., J.R.G., S.A.L.,** | ) | |
| **J.P.Q.M., and B.Q.M.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **- vs-** | ) | **Case No. _____** |
| | ) | |
| **THE DOE RUN RESOURCES** | ) | |
| **CORPORATION,** | ) | |
| **D.R. ACQUISITION CORP.,** | ) | |
| **MARVIN K. KAISER, ALBERT** | ) | |
| **BRUCE NEIL, JEFFERY L. ZELMS,** | ) | |
| **THEODORE P. FOX III, DANIEL L.** | ) | |
| **VORNBERG, THE RENCO GROUP,** | ) | |
| **INC., RENCO HOLDINGS, INC.,** | ) | |
| **AND IRA L. RENNERT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF REMOVAL

COME NOW Defendants The Renco Group, Inc. ("Renco Group"), DR Acquisition Corp. ("DR Acquisition"), Renco Holdings, Inc. ("Renco Holdings"), and Ira L. Rennert ("Rennert") (collectively the "Defendants"), pursuant to The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Title 9, United States Code, Section 201 *et seq.* ("CREFAA") and remove the above-captioned action to the United States District Court for the Eastern District of Missouri, Eastern Division.

As the basis for this removal, the Defendants state as follows:

## I.     <u>SUMMARY OF GROUNDS FOR REMOVAL</u>

1.     Title 9 U.S.C. § 201 *et seq.* is a federal statute that implements a 1958 United Nations convention.  Both the convention and the implementing statute are titled "Convention for the Recognition and Enforcement of Foreign Arbitral Awards."  The United States is a signatory to the Convention.  (*See* 21 U.S.T. 2517 (Approved by the United States Sep. 1, 1970); (1970 WL 104417)).  The Convention's purpose is to further the enforceability of international arbitration awards.  The Supreme Court has stated:

> [t]he goal of the Convention and the principal purpose underlying American adoption and implementation of it, was to encourage agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced.

*Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520, n. 15 (1974).  To insure uniform enforcement of the Convention in this country, Congress has mandated that all actions in courts in the United States that relate to arbitration agreements or awards that are governed by the Convention fall within the jurisdiction of the federal courts.  Thus, under CREFAA, an action pending in a state court may be removed to a federal court at any time before trial, if the subject matter of the action relates to an arbitration agreement or award that falls under the Convention.  9 U.S.C. §205.

2.     On December 29, 2010, Renco Group, on its own behalf, and on behalf of its indirect, wholly-owned subsidiary Doe Run Peru S.R.LTDA. ("DRP") commenced arbitration under the United States-Peru Trade Promotion Agreement (signed on April 12, 2006; implemented on February 1, 2009) (the "Treaty").  (*See* www.ustr.gov/trade-agreements/free-trade-agreements/peru-tpa/final-text (visited January 6, 2011)).  Section 10.B of the Treaty accords a U.S. investor in Peru, such as Renco Group, the right to commence arbitration for

resolution of any dispute related to its rights under Section 10.A of the Treaty or under an investment agreement between the U.S. investor and a Peruvian national authority.

3.     In the Arbitration, Renco Group will seek an adjudication that Peru is exclusively liable for any judgment that may be entered against any of the Defendants and their affiliates in this action, and in any other actions brought by third parties arising from a mining / smelting complex located in La Oroya, Peru (the "Peru Complex").  Renco Group will also seek a determination that Peru is required to appear in and defend this action on behalf of Defendants. Peru has these obligations because of contractual commitments made to Renco Group at the time of Renco Group's investment in and acquisition of DRP in 1997, and commitments made by Peru when it entered the Treaty in 2006.

4.     The Arbitration renders this case removable under CREFAA because the arbitration provisions of the Treaty fall within CREFAA and because the subject matter of this action relates to an arbitration agreement--the Treaty--that falls within the statute.   By this Notice, Defendants are exercising their removal rights.

## II.     PROCEDURAL HISTORY

5.     This action is one of eleven actions presently being removed by Defendants under CREFAA. Two of these actions have previously been removed to this Court, not under CREFAA, but on the basis of the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)("CAFA"), and federal common law.  (*See, A.O.A. v. Doe Run Resources Corp. et. al.,* Case No. 4:08-CV-1416-CDP (State Court Case Number 0822-CC-08086) (hereinafter "A.O.A. 08086"); *see also, K.G.C., et al. vs. Doe Run Resources Corp.,* Case No. 4:08-CV-1420-CDP (State Court Case Number 0822-CC-08088) (hereinafter "K.G.C. 08088")). The identity of the parties, their claims, and the somewhat complicated procedural history of the two previously-removed actions is

- 3 -

accurately recited in the Honorable Catherine D. Perry's Order and Memorandum dated October 9, 2008 ("Order"), which remanded the actions to state court.  (*See* Case No. 4:08-CV-1416, Doc. 19 and Case No. 4:08-CV-1420-CDP, Doc. 19).

6.      In addition to K.G.C. 08088 and A.O.A. 08086, nine other sets of claims that were filed in City Circuit Court by Schlichter, Bogard & Denton, the firm of lawyers who also represent the plaintiffs in K.G.C. 08088 and A.O.A. 08086.  No removal was attempted in those nine cases.  They are styled as follows:

> *Sister Kate Reid and Megan Heeney as next friends of Y.V.R.V. and A.F.R.V. v. Doe Run Resources Corporation et al.*, Case Number 0822-CC-09760;
>
> *Sister Kate Reid and Megan Heeney as next friends of D.D.A.S. v. Doe Run Resources Corporation et al.*, Case Number 0822-CC-09762;
>
> *Sister Kate Reid and Megan Heeney as next friends of S.A.H. v. Doe Run Resources Corporation et al.*, Case Number 0822-CC-09764;
>
> *Sister Kate Reid and Megan Heeney as next friends of M.E.M. and E.E.M. v. Doe Run Resources Corporation et al.*, Case Number 0822-CC-09765;
>
> *Sister Kate Reid and Megan Heeney as next friends of W.Q.M. and A.Q.M. v. Doe Run Resources Corporation et al.*, Case Number 0822-CC-09766;
>
> *Sister Kate Reid and Megan Heeney as next friends of J.P.I. v. Doe Run Resources Corporation et al.*, Case Number 0822-CC-09767;
>
> *Sister Kate Reid and Megan Heeney as next friends of R.H.P. and J.H.P. v. Doe Run Resources Corporation et al.*, Case Number 0822-CC-09768;
>
> *Sister Kate Reid and Megan Heeney as next friends of M.H., J.H., M.H., A.H., and J.L.H. v. Doe Run Resources Corporation et al.*, Case Number 0822-CC-09769; and
>
> *Sister Kate Reid and Megan Heeney as next friends of A.C.C.D. and C.J.R.D. v. Doe Run Resources Corporation et al.*, Case Number 0822-CC-09770.

7.      These nine cases bundle together 18 individual plaintiffs, all Peruvian nationals. Together with the 17 Peruvians comprising the plaintiffs in A.O.A. 08086 and K.G.C. 08088, a

total of 35 Peruvian citizens were before the City Circuit Court in cases that are presently being removed here.

8.      All eleven actions were originally filed in 2008 in the Circuit Court of the City of St. Louis, Missouri.  The Petitions recite that the respective actions are each being brought by Sister Kate Reid ("Reid") and Megan Heeney ("Heeney") as Next Friends of citizens of the Republic of Peru.  The Petitions named as Defendants DR Acquisition, Renco Holdings, Renco Group, Rennert, Doe Run Resources Corporation, Marvin K. Kaiser, Albert Bruce Neil, Jeffery L. Zelms, Theodore P. Fox III, and Daniel L. Vornberg.

9.      The Peruvian Plaintiffs are suing the shareholders and affiliates, as well as the officers and directors of those entities, for injuries they claim to have suffered from the operations of the Peru Complex.  Plaintiffs sought to recover damages and other relief for injuries they allegedly suffered as a result of their exposure to lead and other toxic substances released from the Peru Complex, which is a metallurgical facility.  The substances were allegedly released onto and around properties in Peru where the Peruvian Plaintiffs "have in the past and/or continue to reside, use and visit, and/or were exposed."  (*See* Exhibit B, Petition, ¶ 29).

10.     Pursuant to Title 28 United States Code, Section 1447(c), Judge Perry *sua sponte* remanded K.G.C. 08088 and A.O.A. 08086 to state court.  She found that both cases had been improvidently removed.  Judge Perry held that this Court lacked federal question jurisdiction under CAFA because the actions brought by the next of friends in K.G.C. 08088 and A.O.A. 08086 numbered less than 100.  (*Id.* at 1-9).  On defendants' second ground of federal jurisdiction, the federal common law of foreign relations, the Court also found federal

jurisdiction lacking, holding that plaintiffs' claims arose under state law (*Id.* at 9-10), and applying the well-pleaded complaint rule.

11.     That the defendants unsuccessfully attempted to remove two of these eleven cases does not bar this removal, because the removal here is predicated on an entirely different ground. *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 53 (1st Cir. 2009) ("Successive attempts at removal are permissible where the grounds for removal become apparent only later in the litigation.).

12.     After the remand of A.O.A. 08086 and K.G.C. 08088, the eleven state court cases did not progress beyond defendants' initial challenge to the propriety of venue in the City Circuit Court and a motion to dismiss on the grounds of *forum non conveniens*.  Defendants challenged venue arguing that these eleven cases, all filed after Missouri's tort reform legislation of August 2005, improperly laid venue in the City based on the fact that one of the former officers of the Doe Run Resources Corporation who was sued in his individual capacity had once lived in the City but had moved out of the City of St. Louis by the time the cases were filed.  Circuit Judge Stephen Ohmer, reading the reformed venue statute differently than the defendants, rejected their challenge to jurisdiction.  The Missouri Court of Appeals, Eastern District, and the Supreme Court of Missouri declined to review Judge Ohmer's order on writs of prohibition that defendants filed in each of those courts.  The Supreme Court of Missouri's order on Defendants' Petition in Prohibition was entered on December 21, 2010.

13.     Meanwhile, defendants' motion to dismiss on, *inter alia*, the ground of *forum non conveniens* has been pending since November, 24, 2008 in A.O.A. 08086 and K.G.C. 08088 and since January 20, 2009 in the nine later-filed cases.[1]  Plaintiffs have filed opposition papers in

---

[1]     Defendants initially filed their motions to dismiss in this Court on September 24, 2008 while A.O.A. 08086 and K.G.C. 08088 were on removal.  (*See* Case No. 4:08-CV-1416, Doc. 14 and Case No.

- 6 -

A.O.A. 08086 and K.G.C. 08088, but not in the nine remaining cases.  Plaintiffs' deferral of filing their answering brief in those cases is presumably pending the completion of discovery on what plaintiffs assert to be *forum non conveniens*-related issues: *i.e.* the location and accessibility of witnesses and documents and those issues relating to "public interest" – issues familiar to this Court in ruling on motions to transfer under 28 U.S.C. §1404(a).  Pending before Judge Ohmer at the time of this removal was plaintiffs' motion to compel discovery across a broader range of issues than just *forum non conveniens* and related motions for protective orders sought by defendants.  Those motions were set to be heard on the morning of January 10, 2010 in Division 1 of the Circuit Court of the City of St. Louis.

14.     In lieu of filing a complete copy of each circuit court file in the eleven cases removed under this Notice, defendants are filing a copy of the petition in each case (*see* Exhibit "B") along with a certified copy of the docket sheet from each file (*see* Exhibit "C").   In addition, at the direction of the Clerk of this Court, defendants are filing a motion asking for the Court to provide direction as to whether the Court wants the entire Circuit Court file in each case to be reproduced and lodged or whether it wants selected documents from each file.  Defendants will provide whatever documents the Court directs.

15.     Although it has been held that a removal under 9 U.S.C. § 205 does not require the consent of all defendants, *Acosta v. Master Maint. & Const., Inc.*, 52 F.Supp.2d 699, 707-9 (M.D.La. 1999), *aff'd on alternate grounds*, 452 F.3d 373, 379-80 (5th Cir. 2006), nonetheless, the consent of all defendants to this removal has been secured as will be evidenced by their separately-filed joinder.

---

4:08-CV-1420-CDP, Doc. 14).  Following Judge Perry's October 9, 2008 order remanding the cases to State court, on November 24, 2008 defendants filed renewed motions to dismiss in the Circuit Court for the City of St. Louis.

### III.    STATEMENT OF FACTS

**A.    Renco Group's Agreements with the Government of Peru and Its Instrumentalities Fixing Liabilities for Injuries Caused By the Complex.**

16.    From 1974 to 1997, the Peru Complex was owned and operated by Empresa Minera del Centro del Perú S.A. (hereinafter "Centromin"), a corporation established under the laws of Peru whose stock was and still is owned by the Republic of Peru.  DRP bought the Peru Complex from Peru through Centromin.  In 2007, Centromin was dissolved and its successor, Activos Mineros, carries on its functions.  Activos Mineros is wholly owned by the government of Peru.

17.    As is detailed in the Arbitration Notice, one of the conditions of the sale of the Peru Complex from Peru to DRP was Peru's agreement to shield DRP, all of its affiliates, shareholders and officers – all of the defendants that plaintiffs have sued – from third party claims, including personal injury claims, arising from the operation of the Peru Complex.

18.    The government's duty to protect the defendants from third party liability runs from the date of the purchase, *i.e.* October 23, 1997, until the completion of a government-mandated environmental remediation program that has been extended to 2012, and even beyond 2010 under certain circumstances set forth in the parties' agreement.

19.    The government of Peru assumed this duty in order to facilitate the sale of the Peru Complex.  During most of its history, the Peru Complex was in the hands of the government or the private interests that originally developed the facility in 1922 and from whom Peru expropriated it in 1974.  For over two decades, from 1974 to 1997, the government of Peru's State-owned entity Centromin owned and operated the Complex.  During that time, Centromin conducted its operations with little focus on the environment or the concerns of the

people of La Oroya, and its operations (together with those of its predecessors) resulted in gaseous and particle emissions that impacted the soil in and around the town of La Oroya with heavy metals, including lead.

20.    Because Peru could not economically operate the Peru Complex, it sought investors who could.  No investor would put capital in a site so environmentally distressed without assurances that the government of Peru would be responsible for third party claims. Hence, Centromin, in what is called the Stock Transfer Agreement ("STA"), and Peru itself, in what is called the Guaranty, both pledged to deal with and absorb the cost of any third party liability claims.  Had Peru not agreed to accept responsibility for third party claims, Renco Group would not have invested in the Peru Complex.  (*See*, Arbitration Notice, ¶¶ 3-6, 24-27).

21.    Together, the STA and the Guaranty are referred to in the Arbitration Notice as the "investment agreements."  The Treaty provides by its terms for investors with a claim arising under an investment agreement to bring a claim for breach of such a contract in the treaty setting:

> In the event that a disputing party considers that an investment dispute cannot be settled by consultation and negotiation:
>
> (a)    the claimant, on its own behalf, may submit to arbitration under this Section a claim
>
> > (i)    that the respondent has breached:
> >
> > > (A) an obligation under Section A,
> > > (B) an investment authorization, or
> > > (C) an investment agreement;
> >
> > and
> >
> > (ii)    that the claimant has incurred loss or damage by reason of, or raising out of, that breach . . .

(Article 10.16(1); *see also,* Article 10.16(1)(b) (allowing a claimant, "on behalf of an enterprise of the respondent that is a juridical person that the claimant owns or controls directly or

indirectly" to submit similar disputes to arbitration for damages incurred by the enterprise)). The Treaty, Article 10.16, requires that the parties submit to arbitration any disputes among them. (Arbitration Notice, ¶¶ 11 – 14).

**B.    DEFENDANTS NEGOTIATE TO GET PERU AND ITS AGENCIES TO HONOR THEIR COMMITMENT TO HANDLE AND PAY THIRD PARTY LIABILITIES.**

22.    Beginning in 2007, Renco Group attempted to secure Peru's compliance with the STA and Guaranty by requesting that Peru and/or Activos Mineros enter and defend the St. Louis City Circuit Court cases as they were required under the STA and Guaranty. (Arbitration Notice, ¶¶ 36-42.) Renco Group attempted to resolve the present dispute with Peru and Activos Mineros. (*Id*. at ¶ 59). Renco Group's efforts culminated in it delivering letters requesting that Peru and Activos Mineros honor certain of their obligations, and notifying them that Renco Group would resort to any and all available legal remedies if the matter could not be resolved. (*Id*. at ¶¶ 42, 59). Peru and Activos Mineros rejected all of Renco Group's attempts to resolve the present dispute. (*Id*. at ¶¶ 42, 60). This resulted in Renco Group issuing its notice of its intent to commence an international arbitration under the Treaty. (*See* Exhibit "A"). The Treaty requires such a notice as a precondition to the commencement of formal arbitration proceedings.

23.    Renco Group has elected to arbitrate under the Treaty because it considers that Peru, through its misconduct and that of Activos Mineros, has breached its obligations under international law, the Treaty, and the investment agreements by, *inter alia*, refusing "to assume liability for third party lawsuit brought against claimants, their affiliate, and executives constitutes a breach of the investment agreements." (Arbitration Notice, p. 10, Section V(A)). Therefore, placed front and center before the arbitration panel for binding resolution will be the question of whether the government of Peru should appear and defend the claims that plaintiffs assert here. When the arbitration panel issues its decision – an award under CREFAA that will

- 10 -

be binding on every federal and state court in the United States – the decree will order that the government of Peru or its instrumentality take its place in the courtroom and defend plaintiffs' suits or it will not.

## IV.   LEGAL BASIS FOR REMOVAL

### A.   CREFAA § 205 AUTHORIZES REMOVAL OF STATE COURT ACTIONS THAT ARE RELATED TO AN ARBITRATION PROVISION THAT FALLS UNDER CREFAA.

24.     CREFAA has its own removal provision.  Title 9, United States Code, Section 205 permits the removal to federal court of any case "where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention."  The scope of removal under § 205 has been called  "the broadest removal statute in the federal code" whose purpose "was to insure that there would be a uniform federal common law regarding international  arbitral obligations."  *Acosta v. Master Maint. & Const., Inc.*, 52 F. Supp. 2d 699, 703-04 (M.D. La. 1999) (citing *McDermott Intern., Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991)).

25.     Consistent with this view, the test for determining when a state court claim "relates to" an arbitration agreement is easily satisfied:

> Similarly, whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case.  That is all that is required to meet the low bar of 'relates to.'

*Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002).

26.     Because treaty-created predictability in global trade is the value fostered by CREFAA, the courts may not pick and choose nor parse too finely in allowing removal under

§ 205 but must err on the side of international dispute resolution over resolution at the local level. *Suter,* 223 F.3d at 160.

      **B.**    <u>**THE ARBITRATION PROVISION IN THE TREATY FALLS WITHIN CREFFA**</u>

27.    An arbitration agreement comes under CREFAA when:

> (1) [T]here is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope. Upon finding that such an agreement exists, a federal court must compel arbitration of any dispute falling within the scope of the agreement pursuant to the terms of the agreement.

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 146 (2d Cir. 2001)(citation omitted).

28.    There can be no dispute that the arbitration provision in the Treaty falls under the Convention. Obviously, the provision is in writing; failing agreement by the parties, the legal place for the arbitral proceedings must be in the territory of a State that is a signatory to the Convention (Treaty Art. 10.20(1)); it involves an investment by foreign nationals in a commercial activity carried out in a foreign land; and it is not related to a matter that is solely within the internal affairs of Peru.

29.    The plaintiffs' state law claims assert that Renco Group and its affiliates are legally liable for injuries which they blame on toxic emissions from the Peru Complex. The Renco Group in its Arbitration Notice claims that Peru is legally liable for its citizens' injuries and that through the STA and the Guaranty, Peru has undertaken to answer in a court for claims based on such injuries. The arbitration that has been invoked and which will take place in a State that is a party to the Convention will adjudicate that issue. Therefore, plaintiffs' state law claims are "relate[d] to" a qualifying arbitration provision and, under § 205, are removable here.

Indeed, as is discussed below, the threshold of "relatedness" is low, such that claims that are even tangentially affected by an international arbitration clause are removable.

30.     The Treaty is one of many that the United States has negotiated with scores of nations under the authority of Bipartisan Trade Promotion Authority Act of 2002, 19 U.S.C. § 3801, *et seq.*  It is self-evident that the purpose of such treaties is to reduce barriers to trade, to facilitate the flow of goods and services internationally, and to encourage the movement of investment capital.  When, under a fair trade agreement, a trading partner like Peru commits to honoring pledges like those it made to Renco Group to shoulder third party liabilities, it serves its people's economic needs but at the price of the government itself giving its guaranty in order to defray the human cost of the economic activity that it seeks to spur.  Thus, where Peruvian citizens are appropriately made to seek redress from their own government for claims that their government has agreed to pay in return for jobs, for lucrative exports and/or for foreign investment that investment contracts bring, such citizens are hardly being treated unfairly.

**C.** THAT PLAINTIFFS ARE NOT PARTIES TO THE ARBITRATION AGREEMENT DOES NOT MATTER SO LONG AS THEIR CLAIMS COULD CONCEIVABLY BE AFFECTED BY THE ARBITRATION.

31.     The operative phrase in § 205 is "relates to".  The cases have given it the broadest possible construction.  In *Beiser v. Weyler*, 284 F.3d 665 (5th Cir. 2002), affirming removal of state law claims by a non-signatory to an agreement containing an arbitration clause, the Fifth Circuit held that "relates to" in § 205's removal authorization should be interpreted so that the district court:

> [w]ill have jurisdiction under § 205 over just about any suit in which defendant contends that an arbitration clause falling under the Convention provides a defense.  As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case.  That is all that is required to meet the low bar of 'relates to.'

- 13 -

*Beiser*, 284 F.3d at 669.

32.     Furthermore, the allegation in the removing defendants' notice – not the ultimate determination on the merits as to whether a party is or is not bound by an arbitration – is what controls a district court's assessment of whether removal is proper under § 205.  This is reflected in the text of § 205: "[t]he procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal."

33.     With this in mind, the courts have held that:

> The definition of 'relates to' we have adopted allows the district court to determine its jurisdiction from the 'petition for removal' itself, and keeps the jurisdictional and merits inquiries separate.  Absent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim.  This approach honors the statute's command that we treat defenses based on arbitration clauses under the Convention in the same way that we treat removal generally.  It allows the district court to determine its jurisdiction from the petition for removal, without taking evidence and without a merits-like inquiry.

*Beiser,* at 671-72.

34.     Cases routinely allow the § 205 removal of state court personal injury actions even though the plaintiff is not a party to an arbitration agreement cited as the basis for removal. In *Acosta v. Mater Maintenance & Const., Inc.*, 52 F.Supp.2d 699 (M.D.La. 1999), plaintiff's toxic tort claims were removed to federal district court by underwriters who alleged that their policies with the primary defendant in the case provided for London arbitration.  Because there was a dispute over coverage, the insurers argued that the resolution of the arbitration might have an impact on plaintiff's claims.  *Acosta*, 52 F.Supp.2d 699 at 702.

35.     In *Acosta*, plaintiff challenged removal arguing that arbitration clauses in the insurers' policies did not "relate to" the plaintiff's state court tort actions.  *Id*. at 702-03.  He

- 14 -

argued that "relates to" under § 205 means that plaintiff was required to be a party to contracts containing the arbitration provision. *Id*. at 703. In addition, plaintiff argued that his direct action count against the insurers, being based on a legislatively-created cause of action, did not arise from the insurance policies and was, therefore, not subject to the policies' arbitration clause.

36.     The *Acosta* court held that plaintiff was not required to be a signatory of the contract containing the arbitration clause in order for his claim to "relate to" an arbitration provision. *Id*. at 707. Because plaintiff's right to recover from the insurance companies was directly impacted by the arbitration between the primary defendant and its insurers over coverage, the district court deemed plaintiff's state law claims sufficiently related to justify removal under CREFAA's § 205. *Id*.

37.     On appeal, plaintiff argued that the direct action statute gave him a right against the insurer that was independent of the arbitration agreement and, thus, whatever was decided in the arbitration between the primary defendant and its insurers would not be binding on the plaintiff. *Acosta v Master Maintenance & Const., Inc.*, 452 F.3d 373 (5th Cir. 2006). But, the court of appeals held that even if the arbitration was not preclusive of the plaintiff's state law claims, those claims, nonetheless, "related to" the arbitration.

> The operation of the direct-action statute as a matter of Louisiana state law does not alter the fact that the litigation is related to the arbitration clause as a matter of logic and federal removal law. Both state and federal courts can give proper effect to the direct-action statute; but we cannot ignore Congress's decision that the federal courts are best able to establish uniformity in the enforcement of arbitral agreements. We therefore apply the jurisdictional provision, § 205, according to the plain meaning of its broadly drafted terms.

*Id*. 452 F.3d at 379.

38.     A similar case is *Lannes v. Operators Intern.*, 2004 W.L. 2984327 (E.D.La. Dec. 20, 2004) which allowed a § 205 removal of a Jones Act claim by a foreign insurer asserting arbitration rights under its policy. *Lannes* underscored that Congress' purpose in enacting

- 15 -

CREFAA was to give full scope to the international arbitration promoted by the Convention and that Congress was guided by the principle of seeking "unity in the application of the Convention by channeling Convention Act cases into federal court."  *Id*. at *3 (quoting *McDermott Intern*. 944 F.2d 1199, 1207 – 1208).  Because of this broad purpose, *Lannes* ruled that whether a state court claim "relates to" an arbitration provision was to be determined by the *Beiser* formulation: whether the arbitration agreement could "conceivably affect the outcome of plaintiff's case."  *Id*. at *4 (quoting *Beiser*, 284 F.3d at 669).

39.    While *Acosta* and *Lannes* both involve direct claims against an insurer under Louisiana's direct action statute, that does not distinguish those cases from plaintiffs' claims here.  In the direct action cases, the plaintiffs' claims against the primary defendant would not be extinguished by the arbitration between insurer and policyholder.  Rather, the only thing to be determined was whether the insurer owed indemnity to the insured.  Far more is at stake here.  If the Renco Group prevails in the Treaty arbitration, the plaintiffs will have no claims against Renco at all.  Their only recourse will be against their own government.[2]  It is inarguable that the incipient treaty arbitration in a State that is a party to the Convention will be fundamentally decisive of plaintiffs' rights – as was previously noted above.  So, the nexus between plaintiffs'

---

[2]    It is well beyond the issue *sub judice* to discuss whether nationals of a foreign state can sue their sovereign in the courts of another country.  But this much can be said.  If any portion of the liability for damage to the health of the townspeople of La Oroya is determined in arbitration to lay with the government of Peru, a trial of plaintiffs' claims in this or any other courtroom would involve the bizarre spectacle of Peruvian citizens taking up American judicial resources and imposing on American citizens sitting as jurors to decide how much the Peruvians' own government should pay them for environmental damage largely created by that government.  If the shoe were on the other foot, would any American court, federal or state, give the slightest consideration to enforcing the judgment of a Peruvian court assessing damages against the United States government for injury to United States citizens because of environmental damage that was inflicted in the United States?  The answer is clearly, "no."

state law claims and the issues that have been referred to treaty arbitration is more direct and immediate than in *Lannes* or *Acosta*.[3]

40.     That plaintiffs' claims have been pending in state court for two years does not affect removal.  Plaintiffs have been free from the time of, and before, the date that they were first rounded up by their American lawyers, to sue their government in the law courts of Peru.[4] Indeed, plaintiffs have been free all along to sue in Peruvian courts the conspicuously-absent, DRP, the actual owner and operator of the facility which they claim has poisoned them.  Be that as it may, a removal under § 205 may be taken any time up until trial ("defendant or the defendants, may at any time before the trial thereof, remove such action…").  This permissive timing provision is consistent with the sweeping purpose of CREFAA to channel rights that might be affected by international arbitration into federal court.  Therefore, the removal of this action is timely.

41.     Nor may plaintiffs be heard to object that the defendants participated in state court proceedings.  Indeed, venue was only finally adjudicated as of December 21, 2010.  It cannot be disputed that during the months during which the issues ripened for arbitration, the defendants needed to protect themselves by challenging the manifestly erroneous ruling on venue and cueing up their motions to dismiss, including their motion to dismiss on forum *non conveniens*

---

[3]     Although much of the jurisprudence under CREFAA §205 comes out of the Fifth Circuit and from Louisiana and Texas district courts, the federal courts outside of the Fifth Circuit have fully embraced  the Fifth Circuit's generous reading of § 205.  *See e.g.*, Suter v. Munich Reinsurance Co., 223 F3d 150 (3rd Cir. 2000) (action by state insurance commissioner liquidating insolvent insurer removable under § 205 because German reinsurer's policies with insolvent contained arbitration clauses); *Amato v. KPMG LLP*, 433 F.Supp.2d 640 (M.D.Pa. 2006) (citing the Fifth Circuit "easy" standard for removal under §205, the *Amato* court held that the "conceivably affect" standard of *Beiser* was more than satisfied where an arbitration clause in a brokerage agreement might conceivably affect plaintiffs' state law claims that they had been swindled in a tax shelter investment scheme).

[4]     On information and belief, Peruvian law permits a citizen to sue the government or a governmental entity in that nation's law court for an alleged violation of the citizen's right whether the claim sounds *ex contratu* or *ex delicto*.

grounds.  But, even if their involvement in the state proceedings were not so compelled, the courts have held that a removing defendant's proactive participation in state proceedings does not waive his removal rights.  *Suter*, 223 F.3d at 162 ("[P]articipation in litigation and discovery…is irrelevant to the question of removal under the Convention Act.").

**D.**   V ENUE IS P ROPER IN THIS C OURT AND THE C OURT HAS J URISDICTION

42.   The United States District Court for the Eastern District of Missouri, Eastern Division is the federal judicial district and division embracing the Circuit Court of the City of St. Louis, Missouri, where this and the related actions presently being removed were originally filed and are currently pending.  Therefore, venue is proper in this Court under 9 U.S.C. § 205.

43.   CREFAA authorizes the federal courts to exercise original jurisdiction over any action or proceeding falling under the Convention, because such actions "shall to be deemed to arise under the laws and treaties of the United States."  9 U.S.C. § 203.  This Court therefore has original jurisdiction over this and the related actions that are being removed.  *Id*.

44.   Promptly after filing this Notice of Removal, Defendants will file a copy of this Notice of Removal with the Clerk of the Circuit Court of the City of St. Louis, Missouri and serve a copy on all counsel of record.  *See* 28 U.S.C. § 1446(d).

## V.   CONCLUSION

45.   Plaintiffs' claims will be directly impacted by the treaty arbitration that Renco Group has set in motion.  The decision by the arbitral tribunal will determine whether or not plaintiffs can proceed with personal injury claims against not only Renco Group, but all of its corporate affiliates and personnel, including DRP.  Plaintiffs' state court claims are, in every meaning of the phrase, "relate[d] to" the arbitration and, on that basis, are removable to this Court.

WHEREFORE, defendants pray that the subject state court action be removed to this Court and for such other and further relief as the Court may deem proper and that such further relief be granted as the Court deems fit.

Dated: January 7, 2010                    Respectfully submitted,

                                          **DOWD BENNETT LLP**

                                          By: /s/ Edward L. Dowd, Jr.
                                          Edward L. Dowd, Jr.  #28785MO
                                          edowd@dowdbennett.com
                                          James F. Bennett  #46826MO
                                          jbennett@dowdbennett.com
                                          Terrence J. O'Toole, #23247MO
                                          tjotoole@dowdbennett.com
                                          James E. Crowe, III  #50031MO
                                          jcrowe@dowdbennett.com
                                          7733 Forsyth Blvd., Suite 1410
                                          St. Louis, Missouri 63105
                                          (314) 889-7300 (telephone)
                                          (314) 863-2111 (facsimile)

                                          and

                                          WILLIAMS VENKER & SANDERS LLC
                                          Theodore J. Williams, Jr. #24498MO
                                          100 N. Broadway Street, 21st Floor
                                          St. Louis, Missouri  63102
                                          (314) 345-5000 (telephone)
                                          (314) 345-5055 (facsimile)

                                          Attorneys for Defendants
                                          The Renco Group, Inc., DR Acquisition Corp.,
                                          Renco Holdings, Inc., and Ira L. Rennert

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that on this 7th day of January, 2011, a true and correct copy of the foregoing Notice of Removal and its Exhibits will be delivered to counsel for the parties by the means designated below:

<u>VIA COURIER:</u>

<u>Counsel for Plaintiffs</u>

Jerry Schlichter
Roger C. Denton, Esq.
Kristine K. Kraft, Esq.
Schlichter, Bogard & Denton
100 South 4th Street, Suite 900
St. Louis, MO  63102

<u>Counsel for Defendants The Doe Run Resources Corporation, Marvin K. Kaiser,
Albert Bruce Neil, Jeffery L. Zelms, Theodore P. Fox, III, and Daniel Vornberg</u>

Andrew Rothschild
Richard A. Ahrens
Michael J. Hickey
Lewis Rice & Fingersh, L.C.
600 Washington Avenue, Suite 2500
St. Louis, MO 63101

<u>VIA U.S. MAIL, POSTAGE PRE-PAID, AND ADDRESSED AS FOLLOWS</u>:

<u>Co-Counsel for Plaintiffs</u>
Jay Halpern
Victor Careaga
Jay Halpern and Associates, P.A.
150 Alhambra Circle, Suite 1100
Coral Gables, Florida  33134

                /s/ Edward L. Dowd, Jr.