| | | |
|---|---|---|
| A.O.A., et al., | ) | Case Nos.  4:11CV44 CDP |
| | ) | 4:11CV45 CDP |
| Plaintiffs, | ) | 4:11CV46 CDP |
| | ) | 4:11CV47 CDP |
| vs. | ) | 4:11CV48 CDP |
| | ) | 4:11CV49 CDP |
| DOE RUN RESOURCES | ) | 4:11CV50 CDP |
| CORPORATION, et al., | ) | 4:11CV52 CDP |
| | ) | 4:11CV55 CDP |
| Defendants. | ) | 4:11CV56 CDP |
| | ) | 4:11CV59 CDP |

## MEMORANDUM OPINION

Plaintiffs are numerous Peruvian children who allege that they have been injured by exposure to toxic substances from the La Oroya Complex, a metallurgical smelting and refining complex operating in La Oroya, Peru.  Through their next friends, they filed these eleven actions in Missouri state court, alleging state tort claims against the American companies who they say control the mine. Defendants The Renco Group Inc., DR Acquisition Corporation, Renco Holdings Inc., and Ira L. Rennet removed the case on January 7, 2011, claiming that plaintiffs' actions are related to an arbitration currently set between The Renco Group and the government of Peru, and that the cases are therefore removable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

Plaintiffs move to remand the cases, contending that defendants are procedurally barred from removing the cases under general removal law and that their claims are not related to the pending arbitration between The Renco Group and Peru. I conclude that plaintiffs' actions are related to the pending arbitration, and that defendants are not procedurally barred from removing these cases. Accordingly, I will deny plaintiffs' motions to remand the cases by separate Orders.

## Background

The La Oroya Complex has been operating in La Oroya, Peru for almost 100 years. Originally founded in 1922 by a private company, the Complex consists of smelters and refineries that process minerals mined from the Andes mountains into copper, lead, zinc, and other metals. The government of Peru expropriated the Complex in 1974 and transferred its ownership and operations to Centromin, a Peruvian government-owned company. In the 1990s, Centromin began studying the Complex's environmental impacts on La Oroya and its surrounding area. These studies revealed significant pollution of the environment, including lead contamination in the soil, and culminated in a set of environmental proposals and projects designed to improve the environment. The proposals were codified into Peruvian law as the Programa de Adecación y Manejo Ambiental (PAMA), which

required Centromin to complete certain environmental projects around the Complex by 2007.

In 1997, defendant The Renco Group (Renco) and other American investors purchased the Complex from Centromin pursuant to a Share Transfer Agreement. Centromin agreed to continue some environmental clean-up projects begun under PAMA, including remedying the environment around the La Oroya Complex. Centromin also agreed to assume all liability for any claims by third parties arising from their toxic emissions released before the sale. Peru guaranteed Centromin's agreements in a separate Guaranty. Renco and the investors agreed to continue some clean-up efforts, and to be responsible to third parties for any damages they alone caused.

Plaintiffs are children from La Oroya, Peru who allege they were injured by exposure to toxic substances emitted from the Complex, including lead. For several years they and numerous other Peruvian children have brought claims against the American companies that purchased and invested in the Complex, including defendants The Renco Group, Doe Run Resources Corporation, D.R. Acquisition Corporation, and Renco Holdings. They also have sued several executives at these companies – Marvin Kaiser, Albert Bruce Neil, Jeffrey Zelms, Theodore Fox, Daniel Vornberg, and Ira Rennert. Plaintiffs allege that these

defendants are responsible for the toxic emissions that have caused their injuries. Defendants have unsuccessfully attempted removal of the cases several times.

The first case was filed on October 4, 2007 in Missouri state court by Sisters Kate Reid and Megan Heeney as next friends of 137 Peruvian citizens. Doe Run Resources Corporation, D.R. Acquisition Corporation, Marvin Kaiser, Albert Bruce Neil, Jeffrey Zelms, Theodore Fox, Daniel Vornberg, Renco Holdings Inc., and Ira Rennet were named as defendants. Defendants removed the case to this Court on November 2, 2007, alleging that federal question jurisdiction existed because plaintiffs' claims raised substantial questions relating to the acts and obligations of a foreign state (Peru), international law, and foreign policy issues. That case, bearing cause number 4:07CV1874 CDP, was remanded to state court for lack of subject-matter jurisdiction on March 18, 2008. *See A.A.Z.A. v. Doe Run Res. Corp.*, Civil Case No. 4:07CV1874 CDP [#61]. As explained in the Memorandum and Order of Remand, plaintiffs' complaint only raised state law claims and alleged only acts and damages that occurred when the American defendants owned and controlled the Complex. Although defendants argued that Peru was involved in or responsible for some of the activities that caused plaintiffs' injuries, I held that these arguments constituted defenses under the well-pleaded complaint rule and, accordingly, could not form the basis for federal subject-matter jurisdiction.

Back in state court, plaintiffs amended their petition and added The Renco Group as a corporate defendant. Renco removed the action to this Court for a second time, asserting federal diversity jurisdiction under 28 U.S.C. § 1332(d), because the plaintiffs' claims constituted a qualifying mass action under the Class Action Fairness Act of 2005 (CAFA). That case was assigned Case Number 4:08CV525 CDP. Plaintiffs again moved for remand. A hearing was set for August 5, 2008, but plaintiffs voluntarily dismissed their claims as of right under Rule 41(a)(1)(A)(i), Fed. R. Civ. P, two days before. The case was dismissed without prejudice in accordance with plaintiffs' notice of dismissal on August 6, 2008. *See A.A.Z.A. v. Doe Run Res. Corp.*, Civil Case No. 4:08CV525 CDP.

On August 7, 2008, two new cases brought by the same next friends on behalf of eight different Peruvian children were filed in Missouri state court, alleging the same facts and asserting the same claims against the same defendants as before. All defendants removed both cases to this Court on September 17, 2008, asserting federal diversity and federal question jurisdiction. Those cases were assigned case numbers 4:08CV1416 CDP and 4:08CV1420 CDP. In their Notices of Removal, defendants contended that these cases were removable because they constituted a qualifying mass action under CAFA, and because the Court had federal-question jurisdiction under the federal common law of foreign relations. I disagreed, and remanded the cases *sua sponte* on October 9, 2008. *See A.O.A. v.*

*Doe Run Res. Corp.*, Civil Case No. 4:08CV1416 CDP [#19]; *K.G.C. v. Doe Run Res. Corp.*, Civil Case No. 4:08CV1420 CDP [#19].

Upon remand, defendants filed a motion to transfer venue of the two cases from the City of St. Louis to St. Louis County on November 21, 2008. Plaintiffs also filed another nine cases (involving seventeen more plaintiffs) on December 9, 2008, raising the same claims against the same defendants. Defendants filed motions to transfer venue in those cases as well. Meanwhile, defendants attempted unsuccessfully to get Peru to enter into these cases and defend them against plaintiffs' claims. Defendants contend that plaintiffs' injuries, if any, were caused by exposure to toxic substances emitted by the Complex while Peru owned and operated it through Centromin, and not by any of their actions after purchasing the Complex. They also assert that Peru has failed to complete environmental clean-up projects around La Oroya as promised in the Share Transfer Agreement. When the government of Peru ultimately refused to enter these cases on November 26, 2010, Renco notified Peru of its intent to arbitrate its disputed claims pursuant to the United States - Peru Trade Promotion Agreement of April 12, 2006. This Treaty provides for the arbitration of any investment disputes between American companies and Peru.

At the same time, the Missouri trial court denied defendants' motion to transfer venue in all eleven cases. Defendants filed a Writ of Prohibition with the

Missouri Court of Appeals, seeking to overturn the trial court's ruling. When the Writ was unsuccessful, defendants filed another Writ with the Missouri Supreme Court; that writ was denied on December 21, 2010. On December 29, 2010, Renco submitted its claims against Peru to arbitration, and the removing defendants removed these eleven actions on January 7, 2011. In their Notices of Removal, defendants assert that plaintiffs' claims are related to the pending arbitration and thus are removable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The remaining defendants joined the Notices of Removal on that same date. Plaintiffs moved to remand all eleven cases on March 7, 2011, and also move for attorney's fees and costs.

**Discussion**

In removing these cases, defendants rely on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, as implemented by 9 U.S.C. §§ 201 *et seq.* (Convention). Congress ratified the Convention in 1970 to ensure that United States citizens would have predictable enforcement of their arbitration agreements and awards in the courts of the United States and other signatory nations. 21 U.S.T. 2517; *see also McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1207 (5th Cir. 1991) (describing the Convention's ratification). In order to implement the Convention, Congress enacted what many courts refer to as the "Convention Act,"

9 U.S.C. §§ 201 *et seq.*  Convention Act § 202 describes what arbitration agreements and awards fall under the Convention:  agreements or awards arising out of legal relationships, "whether contractual or not," and which [are] considered as commercial," between United States citizens and foreign citizens, or between two United States citizens, if the subject matter of their agreement involves property abroad or has some other relationship with a foreign state.  Section 203 creates original jurisdiction in federal courts for actions falling under the Convention.  *See* 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.").

Most importantly for this case, § 205 allows removal of any action in state court in which "the subject matter . . . relates to an arbitration agreement or award falling under the Convention . . . ."  As discussed in more detail below, several courts have interpreted § 205's "relates to" language quite broadly.  *See, e.g., Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) ("Similarly, whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit.") (emphasis in original).  With regard to the procedures for removal under § 205, that section states:

> The procedure for removal of causes otherwise provided by law shall apply, except that the grounds for removal provided in this section

need not appear on the face of the complaint but may be shown in the petition for removal . . . .

*See also Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997) ("General removal law applies to cases which are removed under the Convention's removal provision because § 205 incorporates the procedure for removal of causes otherwise provided by law, which means 28 U.S.C. §§ 1441-1452 . . . In particular, this language includes § 1447(c), authorizing remand for defects in the removal procedure . . . ."). Additionally, § 205 allows a defendant to remove a case "at any time before trial," rather than within thirty days of receiving notice of the basis for removal set out in 28 U.S.C. § 1446(b).

## I. Whether Plaintiffs' Claims Relate to the Pending Arbitration

Here, the parties dispute whether plaintiffs' actions "relate to" the pending arbitration between The Renco Group and Peru, and therefore are removable under § 205.[1] Although the Eighth Circuit Court of Appeals has not yet considered this issue, the Fifth and Ninth Circuit Courts of Appeals have. When confronting the

---

[1] It is undisputed that the arbitration provision in the U.S.-Peru Treaty falls under the Convention. *See* United States - Peru Trade Promotion Agreement, art. 10.17, Apr. 12, 2006 (the Government of Peru agrees that its consent to submit a disputed investor claim to arbitration "shall satisfy the requirements of . . . Article II of the . . . Convention for an "'agreement in writing' . . . ."), *available at* http://www.ustr.gov/trade-agreements/free-trade-agreements (last visited June 20, 2011); *cf. also Argentine Republic v. National Grid PLC*, 637 F.3d 365, 366-67, 369 (D.C. Cir. 2011) (affirming, under the Convention, the district court's confirmation of an arbitral award issued by an arbitration panel convened pursuant to a Bilateral Investment Treaty between Argentina and the United Kingdom and declaring that Argentina violated the treaty).

issue of what actions "relate to" arbitration agreements under the Convention and, thus, are removable under § 205, the Fifth and Ninth Circuits have both held that "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of plaintiff's case, the agreement 'relates to' the plaintiff's suit," and the case is removable under § 205. *Beiser*, 284 F.3d at 669 (emphasis in original); *accord Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d. 1133, 1138 (9th Cir. 2011). As the *Beiser* court explained:

> [T]he district court will have jurisdiction over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition fo the case. That is all that is required to meet the low bar of "relates to."

*Beiser*, 284 F.3d at 669.

Applying this "low bar" for removal jurisdiction, the *Beiser* court determined that the plaintiff's tortious interference case was removable from state court under § 205, when a pending arbitration could conceivably affect it. *Id.* at 669-70. Plaintiff had filed suit in his individual capacity against several corporate defendants in Texas state court, alleging that defendants had wrongfully deprived him of his financial interests in a Hungarian gas field. *Id.* at 666-67. Plaintiff's company – of which he was the sole shareholder and director – had made agreements with these defendants to develop the gas field together; the agreements provided for arbitration of any disputes arising from the agreements. *Id.*

Accordingly, when plaintiff filed suit individually against these defendants in state court for wrongful interference with his financial interest in the gas field, defendants removed the case pursuant to § 205, contending the state-court action was related to the arbitration agreements. *Id.* at 667.

The Fifth Circuit concluded it was related, because although plaintiff as an individual was not a party the arbitration agreements, his state-court action was still related to the agreements. In particular, the arbitration panel's decision could conceivably affect plaintiff's claims: "Although Beiser did not formally commit to any of the agreements, it is at least conceivable that a court might pierce the corporate veil and hold him personally responsible for the contracts designed to secure his personal involvement on the Hungary development." *Id.* at 669-70. Accordingly, the case was removable pursuant to § 205. *See id.* at 670; *see also Infuturia*, 631 F.3d at 1137-39 (plaintiff's tortious interference case removable pursuant to § 205 when defendants raised defense of collateral estoppel based on Israeli arbitration panel's decision, because "the arbitral award 'could conceivably affect the outcome' of the case") (quoting *Beiser*, 284 F.3d at 669)).

In this case, defendants argue that plaintiffs were actually injured, if at all, by exposure to toxic substances released by the government of Peru while it owned and operated the La Oroya Complex through its company, Centromin. They also contend that the government of Peru breached its Share Transfer Agreement with

them and other American investors by failing to complete environmental clean-up projects around La Oroya – including remediating the lead-contaminated soil – and by failing to enter into these eleven cases and defend them against plaintiffs' claims.  Defendants also assert that plaintiffs would not have been injured if Peru had completed the soil contamination remediation projects as promised in the Share Transfer Agreement.  Renco has alleged these claims in its notice of arbitration with Peru pursuant to Section B of the U.S. - Peru Treaty.  *See* United States - Peru Trade Promotion Agreement, § B, art. 10.16, Apr. 12, 2006, *available at* http://www.ustr.gov/trade-agreements/free-trade-agreements (last visited June 20, 2011).

Because the arbitration panel's decision will determine whether Peru violated the Share Transfer Agreement by failing to clean up the environment around La Oroya and by failing to defend those investors in these actions, I conclude that the arbitration panel's decision could conceivably affect plaintiffs' claims and that these eleven cases are therefore removable pursuant to § 205.  In particular, the arbitration panel will decide whether Peru was required by its Agreement with investors to clean up the soil around Peru.  If the panel determines that Peru failed to fulfill this contractual obligation, this determination will in turn affect the issues in this case of whether defendants polluted the environment in La Oroya, whether defendants' alleged pollution caused plaintiffs' injuries, and

whether Peru's alleged pollution caused the injuries. Additionally, if the arbitration panel determines that Peru is contractually obligated to defend Renco and the other defendants, Peru could be required to enter into these cases as a defendant. Plaintiffs contend that only the defendants' actions caused their injuries, not Peru's, but this is a question of fact that cannot be determined simply by the pleadings, and an arbitration panel's determination that Peru failed to remedy some of the environmental contamination in the years after the 1997 sale could be relevant to that question. Accordingly, because the arbitration panel's decision on the claims raised by Renco before that panel – including Peru's responsibility for and failure to clean up the environment around La Oroya – could conceivably affect the issues in this case, these actions are removable under § 205.

Plaintiffs' other arguments against this Court's subject-matter jurisdiction under § 205 also fail.[2] Plaintiffs claim that they must be parties to the arbitration agreement for this case to be removable. However, both the Fifth and Ninth Circuit Courts of Appeal have rejected such a privity requirement. *See Infuturia*,

_____

[2]Plaintiffs also argue that defendants' claims against Peru are time barred by the U.S. - Peru treaty, because the Treaty provides a three-year statute of limitations for arbitrating claims arising under it. As defendants point out, however, the Treaty did not enter force until February 1, 2009, and defendants could not have sought arbitral relief against Peru until after that date. Moreover, Peru did not formally reject defendants' claims until November 26, 2010, and so the statute of limitations will not run on defendants' claims until the fall of 2013. It is also undisputed that Renco submitted its claims to arbitration on December 29, 2010. Finally, whether a party's arbitral rights have been timely raised is a question for the arbitration panel, not for this Court. *Cf. Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) ("Following this precedent, we find that the applicability of the NSAD time limit rule is a matter presumptively for the arbitrator, not for the judge.").

631 F.3d at 1138 (rejecting a district court's privity requirement, because such a requirement "finds no support in the language of the statute"); *Beiser*, 284 F.3d at 669-70 (even though plaintiff did not sign arbitration agreement in his personal capacity, his tortious interference claims were removable under § 205 because the arbitration could conceivably affect his claims). Plaintiffs also argue that this case is not removable under § 205 because their claims are not "commercial" in nature, and only commercial claims are removable under § 205. Plaintiffs are incorrect. Convention Act § 202 provides that the Act applies to agreements that arise out of legal relationships that are "commercial." An agreement to arbitrate that is commercial in nature, such as that here, is covered by the statute. The Convention Act does not say that only commercial *actions* are removable under § 205. Instead, it allows for the removal of any action that "relates to" an agreement to arbitrate. *See* 9 U.S.C. § 205 ("Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . ." the case is removable). Several courts have upheld the removal of personal-injury actions like plaintiffs' under § 205 if they relate to an arbitration agreement or award. *See, e.g., Lannes v. Operators Int'l*, No. Civ.A. 04-584, 2004 WL 2984327, at *7 (E.D. La. Dec. 20, 2004).

For all of these reasons, I conclude that the claims in these eleven cases are covered by the Convention Act's grant of subject-matter jurisdiction.

## II.    Procedural Defects in the Notices of Removal

Plaintiffs also argue that, even if the suits are related to the pending arbitration, there are procedural defects in defendants' Notices of Removal that require remand to state court. I disagree. The event that made the removals proper – the commencement of arbitration proceedings – did not happen until shortly before the removals, and under the circumstances of this case the particular common-law rules that plaintiffs assert are inconsistent with this statute.[3]

As noted above, § 205 provides that general removal rules apply, except that the defendant may remove an action at any time before trial, and the basis for removal need not appear on the face of plaintiff's Complaint. *See* 9 U.S.C. § 205 ("The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint . . . ."); *see also Transit Cas.*, 119 F.3d at 625 (plain text of § 205 incorporates general removal law to removals under § 205).

---

[3]Defendants argue that no common-law rules for removal apply to removals under § 205. I disagree. To the extent that common-law rules do not conflict with § 205's abrogation of the well-pleaded complaint rule, or with a party's ability to remove a case at anytime before trial, they apply according to the plain text of that section. *See* 9 U.S.C. § 205; *see also Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997) (§ 205 incorporates general removal laws); *Employers Ins. of Wausau v. Certain Underwriters at Lloyd's, London*, 787 F. Supp. 165, 169 (W.D. Wis. 1992) ("Except for these two provisions, general removal law applies."); *but see Costa v. Master Maint. & Constr.*, 52 F. Supp. 2d 699, 708-09 (M.D. La. 1999) (case removable under § 205 even though not all defendants consented to removal), *aff'd on other grounds*, 452 F.3d 373 (5th Cir. 2006).

Plaintiffs first argue that this is an improper second attempt to remove two actions that were previously removed and remanded to state court. In particular, they argue that no new jurisdictional grounds exist that would make defendants' second attempt at removal of those two cases appropriate. Plaintiffs are correct that a defendant may not remove an action based on the same ground after a case has already been remanded to state court. *See, e.g., St. Paul & C. Ry. Co. McLean*, 108 U.S. 212, 216-17 (1883) ("[A] party is not entitled, under existing laws, to file a second petition for removal upon the same grounds, where upon the first removal by the same party, the federal court declined to proceed and remanded the suit, because of his failure to file the required copy within the time fixed by the statute."); *accord S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996). Here, however, defendants do not attempt removal based on the same ground or facts; rather, they allege for the first time in their notices of removal that plaintiffs' claims are related to the pending arbitration between Renco and Peru and that the actions are therefore removable under § 205. *See S.W.S.*, 72 F.3d at 493 (a case may become removable a second time if later pleadings or events reveal a new jurisdictional fact making removal appropriate). Moreover, Renco only gave notice of this arbitration in December of 2010 – more than two years after the cases were remanded. Accordingly, defendants' notices of removal allege

a new factual ground for removal, and their successive attempt at removal is appropriate under the general rules for removal. *See id.* at 494.

Plaintiffs next argue that the new grounds making second removal appropriate must be the result of their voluntary actions. Plaintiffs refer to the "voluntary-involuntary rule," which applies to removals based on diversity and federal question jurisdiction. This rule provides that "a suit which, at the time of filing could not have been brought in federal court must remain in state court unless a 'voluntary' act of the plaintiff brings about a change that renders the case removable." *E.g., People of State of Cal. By and Through Lungren v. Keating*, 986 F.3d 346, 348 (9th Cir. 1993); *see also Knudson v. Systems Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (stating that "only a voluntary act of the plaintiff could bring about removal to federal court") (internal quotation marks and citations omitted). I agree with plaintiffs that the new basis for removing these actions – the pending arbitration – did not come as a result of their voluntary actions, but I conclude that this rule cannot apply to removals under § 205, especially in light of that section's abrogation of the well-pleaded complaint rule.

As courts have explained while examining the voluntary-involuntary rule in the other contexts, the voluntary-involuntary rule and the well-pleaded complaint rule are consistent and reinforce each other. That is, in the typical lawsuit, a case does not become removable because of defendants' actions or because of

allegations or arguments made outside of the plaintiffs' complaint. "The basic premise is that because a plaintiff is the master of his own complaint, involuntary changes caused by a party other than the plaintiff cannot make a case removable." *Henderson v. City of Chattanooga*, No. 1:02-CV-045, 2002 WL 32060139, at *5 (E.D. Tenn. Mar. 15, 2002).

Section 205, however, expressly abrogates the well-pleaded complaint rule. Because of that abrogation, I cannot conclude that Congress also intended the "voluntary-involuntary" rule to apply to removals under § 205. Such a result would thwart the purposes of the section. On one hand, a defendant would be allowed to remove at any time before trial based on allegations that are not in plaintiff's complaint, but on the other, that defendant would not be allowed to remove if those allegations were not the result of plaintiffs' voluntary actions. For instance, in this case, these eleven actions are related to the pending arbitration and are therefore removable under § 205, even though the arbitration is not mentioned in plaintiffs' petitions. However, if the voluntary-involuntary rule were to apply, defendants would still not be able to remove them, because plaintiffs are not parties to the pending arbitration and have had no involvement in it. This is clearly not the result Congress intended, for, by removing the well-pleaded complaint rule for removals under § 205, Congress intended to make it "easy for defendants in state-filed Convention cases to remove to federal court." *Beiser*, 284 F.3d at 674

(internal quotation marks and citation omitted). That intent would be thwarted if a defendant were not allowed to remove a case when the basis for removal was its own pending arbitration or agreement to arbitrate, which will be likely true in many of the cases removed under § 205. Accordingly, I conclude that the voluntary-involuntary rule does not apply to removals under § 205, and these cases are removable even though the basis for removal did not come about as result of plaintiffs' voluntary actions.

Finally, plaintiffs argue that defendants waived their right to remove by filing motions to transfer venue in state court. It is true that in other circumstances a defendant may waive its right to remove "by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court . . . ." *Yusefzadeh v. Nelson, Mullins, Riley, & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (quoting 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3721 (2003)). However, § 205 expressly allows a defendant to remove a case at any time before trial. By providing for removal any time before trial, Congress necessarily assumed that the parties could engage in litigation activities in the state court before the removal. If engaging in the normal litigation activities that lead up to a trial could be a waiver of the right to remove under § 205, the provision that the case could be removed at any time before trial would be

meaningless.  As with the "voluntary-involuntary rule" this common-law rule is at odds with the text of § 205 and with the pro-removal policies underlying that section.  Defendants did not waive their right to remove under § 205 by seeking a change of venue in state court.

### III.    Conclusion and Attorney's Fees

Because these cases are related to the pending arbitration – including its consideration of the Peruvian government's involvement in polluting the environment around the La Oroya Complex – they are removable under § 205.  Moreover, defendants are not procedurally barred from removing these cases, and so plaintiffs' motions to remand will all be denied by separate Orders.

Defendants have moved for a determination of whether they should file the entire state court file for each removed case, or whether they should only file selected documents in each file.  I will direct the defendants only to file the entire state court file in the lowest-numbered case in this Court, *A.O.A. v. Doe Run Res. Corp.*, Civil Case No. 4:11CV44 CDP.  Defendants should file notice in the other ten cases indicating that the entire state-court file for Case No. 4:11CV44 CDP is filed there, and that the state court file for each case is essentially the same as that one.  If a party later determines that a particular document from the state court file in one case is unique and necessary for resolution of any issue in a case, that party shall supplement the record in the particular case.

Separate Orders consistent with this Memorandum and Opinion will be entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of June, 2011.