UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SR. KATE REID, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV44 CDP |
| | ) | |
| DOE RUN RESOURCES CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Pending before me is the defendants' motion for a determination of foreign law pursuant to Federal Rule of Civil Procedure 44.1.  The defendants have requested that the court determine that: (1) the plaintiffs' claims "originated" in Peru and are "fully barred" under Peruvian law so that, in accordance with Missouri's borrowing statute, Peru's shorter statute of limitations applies; and (2) under Missouri's choice-of-law analysis, Peru (and not Missouri or New York) has the most significant relationship to this action, so its substantive laws govern the plaintiffs' claims.  The plaintiffs argue that these issues cannot be determined now on an incomplete record, and that if they can, the law of Missouri or New York (and not Peru) applies.  In case the court disagrees, the plaintiffs also advance an interpretation of the relevant Peruvian law that is favorable to them.

I have considered the voluminous briefs and exhibits submitted by the parties, including the reports and rebuttal reports from the retained experts in Peruvian law, and I have also conducted my own research.  After considering all of these materials, I have concluded that: (1) there has been no showing the plaintiffs' claims are fully barred in Peru and so Missouri's statute of limitations applies; and (2) I cannot determine without more discovery whether Peru's substantive law governs part or all of the plaintiffs' claims, and so I decline to make a Rule 44.1 ruling as to the content of that law.

## I.     Background and Claims

It is undisputed that this action involves polluting activities at a smelter of lead and other metals located in La Oroya, Peru, and allegedly owned directly or indirectly and/or controlled by the defendant companies and individuals.  The plaintiffs, most of whom are represented by two American next friends, are Peruvian children (or persons who have attained the age of majority during litigation) who allege that they live near La Oroya and have been harmed by exposure to high levels of lead, cadmium, sulfur dioxide, and other toxic substances emitted from the smelter.

All told, this action and its predecessor have spent the better part of a decade in both state and federal court.  The parties are familiar with its procedural history,

so I will not recount it here in any detail.  In brief, after voluntarily dismissing an earlier case, the plaintiffs filed suit in Missouri state court in 2011, bringing state law claims of negligence and strict liability, civil conspiracy, and contribution. The defendants removed the case to federal court.  This court has jurisdiction under 9 U.S.C. § 205 because the action relates to a foreign arbitration.  *See Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 843 (8th Cir. 2012).

At this time, this action consists of some twenty-odd cases consolidated for pretrial purposes and involving similar claims by more than 900 plaintiffs.  The parties are engaged in limited discovery, and a special master has been appointed to assist with electronic discovery issues.

## II.     Federal Rule of Civil Procedure 44.1

The defendants request that I make a determination of foreign law pursuant to Federal Rule of Civil Procedure 44.1.  Under Rule 44.1, the determination of foreign law is a question of law – not fact – that can be based on any relevant source, "whether or not submitted by a party and whether or not admissible under the Federal Rules of Evidence."  *United States v. Matya*, 541 F.2d 741, 746 n.10 (8th Cir. 1976) (citing Fed. R. Civ. P. 44.1).

The rule, adopted in 1966, gives courts wide discretion in accepting or rejecting evidence of foreign law.  *Id.* (Rule 44.1 and its notes "avoid

- 3 -

characterizing the process by which courts take cognizance of what the law is as judicial notice, thereby emphasizing the non-evidentiary nature of the process"). A court may conduct research on its own, especially if it wishes "to reexamine and amplify material that has been presented by counsel in partisan fashion or in insufficient detail," but it is not obligated to do so; it may instead "insist on a complete presentation by counsel."  Fed. R. Civ. P. 44.1 advisory committee's note; *but see also Twohy v. First Nat. Bank of Chicago*, 758 F.2d 1185, 1193 (7th Cir. 1985) ("courts are urged to research and analyze foreign law independently," especially because counsel's arguments are often one-sided); *Faggionato v. Lerner*, 500 F. Supp. 2d 237, 244 (S.D.N.Y. 2007).

Although a court making a Rule 44.1 determination may examine any relevant material, "it is under no obligation to do so if the party whose burden it is fails to produce sufficient evidence that foreign law applies."  *In re Vivendi Universal, S.A. Sec. Litig.*, 618 F. Supp. 2d 335, 340 (S.D.N.Y. 2009).  Where the parties do not adequately prove foreign law so as to "enable the court to apply it in a particular case," the law of the forum applies.  *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 469 (E.D. Pa. 2010) (citing *Bel-Ray Co., Inc. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999)).  A court has no duty to make further inquiries of a party

who fails to prove the content of the applicable foreign law.  *See Vivendi*, 618 F.
Supp. 2d at 340.

## III.   Missouri's borrowing statute

When Missouri is the forum state, its statutes of limitations generally apply.
*Keaton v. Crayton*, 326 F. Supp. 1155, 1157–58 (Mo. Ct. App. 1969); *Renfroe v.
Eli Lilly & Co.*, 686 F.2d 642, 646 (8th Cir. 1982).  Missouri has adopted a
borrowing statute that imports another jurisdiction's limitations period under
certain circumstances.  *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578-79 (6th Cir.
2004) (history of borrowing statutes).

Missouri's borrowing statute provides as follows:

> Whenever a cause of action has been fully barred by the laws of the
> state, territory or country in which it originated, said bar shall be a
> complete defense to any action thereon, brought in any of the courts
> of this state.

Mo. Rev. Stat. § 516.190.

Under the plain language of this statute, *see, e.g., State v. Owen*, 216 S.W.3d
227, 229 (Mo. Ct. App. 2007), there are at least two prerequisites to its application.
It will only be employed if: (1) the cause of action "originated" in the foreign
jurisdiction, and (2) the cause of action is "fully barred" in that jurisdiction.[1]

---

[1]  Although it has not interpreted "cause of action" as this term is used in Section 516.190, the
Supreme Court of Missouri has generally adopted the Black's Law Dictionary definition of a

- 5 -

The first prong is easily met.  For purposes of the borrowing statute, plaintiffs' claims originated in Peru because that is where the damage resulting therefrom was sustained and was capable of ascertainment.  *See Thompson v. Crawford*, 833 S.W.2d 868, 871 (Mo. banc 1992) ("originated" in Section 516.190 means "accrued"); Mo. Rev. Stat. § 516.100 ("accrued" means "when the damage resulting therefrom is sustained and is capable of ascertainment"); *Benton v. Cracker Barrel Old Country Stores, Inc.*, 436 S.W.3d 632, 634 (Mo. Ct. App. 2014) (Section 516.100 definition also applies to *where* a cause of action accrued); *see also Natalini v. Little*, 185 S.W.3d 239, 243-44 (Mo. Ct. App. 2006).  The plaintiffs argue otherwise, but their arguments run afoul of common sense.  They do not allege that they have ever left Peru, so the damage they have allegedly suffered could not have been sustained and could not have been capable of ascertainment anywhere else.

The second prong – that plaintiffs' claims are fully barred in Peru – has not been met.  *See Kampe v. Colom*, 906 S.W.2d 796, 807 (Mo. Ct. App. 1995) ("fully

---

"cause of action": "a group of operative facts giving rise to one or more bases for suing." *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002).  The plaintiffs have brought seven claims: two each of negligence, civil conspiracy, and absolute or strict liability (for each claim, one count against the entity defendants and one count against the individual defendants), as well as a claim of contribution based on the tortious conduct of entities acting in concert, against all of the defendants.  The plaintiffs have not argued that each of their claims should be analyzed separately under the borrowing statute, so I presume, for the purpose of this order, that their claims constitute a single cause of action.

barred" is prerequisite to application of Section 516.190).  As Missouri courts have interpreted it, the borrowing statute imports not only the foreign jurisdiction's limitations period, but also its accrual provisions and its tolling doctrines. *Thompson*, 833 S.W.2d at 872; *see also Great Plains Trust Co. v. Union Pac. R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007).

I agree with the parties that Peruvian law attaches a two-year statute of limitations to claims of extracontractual liability, which is the closest cognate to at least some of plaintiffs' Missouri tort claims.  *See* Fed. R. Civ. P. 44.1; Peru Civil Code of 1984 [PCC] art. 2001.4 (*translated in* Doc. 244-2, p. 4.).  I also agree with the parties that, under Peruvian law, the limitations period usually begins when a person reasonably becomes aware of an injury received, which may be the same day the injury occurs or may be later.  (Rosenn report I, ¶ 28, ¶ 69(e), Doc. 150-1; de Trazegnies report I, ¶ 12.12, Doc. 150-13; Espinoza report, ¶¶ 5.8-5.9, Doc. 214-16; Fernandez report, ¶¶ 60-62, Doc. 214-17; de Trazegnies report II, ¶¶ 12.3-12.4, Doc. 244-1; Rosenn report II, ¶ 49, Doc. 244-4.)[2]

But plaintiffs argue that several tolling and delayed-accrual doctrines also apply.  Among other things, they contend that Peruvian law recognizes some form of continuing-harm doctrine that might permit their claims to go forward under

_____

[2]  I do not decide, at this point, whether the knowledge of the minor plaintiffs or their parents or guardians is at issue.

Peruvian law.[3]  After considering all the evidence, I agree.  I conclude that Peru

could apply some doctrine of continuing tort, and so plaintiffs' claims are not

"fully barred" in that jurisdiction.

As all of the parties recognize, Peru is a civil-law jurisdiction.  Its principal

source of law is legislation, and "the heart of Peru's private law is the Civil Code,

adopted in 1984."  (Rosenn report I, Doc. 150-1, ¶¶ 18-20.)  The Civil Code, which

"is used to fill in gaps in other legislation" (*Id.* ¶ 20.), prescribes the beginning and

end of the limitations period as follows:

> The term for prescription commences on the date when the action may
> be filed[4] and continues against the rightholder's successors.
>
> The term of prescription runs out as follows, unless otherwise provided by
> law: . . . in two years for . . . an action for indemnification for
> extracontractual liability.

(PCC arts. 1993, 2001, translated, among other places, in de Trazegnies report II,

Doc. 244-2.)  The Code also provides that the limitations period  "extinguishes the

---

[3]  The plaintiffs assert several additional arguments about why their claims would not be fully barred under Peruvian law.  For example, they point out that they have alleged multiple harms, whose ascertainment conceivably began on different dates, some of which might be within the limitations period even if they all are not.  They also mention, in passing, that Peruvian law tolls a limitations period during the pendency of an action and during minority if a minor plaintiff is not in the custody of her parents or legal representatives, though they do not attempt to demonstrate that they met this criterion.  Because I conclude that Peru has adopted a continuing-harm doctrine, I will not examine these arguments.

[4]  This term, *ejercitarse*, is alternatively translated as "exercised" and "brought" in other translations of the experts' reports.  (*See, e.g.*, Espinoza report ¶ 5.8, Doc. 214-16.)

- 8 -

action but not the law itself." (PCC art. 1989, translated in Fernandez report, ¶ 55, Doc. 214-17.) Neither party has demonstrated that Peru's Civil Code or other legislation explicitly references a doctrine of continuing harm or continuing tort.

Nonetheless, the defendants argue that such a doctrine is anathema to Peruvian civil law. Defendants' expert Dr. de Trazegnies points to the Code's Statement of Rationale, in which lawmakers (including Dr. de Trazegnies, who served on the committee that drafted the Code) wrote that:

> The basis of the statute of limitations is public policy, because it is in the interest of society to put an end to latent situations pending resolution. . . . Legal certainty is the basis for the statute-of-limitations construct, because by allowing [for] opposition to the exercise of a lapsed cause of action, situations are closed that otherwise would be forever open.

(de Trazegnies report I ¶ 12.2, Doc. 150-13 (brackets in original).) But where plaintiffs allege continuing harm, the situation cannot be called "latent" and where defendants continue to cause an injury, a cause of action is not "lapsed." The Statement of Rationale is therefore not persuasive evidence of Peru's rejection of the doctrine of continuing harm.

Dr. de Trazegnies also points out that "continuing harm" is not one of the enumerated tolling exceptions ("suspensions" and "interruptions" of the limitations period) provided for in the Civil Code. *See* Arts. 1994 and 1996 (translations in Doc. 244-2, p. 3). But one of the plaintiffs' experts, Professor Fernandez, asserts

- 9 -

that continuing harm is not a suspension or interruption (Doc. 214-17, ¶ 72, trans.

at p. 18.), but rather a postponement of the accrual date.  Plaintiffs' expert

Professor Espinoza cites as support two Peruvian court cases that he suggests view

continuing harm this way.  Upon examination, it appears that the court did in fact

permit recovery of damages for harms that began occurring many years earlier.  In

one of the cases, the court affirmed that the prescription period had not run for 17

years before the plaintiff could know the "true and real dimension" of the damage

he had incurred.[5]  Although it appears Peru does not recognize *stare decisis*, and

these cases involve a very different set of facts, these opinions are good evidence

that the Peruvian judiciary will apply a continuing-harm doctrine under certain

circumstances.  *See Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036,

1038 (9th Cir. 1999) ("expert testimony accompanied by extracts from foreign

legal materials has been and will likely continue to be the basic mode of proving

foreign law"); *Inter Med. Supplies, Ltd. V. EBI Med. Sys., Inc.*, 181 F.3d 446, 459

(3d Cir. 1999) (to resolve disagreement between foreign law experts, court "may

adopt any position that is supported by reasonable inferences either from the

---

[5] Sala Civil Transitoria de la Corte Supreme de Justicia de la Republica [Civil Court of the Supreme Court of Justice], 1/12/2006, "Rupp, Luis Alberto León c. el Ministerio de Economia y Finanzas y la Supreintendecia de Banca y Seguros / indemnización por daños y perjuicios," case no. 2546-2004 (Lima), available by search at http://jurisconsulta.pj.gob.pe/jurisWeb/faces/busquedaCasacionesSistematizadas.jsp (last accessed Jan. 1, 2015) (interpreting Art. 2001).

respective country's law or from the implications of a legal concept such as a

contract or testament or juristic personality") (internal quotation marks omitted).

Quoting another Peruvian practitioner, plaintiffs' expert Professor Espinoza

explains that:

> the "limitations period for tort liability actions begins when the
> resulting damage (or the consequences of the damage) is knowable by
> the victim.  This can be inferred from the provisions established by
> Article 1993 of the Civil Code, which indicate that the calculation of
> the limitations period begins '(…) from the date on which the action
> may be exercised.' It is clear that the action may not be exercised if
> the effect of the damage whose redress is being requested (resulting
> damage) has not occurred yet, and it is difficult to require the victim
> to claim it, if the victim does not know the damage for which he wants
> compensation (known damage)."

(Doc. 214-16, ¶ 5.9 (ellipses in original).)[6]  In other words, what Article 1993

describes as "the date when the action may be filed" is the date when an action

accounting for the whole alleged tort may be filed.  Understood this way, there is

nothing in the Code itself – including Article 1993 – that precludes Peruvian

recognition of some type of continuing-tort doctrine.[7]  Although defendants and

their experts assert that this reading would indefinitely delay the accrual of a cause

---

[6]  *See also* Dr. de Trazegnies Aff. *in Torres v. S. Peru Copper Corp.*, ¶ 9.7, p. 11 (Doc. 150-14)
("According to the rules of prescription (limitations on actions), a legal action for damages
should be commenced no later than two years after the *damage is done*."); de Trazegnies report
II, ¶ 12.3 (Doc. 244-1) (limitation period begins when "*a certain person* becomes aware that he
has suffered *specific harm*") (emphasis added to both).

[7]  The Court notes that it does not have a complete English-language translation of the Code,
only those provisions that at least one party thought were relevant to this motion.

- 11 -

of action, this is not so.  Instead, a cause of action accrues not necessarily after the harm has occurred completely, but when its extent is knowable.

In addition, plaintiffs' expert Professor Fernandez relies in part on Dr. de Trazegnies' textbook on tort liability (*RESPONSIBILIDAD EXTRACONTRACTUAL*) for his conclusion that Peruvian law recognizes a doctrine of continuing harm.  (Doc. 214-17, ¶ 64.)  In his reply report, Dr. de Trazegnies explains that not all is as it appears:  the excerpts on continuing harm cited by Professor Fernandez come from a section of his book entitled "New Horizons," in which he advocates for changes to Peruvian law.  As such, says Dr. de Trazegnies, these sections do not describe the current state of Peru's tort law but "to a great extent" describe matters not addressed by the Civil Code.  (Doc. 244-1, p. 2.)

Dr. de Trazegnies asserts again that Peru does not recognize continuing-tort doctrine because it is not explicitly provided for in the Code or other legislation.  However, the "New Horizons" section in *RESPONSIBILIDAD EXTRACONTRACTUAL* describes not only potential new legislation but also adaptive and creative applications of laws that already exist.[8]  Nowhere does he indicate that current Peruvian law forecloses the application of a continuing-harm doctrine.  Instead, he notes that the open questions identified in "New Horizons" must be developed and

---

[8]  *E.g.*, ¶ 463, p. 193; ¶ 471, pp. 199, 201.

resolved through jurisprudence.[9]  Indeed, in his conclusion to the section in which his discussion of continuing damage appears, Dr. de Trazaegnies acknowledges that, even accounting for what he considers to be gaps in current legislation, there is some protection for a fairly wide range of victims of continuing torts.[10]

Taking all of the expert reports and source materials into consideration, I conclude that Peru could apply some type of continuing-harm doctrine in this case. (*See* Espinoza report ¶ 5.6, Doc. 214-16 ("A continuing damage is not an event that calls for the interruption or suspension of the statute of limitations:  it is simply a situation in which the victim is empowered to file their lawsuit for damages while the damage is occurring.  In this case, the limitations period only begins on the day (*dies a quo*) in which the continuing damage ceases.")); *see also Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir. 1998) (In Rule 44.1 cases, "it is not the credibility of the experts that is at issue, it is the persuasive force of the opinions they expressed").

---

[9]  In a different section of his report, Dr. Rosenn describes the doctrine of "fraud on the law," which is not defined in Peruvian positive law (and in fact a provision that would have done so was deleted after the final draft of the 1984 Civil Code) yet has "long been a part of Peruvian case law and doctrine" and was recently defined by the Constitutional Tribunal.  (*See* Rosenn report I, pp. 15-16.)  This is further evidence that the absence of explicit recognition of continuing-harm doctrine within the Civil Code or other legislation is not conclusive evidence that Peru's judiciary would reject the application of that doctrine in all cases.

[10]  ¶ 620, p. 401.

Under Missouri's borrowing statute, tolling and accrual provisions attendant to the foreign forum's limitations period are also imported to determine if a cause of action would be barred there.  Since Peru might delay the accrual date(s) in this case because of the alleged commission of continuing torts, I cannot find that the plaintiffs' claims would be "fully barred" in that jurisdiction.[11]  *See*, *e.g.*, *Lane v. St. Louis Union Trust Co.*, 201 S.W.2d 288, 291 (Mo. 1947) (burden of proving foreign law was on party to benefit from application of that law); *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006 (5th Cir. 1990) (same); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 136 cmt. f.

Because this action would not be time-barred in Peru, it does not trigger Missouri's borrowing statute.  Thus, in a legal oddity, the court has had to examine Peru's law in order to conclude that it does not apply.  Instead, Missouri's five-year statute of limitations for personal injury applies to the plaintiffs' claims.  Mo. Rev. Stat. § 516.120(4); *see Clayton Cntr. Assocs. V. W.R. Grace & Co.*, 861 S.W.2d 686, 690 (Mo. Ct. App. 1993) (negligence and strict liability); *Olean Assocs., Inc. v. Knights of Columbus*, 5 S.W.3d 518, 521-22 (Mo. Ct. App. 1999) (civil conspiracy).

---

[11] Even discounting continuing-harm doctrine, it is not clear that Missouri's borrowing statute would apply.  The parties do not even attempt to identify the dates when the plaintiffs were allegedly injured, when they became or should have become aware of their injuries, or when their causes of action would have expired under Peru's limitations period.  *Compare Pallano v. AES Corp.*, 2011 WL 2803365, at *6 (Del. Super. Ct. July 15, 2011).

## IV.    Choice-of-Law Analysis Would Be Premature

The defendants also move for a determination, under Missouri choice-of-law principles, that Peruvian law governs the plaintiffs' claims.  It is well settled that a district court sitting in diversity must apply the choice-of-law rules of the state in which the action was originally filed.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008).  Of course, this action was originally filed in Missouri.

But removal jurisdiction here stems not from diversity of citizenship under 28 U.S.C. § 1332, but from relation to a foreign arbitration under Chapter 2 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 205.  *See Reid*, 701 F.3d at 843.  This Circuit has not squarely ruled on whether forum-state choice-of-law principles apply in such cases.  It has held, however, that *Klaxon* applies to cases removed under the Miller Act.  *See United States ex rel. Lichter v. Henke Const. Co.*, 157 F.2d 13, 24 (8th Cir. 1946).  The Miller Act is similar to Section 205 because it conveys federal jurisdiction over state-law-type claims.  *Lichter* provides strong support for the argument that *Klaxon* should apply in this case.

Nonetheless, most circuits looking specifically at cases whose jurisdiction arises from the Convention have resorted to federal common law.  *See, e.g.,*

*InterGen N.V. v. Grina*, 344 F.3d 134, 143–44 (1st Cir. 2003) (reasoning that

federal choice-of-law principles should apply to all cases whose jurisdiction arises

from chapter 2 of the Federal Arbitration Act, including Section 205, because

"[a]pplying varying state standards in cases falling within the Convention's ambit

would be in tension with the elemental purpose of chapter 2"); *Becker Autoradio*

*U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir. 1978);

*Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1002–04 (9th Cir. 1987);

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795

(2d Cir. 1980), *cert. denied*, 449 U.S. 1080 (1981).  However, in these cases, the

Convention supplied both jurisdiction and the substantive rules of decision.  The

rationale for applying federal common law in an action involving solely state law

claims is weaker.

The distinction is somewhat pedantic because both federal common law and

Missouri law follow the approach outlined in the Restatement (Second) of Conflict

of Laws, as long as there is no guidance from Congress to the contrary.  *See Eli*

*Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007);

*Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969); *see also Blake v. Comm'r*,

697 F.2d 473, 477 n.4 (2d Cir. 1982) (declining to decide whether federal or forum

state choice-of-law principles applied because the result was the same either way).

Both Missouri and the federal common law recognize the principle of
*dépeçage*, wherein different issues or claims within a single cause of action may be
decided under the laws of different forums. *Wilson v. Image Flooring, LLC*, 400
S.W.3d 386, 396 (Mo. Ct. App. 2013); *Calhoun v. Yamaha Motor Corp., U.S.A.*,
216 F.3d 338, 345 n.12 (3d Cir. 2000); *see also Ewing v. St. Louis–Clayton
Orthopedic Grp., Inc.*, 790 F.2d 682, 686 (8th Cir. 1986); RESTATEMENT (SECOND)
OF CONFLICT OF LAWS § 145 cmt. d.  In addition, both Missouri and federal
common law determinations begin with an investigation of whether the fora laws
conflict in the first place. *See Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d
920, 924 (8th Cir. 2007); *In re Aircrash Disaster Near Roselawn, Ind.*, 926 F.
Supp. 736, 740 (N.D. Ill. 1996).

There appears to be no Congressional instruction that federal common law
applied to a case removed under Section 205 should follow any method other than
the Restatement. *See, e.g.*, H.R. Rep. No. 91-1181 (June 11, 1970), *reprinted in*
1970 U.S.C.C.A.N. 3601, 3602-03.  Therefore, there is no need to decide whether
Missouri or federal common law governs the choice-of-law analysis in this case,
and I will use the Restatement approach here.

But this is as far as we can go at this stage.  Following the Restatement
requires a determination of which forum has the most significant relationship to the

- 17 -

action.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1); *see also* REST. §

146 (law of state where injury occurred determines rights and liabilities of the

parties unless, with respect to a particular issue, another state has a more

significant relationship to the action).  Considering the relative dearth of discovery

and the considerable number of factual questions, there is no way yet to

thoughtfully determine whether Peru, Missouri, or New York has the most

significant relationship to this action.  For example, under Restatement § 145(2), a

court must consider:

> (a)    the place where the injury occurred,
> (b)    the place where the conduct causing the injury occurred,
> (c)    the domicile, residence, nationality, place of incorporation and place
> of business of the parties, and
> (d)    the place where the relationship, if any, between the parties is
> centered.

As the plaintiffs point out, the court does not even know the location of the

alleged injury-causing conduct.  Alone, that might not prevent distinguishing

between at least Peru and the domestic fora, but when considered alongside all the

other unknowns, it demonstrates how premature such a determination would be.

The court cannot know where the relationship, if any, between plaintiffs and

defendants was centered when it does not know anything about that relationship –

or even whether it exists.  There is simply no way to assign relative weight to each

of these factors without knowing more, especially more about the location(s) of the

conduct of the defendants.  *See* REST. § 145(2) ("contacts are to be evaluated according to their relative importance with respect to the particular issue"). *Compare* REST. §§ 145 cmt. d, 146 cmt. e *with Wolfley*, 541 F.3d at 824 (quoting *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1359 (8th Cir. 1994)) ("In cases in which the injury and the conduct causing the injury occur in the same state, the Restatement principles are easy to apply.").

Further, any choice-of-law analysis must examine specific criteria, including the relevant policies of the forum and other interested states, "the relative interests of those states in the determination of the particular issue" and "the protection of justified expectations."  REST. § 6(2).  Without knowing, for example, more about communications of and among the defendants, I cannot consider how those policies and interests bear on this specific case.  I also cannot consider the parties' expectations, if any, about the governing law or whether that expectation was justified.  The defendants point out that the Stock Transfer Agreement governing the acquisition of La Oroya by Doe Run Peru was made subject to the law of Peru. However, the justified expectations of the parties to a contract are quite different from the justified expectations of tortfeasors.  *See* REST. § 145(1) cmt. b.

Moreover, the comments to the Restatement make clear that, in performing a choice-of-law analysis in tort cases, the court must also consider policies "such as

the deterrence of tortious conduct and the provision of compensation for the injured victim." *Id.* Because these considerations "are likely to point in difference directions," *id.*, weighing them may be necessary. *See also* REST. § 6(2) cmt. c (choice of law will almost always represent "an accommodation of conflicting values"). As the Restatement acknowledges, a general rule – which an untimely decision in this case would attempt to articulate – would be impossible and would amount to little more than an advisory opinion. *See id.* (for torts, "the difficulties and complexities involved have as yet prevented the courts from formulating a precise rule, or series of rules, which provide a satisfactory accommodation of the underlying factors in all of the situations which may arise").

Many courts have concluded that "a court is typically in a better position to decide a choice of law issue after the parties have developed the factual evidence through the process of discovery." *Clean Earth of Maryland, Inc. v. Total Safety, Inc.*, 2:10CV119, 2011 WL 1627995, at *4 (N.D. W. Va. Apr. 28, 2011) (in diversity waste cleanup tort case, court denied defendant's standalone motion for choice-of-law analysis, even where forum state West Virginia adhered to simpler principle of *lex loci delicti*); *see also, e.g., Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699–700 (D.N.J. 2011); *La Reunion Aerienne v. Socialist People's*

*Libyan Arab Jamahiriya*, 477 F. Supp. 2d 131, 137 (D.D.C. 2007); *Cerda v. Eletson Maritime Corp.*, 515 F. Supp. 883, 887 (E.D. Pa. 1981).

In an airplane-crash case relied on by the defendants, I eventually determined that the law of Indiana – the state of the flight, the subsequent crash, and the residency of the decedents and their representatives – applied to the disputed issues of liability, compensatory damages, and punitive damages. *Johnson v. Avco Corp.*, 4:07CV1695, 2009 WL 4042747, at *7 (E.D. Mo. Nov. 20, 2009). But in an earlier ruling in that case, I declined to consider choice-of-law issues until sufficient discovery had been completed. *See Johnson v. Precision Airmotive, LLC*, 2008 WL 2570825, at *3 (E.D. Mo. June 26, 2008). I noted that the aircraft at issue was over 29 years old and had a long service record, and I held that discovery was necessary to determine "what was done to the plane and when" before I could rule on whether Indiana's Product Liability Act would govern any of the plaintiffs' claims. I also noted that it was possible that the law of one state would apply to one set of defendants or to a particular issue, but not to all defendants or all issues. Here, I have similar concerns about the lack of available information concerning the relationships between the plaintiffs and the defendants, between the defendants and the La Oroya complex, and among the defendants

themselves.  In short, like at that early stage in *Johnson*, I do not know "what was done and when," or from where.

Making a premature choice-of-law determination would be particularly troublesome here.  Under the Restatement approach, this court must examine the needs of the "interstate and international systems," as well as the "relevant policies of the forum" and other interested jurisdictions, which may be considerably at odds in an action involving a foreign forum.  *See Lunkenheimer Co. v. Pentair Flow Control Pacific PTY Ltd.*, 2014 WL 4450034, at *4 (S.D. Ohio Sept. 10, 2014) (declining to make premature choice-of-law analysis, including potential Rule 44.1 determination, at motion to dismiss stage because case was a "complicated, fact-intensive jumble").  Basing a choice-of-law analysis on a firm factual foundation will prevent unnecessary intrusion into Peru's sovereign law.

In sum, although there are situations in which a choice of law may be determined early on, this is not one of them.  The experts have thoroughly expounded the law, but the most basic facts remain contested; there is no way to apply one to the other.  Fortunately, as the defendants have noted, Rule 44.1 "require[s] an open and unstructured dialogue among all concerned."  9A Wright et al., FED. PRAC. & PROC. § 2444 at 351 (3d ed. 2012).  The parties are free to request a choice of law again once they have a factual basis for doing so.

- 22 -

## V.    Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for a determination of foreign law [#148] is granted in part and denied in part.  Mo. Rev. Stat. § 516.190, the state borrowing statute, does not apply and so Missouri's statute of limitations applies to the plaintiffs' claims.  The court declines to make a choice-of-law determination at this time, but without prejudice to any party's right to move for such a ruling after more discovery has been completed.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 11th day of February, 2015.

- 23 -