## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-CV-44-CDP |
| | ) | (CONSOLIDATED) |
| DOE RUN RESOURCES | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR SANCTIONS

### INTRODUCTION

There is no basis for the extraordinary and unprecedented Rule 37 sanctions Plaintiffs seek, and their Motion (Doc. 790) must be denied.  Unable to support any of their baseless allegations with the mountain of evidence with which they have already been provided, Plaintiffs resort to asking this Court to adopt outrageous "adverse inferences."  Those inferences, however, are patently unjustified and are supported only by a materially misleading and conclusory motion by which Plaintiffs seek to evade their burden of proof.  Accordingly, the discovery Defendants have produced to date puts the lie to the Plaintiffs' allegations of money transfers from Doe Run Peru to Renco (which never happened), and put this motion in sharp relief – the actual evidence flatly contradicts Plaintiffs' fantastical theories and allegations of Doe Run Peru sending money to Renco.  If anything is sanctionable, it is this Motion.

Moreover, since the Motion was filed, Plaintiffs' sole theory of purported "prejudice" has completely collapsed.  As ordered by the Court, the parties have agreed on a new schedule for the two depositions that Plaintiffs claim may be affected by the Motion, as well as a date certain by

which Defendants will complete their supplemental production of documents that are the subject of the Motion.  Thus, Plaintiffs' claim – that their "ability to conduct meaningful depositions [of] Defendants' corporate designees on financial topics involving the transfer of money among these various entities" has been prejudiced (Motion ¶ 12) – is entirely vitiated.

In any event, Defendants have not disobeyed this Court's Orders, committed spoliation of documents or suppressed evidence, or prejudiced Plaintiffs in any way.  To the contrary, Defendants have diligently produced tens of thousands of documents and have gone to great lengths in time and money to ensure that their production of documents is complete.[1]  There is thus no basis for any sanctions here at all, and still less for the "adverse inferences" Plaintiffs seek.  Plaintiffs' request that this Court make factual determinations on hotly disputed issues that are unsupported – and indeed, contradicted – by the evidence, and which go to the heart of those issues, including alter-ego.  Plaintiffs' request constitutes nothing more than a baseless attempt by Plaintiffs to enlist the Court in their quest to make real a fictional version of events unsupported by the overwhelming evidence to the contrary that has already been produced.

And, Plaintiffs seek these extraordinary and unprecedented sanctions without making any showing, as they must, of any willful violation of an order or of prejudice, let alone a showing that meets the high burden for the imposition of the type of draconian sanctions they seek.  *See, e.g.*, *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir 1999).  Indeed, in their conclusory Motion, which spans fewer than seven pages, Plaintiffs cite not a single decision of any court, fail to even allege bad faith or willful conduct on the part of any Defendant (much less provide evidence

---

[1]      Defendants have already produced, among other things, the Renco general ledger that shows every single monetary transaction between it and any of its affiliates for the last eighteen (18) years, as well as thousands of pages of Renco's bank statements, cancelled checks, audited financial statements, financial reporting packages, and spreadsheets that reflect all sums paid by Doe Run Peru to Doe Run Resources in the history of Doe Run Peru.

thereof), and do not meet any of the elements necessary to warrant the severe sanctions they request, much less any sanction.[2]

Defendants are confident that they have already produced overwhelming evidence that is more than adequate for Plaintiffs to investigate their baseless allegation that Doe Run Peru transferred money to Renco and to conclude it is indeed just that –without basis.  Indeed, but for the constraints of the timing associated with this motion, Defendants would lay out chapter and verse exactly what they have already produced and how that production already provides every detail Plaintiffs need – in some cases, in triplicate.  Given the constraints of the motion schedule and the Court's time, we invite the Court to direct the parties to appear before the Special Master so that he can consider, in excruciating detail, the truth about the extent of the Defendants' production and the Plaintiffs' claims that it is somehow insufficient.

Plaintiffs also seek sanctions because Doe Run Resources, despite its best efforts and expenditure of substantial sums of money, cannot fully restore and produce its general ledger from backup tapes, all at the time of a software migration that occurred in and around May 2006, long before this litigation was commenced in August 2008.  There was no, and has never been any, intentional spoliation or suppression of evidence.  Moreover, Plaintiffs are unable to establish any prejudice, not least because Doe Run Resources has produced to Plaintiffs a spreadsheet containing

---

[2]     Not only have Plaintiffs settled on sanctions as a litigation strategy, they have repeatedly failed to produce the discovery required of them, requesting extension after extension.  Plaintiffs have routinely dumped hundreds, sometimes thousands, of pages of documents in Spanish on Defendants just a few days (sometimes less than 24 hours) before a Plaintiff's deposition.  For at least twelve Plaintiff's depositions, hundreds of pages of Spanish-language social media pages were produced only one to three days before the deposition.  In at least ten instances, comparable productions of hundreds of pages of Spanish-language social media pages were provided to Defendants weeks <u>after</u> the deposition had concluded.  Most recently, on January 21, Plaintiffs produced over 11,000 pages of Spanish-language social media pages at 5:10 p.m. on the Sunday evening before the Plaintiff's deposition the next morning.

lists of the intercompany transactions between it and Doe Run Peru that covers all of the same information as any ledger would.  This destroys any basis for Rule 37(e) sanctions.

Accordingly, and for the reasons set forth below, Defendants respectfully request that the Court deny the Motion.

## FACTS

### A.     The August 29, 2017 Order

On August 29, 2017, this Court ordered Defendants (the "Aug. 29 Order") to produce a wide array of documents in response to Plaintiffs' Sixth Request for Production of Documents (the "Sixth Requests").  Contrary to Plaintiffs' assertions, Defendants diligently complied with the Aug. 29 Order, having produced, as of mid-January, over seven thousand documents responsive to the Sixth Requests, comprising approximately 135,000 pages.  For instance, Defendants have produced thousands of pages of Renco bank account statements and other banking materials, which provide relevant source data for Renco's general ledgers.  Defendants have also produced thousands of pages of comprehensive accounting information, including, among other things, audited financial statements, trial balances, and detailed financial reporting packages for Renco, Doe Run Cayman Holdings, Doe Run Cayman, DR Acquisition Corp., Doe Run Peru, and Doe Run Resources.  Further, Defendants have produced federal and state tax returns for Renco, Doe Run Resources, Doe Run Peru, and DR Acquisition Corp.  Defendants have also produced federal and state tax returns, bank account statements, and other detailed financial information for the Trust Defendants and Mr. Rennert.

While the foregoing list is not exhaustive, it demonstrates the enormous volume of information that Defendants have collected and produced since the Aug. 29 Order.  Defendants have also met a myriad of Plaintiffs' supplemental requests for information and specifications,

4

including by producing Renco's general ledgers <u>twice</u>, first in Microsoft Excel (the format originally specified Plaintiffs in the Sixth Requests) in September 2017.  Thereafter, in response to a supplemental request made over three months later in January 2018, Renco provided its general ledger to Plaintiffs again, this time in a native QuickBooks format.  All of these productions have required the expenditure of substantial time and resources on the part of Defendants and their counsel.

Further, even before these productions were made, Plaintiffs had a substantial amount of financial information, including audited financial statements for Doe Run Resources, Renco Group, *and* Doe Run Peru.  As Plaintiffs are aware, each of these statements includes a note detailing "related party transactions," and summarizing transactions with related entities, including Doe Run Peru.  The annual audited financial statements for Doe Run Peru include separate sets of financial statements prepared in accordance with both U.S. and Peruvian auditing standards.

### B.  The January 18, 2018 Status Conference

During the status conference held on January 18, 2018 (the "Jan. 18 Status Conference"), the Court directed Defendants to finalize their productions in response to the Sixth Requests, and to provide, at the appropriate time, certifications that such productions were complete.  Defendants have expended substantial resources toward ensuring that their respective productions in response to the Aug. 29 Order are complete, and that no further responsive material is in their possession, custody, or control.

The day of the status conference, Defendant Renco Group did, in fact, complete its document production in compliance with the Aug. 29 Order.  Following that production, however, in connection with ensuring that their respective productions were complete for the certifications that the Court ordered, and in preparation for the Rule 30(b)(6) depositions, Defendants identified

additional documents for production.  These items were inadvertently missed on an initial document collection during the Fall of 2017, when, in response to the Sixth Requests and the Aug. 29 Order, Defendants were forced to gather multiple categories of documents for production in a short amount of time.  Defendants informed Plaintiffs' counsel on January 27, 2018, that additional responsive materials had been identified, and would be produced this week.  Both Doe Run Resources and Renco Group are making productions today, as promised.

Rather than waiting to evaluate these productions, and determining at that time whether Defendants have complied with the Aug. 29 Order, Plaintiffs instead elected to prematurely pursue relief in the form of the instant Motion.  Plaintiffs' stated justification for the Motion is that Defendants' failure to produce the materials in question "prejudices Plaintiffs' ability to conduct meaningful depositions . . . on financial topics involving the transfer of money among these various entities."  (Motion ¶ 12.)  This purported prejudice, however, is obviated by the fact that on February 1, 2018, in response to the Court's most recent Order (Doc. 791), Defendants Doe Run Resources and Renco Group both agreed to postpone the depositions at issue until after Defendants production is complete, offering four available weeks during which those depositions could occur.

The parties have agreed that Defendants will complete their supplemental productions in response to the Aug. 29 Order by February 9, and that the two depositions at issue will be completed starting the week of February 20.  Additionally, Defendants have agreed that they will not seek a further extension of the March 16, 2018 deadline by which they will file their Renewed Motion for Determination of Foreign Law.  (*See* Doc. 795 (February 2, 2018 Joint Statement Regarding Deposition Schedule).)  Thus, while the remaining discovery schedule has been adjusted, the briefing schedule set by the Court during the status conference two weeks ago will be unaffected.

### C.      Plaintiffs' Allegations of Noncompliance Ignore The Facts

Since the Aug. 29 Order, Defendants have updated Plaintiffs on the status of outstanding discovery issues in the case and have continued to make productions of documents the Plaintiffs have requested through communications that continued even into December.  The Motion, however, simply ignores or mischaracterizes these facts as related to Plaintiffs by Defendants.

Plaintiffs' primary assertion is that that Defendants (all of them)[3] have violated the Aug. 29 Order by failing to provide general ledgers for various Defendants.  (Motion ¶ 3.)  Plaintiffs disregard, however, that Renco's general ledgers have been produced, and that general ledgers for DR Mining, DR Cayman, DR Cayman Holdings, or DR Acquisition were not produced because they were never created and do not exist – a fact of which Plaintiffs have been informed on numerous occasions.[4]  Defendants informed Plaintiffs in writing on January 27 that, to the extent they exist and have not been produced already, any remaining materials responsive to the Sixth Requests will be produced this week (including bank statements Doe Run Cayman, Doe Run Cayman Holdings, and DR Acquisition Corp.), and, indeed, Defendants will make that production today, subject to a few such documents being produced next week, if necessary.

Next, Plaintiffs claim that Defendants have violated the Aug. 29 Order by failing to produce a general ledger and "complete bank statements" for Doe Run Peru.  (Motion ¶ 3.) Despite being informed of this fact on multiple occasions, and no matter how many times they Plaintiffs

---

[3]      Further underscoring the impropriety of the Motion, Plaintiffs have indiscriminately moved for sanctions against *all* Defendants, without specifying which Defendant has engaged in what sanctionable conduct, and with total disregard for the fact that only a single defendant, Doe Run Resources, is alleged to have engaged in spoliation.

[4]      Subject to the materials contained in the Defendants' productions being made today and those to be made next week, Defendants' productions of banking records for Doe Run Peru, Doe Run Mining, Doe Run Cayman, Doe Run Cayman Holdings, or DR Acquisition, in response to the Aug. 29 Order will be complete.  Defendants will provide the Court with the certification that its productions in response to the Aug. 29 Order is complete, after the final documents are produced next week.

allege it, Defendants do not control Doe Run Peru.  Moreover, Plaintiffs ignore that Defendant Renco Group is pursuing the general ledgers of Doe Run Peru (as well as all documents covered by the Sixth Requests) from the current liquidator who controls that company, as it committed to do at the Jan. 18 Status Conference, as well as any other available source.  On January 24, 2018, after taking the necessary time to identify the current liquidator in that proceeding and the appropriate points of contact for it, and the Chairperson of the creditors' committee from the Peruvian Ministry of Energy and Mines, Renco's counsel in this case sent a written request to the Peruvian Liquidator-in-Possession of Doe Run Peru in an attempt to procure Doe Run Peru's General Ledger, bank statements, and other materials responsive to the Sixth Requests.  (*See* Ex. 1 (Letter to the Liquidator in Possession of Doe Run Peru).)

Moreover, Renco's counsel has been in communication with Peruvian counsel for Doe Run Cayman Ltd.  Renco's counsel has been informed that the next meeting of the creditors' committee was announced on January 26, 2018 and the second call during which substantive matters will be addressed will be held on February 16, 2018.  (*See* Ex. 2 (Announcement and Agenda).)  It has been communicated to counsel for Doe Run Cayman Ltd. that the liquidator will not take action on the requests that Renco made in its letter of January 24, 2018 before that meeting.  Peruvian counsel for Doe Run Cayman will present the letter request that was sent to the liquidator during the time allotted on the agenda for "other matters of interest."

Finally, Plaintiffs argue in their Motion that "Defendant Doe Run Resources failed to take reasonable measures to preserve its pre-November 11, 2005 general ledgers," "fail[ed] to take adequate measures to preserve the data in anticipation of litigation," and "refus[ed] to provide a full explanation of its efforts to restore the data."  (Motion ¶ 8.)  Not only have Plaintiffs not

supplied <u>any</u> evidence to support these allegations, the record demonstrates clearly that all of these contentions are untrue.

Prior to May 2006, Doe Run Resources' general ledger was maintained on an IBM AS/400 server (the "AS/400 Server").[5]  In May 2006, in the normal course of business, and prior to these actions being filed, Doe Run Resources transitioned its general ledger to Oracle PeopleSoft software, and migrated only certain balance information from the AS/400 Server to this new software.  (Declaration of Steve Smith ¶ 5 ). When upgrading Doe Run's AS/400 server there are two levels of commands that must be performed to prepare the backup (Id. ¶ 4).  Doe Run does not have records indicating whether a backup of the AS/400 server using these steps was performed at the time of the transition, or whether the migration to PeopleSoft was considered an upgrade necessitating a backup in this manner.  (*Id.*)

However, certain backup tapes (the "Backup Tapes") made from the AS/400 Server in April through June 2006 do exist.[6]  In compliance with the Aug. 29 Order, Doe Run Resources engaged a third party vendor, Iron Mountain, to review the Backup Tapes, if possible, and extract and fully restore the pre-2006 general ledgers for production to Plaintiffs.  (*Id.* at ¶ 8.)  This was the first time that Doe Run Resources attempted to access and restore the pre-2006 general ledgers from the Backup Tapes.  After extensive analysis of the Backup Tapes, and communications with Doe Run Resources, Iron Mountain concluded that several of the Backup Tapes were incomplete.  Doe Run looked for the missing, corresponding tapes but could not find them. (*Id.* ¶ 10).  Iron

---

[5]    *See* Declaration of Debra S. Selinger dated August 4, 2017, attached as Exhibit B to Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel Responses to Sixth Request for Production, Doc. 621-2 (the "Selinger Declaration"), at ¶ 7.

[6]    Notably, the Backup Tapes were created well before this litigation commenced on August 8, 2008, and long before Doe Run Resources could have anticipated that Plaintiffs would seek discovery of its general ledger in these actions in 2017.

Mountain did report that there were six complete backups that it could review. Iron Mountain sent Doe Run a report of the information contained on these sets. However, none of the tapes has the full general ledger AS/400 financial data. (*Id*. ¶ 11.)  The inability to fully restore those ledgers was the result, if anything, of mere technical error and inadvertent loss. While precluding production in these actions, the absence of a full backup is also a disservice to

Plaintiffs contend that that Doe Run Resources' "continued refusal to provide a full explanation of its efforts to restore the data *suggests* that [it] purposefully intended to conceal the data from Plaintiffs." (Motion ¶ 8) (emphasis added.)  Plaintiffs, however, fail to point to any evidence of such recalcitrance, and, in fact, none exists.  To the contrary, on January 29, 2018, Doe Run Resources fully disclosed the issues concerning its inability to restore and produce the pre-2006 general ledger, and all of the measures it undertook to do so.  Plaintiffs did not respond with any questions or comments directed to Doe Run Resources, or otherwise indicate any level of concern over the explanation.

Instead, Plaintiffs filed the instant Motion, accompanied by an affidavit of a technician who himself has never attempted to restore the Backup Tapes.  Of course, if Plaintiffs had attempted to restore the Backup Tapes themselves as a way to confirm what Doe Run Resources reported to them prior to filing the Motion, there would be no motion to be made.  Plaintiffs' preference to rush to file the Motion rather than to confirm the conclusion reached by the third party analyst demonstrates their true intent.  Similarly, Plaintiffs' haste to file the Motion before completing a proper meet and confer on this issue renders the Motion unripe.

10

## ARGUMENT

I.     **PLAINTIFFS' REQUEST FOR SANCTIONS UNDER RULE 37(B) SHOULD BE DENIED**

It is well established in the Eight Circuit that, "[i]n order to impose sanctions under Rule 37, there must be an order compelling discovery, *a willful violation of that order*, and prejudice to the other party." *Benton v. Labels Direct, Inc.*, No. 4:14-cv-01293-ERW, 2014 WL 4385396, at *1 (E.D. Mo. Sept. 3, 2014) (emphasis added) (*quoting Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir 1999)).  "A finding of negligence . . . will not support an adverse inference instruction." *Krueger v. Ameriprise Fin., Inc.*, No. 0:11-cv-02781-SRN-JSM, 2014 WL 8108458, at *7 (D. Minn. July 7, 2014).  Here, the Motion fails completely to demonstrate how any Defendant has violated Rule 37(b) at all (much less willfully), or how Plaintiffs have been prejudiced.  Accordingly, the Motion should be denied.

A.     **Defendants Have Complied With The Court's Orders**

There is no basis for Plaintiffs' allegation that Defendants have failed to comply with the Court's Order, much less willfully.  *First*, Plaintiffs allege that Defendants violated the Court's Order by failing to produce "general ledgers for . . . Doe Run Mining, Doe Run Cayman, Doe Run Cayman Holdings, or DR Acquisition [Corp.]."  (Motion ¶ 3.)  As Defendants have explained repeatedly to Plaintiffs, however, as well as to the Court at the Jan. 18 Status Conference, general ledgers for Doe Run Mining, Doe Run Cayman, Doe Run Cayman Holdings, or DR Acquisition Group do not exist, and have never existed.  (*See, e.g.*, 1/18/2018 Telephonic Status Conference Tr. at 18:3-13.)  It is axiomatic that Defendants are not and have never been obligated to produce

11

documents that never existed, and accordingly Plaintiffs' allegations of noncompliance – much less willful noncompliance – are baseless.[7]

*Second,* Plaintiffs allege that Defendants violated the Court's Order by failing to produce "general ledgers" and "complete bank statements" for Doe Run Peru.  (Motion ¶ 3.)  However, as Defendants informed Plaintiffs and represented to the Court at the Jan. 18 Status Conference, documents belonging to Doe Run Peru, including general ledgers and bank statements, if any, are under the control of the "receiver in Peru."  (*See, e.g.*, 1/18/2018 Telephonic Status Conference Tr. at 33:10-12.)   Moreover, Defendants *agreed* to Plaintiffs' request that Defendants seek additional documents from the receiver (which request Plaintiffs made for the first time on January 16, 2018) (*id*. at 34:24), and Plaintiffs concede that Defendants have done so.  (Motion ¶ 5.) Accordingly, based on Plaintiffs' own allegations, Defendants have not violated any Court order (much less willfully).

*Third*, Plaintiffs allege that Defendants violated the Court's Order by failing to produce "bank statements for Doe Run Mining, Doe Run Cayman, Doe Run Cayman Holdings, or DR Acquisition [Corp.]." (Motion ¶ 3.)  This is false.  Defendants produced all such documents that they were able to find in their respective files last year.  However, on January 27, Defendants informed Plaintiffs in writing that they would produce supplemental materials, which were documents that had been inadvertently overlooked, and not willfully withheld from Plaintiffs. Similarly, in connection with ensuring Defendants would be able to certify that their productions were complete in response to the Aug. 29 Order, Defendants determined that additional documents

---

[7]        *See, e.g.*, *Pennington v. Integrity Commc'ns, Inc.*, No. 1:12-cv-00005-SNLJ, 2014 WL 2136000, at *2 (E.D. Mo. May 22, 2014) ("The Court cannot compel the production of documents that do not exist."); *In re Simply Orange Orange Juice Mktg. & Sales Practices Litig.*, No. 4:12-md-02361-FJG, 2018 WL 522785, at *2 (W.D. Mo. Jan. 23, 2018) (same).

that were originally inadvertently overlooked should also be produced.  Defendants will do so by the end of next week.  Thus, there is no violation of the Court's Order, and certainly not a willful failure to produce any documents.

### B.      Plaintiffs Have Suffered No Prejudice

The Eight Circuit also requires that parties seeking "sanctions under Rule 37 [demonstrate] prejudice" resulting from alleged non-compliance with a discovery order. *Benton*, 2014 WL 4385396, at *1.  Here, the Motion fails for the independent reason that Plaintiffs cannot articulate *any* prejudice resulting from Defendants' purported violation of the Aug. 29 Order.  *See, e.g.*, *Hower v. Excel Indus., Inc.*, No. 6:13-cv-03182-SRB, 2015 WL 5308096, at *3 (W.D. Mo. Sept. 10, 2015) (declining to grant Rule 37(b) sanctions where plaintiffs were not prejudiced); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, No. 0:05-cv-02310-DSD-JJG, 2008 WL 2439850, at *4 (D. Minn. June 12, 2008) (same).

Although Plaintiffs claim that Defendant's alleged misconduct "prejudices Plaintiffs' ability to conduct meaningful depositions and other discovery relevant to plaintiffs' case [including] deposing Defendants' corporate designees on financial topics involving the transfer of money among these various entities" (Motion ¶ 12), Plaintiffs own conduct refutes this notion. Despite having taken more than a dozen depositions, Plaintiffs have not asked a single witness even basic questions related to the material Plaintiffs claim is necessary to their case, such as, for instance whether General Ledgers for Doe Run Mining, Doe Run Cayman, Doe Run Cayman Holdings, and DR Acquisition Corp. even existed, or whether those entities had bank accounts. This alone confirms that Plaintiffs' claim of prejudice is disingenuous.

Further, the information that Plaintiffs seek is largely cumulative of what they already received in discovery.  Contrary to Plaintiffs' assertions, Defendants have complied with the

Court's Orders by producing thousands of documents responsive to the Sixth Requests, including, among other things, (i) thousands of pages of Renco bank account statements and related materials, providing relevant source data for Renco's general ledgers; (ii) thousands of pages of comprehensive accounting information, including but not limited to audited financial statements, trial balances, and detailed financial reporting packages for Renco, Doe Run Cayman Holdings, Doe Run Cayman, DR Acquisition Corp., Doe Run Peru, and Doe Run Resources; (iii) federal and state tax returns for Renco, Doe Run Resources, Doe Run Peru, DR Acquisition Corp; and (iv) federal and state tax returns, bank account statements, and other detailed financial information for the Trust Defendants and Mr. Rennert.  (*Supra* at 4-5.)  Though far from exhaustive, the foregoing list demonstrates the enormous volume of information that Defendants have collected and produced since the Aug. 29 Order, *without* taking into account Plaintiffs' supplemental requests for information and specifications, or the materials produced to Plaintiffs prior to the Aug. 29 Order.[8]  It is indisputable that Plaintiffs have had access to a large corpus of detailed financial information that forecloses any possibility of the prejudice they claim to have suffered.

In any event, even had Plaintiffs been prejudiced in the manner they claim – and there is no reason to believe this to be the case – such prejudice would be better addressed by rescheduling the depositions in question, as has been done throughout discovery in this case, but which Plaintiffs never requested before filing the Motion.  *See, e.g., Hower*, 2015 WL 5308096, at *3 ("The Supreme Court and Eighth Circuit have held that the better practice is to apply Rule 37 where appropriate and not allow an exercise of [the Court's] inherent power to obscure the Rule 37 analysis.") (citation omitted).  Indeed, that is precisely what has now happened here: the parties

---

[8]     All of these productions have required the expenditure of substantial time and resources on the part of Defendants and their counsel.

have agreed that any supplemental productions by Defendants will be completed by February 9, 2018 and the two depositions in question will be taken starting the week of February 20.  (*See* Doc. 795 (Joint Statement Regarding Deposition Schedule).)  This brief delay is not prejudicial to Plaintiffs, and cannot warrant the extreme sanctions they seek.[9]

## C.    The Relief Sought Is Facially Improper

The purported "adverse inferences" Plaintiffs seek as relief are also facially improper under Eighth Circuit law.  *First*, the Eighth Circuit has held that "a district court must issue explicit findings of *bad faith* and prejudice prior to delivering an adverse inference instruction."  *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 461 (8th Cir. 2013) (emphasis added).  Here, Plaintiffs do not even allege bad faith, much less provide a basis for such a finding.

*Second*, it is well-established in the Eighth Circuit that prior to issuing sanctions under Rule 37(b), the Court "must determine whether the sanction imposed [i]s just and specifically related to the claim at issue in the discovery order," and that sanctions (such as those sought by Plaintiffs here) must "achieve a balance between the policies of preventing discovery delays and deciding cases on the merits."  *Baker v. Gen. Motors Corp.*, 86 F.3d 811, 817 (8th Cir. 1996), *rev'd on other grounds sub nom., Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222 (1998).  Although couched as "adverse inferences," the Plaintiffs come nowhere near meeting the standards that

---

[9]    Plaintiffs' claims of prejudice attendant to belated productions leading into depositions ring hollow and ignore entirely the fact that Plaintiffs have routinely dumped hundreds, sometimes thousands, of pages of documents in Spanish on Defendants just a few days (sometimes less than 24 hours) before a Plaintiff's deposition.  For at least twelve Plaintiff's depositions, hundreds of pages of Spanish-language social media pages were produced only one to three (1-3) days before the deposition.  In at least ten instances, comparable productions of hundreds of pages of Spanish-language social media pages were provided to Defendants weeks <u>after</u> the deposition had concluded.  Most recently, on January 21, Plaintiffs produced over 11,000 pages of Spanish-language social media pages at 5:10 p.m. on the Sunday evening before the Plaintiff's deposition the next morning.  In an effort to maintain the schedule set for the Plaintiffs who have appeared for deposition, Defendants have simply made the best of difficult circumstances.  For their part, rather than seeking an adjournment of deposition dates or meeting and conferring with Defendants, Plaintiffs instead have proceeded straight away to precipitously seeking sanctions.

would permit the draconian relief they seek.  Indeed, what Plaintiffs seek is well beyond an adverse inference.

Plaintiffs have requested that the Court in effect make conclusive determinations concerning disputed issues in this case.  This is not permissible.  *See, e.g.*, *Baker*, 86 F.3d at 817 (reversing imposition of adverse inferences under Rule 37 in the form of "jury instructions [that] decided the matter for the jury," and "forced [it]… to find for the plaintiffs."); *Krueger*, 2014 WL 8108458, at *8 (declining to grant sanction of "judicial admission… [that] would essentially establish one of the most hotly contested issues in this case," and noting that "[w]here sanctions that would inhibit the full presentation of a party's case are proposed, the Court must exercise particular care in evaluating the appropriateness of the sanction since there is a strong policy favoring a trial on the merits and against depriving a party of his day in court") (citation omitted).[10]

*Third*, given that Plaintiffs proposed relief would amount to a determination of hotly contested issues of fact against Defendants if granted, it is entirely disproportionate to the nature of the misconduct alleged.  As discussed, Defendants' need to produce a small set of additional documents after the deadline set by the Court was not a result of willful (or even knowing) disregard for the Court's directives, but rather a result of inadvertent oversight that is being cured, and which will result in no prejudice to Plaintiffs. Plaintiffs do not provide any factual or

---

[10]    The impropriety of the relief Plaintiffs seek (*i.e.*, mandatory adverse inferences) is also evident from the fact that even where Rule 37 violations *have* occurred (unlike here), Courts imposing adverse inferences instruct jurors that they may (but are not required to) presume that the contents of spoliated documents is unfavorable to the non-movant.  For example, in *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, this court determined that a non-movant had engaged in spoliation, and that an adverse inference was an appropriate sanction.  No. 4:10-cv-00645-CDP, 2011 WL 5006220, at *8 (E.D. Mo. Oct. 20, 2011).  Nonetheless, this Court imposed only a "permissive inference" in the form of an "instruction to the effect that the jurors may, **though are not required to**, assume the contents of the destroyed documents would have been adverse to" the non-movant.  *Id*. (emphasis added).  Not surprisingly, Plaintiffs fail to cite even a single case supporting the mandatory inferences that they seek.

evidentiary support demonstrating otherwise.  Thus, even if Defendants are deemed to be non-compliant, there is no foundation for the outrageous remedy Plaintiffs seek.

*Finally*, "[b]efore an adverse inference may be drawn, there must be some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 76 (S.D.N.Y. 1991).  Here, not only do Plaintiffs' proposed adverse inferences lack any relationship to the documents they claim are missing, they improperly seek to establish factual findings that are plainly false.[11]  For example, adverse inference No. 7 seeks to establish as fact that "[b]y their transfers of funds from Doe Run Peru to Defendants Rennert and Renco, Defendants deprived Doe Run Peru of the ability to implement environmental measures that could have protected Plaintiffs' health."  (Motion ¶ 7.) Based on the documents produced to date, including the Renco ledgers, however, Plaintiffs are well aware that *no* funds were ever transferred from Doe Run Peru to Rennert or Renco. Accordingly, Plaintiffs do not (and cannot) show that the documents they claim are missing would establish the substantive content of their proposed adverse inferences.  Moreover, Plaintiffs have the ability to know what the facts actually show from the evidence that has already been provided to them.  That this evidence fails to align with their theory of the case is an inconvenient truth that has caused Plaintiffs to seek to establish by "adverse inference" that which they recognize is unsupported by the evidence.  Such a sanction would not be appropriate for even the most egregious of conduct and is certainly unwarranted here.

---

[11]   Plaintiffs also improperly seek to have adverse inferences applied against all Defendants, despite having only alleged (albeit without any support) discovery violations by some Defendants.

## II.   NO SPOLIATION HAS OCCURRED, AND PLAINTIFFS' REQUEST FOR SANCTIONS UNDER RULE 37(E) SHOULD LIKEWISE BE DENIED

It is well established in the Eighth Circuit that "in a case involving the alleged spoliation of evidence, a district court is required to make two findings before an adverse inference instruction is warranted: (1) 'there must be a finding of intentional destruction indicating a desire to suppress the truth,' and (2) '[t]here must be a finding of prejudice to the opposing party.'" *Hallmark Cards*, 703 F.3d at 460 (quoting *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 746-748 (8th Cir. 2004)); *accord Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 463 (8th Cir. 2016) (same); *Davenport v. Charter Commc'ns, LLC*, No. 4:12-cv-00007-AGF, 2016 WL 5371575, at *3 (E.D. Mo. Sept. 26, 2016) (same); *see also* Fed. R. Civ. P. 37(e) (requiring an "intent to deprive" for an adverse inference).  Here, Plaintiffs cannot meet either of these prongs, and accordingly, the Motion must be denied.

### A.   Plaintiffs Fail to Show "Intentional Destruction"

Plaintiffs ignore completely the legal standard for the extraordinary "adverse inferences" that they seek, including their burden to demonstrate "intentional destruction" to "suppress the truth."  Plaintiffs ignore the applicable standard because they fail to provide any evidence or factual support that suggests, let alone shows, that Doe Run Resources intentionally destroyed any documents or that they did so to suppress the truth.  Thus, for this reason alone the Motion must be denied.

Further, both common sense and the law dictate that Doe Run Resources could not have intentionally destroyed documents to suppress the truth in a litigation that had not been commenced nor was it reasonably anticipated that its general ledgers would be discoverable years later in any such action, even if commenced.  *See, e.g.*, *Bakhtiari v. Lutz*, 507 F.3d 1132, 1135 (8th Cir. 2007) ("[T]hat deletion of [plaintiff's] electronic account occurred before this lawsuit was

18

filed further undercuts [plaintiff's] claims that [defendant] acted with a desire to suppress the truth.") (citing *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (rejecting argument that "because litigation was likely, Greyhound had a duty to preserve ... data" and noting that the "ultimate focus" for imposing spoliation sanctions is "the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation")).[12]

Plaintiffs' contention that Defendants did not "take adequate measures to preserve the data in anticipation of litigation" (Motion ¶ 8), fails for multiple reasons. *First*, Doe Run Resources did, in fact, take reasonable steps to preserve its documents, as evidenced by the existence of backup tapes from the time of the transition.

Doe Run Peru took reasonable measures. More is not required. *See, e.g.*, *Fid. Nat'l Title Ins. Co. v. Captiva Lake Inv., LLC*, No. 4:10-cv-01890-CEJ, 2015 WL 94560, at *4 (E.D. Mo. Jan. 7, 2015) ("While 'the advent of litigation may require intervention to alter the operation of a [computer information] system to prevent loss of discoverable information[,] . . . attempting to prevent all overwriting or deleting of electronically store information . . . might cripple a computer system.'") (quoting 8B Charles Alan Wright *et al.*, Federal Practice and Procedure § 2284.1 (3d ed.)); *Creative Movement & Dance, Inc. v. Pure Performance, LLC*, No. 1:16-cv-03285-MHC, 2017 WL 4998649, at *14 (N.D. Ga. July 24, 2017) (Rule 37(e) "is applicable 'only if the information was lost because the party failed to take reasonable steps to preserve the information;' however, 'perfection in preserving all relevant information is often impossible.'") (quoting Fed. R. Civ. P. 37, 2015 Advisory Comm. Note). Nor do Plaintiffs identify any steps or precautions

---

[12]     *See also Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 879 (8th Cir. 2015) (declining to grant adverse inference in connection with purported spoliation because "the evidence [did not] suggest that [non-movant] destroyed the [documents] because he knew litigation would be forthcoming"); *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 981 (9th Cir. 2009) (affirming denial of spoliation sanctions "[b]ecause it was not 'wrong' to allow the evidence to spoil nearly five months before [movant] could show that the [non-movants] contemplated any litigious intent").

that Defendants were obligated to take in connection with that data migration, and they certainly do not identify any failures in the process they followed that would demonstrate an intent to destroy data.

*Second*, the fact that inadvertent technical errors occurred does not amount to intentional destruction, but rather – at best – negligence, which is insufficient as a matter of law to establish Defendants' liability for purported spoliation of pre-litigation documents." *Krueger*, 2014 WL 8108458, at *7 ("A finding of negligence . . . will not support an adverse inference instruction."); *see also Applebaum v. Target Corp.,* 831 F.3d 740, 745 (6th Cir. 2016) ("A showing of negligence or even gross negligence will not do the trick").  *Finally*, Plaintiffs do not even attempt to explain why *Doe Run Resources* was obligated to preserve documents in reasonable anticipation of litigation arising out of *Doe Run Peru's* operations and why in any such litigation it should reasonably expect to produce its general ledger.

### B.       Plaintiffs Cannot Demonstrate Prejudice

To prevail on the Motion, Plaintiffs must not only demonstrate that Defendants intentionally destroyed evidence – which they have not done and cannot do – but also that they have suffered or will suffer prejudice from the destruction of the evidence.  *Stevenson*, 354 F.3d at 746, 748.  Plaintiffs cannot demonstrate prejudice resulting from the inadvertent error preventing recovery of the Backup Tapes because they are already in possession of comparable information. Further, even if Plaintiffs could establish prejudice – which they cannot – that alone is insufficient to warrant sanctions of any kind, as Plaintiffs remain unable to demonstrate (or even allege) that any Defendant has engaged in intentional destruction of documents.

> 1.    *The Availability of Comparable Information Eliminates Any Prejudice to Plaintiffs*

Plaintiffs are not prejudiced by the inadvertent loss of Doe Run Resources' general ledger information because Doe Run Resources produced spreadsheets that list all of the individual transactions that were made between Doe Run Peru, Doe Run Mining, and Doe Run Resources from 1998 to 2007 (the "Peru Payments" spreadsheet.)  Plaintiffs are well aware of this document, which Doe Run Resources produced to them in 2015.]They recently used it during the corporate representative deposition of Gary Mard from Doe Run Resources, who testified on January 23, 2018 on the topic of intercompany agreements.   Plaintiffs examined Mr. Mard, Doe Run Resources' corporate designee, about this very document:

> **Q – [. . .]This is an Excel –**
> **A      That's correct.**
> **Q – spreadsheet that includes a summary sheet**
> **of the different types of payments as well as what**
> **appears to be some itemization of the various Peru**
> **intercompany payments during the period of 1998 to**
> **2007; is that correct?**
> **A      That's correct.**

Dec. 19, 2017 Dep. Tr. of G. Mard at p. 246:9-16; (referencing the "Peru Payments" spreadsheet, Mard Dep. Ex. 27.)  Plaintiffs' alter ego claims are based on (nonexistent) transactions in which money flows from Peru to the United States, which are the type of transactions that would be shown in the document Mr. Mard described, if they existed.  This information is the exact type of information that Plaintiffs would attempt to extract from Doe Run Resources' general ledger if that ledger were available.

Mr. Mard went on to testify that the source of some of the information contained in that spreadsheet "was prepared by the Doe Run Peru people."  (*Id*. at 248:16-18.)  This very document (Mard Dep. Ex. 27) includes information prepared by Doe Run Resources, and information prepared by Doe Run Peru and sent to Doe Run Resources.  Plaintiffs' access to this information

from Doe Run Peru personnel blunts their claims of prejudice over the lack of available information from Doe Run Peru – notwithstanding that Plaintiffs consciously chose not to name it as a party to these actions.  The fact that Plaintiffs proceeded to file this Motion even though they have a clear view into the very information about intercompany payments from Doe Run Peru that they contend Doe Run Resources purportedly spoliated – and to which they claim to otherwise lack access – speaks volumes about their true motivation in filing the Motion.

Plaintiffs cannot demonstrate any prejudice from the inability to produce Doe Run Resources' pre-2006 general ledger because Doe Run Resources also made available for Plaintiffs' review all of the underlying canceled checks, check stubs, wire transfers, and other banking records in its possession that would evidence all of the transactions that would otherwise be listed on its general ledger from 1997 to May 2006.  In response to the Court's August 29, 2018 Order that compelled the production of these materials, Doe Run Resources has made these records available for Plaintiffs' inspection since October 16, 2017.  Only on January 31, 2018—the day after Plaintiffs filed the instant Motion—did Plaintiffs take Doe Run Resources up on its offer to make those documents available for inspection.  A formal inspection is being coordinated to take place during the week of February 5, 2018.  The availability of these documents, therefore, precludes a finding of prejudice to Plaintiffs.

### 2.      *Prejudice Alone is Insufficient To Support Rule 37 Sanctions*

Even assuming, *arguendo*, that Plaintiffs were prejudiced by the inadvertent destruction of the pre-2006 Data – which they were not – prejudice alone is insufficient to warrant Rule 37(e) sanctions where, as here, intent cannot be demonstrated.  Indeed, even where – *unlike* here – a non-movant's "actions have had a significant effect on [movant's] ability to prepare a full defense," the absence of "bad faith . . . indicating a desire to suppress the truth" will preclude the imposition of spoliation sanctions, because "[m]ere prejudice is insufficient for the Court to

dismiss th[e] case or enter any other sanctions." *Simon v. Select Comfort Retail Corp.*, No. 4:14-cv-01136-JAR, 2016 WL 160643, at *2 (E.D. Mo. Jan. 14, 2016), *appeal dismissed* (8th Cir. 16-1376) (Feb. 29, 2016).

### III.   Plaintiffs Failed to Meet and Confer

Plaintiffs' counsel falsely represented to the Court in the Motion and in a supporting declaration (Doc. 790-2) that "Counsel for Plaintiffs has conferred in good faith with counsel for Defendants in an effort to obtain the documents at issue without Court action, however, such efforts have not been successful." (Motion ¶ 14).   E.D.Mo. L.R. 37-3.04 mandates that such discovery conference occur "by telephone," and that statements concerning the party's good faith attempts to so confer "recite the date, time and manner of such conference, and the names of individuals participating therein, or shall state with specificity the efforts made to confer."  The Motion lacks any of this information because Plaintiffs did not honor Defendants' January 17 request to have a meet and confer.   Notably, following that request, the parties continued to communicate about the scheduling of the 30(b)(6) depositions of the two witnesses who Plaintiffs assert are impacted by this Motion, as well as other 30(b)(6) witnesses.

The last communication Defendants received from Plaintiffs' counsel about the matters at issue in the Motion arrived on January 29 at 5:12 p.m.  In that email message, Plaintiffs requested that Defendants' production of records in certain categories be completed by January 31, and also requested an explanation about the Backup Tapes, to which Doe Run Resources responded that evening.   Plaintiffs filed the Motion just over 24 hours later at 11:06 p.m. on January 30. Defendants are still making the productions they referred to in their January 27 email to Plaintiffs, notwithstanding the fact that Plaintiffs filed the Motion, *even before* the date by which they requested Defendants to complete their productions.

Accordingly, Plaintiffs' Motion is premature, and more pre-emptive than substantive. Among the purposes for the parties engaging in a meet and confer is to identify any areas of actual dispute, and to thereby avoid laying at the Court's feet matters that were already resolved (and therefore need no treatment by the Court) or could have been resolved.   Plaintiffs' filing this Motion is tactical.  They preferred to inaccurately gin up a dispute in order to artificially increase the stakes to ones that they submit warrant sanctions when the facts come nowhere near those that give cause for the Court to consider imposing the same.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion should be denied.

Dated:  February 2, 2018

Respectfully submitted,

**DOWD BENNETT LLP**

By: /s/  Edward L. Dowd, Jr.
    Edward L. Dowd, Jr.  #28785MO
    edowd@dowdbennett.com
    Terrence J. O'Toole, #23247MO
    tjotoole@dowdbennett.com
    James E. Crowe, III, #50031MO
    jcrowe@dowdbennett.com
    7733 Forsyth Blvd., Suite 1900
    St. Louis, Missouri 63105
    (314) 889-7300 (telephone)
    (314) 863-2111 (facsimile)

**KASOWITZ BENSON TORRES LLP**

By: /s/  Matthew A. Kraus  (w/ permission)
    Marc E. Kasowitz, *pro hac vice*
    mkasowitz@kasowitz.com
    Kenneth R. David, *pro hac vice*
    kdavid@kasowitz.com
    Matthew A. Kraus, *pro hac vice*
    mkraus@kasowitz.com
    1633 Broadway
    New York, NY  10019
    (212) 506-1710 (telephone)
    (212) 506-1800 (facsimile)

Attorneys for Defendants
The Renco Group, Inc., DR Acquisition Corp.,
Ira L. Rennert, and Doe Run Cayman
Holdings, LLC

**LEWIS RICE LLC**

By: /s/ Andrew Rothschild  (w/ permission)
    Andrew Rothschild, #23145MO
    arothschild@lewisrice.com
    Richard A. Ahrens, #24757MO
    rahrens@lewisrice.com
    Thomas P. Berra, Jr., #43399MO
    tberra@lewisrice.com
    Michael J. Hickey, #47136MO
    mhickey@lewisrice.com
    600 Washington Ave., Suite 2500
    St. Louis, MO  63102-2147
    (314) 444-7600 (telephone)
    (314) 241-6056  (facsimile)

Attorneys for Defendants The Doe Run
Resources Corporation, Marvin K. Kaiser,
Albert Bruce Neil, Jeffery L. Zelms, and
Theodore P. Fox, III

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 2nd day of February, 2018, a copy of the foregoing document was filed with the Clerk of the Court and that notice of such filing will be served upon counsel of record via the Court's CM/ECF system.

    /s/ Edward L. Dowd, Jr.