**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| A.O.A., *et al*. | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | Case No.: | 4:11-cv-00044-CDP |
| v. | ) | | (CONSOLIDATED) |
| | ) | | |
| THE DOE RUN RESOURCES | ) | | |
| CORPORATION, *et al*., | ) | | |
| | ) | | |
| Defendants. | ) | | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>SANCTIONS PURSUANT TO FED. R. CIV. P. 37</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................1

II.  BACKGROUND .....................................................................................................3

III. ARGUMENT ..........................................................................................................7

   A.  Defendants Completely and Fully Satisfied Their Discovery Obligations With Respect to Request No. 9........................................................................................7

     1.  Tax Returns...................................................................................................7

     2.  Financial Statements ..................................................................................10

     3.  Records of Individual Assets and Liabilities.............................................10

   B.  Documents Created Since 2018 Are Irrelevant and Protected by Statute ................12

   C.  Plaintiffs' Requested Sanctions Are Legally Unsupported and Illogical. .................14

IV. CONCLUSION ....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brown v. Therapy Mgmt. Corp.*,
    No. 4:17-cv-01247-JAR, 2018 WL 4386094 (E.D. Mo. 2018)......................................9

*Doe v. Young*,
    No. 4:08CV197 TIA, 2009 WL 440478 (E.D. Mo. 2009) .........................................8, 9

*Johnson v. Neiman*,
    No. 4:09CV0689 JCH, 2010 WL 1740365 (E.D. Mo. 2010).......................................9

*Marchionda v. Embassy Suites Franchise, LLC*,
    No. 415CV00479JEGSBJ, 2018 WL 8458794 (S.D. Iowa Sept. 10, 2018) ...............12

*Rihn v. Jackson*,
    No. 4:07CV00197 ERW, 2007 WL 9805618 (E.D. Mo. 2007)....................................9

*United States v. Autumn Ridge Condominium Ass'n, Inc.*,
    265 F.R.D. 323 (N.D. Ind. 2009).................................................................................8

*United States v. Carell*,
    No. 09-0445, 2011 WL 2078023 (M.D. Tenn. May 26, 2011) ..................................13

*Vega v. Valley Venture II*,
    No. 8:10cv429, 2011 WL 6078158 (D. Neb. 2011) ......................................................8

**Statutes**

Missouri Revised Statute § 510.263 ......................................................................9, 12

**Other Authorities**

Federal Rule of Civil Procedure 26 .........................................................................12

Eastern District of Missouri Local Rule 3.04(A) ..................................................15

Defendants submit this Opposition to Plaintiffs' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37 [Doc. 1077], respectfully showing as follows:

## I.      INTRODUCTION

Having refused to engage meaningfully in the process that the parties' jointly selected mediator has put in place for the February 26 mediation, Plaintiffs now turn to last-minute gamesmanship in a transparent effort to gain leverage in settlement negotiations.  Plaintiffs' Friday-night theatrics—filing a motion for sanctions concerning two-year-old discovery responses, along with a motion to expedite briefing such that Defendants' response would be due the following business day (a federal holiday)—is an act of desperation, is in bad faith, and is entirely inconsistent with this Court's rules and applicable law.

In their Motion, Plaintiffs do not even attempt to explain why they waited two years to raise supposed deficiencies in Defendants' 2018 productions in response to Plaintiffs' Sixth Requests for Production.  Nor do they explain why they waited until the eve of mediation to create this "emergency."  Rather, they simply manufactured an argument that Defendants were previously obligated to produce net worth information—which they were not—and that such information is somehow needed for the upcoming Court-ordered mediation on February 26, 2020.  Notably absent from their briefing, however, is any explanation as to why the discovery dispute at issue has any bearing on mediation, given that many cases around the country mediate every day without the prior production of net worth evidence.  This is because the value of any settlement is driven by the merit and value of Plaintiffs' claims and the compensation required for their alleged injuries.  In fact, in the weeks of negotiations the parties held with the mediator to establish the procedure for the upcoming mediation, net worth was never raised until the night before Plaintiffs filed their motion.

In stark contrast, Defendants have raised many times with the mediator over the last month that they need underlying medical records and background on Plaintiffs to confirm Plaintiffs intend

to proceed with their claims and to ascertain how Plaintiffs' counsel are evaluating these claims. Similarly, Defendants have been seeking from Plaintiffs over the last several weeks missing Profile Forms from over 200 Plaintiffs (as this Court ordered to be produced in Case Management Order No. 10) and notarized Profile Forms from 200 Plaintiffs who produced unnotarized versions (contrary to the Court's prior order).  Plaintiffs, however, have largely not provided the type of information Defendants seek and when they have, they have only agreed to do so on a drawn-out timeline of their choosing.  Yet, unlike Plaintiffs, Defendants continue to try to work with Plaintiffs on a solution rather than file a motion for sanctions, although it would be within Defendants' rights to do so.

But more important, Plaintiffs' motion misleads the Court in several crucial respects, conflating and confusing issues in a misguided effort to make it appear as if Defendants have ignored their discovery obligations only now to get caught two years later.  For starters, Defendants produced Mr. Rennert's tax returns from 2010–2016 contrary to what Plaintiffs now assert.  Putting that aside, Plaintiffs mischaracterize the history relating to the document requests and productions at issue, including ignoring that the Court's August 2017 Order admonished the parties to confer further to narrow certain requests (which they did), and that as a result ***Plaintiffs are now demanding various documents that Defendants were never required to produce***.  Plaintiffs have also misrepresented the parties' recent discussions around these issues, attesting to having satisfied their meet and confer obligations when Plaintiffs did no such thing.  For instance, Plaintiffs fail to mention (let alone attach to their Motion for the Court's benefit) Defendants' detailed letter of February 14, 2020 addressing Plaintiffs' arguments and inviting additional conferral. Ex. A-1.  Finally, Plaintiffs ignore the fact that their current stated basis for relevance—net worth for punitive damages—was never mentioned in any prior briefing in 2017, was not the basis for the Court's prior order on the Sixth Requests for Production, and is not even proper at this stage under Missouri law.

Plaintiffs' Motion for Sanctions can be reduced to two fundamental questions: (1) did Defendants fail in 2018 to satisfy their discovery obligations with respect to Request No 9; and (2) do the Defendants have an obligation to supplement their 2018 production in perpetuity with documents created long after and that Plaintiffs cannot show are relevant to any issue in this case?  The answer to both questions, as set forth below, is "***no***."

Accordingly, Defendants respectfully request that the Court deny Plaintiff's Motion for Sanctions.  Defendants further request that the Court order Plaintiffs to reimburse Defendants their fees and costs associated with responding to this improper and frivolous Motion, along with any other relief the Court deems appropriate under the circumstances, including relief that would deter this type of wasteful, distracting, and inappropriate conduct by Plaintiffs' counsel as these cases progress.

## II.      BACKGROUND

Plaintiffs' Motion for Sanctions concerns their Sixth Requests for Production No. 9, which seek a variety of financial information from Defendants.  Plaintiffs served their Sixth Requests for Production on May 4, 2017.  A lengthy conferral and briefing period followed between May 2017 and March 2018, which included this Court's August 2017 Order [Doc. 636] and subsequent conferral that the Court's Order directed.  The Declaration of Kristine Kraft attached to Plaintiffs' Motion for Sanctions purports to set forth the history of the underlying dispute, but its omissions are glaring to the point of misrepresenting the history on this Request in an effort to make it appear as if Defendants have not met their discovery obligations.

Following the parties' conferral in response to the Sixth Requests for Production, Plaintiffs filed a motion to compel in July 2017 [Docs. 601, 602].  In the Motion to Compel and Reply, Plaintiffs argued that the documents they were seeking in Request No. 9 were relevant to two issues: (1) choice of law; and (2) corporate veil piercing.  [Doc. 602 at 11 ("This request [No. 9] seeks

information directly related to the corporate veil and choice of law analyses, and will be highly

pertinent to Mr. Rennert's upcoming deposition."); Doc. 627 (filed under seal) ("The discovery

sought is narrowly tailored and seeks specific documents relevant to the choice of law and corporate

veil analyses."); *id.* (documents requested in Request No. 9 "will evidence Mr. Rennert's use of

corporate assets for his own personal purposes").]  At no point in briefing their Motion to Compel did

Plaintiffs assert that the documents they sought in Request No. 9 were relevant to show Mr.

Rennert's net worth for purposes of punitive damages.  Rather, this is an entirely new justification

manufactured in recent days for the purpose of generating the instant dispute.

On August 29, 2017, the Court issued an Order on Plaintiffs' Motion to Compel, concluding

that while the requested documents were relevant to "corporate veil issues," the "parties ha[d] not

sufficiently conferred in an attempt to reduce the burden of this production with respect to some

requests" and specifically ordered the parties to confer further on several of the requests, including

Requests 9(d) and 9(e).  [Doc. 636 at 2–3 ("[P]laintiffs' Motion to Compel Responses to Plaintiffs'

Sixth Request for Production of Documents [601] is GRANTED with the following limited

exception: The parties must meet and confer and attempt to narrow the scope of Requests 9(d) and

9(e), as well as Requests 12 and 13.").]

Thereafter, the parties conferred and expressly agreed in September 2017 to narrow the scope

of Request 9(e) to certain statements of net worth "to the extent that any such documents exist[ed]."

*See* Ex. B (Sept. 27, 2017 1:44 PM email from B. Flieger proposing scope of 9(e)); *id.* (Sept. 28,

2017 12:59 PM email from S. Khojasteh, counsel for Defendants, agreeing to produce documents

responsive to the proposed limited scope to the extent that any such documents exist).[1]  Plaintiffs did

---

[1] Defendants agreed to: "(i) provide all statements of net worth provided to any financial institution
from September 1, 1997 to the present, together with identification of all assets held directly or
indirectly and all liabilities[;] (ii) provide a current statement of net worth, together with
identification of all assets held directly or indirectly and all liabilities[;] and (iii) provide copies of
all net worth statements prepared for any other use or purpose from September 1, 1997 to the

not request, and Defendants ***never*** agreed to produce, records reflecting each and every one of Mr. Rennert's assets and liabilities over a 20-year period as Plaintiffs now seek.

In early 2018, Defendants produced thousands of pages of Mr. Rennert's personal financial and tax records in response to Plaintiffs' Sixth Requests for Production.  Ms. Kraft entirely omits from her Declaration that in March 2018, the Court then ordered Defendants to "file something telling [the Court] – that you all, as officers of the court, are telling me that you have full complied with my order."  [Doc. 782, Tr. of Jan. 18, 2018 Telephonic Status Conference at 23:18–21.] Defendants, through their counsel, thereafter certified to this Court that they had "conducted a reasonable and diligent search of the hard copy and electronic documents in their possession, custody, and control, and have produced any non-privileged materials identified during that search that are responsive to Request Nos. 1-3, 5-6, and 9-14 of Plaintiffs' Sixth Request for Production of Documents."  [Doc. 826.]

Notably, Plaintiffs never questioned this certification in the nearly two years since it was filed.  Nor did Plaintiffs raise any concerns about omissions from Defendants' productions before two weeks ago, even as the key financial experts on veil piercing (Kyle Midkiff for Plaintiffs and Angela Morelock for Defendants) prepared their reports and had their depositions taken.

After nearly two years of total silence on these issues, Plaintiffs began the current controversy on December 30, 2019, with a vague one-sentence email asking for "supplemental responses and documents to Request No. 9 within 30 days."  Ex. C.  Plaintiffs did not explain what specific supplemental information they had in mind or why supplementation was required at all (let alone why it was required within 30 days when fact discovery would not close for several months). Specifically, Plaintiffs did not include any mention of the need for such materials for the upcoming

---

present, together with identification of all assets held directly or indirectly and all liabilities."  Ex. B (Sept. 27, 2017 1:44 PM Email from B. Flieger).

mediation.  Nor did Plaintiffs suggest in this email that any prior productions in response to Request No. 9 were somehow deficient.  On January 31, 2020, recognizing that they had previously certified to having completed the production in response to Request No. 9, Defendants responded that they had not "identified any further responsive documents to RFP 9 in the requested time period."  Ex. D.  Defendants' counsel believed that response resolved the issue.

Then, on February 5, 2020, Plaintiffs began lobbing a series of emails making shifting assertions about past productions and related demands.  In one email, Plaintiffs asserted for the first time that they were seeking documents responsive to Request No. 9 "created since 2018" and "all documents identifying Mr. Rennert's assets" to ascertain his "net worth."  Ex. E.  Plaintiffs wrote separately the same day asserting that Mr. Rennert's personal tax returns for 1997, 1998, 2000, 2002, 2003, and 2004 were not included in Defendants' 2018 productions.  Ex. F.

The parties conferred by telephone on February 12, 2020.  It was during that call that Plaintiffs for the first time articulated several distinct issues not previously raised over the past two years: (1) Plaintiffs seek the production of specific documents that they believe should have been produced in 2018, including (a) Mr. Rennert's personal tax returns for certain years, and (b) a host of documents concerning every single individual asset and liability of Mr. Rennert (from property appraisals to art valuations to insurance), which Plaintiffs now contend are responsive to Request No. 9(e) (ignoring the parties' 2018 agreement on a narrowed scope for that Request); and (2) a request that Defendants supplement their 2018 production made in response to Request No. 9 with documents created after early 2018 through to the present (February 2020), and that Defendants continue to supplement that production on a monthly basis going forward as long as the case continues.  Drake Decl. ¶¶ 2–3.  While Defendants' counsel attempted to gain a better understanding of the basis for these requests, Plaintiffs' counsel summarily stated that they intended to file a motion for sanctions if Defendants were unwilling to produce "immediately" the demanded documents,

including documents that cover an additional two-year period that would have to be collected, reviewed, processed, and produced. *Id.* ¶ 4.

Plaintiffs refused to agree to give the Defendants even 48 hours to investigate and respond to Plaintiffs' new and shifting requests before filing a motion for sanctions. *Id*. ¶ 5. Nevertheless, Defendants confirmed to Plaintiffs after the call that they were "working in good faith on understanding the issues you have raised and meeting our discovery obligations." Ex. G. Two days later on February 14, 2020, Defendants provided Plaintiffs a comprehensive written response addressing the issues Plaintiffs raised and inviting Plaintiffs to confer further, as this Court's Rules expect of the parties. Ex. A. The Court has not seen Defendants' letter, because Plaintiffs do not reference either Defendants' letter or the positions set forth therein in their Motion. Plaintiffs did not respond to Defendants letter, instead filing the Motion for Sanctions and the Motion to Expedite near the close of business the same day. Drake Decl. ¶ 6.

### III.    ARGUMENT

As previewed above, there are two questions at issue in Plaintiffs' Motion. Defendants will address each question in turn.

#### A.    Defendants Completely and Fully Satisfied Their Discovery Obligations With Respect to Request No. 9.

##### 1.    Tax Returns

On January 13, 2018, in response to Request No. 9, Defendants produced nearly ***23,000*** pages of Mr. Rennert's state and federal tax returns, as well as bank and portfolio statements. More than two years later, Plaintiffs now claim that the production did not include Mr. Rennert's tax returns for 1997, 1998, 2000, 2002, 2003, and 2004 and contend, for the first time in their Motion and without having conferred with Defendants, that tax returns for 2010–2019 were also not produced.

As discussed above, Defendants certified to the Court in 2018 that they produced Mr. Rennert's tax returns for the applicable time period that were located in Defendants' possession,

custody, and control following a reasonable search.  Indeed, upon belief, many of the years Plaintiffs

now claim were not produced were, in fact, produced in 2018—a fact Plaintiffs would know had they

conferred with Defendants before filing their Motion.  *See, e.g.*, RENCOGRP-200217 – 201513

(2010); RENCOGRP-201514 – 203348 (2011); RENCOGRP-203349 – 205764 (2012);

RENCOGRP-205765 – 207855 (2013); RENCOGRP-207856 – 208241 (2014); RENCOGRP-

208242 – 208714 (2015); RENCOGRP-208715 – 209197 (2016).  No additional personal tax returns

for Mr. Rennert that could have been produced during the applicable time period have come to

Defendants' attention since, and there is no reason to believe the search conducted in 2018 and

certified by Defendants was insufficient.  Accordingly, Defendants have no supplemental production

to provide to Plaintiffs.  Indeed, Plaintiffs' motion is devoid of any evidence whatsoever that

Defendants possess additional years of tax returns for Mr. Rennert and simply decided not to produce

them.  Any such bare speculation and conjecture cannot and should not serve as the basis for a

sanction.

Putting aside the completeness of Defendants' prior productions, Mr. Rennert's tax returns

are not even relevant for the purpose now sought: punitive damages.  Discovery of remote tax returns

are irrelevant to a defendant's net worth and production thereof is overly burdensome.  *See, e.g.*, *Doe

v. Young*, No. 4:08CV197 TIA, 2009 WL 440478, at *2 (E.D. Mo. 2009) (finding requests regarding

Defendants' net worth for the past eight years overbroad and burdensome, and limiting such

discovery to Defendants' current net worth for past two-year period); *see also Vega v. Valley Venture

II*, No. 8:10cv429, 2011 WL 6078158, at *1 (D. Neb. 2011) (holding that "only Defendants' current

financial status is relevant to the issue of punitive damages" and limiting such discovery to a three-

year period); *United States v. Autumn Ridge Condominium Ass'n, Inc*., 265 F.R.D. 323, 329 (N.D.

Ind. 2009) (noting that district courts that have addressed the issue have concluded that financial

records over approximately the past two years is sufficient to establish a defendant's current net worth).

Moreover, under Missouri Revised Statute § 510.263(8), "[d]iscovery as to a defendant's assets shall be allowed only after a finding by the trial court that it is more likely than not that the plaintiff will be able to present a submissible case to the trier of fact on the plaintiff's claim of punitive damages."  Thus, even when courts have concluded that evidence of assets is discoverable, a specific showing of evidence of submissibility by a preponderance of the evidence is first required. *See, e.g.*, *Rihn v. Jackson*, No. 4:07CV00197 ERW, 2007 WL 9805618, at *2 (E.D. Mo. 2007) ("[W]hile the production of Defendant's tax returns would be beneficial to Plaintiffs, and constitute discoverable evidence on the question of punitive damages, the Court is bound by the Missouri statute, and such evidence is not discoverable until there is evidence before the Court sufficient to support a finding that 'it is more likely than not that the Plaintiff[s] will be able to present a submissible case.'"); *see also Brown v. Therapy Mgmt. Corp.*, No. 4:17-cv-01247-JAR, 2018 WL 4386094, at *4 (E.D. Mo. 2018) (denying motion to compel financial discovery without prejudice because several material facts were open to two reasonable interpretations and court could not conclude that it was more likely than not that Plaintiff had clear and convincing proof that the defendant intentionally acted either by a wanton, willful or outrageous act, or reckless disregard for an act's consequences).[2]  Indeed, some courts have altogether refused to compel production of such documents until damages are assessed at trial.  *See, e.g.*, *Johnson v. Neiman*, No. 4:09CV0689 JCH, 2010 WL 1740365, at *1 (E.D. Mo. 2010) ("Plaintiff will be entitled to discovery regarding Defendants' financial information only if Plaintiff presents sufficient evidence to support his claim

---

[2] At least one court construing the statute noted that the Eighth Circuit has not yet ruled whether the statute is procedural or substantive and declined to apply it.  *Doe*, 2009 WL 440478, at *2 n.1.  A more recent decision in this District, however, concluded that the statute applies to diversity actions.  *Brown*, 2018 WL 4386094, at *4.

9

for punitive damages at trial."). Thus, Plaintiffs' demand for records relevant to net worth is premature at this stage. Plaintiffs certainly have not cited any legal authority for the proposition that such information should be produced to facilitate mediation.

### 2.    Financial Statements

Plaintiffs' request for sanctions based on a purported failure to produce personal "financial statements" should also be denied. First, Plaintiffs never even conferred with Defendants regarding a purported failure to produce "financial statements" they contend are responsive to RFP 9(b). Second—and again—Defendants certified to the Court in March 2018 that no personal "financial statements" were produced "because they were never created and do not exist." *See* Ex. H at 16; Doc. 826. Plaintiffs make only passing reference to Request No. 9(b) in their Motion [Doc. 1077 ¶ 3] and do not provide any basis whatsoever for questioning Defendants' certification that a diligent search had been completed. Indeed, Mr. Rennert is an individual, not a privately held or publicly traded company, and Plaintiffs provide no reason why Mr. Rennert would have had "financial statements" (as that term is generally understood) prepared for him on a personal basis. Defendants cannot produce documents that do not exist and cannot be sanctioned for a failure to do so. To the extent Plaintiffs seek an order compelling Defendants to engage in the same exercise they already completed in 2018, such an order would merely ask Defendants to repeat a search already exhausted in 2018 with no reasonable expectation that the result would be different. Neither the Federal Rules nor common sense compels such a result.

### 3.    Records of Individual Assets and Liabilities

Plaintiffs also seek production of "all documents relating to any asset controlled by Ira Rennert"—a request so nebulous and vague as to be utterly meaningless.[3] Crucially, however, absent from Plaintiffs' Motion is any mention of: (1) the Court's Order directing the parties to confer further

---

[3] It is also unclear how some of the example document types are relevant to assets (e.g., wills).

to narrow the scope of Request No. 9(e) specifically; or (2) the expressly narrowed scope that resulted from such conferral and agreement.

Request No. 9(e) originally sought "[c]opies of journals, books, statements of net worth, or other documents reflecting, stating, or identifying assets which Ira Rennert possesses or controls directly or through other persons, trusts, entities, or nominees." [Doc. 601-3 at 11.] But after the Court directed the parties to confer further in August 2017, the parties agreed on Plaintiffs' own proposal to narrow the request only to certain "statements of net worth."[4] In March 2018, Defendants served supplemental responses stating that no documents had been located that were responsive to the narrowed scope of Request 9(e). As referenced above, Defendants then submitted a certification to the Court to that effect.

Plaintiffs now, however, for the first time in two years, claim Defendants' production was insufficient because it did not include documents that fall well outside the agreed upon scope of Request 9(e). Indeed, Plaintiffs' Motion for Sanctions appears to be based on the original, overly broad definition of Request 9(e) as if the parties' conferral in 2017 never occurred. Not only do Plaintiffs omit any reference to the agreement narrowing the request's scope, they now seek to *broaden* the original overly broad request to include "all documents relating to any asset." This is improper and disingenuous.

At best, Plaintiffs' demand for such far-reaching documents is essentially a new request that should be rejected outright as procedurally improper. And as discussed above, there is no legal basis

---

[4] Defendants agreed: "(i) provide all statements of net worth provided to any financial institution from September 1, 1997 to the present, together with identification of all assets held directly or indirectly and all liabilities[;] (ii) provide a current statement of net worth, together with identification of all assets held directly or indirectly and all liabilities[;] and (iii) provide copies of all net worth statements prepared for any other use or purpose from September 1, 1997 to the present, together with identification of all assets held directly or indirectly and all liabilities." Ex. B.

for the Court to compel production of such documents on the grounds that such documents are necessary to establish net worth.

### B.      Documents Created Since 2018 Are Irrelevant and Protected by Statute

The Sixth Requests for Production sought documents through the date of the Requests, May 4, 2017.  [Doc. 601-3 ¶ 8 (requesting documents "to the present").]  Defendants complied with the requests as written, producing tens of thousands of documents (such as personal credit card statements) that have proven to be useless to Plaintiffs' theories of liability.  Plaintiffs now seek to enlarge the scope of the Sixth Requests by claiming that Defendants have an ongoing obligation to supplement with documents that did not exist at the time of the original Requests.  Worse still, Plaintiffs seek an order compelling Defendants to make this production within 30 days (without any explanation as to the grounds for this timing).

Under Federal Rule 26, a party has an obligation to supplement a discovery response if a party learns that in some material respect that a prior response is incomplete or incorrect, but supplementation under Rule 26 is not "an overriding mechanism for continual and ageless discovery without bounds."  *Marchionda v. Embassy Suites Franchise, LLC*, No. 415CV00479JEGSBJ, 2018 WL 8458794, at *5 (S.D. Iowa Sept. 10, 2018); *see id.* (holding Rule 26 did not require "broad, ongoing, continual account" of, among other things, credit and banking card statements).  This is particularly so when Plaintiffs' stated basis for supplementation is one barred by Missouri statute.

First, Plaintiffs argue that the requested documents are relevant to net worth for punitive damages.  As set forth above, Plaintiffs have not made the required showing to satisfy Missouri Revised Statute § 510.263(8), and production of such documents would be premature.

Second, Plaintiffs cannot show that their original theory of relevance applies to any documents created since 2018.  The stated basis of relevance for Plaintiffs' Sixth Request, detailed at length in the Motion to Compel Plaintiffs filed in July 2017, was the choice-of-law and corporate-veil

analyses.  [Doc. 602.]  And the Court's Order compelling production of extensive personal financial information was based on choice of law and veil piercing.  [Doc. 636.]  Those rationales do not apply to documents created since 2018.  First, the Court has already ruled on choice-of-law.  [Doc. 949.]  Second, documents created nearly a decade after Doe Run Peru ("DRP") entered bankruptcy proceedings stretch well beyond the outer limit of any possible relevance to choice-of-law and veil piercing.  At some point, the connection between past operations and current financial activity becomes too tenuous to support any possible relevance of recent transactions.  For example, in *United States v. Carell*, the court ordered production of documents created three years after the relevant transaction because "there may have been communications or documents that were created *in the years immediately after* the sale which could shed light on the relationship."  No. 09-0445, 2011 WL 2078023 (M.D. Tenn. May 26, 2011) (emphasis added).  But here DRP ceased operations in 2008 and entered bankruptcy proceedings in 2009.  Documents created in 2018, 2019, and 2020 were not created "immediately after" the transactions at issue here, and Plaintiffs cannot show that it is even possible for Mr. Rennert's credit card or bank statements from the last two years relate to a company that stopped producing revenue more than 10 years ago.  Defendants are not obligated to supplement indefinitely documents that cannot be relevant to veil piercing or the already-decided choice-of-law issues.

Even if the documents created 10 years after the years at issue in this litigation were not facially irrelevant, the development of the case to date has established that they are.  Of the categories of documents Plaintiffs insist should be supplemented, none were cited in the Plaintiffs' choice of law briefing, and few were cited by Plaintiffs' expert opining on the veil-piercing factors.  The expensive and intrusive exercise Plaintiffs forced in 2017 has only proven Plaintiffs' intrusive fishing expedition to be meritless.

### C.    Plaintiffs' Requested Sanctions Are Legally Unsupported and Illogical.

Plaintiffs' proposed timeline for a new document production for the mediation is, simply put, absurd and impractical.  And Plaintiffs' proposed sanctions for failing to make such a production are unsupportable under applicable law.  Plaintiffs demand "all documents relating to any asset controlled by Ira Rennert," which could include thousands of documents stored in countless locations and, if taken at face value, could include documents as inconsequential as Mr. Rennert's dry-cleaning receipts.  This renders Plaintiffs' requested relief farcical: Plaintiffs request an Order by Thursday, February 20 requiring Defendants to identify, gather, review, and process for production these new documents (never previously requested) by Monday, February 23, so that Plaintiffs can somehow use them at the mediation on Thursday, February 26.

Moreover, Plaintiffs' requested "sanctions" for failing to provide these documents are simply not supported by applicable law.  Plaintiffs seek an Order directing that if the Defendants do not produce all documents within four days they "forfeit the right to dispute that Ira Rennert's overall net worth is $6.5 billion as reported by Forbes."  [Doc. 1077 6–7.]  Plaintiffs cite no law in support of such a "forfeiture" as a sanction.  And indeed, the sanction is unrelated to the issues at hand.  For example, Mr. Rennert's stale tax returns are not related to any calculation of his net worth. Moreover, Plaintiffs have undertaken no effort to articulate why the Forbes calculation is an accurate estimate of net worth.  For instance, Plaintiffs have made no showing of Forbes' methodology for such a calculation.

Setting aside the lack of merit of Plaintiffs' requested sanctions, it is undisputed that Plaintiffs have known for more than two years that Defendants had not produced the documents they now seek. And Plaintiffs need not have even sorted through the extensive production of Mr. Rennert's personal financial documents to know this fact because Defendants' supplemental responses to the Requests expressly stated that certain categories of documents were not located, and none would be produced.

Plaintiffs' veil-piercing expert, Ms. Midkiff, even expressly noted a year ago in her report that Plaintiffs did not have personal tax returns prior to 2001 or from 2002 to 2004.  Even if net worth evidence were relevant to the upcoming mediation at all—a showing Plaintiffs have not made— Plaintiffs provide no explanation for their failure to raise these issues at any point in the past two years since Defendants made a production in response to Plaintiffs' document requests—and certified the completeness of that production to the Court.

Plaintiffs had ample opportunity to raise these issues in the ordinary course, well in advance of the mediation that forms the basis of their motion to expedite and their demand that Defendants produce documents within four days or face draconian sanctions.  That Plaintiffs did not do so belies their cry of emergency and further evidences the bad-faith nature of this Motion and requested sanctions.

### IV.    CONCLUSION

Plaintiffs' Motions are a blatant violation of this Court's rules requiring Plaintiffs to confer in good faith with "sincere efforts to resolve the[] dispute," Local Rule 3.04(A), and the Court's past admonition for the parties to follow those requirements.  For the reasons discussed above, the Court should deny Plaintiffs' Motion for Sanctions.  Defendants also seek an award of all fees and costs associated with responding to this frivolous motion (as well as Plaintiffs' Motion to Expedite) and any other relief the Court deems appropriate under the circumstances, including relief that would deter this type of wasteful, distracting, and inappropriate conduct by Plaintiffs' counsel as the cases progress.

Respectfully submitted, this 18th day of February, 2020,


**KING & SPALDING LLP**


By:____/s/  Geoffrey M. Drake_____
    Tracie J. Renfroe, #16777000T
    trenfroe@kslaw.com
    Carol M. Wood, #2594581
    cwood@kslaw.com
    1100 Louisiana Street
    Suite 4000
    Houston, Texas  77002
    Telephone: (713) 751-3200
    Facsimile: (713) 751-3290

    Andrew T. Bayman, #043342GA
    abayman@kslaw.com
    Carmen R. Toledo, #714095GA
    ctoledo@kslaw.com
    Geoffrey M. Drake, #229229GA
    gdrake@kslaw.com
    1180 Peachtree Street, N.E.
    Suite 1600
    Atlanta, Georgia  30309
    Telephone: (404) 572-4600
    Facsimile: (404) 572-5100

    *Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Doe Run Cayman Holdings, LLC, Ira L. Rennert, The Doe Run Resources Corporation, Theodore P. Fox, III, Marvin K. Kaiser, Albert Bruce Neil, Jeffrey L. Zelms*

**DOWD BENNETT LLP**

By:   /s/  Edward L. Dowd

    Edward L. Dowd, Jr.  #28785MO
    edowd@dowdbennett.com
    Jeffrey R. Hoops, #69813MO
    jhoops@dowdbennett.com
    7733 Forsyth Blvd., Suite 1900
    St. Louis, Missouri 63105
    Telephone: (314) 889-7300
    Facsimile: (314) 863-2111

    *Attorneys for Defendants The Renco Group,*
    *Inc., D.R. Acquisition Corp., Ira L. Rennert, and*
    *Doe Run Cayman Holdings, LLC*

**LEWIS RICE LLC**

    Andrew Rothschild, #23145MO
    arothschild@lewisrice.com
    Thomas P. Berra, Jr., #43399MO
    tberra@lewisrice.com
    Michael J. Hickey, #47136MO
    mhickey@lewisrice.com
    600 Washington Ave., Suite 2500
    St. Louis, MO  63102-2147
    Telephone: (314) 444-7600
    Facsimile: (314) 241-6056

    *Attorneys for Defendants The Doe Run*
    *Resources Corporation, Marvin K. Kaiser,*
    *Albert Bruce Neil, Jeffrey L. Zelms, and*
    *Theodore P. Fox, III*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 18th day of February, 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court and that notice of such filing will be served upon counsel of record via the Court's CM/ECF system.

/s/ Geoffrey M. Drake
Geoffrey M. Drake