UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11 CV 44 CDP |
| | ) | |
| IRA L. RENNERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

I previously granted plaintiffs' motion for sanctions based on defendants' failure to comply with previous court orders compelling production of documents. [ECF 837]. The reasons for the sanction award are set out in the original order and in my order denying defendants' request for reconsideration [ECF 918]. Defendants willfully and in bad faith failed to comply with my court orders; their form of document production made it extremely difficult for plaintiffs to determine what had and had not been produced. Their failure to comply with the orders caused delay and caused plaintiffs to incur unnecessary legal fees. The sanction that I imposed was that defendants must pay plaintiffs' reasonable attorneys' fees for bringing the motion for sanctions and for investigating defendants' non-compliance with the discovery orders.

Plaintiffs sought $651,012[1] as the amount of attorneys' fees to which they believed they were entitled. Defendants responded that the fee award should be no greater than $36,021. This litigation is complex and has taken a very long time. Discovery has been extensive, at times contentious, and defendants have produced millions of pages of documents. After I granted the plaintiffs' motion to compel, defendants produced more documents; the work plaintiffs had to do to know that documents required by the order were still missing was very time consuming. I was nevertheless surprised by the size of plaintiffs' fee request, and then was more surprised by defendants' arguments about what they thought would be a reasonable fee. I have carefully reviewed the parties' briefs and submissions and will award sanctions in the amount of $429,260. This amount reflects some deductions for specific items and some reduction in the hourly rates of plaintiffs' counsel. Although the total award is high, I believe that it reflects the reasonable attorneys' fees that were made necessary by defendants' noncompliance with my order.

*Legal Standards*

The Federal Rules of Civil Procedure make an award of attorneys' fees mandatory when, as here, a party fails to comply with an order to provide discovery. Rule 37(b)(2)(A) provides a list of more serious and potentially case-

---

[1] In their reply brief [ECF 936] plaintiffs withdrew their claim for time spent by an IT consultant. I will deduct the full amount they initially sought for IT consulting, which is $3920. They also added fees for responding to defendants' opposition, which is discussed later in the opinion.

dispositive sanctions a court may impose; subsection (b)(2)(C) then provides for attorneys' fees:

> (C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Rule 37(b)(2)(C), Fed. R. Civ. P.

To determine the amount of a reasonable attorneys' fee, courts employ the "lodestar" method where the starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Quigley v. Winter,* 598 F.3d 938, 956-57 (8th Cir. 2010). Once that amount is determined, the court should consider other factors to determine whether to adjust the fee upward or downward. *Hensley*, 461 U.S. at 434; *see also City of Riverside v. Rivera,* 477 U.S. 561, 568 n.3 (1986). The factors, based on *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney because of acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) the attorneys' experience, reputation, and ability; (10) the

- 3 -

"undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases. *See Hensley*, 461 U.S. at 429-30 n.3.  In determining the amount of a fee award, the trial courts should not "become green-eyeshade accountants"; instead the goal "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). This allows trial courts to use their experience and discretion and to use estimates in determining an appropriate fee. *Id.*

Plaintiffs break their fee petition into five categories of work.  For the discussion below I have combined some of those.  I have also rounded some hours and dollar amounts in an attempt to simplify my analysis and application of the standards set out above.

*Failure to Produce Doe Run Resources' pre-2006 General Ledgers*

Defendants are correct that my sanctions order did not impose sanctions for their failure to produce the pre-2006 general ledgers of defendant Doe Run Resources Corp.  [ECF 837 at pp. 8-9].  Plaintiffs' reply brief, while continuing to argue against this conclusion, provided estimates of the time spent on this issue. For the most part I am adopting plaintiffs' suggestions, with some changes, and the appropriate deductions for this are reflected in the discussions below.

*Investigation of Defendants' Non-Compliance*

Not surprisingly, the time spent investigating the defendants' non-

compliance with the discovery orders makes up one of the largest parts of plaintiffs' fee submission.  Plaintiffs seek $228,258.90 for investigation done before they filed the motion for sanctions and an additional $57,447 for work after they filed the motion.  Defendants argue that much of this time was "ordinary-course document review" that plaintiffs would have had to do even if defendants had complied with the court orders.

After my August 29, 2017 order granting the plaintiffs' motion to compel and before plaintiffs filed the motion for sanctions, defendants made five different document productions:  one on September 29, 2017; two in October; one in December; and one in January of 2018.  Defendants made additional productions after plaintiffs filed the motion for sanctions.  Plaintiffs' counsel spent many hours reviewing those productions and communicating with defense counsel in attempts to resolve whether, in fact, the defense had complied with the order compelling production.  It was not until January of 2018 that defendants told plaintiffs that they believed they had produced what the court had ordered in August.  Even then, and even after plaintiffs filed the motion for sanctions, defendants made additional productions.  It was also not until January of 2018 that defendants admitted to plaintiffs and to the court that they had made no attempt to comply with an order entered in 2014 overruling their boilerplate objection related to subsidiaries.

In their reply brief, plaintiffs argued that their review of the documents

should not be reduced for anything related to the pre-2006 general ledger issue, but they provided exhibits showing the amount of time they spent "hounding" defendants that they believe is properly attributable to the pre-2006 general ledger issue.  I have reviewed their exhibits and will reduce the totals for the categories of investigation and continued investigation of non-compliance for the following amounts related to the pre-2006 general ledger issue:  4 hours for attorneys with more than 25 years' experience, and 4.5 hours for attorneys with 5 to 14 years' experience.[2]

As to the remaining hours claimed for this work, I have carefully reviewed the itemization provided by plaintiffs' counsel.  Although I have no doubt that they spent the hours listed, I nevertheless conclude that some of the time they spent provided benefit to the case regardless of the failure of defendants to comply with my order.  Although I agree with plaintiffs that it was not "ordinary-course" document review, this review and the knowledge that plaintiffs obtained from doing it must have benefitted the plaintiffs' litigation as a whole.  I will therefore reduce the remaining overall time in this category by approximately 10%.  That results in an additional deduction of 12 hours for attorneys with more than 25

---

[2] Plaintiffs' fee request contains different hourly rates for those attorneys with more than 25 years' experience (Kristine Kraft, Nelson Wolff, Jerry Schlichter) and those with 5-14 years' experience (Elizabeth Wilkins, Tara Roque, Megan McGlynn) and for the paralegals (Kathy Nickell, Reenee Gangopadhyay).  For this reason, I will state the various hourly deductions using those categories.

years' experience, 20 hours for attorneys with 5 to 14 years' experience, and 12 hours for paralegals.

Therefore, in the categories related to plaintiffs' investigation and continued investigation of defendants' non-compliance (*i.e.*, both before and after they filed the motion for sanctions), I will reduce the total hours claimed for attorneys with 25 years or more of experience by 16 hours (resulting a sanction based on 103.1 hours); for attorneys with 5 to 14 years' experience, the claim is reduced by a total of 24.5 hours (resulting in a sanction based on 182.8 hours); and for paralegals, the claim is reduced by 12 hours (resulting in a sanction based on 106.5 hours).

*Research, Briefing, and Presenting the Motion for Sanctions*

Plaintiffs assert that their reasonable fee for researching and briefing the motion for sanctions is $78,446.40, based on 117.6 hours of work.[3] In addition, they seek compensation of $216,571.50, based on 323.8 hours, for preparing for and attending the hearing on the motion for sanctions. Defendants argue that the briefing time is excessive, particularly the time plaintiffs' team spent preparing their reply brief, and that the argument preparation time was excessive. I conclude that all the claimed research and briefing time is reasonable, given the length and complexity of the briefs, so I will not reduce any of that time.

I agree with defendants, however, that the preparation time for the hearing is

---

[3] Plaintiffs' original exhibit A-2 [ECF 875-3] actually sought $79,006.40 but that included the withdrawn claim for 3.2 hours of IT consulting (or $560), which I have not included.

- 7 -

more than was reasonably necessary.  Attorney Wolff argued the motion at the March 6, 2018 hearing.  He began recording preparation time on February 28; some of his time is attributed to conferences with attorneys Kraft and Wilkins, for which they also recorded time.  Wolff did an excellent job arguing the motion, but I believe that either of the other lawyers—both of whom had more experience on the case itself—most likely would have done equally well and would not have required as much preparation time.  I am sure plaintiffs had many reasons for choosing to have Wolff make the argument and I conclude that his involvement added value to the plaintiffs' litigation of the motion, so I will not strike all of his time.  Rather, because I believe it was not entirely reasonable under all the circumstances of the case, I will reduce the preparation time for each of the three lawyers by one-third for certain of the entries starting with February 28.  I have not reduced all of the entries because some of the work and conferences, including things such as strategy discussions among counsel and final preparation, are appropriate without any reduction.  This results in a reduction of 16 hours for attorneys with more than 25 years' experience and 9 hours for attorneys with 5 to 14 years' experience.

I will also reduce the hours related to the pre-2006 general ledger issue from the claim for briefing, preparing for, and presenting the sanctions argument.  The reduction for the hearing is straightforward, as the hearing lasted four hours, and

approximately 1.4 hours of that time was attributable to this issue.[4]  Plaintiffs' reply brief was not precise regarding the briefing and preparation time spent on this issue, but based on the statements made in the reply brief, my examination of the time records, and defendants' objections, my reduction for pre-2006 general ledger work (including the 4.2 hours in total attorney-time at the hearing) is:  20 hours for attorneys with more than 25 years' experience, 32 hours for attorneys with 5 to 14 years' experience, and 13 hours for paralegals.

The total reductions for fees claimed for research, briefing, and presenting the motion for sanctions is therefore 36 hours for attorneys with more than 25 years' experience (resulting in a sanction award for 98.4 hours), 41 hours for attorneys with 5 to 14 years' experience (resulting in a sanction based on 176.9 hours), and 13 hours for paralegals (resulting in a sanction based on 76.1 hours).

*Preparation of Fee Petition*

Plaintiffs initially sought $69,728.20 for preparation of the fee petition, based on 96.8 hours of work.  Their reply brief also added a claim for an additional 63.2 hours of work (valued at $41,264.60) performed in responding to defendants' opposition to their fee petition [ECF 926-13].  An award of attorneys' fees may appropriately include compensation of attorneys "for the time reasonably spent in establishing and negotiating his rightful claim to the fee."  *Jones v. MacMillan*

---

[4] Plaintiffs' reply brief suggested a reduction of 1.4 hours, but I will reduce the hours for each of the three lawyers by 1.4 hours, for a total reduction of 4.2 hours.

*Bloedel Containers, Inc.*, 685 F2d 236, 239 (8th Cir. 1982); *see also El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010) (time spent preparing fee applications is generally compensable but claim was excessive).

The hours listed by plaintiffs for preparing the fee petition were reasonably necessary under all the circumstances of this case, but there are also reasons why the hours should be reduced. Defendants argue that this was largely clerical work, which is not correct. It was necessary for a lawyer to analyze the time records and sort out those portions of time that were properly attributable to items covered by the sanctions award. But this was caused in part by plaintiffs' law firm practice of recording numerous tasks performed on the case each day without reflecting a separate time entry for each issue or project. While this sort of "block billing" is the usual and customary practice of many contingency firms for the reasons argued by plaintiffs, its use increases the expense of preparing a fee request because it requires that a lawyer analyze the records to determine which should appropriately be charged to the issue for which fees are being sought. Additionally, because the initial fee petition and supplemental submission included time spent on the pre-2006 general ledger issue, a further reduction is appropriate.

I will therefore deduct approximately 25% from the total of these claimed hours for both reasons discussed above. This results in reductions of 11 hours for attorneys with more than 25 years' experience (resulting in sanctions based on 33.7

hours),  25 hours for attorneys with 5 to 14 years' experience (resulting in sanctions based on 76.5 hours), and 3 hours for paralegals (resulting in sanctions based on 10.8 hours).

*Reasonableness of Hourly Rates*

Plaintiffs seek an hourly rate of $998 per hour for the attorneys with 25 or more years of experience (attorneys Schlichter, Kraft, and Nelson).  The hourly rate is $612 per hour for attorneys with 5 to 14 years' experience (attorneys Wilkins, Roque, and McGlynn).  They seek $309 per hour for paralegals (Gangopadhyay and Nickell).  Plaintiffs argue that these rates are reasonable because of their specialized expertise, because this case is national and international in scope, and because of the contingent nature of their engagement, which, of course, entails risks that an attorney paid by the hour does not have.  They also have provided cases where they have been awarded these or comparable rates.  Defendants argue that plaintiffs' rates must be limited to those prevailing in St. Louis; they provide evidence from the 2017 Missouri Lawyers' Weekly survey of hourly rates of attorneys in the St. Louis metropolitan area showing hourly rates much lower than those sought by plaintiffs here.  Defendants argue that the rates should be lowered to $504 for lawyers with more than 25 years' experience, to $269 for those with 5 to 14 years' experience, and to $134 for paralegals.

Although in most instances the reasonable hourly rate used by courts is the

rate for similar work in the local community, higher hourly rates can be appropriate based on a national market or the expertise of the lawyers or the risks of the case. *See Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993); *In re RFC*, 399 F. Supp. 3d 827, 846 (D. Minn. 2019); *White v. McKinley*, No. 05-0203-CV-W-NKL, 2009 WL 813372, at *7-8 (W.D. Mo. Mar. 26, 2009).

I agree that some reduction in the hourly rate is appropriate. It is correct that the plaintiffs' firm has a national reputation and that it has been awarded fees based on the rates sought here, but some of the cases they cite involved class-actions in which plaintiffs' firm is among the leading firms in the country for the particular and complicated type of ERISA litigation in which those fees were awarded. That does not mean that the rates must be as limited as defendants urge, as they argue for unreasonably low rates. Although I did not require the defendants to tell the court what their fees were for this portion of the litigation, I certainly suspect that they may be higher than those sought here, given the involvement of multiple firms, including those based in much larger cities than St. Louis, and the defendants' practice of using a large number of lawyers for everything.[5] In determining what I believe is a reasonable rate, I have considered the case law argued by both sides as well as my own research, my own experience with both the local and national legal markets, and my experience with this case,

---

[5] For example, as plaintiffs point out, plaintiffs brought three lawyers to the sanctions hearing while defendants brought more than twelve for the two groups of defendants.

which involves extremely complex legal and factual issues that are both national and international in scope. I have also considered that this fee award is a sanction for defendants' willful failure to comply with court orders and is not a traditional fee-shifting award to a prevailing party. I conclude that a reasonable hourly rate for the plaintiffs' lawyers with more than 25 years' experience is $750 per hour, for those with between 5 and 14 years' experience is $500 per hour, and for the paralegals is $200 per hour.

*Conclusion*

As set out above, I conclude that plaintiffs are entitled to sanctions based on the following reasonable attorneys' fees:

- For investigating defendants' non-compliance with the order compelling discovery:

    103.1 hours at $750 per hour = $77,325
    182.8 hours at $500 per hour = $91,400
    106.5 hours at $200 per hour = $21,300

- For research and briefing, preparing for, and presenting the motion for sanctions:

    98.4 hours at $750 per hour  = $73,800
    176.9 hours at $500 per hour = $88,450
    76.1 hours at $200 per hour = $15,220

- For preparing the fee petition and response to defendants' objections:

    33.7 hours at $750 per hour = $25,275
    76.5 hours at $500 per hour = $38,250
    10.8 hours at $200 per hour = $ 2,160

- Reduced by $3920 for the withdrawn claim for the IT consultant.

This results in a total sanction of $429,260.

Although this is a very large sanction, the plaintiffs did the work, it is a reasonable lodestar amount, and they were required to do the work because defendants failed to comply with my order. Under Rule 37, this is an appropriate sanction for defendants' conduct.

Accordingly,

**IT IS HEREBY ORDERED** that defendants must pay plaintiffs' counsel their reasonable attorneys' fees as required by the March 12, 2018 order [837] in the amount of $429,260. This obligation is joint and several among all defendants.

*Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of May, 2020.