UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A., et al., ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | Case No.: | 4:11-cv-00044-CDP |
| ) | | (CONSOLIDATED) |
| DOE RUN RESOURCES ) | | |
| CORPORATION, et al. ) | | |
| Defendants ) | | |

**PLAINTIFFS' STATEMENT IN SUPPORT OF PRODUCTION OF EXPERT BILLING RECORDS AND RETENTION AGREEMENTS**

Expert compensation is undeniably discoverable under the Federal Rules, which specifically provide that compensation is an exception from the types of attorney-expert communications that are otherwise protected from discovery. FED. R. CIV. P. 26(b)(4)(C)(i). Compensation can be discovered through deposition or written discovery and is not limited to one type of discovery. FED. R. CIV. P. 26(b)(4)(B) and (C) advisory committee's note to 2010 amendment.  Because it tends to show an expert's bias, compensation is well-recognized as a relevant topic for discovery. *See, e.g. Taylor v. Cottrell, Inc.*, 795 F.3d 813, 817 (8th Cir. 2015).

Although expert billing records are  discoverable, the sole reason the Court must decide whether to order the parties to produce such records is because the Defendants refuse to do so on the grounds that according to their recollection, the parties mutually agreed to never produce such records.  Plaintiffs' position is that the parties agreed only to defer production of expert billing records until a time close to trial.

Given the clear authority in the Federal Rules requiring compensation discovery, Plaintiffs request that the Court exercise its authority to order production of expert billing and retention records without issuing formal discovery requests or the opportunity for objections. Plaintiffs request that the Court order the parties to produce, by September 1, 2020, any retention

1

agreement(s) showing who retained the expert and the terms of the retention, and all billing invoices reflecting fees and expenses charged by each expert and paid by each party for all time spent by the expert on the case through August 31, 2020 and to require supplementation prior to trial.

    I.    <u>Discovery of expert compensation is authorized under the Federal discovery rules.</u>

Federal Rule of Civil Procedure 26(b)(1) provides that unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). Information regarding an expert's compensation is <u>required</u> to be disclosed in an expert's report (FED. R. CIV. P. 26(a)(2)(B)(vi)) and is specifically <u>excluded</u> from the work-product exception. (FED. R. CIV. P. 26(b)(4)(C)(i)). As clarified in the 2010 advisory committee's note, the scope of discovery excluded from work-product protection under Rule 26(b)(4)(C)(i) goes beyond the simple disclosure requirements of 26(a)(2)(B)(vi) (disclosure of compensation within the expert's report). Discovery regarding compensation:

> is not limited to compensation for work forming the opinions to be expressed, but extends to all compensation for the study and testimony provided in relation to the action. Any communications about additional benefits to the expert, such as further work in the event of a successful result in the present case, would be included. This exception includes compensation for work done by a person or organization associated with the expert. The objective is to permit full inquiry into such potential sources of bias.

See FED. R. CIV. P. 26(b)(4)(C)(1) advisory committee's note to 2010 amendment. While discovery of expert compensation typically occurs during deposition, other written discovery is also permitted. FED. R. CIV. P. 26(b)(4)(B) and (C) advisory committee's note to 2010 amendment ("The most frequent method for discovering the work of expert witnesses is by deposition, but Rules 26(b)(4)(B) and (C) apply to all forms of discovery."). As such, expert compensation records, including invoicing and retention agreements, are regularly produced in

all types of litigation. *See, e.g.*, *City of Grandview v. Missouri Gas Energy*, 2012 WL 12897093 at *4 (W.D. Mo. September 10, 2012); *Johnson v. Mead Johnson & Company, LLC*, 2012 WL 12894473 at *8 (D.Mn. May 21, 2012); *Gerke v. Travelers Cas. Ins. Co. of America*, 289 F.R.D. 316, 330 (D. Or. 2013); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 1993 WL 360674 at *1 (C.D. Cal. August 6, 1993).

    II.    <u>Nondisclosure of expert compensation records is prejudicial to Plaintiffs.</u>

Expert compensation records are essential to showing an expert's potential bias. *Elam v. Alcolac, Inc*., 765 S.W.2d 42, 199 (Mo. Ct. App. 1988). An expert's bias is extremely relevant because it allows a jury to evaluate the weight of an expert's testimony. *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000). Bias caused by financial arrangements and interests between expert witnesses and Defendants is particularly relevant. See *SEC v. Sabhlok*, 2010 WL 211326 at *2 (N.D. Cal. Jan. 13, 2010); *Houfberg v. Kansas City Stock Yards Co. of Maine*, 283 S.W.2d 539, 548-49 (Mo. 1955); *Kammerer v. Wyeth*, 2012 WL 13033732 at * 3 (D. Neb. Jan. 31, 2012); *Taylor*, 795 F.3d at 817. Therefore, Defendants' experts' invoices and retention agreements are discoverable so their financial interest can be exposed to the jury.

The financial interest of Defendants' retained experts is a conceivable reason Defendants would seek to suppress its discovery. Their experts make tens and even hundreds of thousands of dollars each year through litigation work, and millions of dollars over the course of their careers.[1] Defendants' air modeler spends half of his time working on litigation matters and the other half doing consulting work for environment-polluting corporations.[2] Defendants' pediatrician switched from full-time to part-time work for his employer during the same

---

[1] Dr. Shahrokh Rouhani Jan 22, 2020 Dep. ("Rouhani") 43:2-11 (Ex. 1); Dr. Teresa Bowers Jan. 8, 2020 Dep. ("Bowers") 33:22-34:7 (Ex. 2); Dr. Elias Chalhub Feb. 19, 2020 Dep. ("Chalhub") 105:16-106:13, 114:18-115:7 (Ex. 3); John Connor May 12, 2020 Dep. ("Connor") 32:13-18 (Ex. 4).
[2] Gale Hoffnagle Jan. 28, 2020 Dep. ("Hoffnagle") 40:21-41:16 (Ex. 5).

3

timeframe that he started working on this case. Given his change in employment, it is in his interest to receive extra income by serving as Defendants' expert.[3] These are just a few examples of bias elicited during Defendants' experts' depositions.

Although some evidence of compensation and bias was obtained during the depositions, the testimony is incomplete. Each expert was "unable" to reliably estimate reasonably their hours spent on the case or their total charges and gave noncommittal responses.[4]

None of Defendants'14 expert consultants could confidently testify to the number of hours they had billed in the case and the majority of the experts were unable to provide an estimate of the total amount billed to the litigation as of the date of giving their deposition. Their deposition testimony does not provide accurate information about their compensation. Withholding this information prejudices Plaintiffs by preventing counsel from cross-examining these witnesses on a vital topic; their bias.

   III.    <u>The parties' recollections of their past agreement are immaterial to the issue.</u>

Given there was no meeting of the minds between the parties regarding the agreement regarding production of expert billing records, there is no basis for Defendants to claim detrimental reliance on an undocumented agreement. Defendants claim production after the depositions deprives their experts the ability to explain their billing.  However, this claimed prejudice is unsubstantiated and minimal if it exists.  Defendants may elicit testimony at trial to explain any aspects of their experts' billing that were not covered in their depositions.

---

[3] William Banner March 2, 2020 Dep. ("Banner") 38:16-39:9 (Ex. 6).
[4] Dr. Barbara Beck Dec. 19, 2019 Dep. 39:16-43:3 (Ex. 7); Bowers at 13:21-17:20; 21:5-22:15; 26:21-28:12; 33:11-37:24 (Ex. 2); Chalhub at 107:8-113:3 (Ex. 3); Connor at 26:2-29:17; 38:16-39:17 (Ex. 4); Macey at Dep. 22:14-26:21; 32:5-36:14 (Ex. 8); Angela Morelock Jan 15, 2020 Dep. 33:19-38:21 (Ex. 9); Rouhani at 52:6-17; 74:13-76:24; 76:25-77:14 (Ex. 1); Hoffnagle at 27:1-15; 28:7-29:6; 32:7-14; 33:3-6 (Ex. 5).

While Defendants argue that Plaintiffs should have, and did, discover this information during depositions, the witnesses were either not prepared to answer compensation questions, or were evasive. Without records, Plaintiffs are deprived of an essential source of information to show bias. Moreover, whether Plaintiffs asked about this topic during deposition is irrelevant. The provisions of Rules 26(b)(4)(B) and (C) apply to all forms of discovery, and nothing in the Federal Rules or otherwise restricts the form of discovery on this topic. FED. R. CIV. P. 26(b)(4)(B) and (C) advisory committee's note to 2010 amendment.

IV.     The Court should order expedited discovery of expert billing and retention records.

The Court has discretion to manage discovery to allow Plaintiffs to request the records sought here. FED. R. CIV. P. 34(b)(2)(A) (a court may order a shortened timeframe to respond to requests for production of documents). If the parties must revert to a formal written request, with a 30-day response deadline, the incentive for parties to address these matters informally is substantially reduced.  In this case, the formal process has been exhausted and this narrow issue, production of expert invoices and retention records, is clearly defined and ripe for ruling.

## CONCLUSION

WHEREFORE Plaintiffs ask that the Court order the parties to produce, by September 1, 2020 any retention agreement(s) showing who retained the expert and the terms of the retention, and all billing invoices reflecting fees and expenses charged by each expert and paid by each party for all time spent by the expert on the case through August 31, 2020. Plaintiffs specifically request that the Court not order production of these records before the conclusion of rebuttal expert depositions, which are set to conclude on August 17, 2020. Ordering production of these records before that date would unfairly disadvantage Plaintiffs, who did not have the opportunity to question Defendants' witnesses about their compensation records.

July 10, 2020

Respectfully submitted,
SCHLICHTER, BOGARD & DENTON, LLP

By:   /s/ Elizabeth Wilkins
JEROME J. SCHLICHTER #32225
ROGER DENTON #30292
NELSON G. WOLFF #40796
KRISTINE K. KRAFT #37971
ELIZABETH M. WILKINS #61284
100 South 4th Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
(314) 621-7151 (fax)
jschlichter@uselaws.com
rdenton@uselaws.com
nwolff@uselaws.com
kkraft@uselaws.com
bwilkins@uselaws.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 10th day of July, 2020, a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.

  /s/ Elizabeth Wilkins