UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.O.A., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:11-CV-44-CDP |
| | ) |
| DOE RUN RESOURCES CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

TELEPHONIC STATUS CONFERENCE

BEFORE THE HONORABLE CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

JULY 28, 2020

APPEARANCES:

| | |
|---|---|
| For Plaintiffs | Elizabeth Wilkins Flieger, Esq. |
| | Jerome J. Schlichter, Esq. |
| | Kristine K. Kraft, Esq. |
| | Nelson G. Wolff, Esq. |
| | **SCHLICHTER BOGARD & DENTON, LLP** |
| | |
| For Defendants | Thomas P. Berra Jr., Esq. |
| Doe Run Resources | **LEWIS RICE LLC** |
| Corporation, | |
| Marvin K. Kaiser, | |
| Albert Bruce Neil, | |
| Jeffrey L. Zelms, | |
| Theodore P. Fox III | |

**(APPEARANCES CONTINUED ON PAGE 2)**

*REPORTED BY:*      *Gayle D. Madden, CSR, RDR, CRR*
*Official Court Reporter*
*United States District Court*
*111 South Tenth Street, Third Floor*
*St. Louis, MO  63102       (314) 244-7987*
(Produced by computer-aided mechanical stenography.)

Case: 4:11-cv-00044-CDP  Doc. #: 1124  Filed: 08/04/20  Page: 2 of 32 PageID #: 31772
7/28/2020 Telephonic Status Conference

2

**APPEARANCES CONTINUED:**

| | |
|---|---|
| For Defendants<br>D.R. Acquisition Corp.,<br>The Renco Group, Inc.,<br>Ira L. Rennert,<br>Doe Run Cayman Holdings<br>LLC | Jeffrey R. Hoops, Esq.<br>**DOWD BENNETT LLP** |
| For Defendants<br>Doe Run Resources<br>Corporation,<br>Marvin K. Kaiser,<br>Albert Bruce Neil,<br>Jeffrey L. Zelms,<br>Theodore P. Fox III,<br>D.R. Acquisition Corp.,<br>The Renco Group, Inc.,<br>Ira L. Rennert,<br>Doe Run Cayman Holdings LLC | Andrew T. Bayman, Esq.<br>Geoffrey M. Drake, Esq.<br>Tracie J. Renfroe, Esq.<br>**KING & SPALDING LLP** |

1          (Proceedings commenced at 10:05 a.m.)

2          THE COURT:  Good morning.  This is Judge Perry, and

3  we are here on the Doe Run case, 4:11-CV-44, for a telephone

4  status conference, and so I would ask if I can hear from the

5  Plaintiffs' lawyers; which -- tell me who is here on behalf of

6  the Plaintiffs.

7          MR. SCHLICHTER:  Jerry Schlichter.

8          MR. WOLFF:  Nelson Wolff, Kris Kraft, and Beth

9  Wilkins.

10          THE COURT:  Okay.  And who is here on behalf of the

11  Defendants?  Do you want to start with the Renco Defendants?

12          MS. RENFROE:  Good morning, Your Honor.  This is

13  Tracie Renfroe of King & Spalding for all of the Defendants.

14          THE COURT:  Okay.

15          MR. BAYMAN:  Good morning, Your Honor.  Andrew

16  Bayman, King & Spalding, on behalf of all of the Defendants.

17          MR. DRAKE:  And good morning, Your Honor.  Geoffrey

18  Drake, also from King & Spalding, for all the Defendants.

19          MR. HOOPS:  Good morning.  This is Jeff Hoops, from

20  Dowd Bennett, on behalf of the Renco Defendants.

21          THE COURT:  Okay.  Others --

22          MR. BERRA:  And this is --

23          THE COURT:  -- on for Defendants?  Go ahead.

24          MR. BERRA:  Yes, Your Honor.  Thank you.  This is Tom

25  Berra, from Lewis Rice, for Doe Run Resources Corporation and

1    the Doe Run Resources individual Defendants.

2         THE COURT:  Okay.  Anybody else on the line for the

3    Defendants?

4         Okay.  So thank you for sending in the -- the things

5    to discuss, and I'll start with the list you all had provided

6    and then talk about other things.  What's the issue with the

7    status of the depositions of Plaintiffs' rebuttal experts?

8         MR. DRAKE:  Good morning, Your Honor.  This is

9    Geoffrey Drake for the Defendants.  Fortunately, I'm pleased

10   to report there are no issues.  We just wanted to let Your

11   Honor know that all is progressing smoothly in that regard.

12   The Defendants have completed three of the seven depositions

13   we intend to take of the Plaintiffs' rebuttal experts.  The

14   remaining four are scheduled over the next coming weeks.

15        THE COURT:  Great.  So that's good to know.  All

16   right.  Thank you.

17        And then additional fact depositions -- what's that

18   issue?

19        MR. BERRA:  Your Honor, this is Tom Berra.  We have

20   discussed with Ms. Kraft and Ms. Wilkins, in a preliminary

21   call, the fact that we have additional fact witnesses that the

22   defense is contemplating whether to take, and there's a bit of

23   a history there, Your Honor.  We had, obviously, served

24   discovery requests on the Plaintiffs years ago requesting

25   identification of witnesses that would be testifying at trial,

1  the witnesses upon whom the Plaintiffs were relying.  You may

2  recall also that we had not received Rule 26 disclosures in

3  the traditional sense from the Plaintiffs.  So

4  fast-forwarding, as a defense group, we had been asking the

5  Plaintiffs to provide us with answers to that discovery and to

6  serve the Rule 26 disclosures, including the witness list

7  that's required under the rule, for quite some time.  The

8  Plaintiffs agreed to do that and had eventually committed to

9  getting that list to us on July 3rd.  That deadline then

10  passed.  They had asked for extension to July 10th, which we

11  agreed to, and then, ultimately, that date also passed, and we

12  finally received the discovery responses and the first Rule 26

13  listing of witnesses on the 17th of July.

14        We reviewed that and determined that there were

15  somewhere between 10 and 15 witnesses that were disclosed on

16  that list that for the first time, from our perspective, it

17  appeared that the Plaintiffs might be relying on these folks

18  at the trial of the case.  So we brought up the fact that we

19  were still analyzing those folks.  And these are third-party

20  witnesses, Your Honor.  These are not defense company

21  employees or Plaintiff family members.  These were third-party

22  individuals from a variety of different sources.  We indicated

23  that in reviewing that we were contemplating what we needed to

24  do about them, and we asked, in a precall, if the Plaintiffs'

25  group would agree to a 60-day extension of the pending

1   deadlines beginning with the August 24 discovery cutoff and

2   then moving seriatim through the coming briefing schedule,

3   give everyone an opportunity to sort through that list and, as

4   necessary, tee up depositions -- these folks are not in

5   St. Louis -- to get those things accomplished.  Plaintiffs'

6   counsel has declined our request for that brief extension.

7         Obviously, Your Honor, our position on that is quite

8   simply that, you know, the case, obviously, has been pending

9   for quite some time, but we have never seen this list before.

10   We have never seen an identification of these people until,

11   literally, 11 days ago, and from our perspective, it seemed

12   more than reasonable to simply work together in an orderly

13   fashion to get that accomplished.

14         We also have certain witnesses that are teed up for

15   deposition already before the discover cutoff, and it appears

16   that most of the days between now and then where all of the

17   counsel are available are essentially spoken for with

18   depositions of experts and some of these additional

19   third-party witnesses.  So because of that, again, Your Honor,

20   we simply made that request.

21         We also have some other issues with the disclosure

22   that we may need to discuss with Your Honor, but I'm going to

23   hold on that for now, and I think that tees up the issue that

24   we were wanting to address in paragraph two there.

25         THE COURT:  Okay.  Let me ask you this, Mr. Berra.

7

1   Who are these people, and where are they located?  I mean just

2   generally.  They're not -- are any of them in Peru, or are

3   they here?

4           MR. BERRA:  The witnesses that were disclosed by the

5   Plaintiffs, Your Honor, are not in Peru.  They are throughout

6   the United States.  They include a variety of third parties,

7   including some of the what I would call NGOs that were

8   involved in different matters down in Peru over the years.

9   There is one local person, a woman named Leslie Warden.

10  Angela Hobson at Washington University is local as well, but

11  there are a variety of people.  One is in Pittsburgh.  They

12  did identify the Cardinal of Peru, Cardinal Barreto, who is

13  based in Peru.  It's unclear to us whether or not, of course,

14  they actually intend to have the Cardinal testify.  We don't

15  know, but again, we are just beginning the process of sorting

16  through this list, and we'll need to sit down with the

17  Plaintiffs, frankly, and understand where these are going and

18  try to determine if and how and when we'll be able to tee

19  these folks up for deposition.

20          Some of these appear to be potentially pretty

21  important witnesses.  It was never clear to us, obviously,

22  again, until 11 days ago that the Plaintiffs were intending to

23  list them as potential trial witnesses.  So we're trying to

24  sort through that.  We're not suggesting, Your Honor, that

25  every one of these people is going to be deposed.  We're not

Case: 4:11-cv-00044-CDP  Doc. #:  1124  Filed: 08/04/20  Page: 8 of 32 PageID #: 31778
7/28/2020 Telephonic Status Conference

8

1  sure yet, but it may be as many as 10 to 15, and as we said,

2  we're not asking for, you know, let's just put everything on

3  hold.  We're simply asking for two months to sort through all

4  of this, complete discovery, and essentially be in a position

5  to box up for Your Honor the completed record for the various

6  motions that are going to be filed.  We've, obviously, been

7  working for a very long time to get all of that ready, and

8  what we don't want to do is engage in some sort of a piecemeal

9  presentation for Your Honor.  I don't think that's the right

10  thing to do for you, and it could really complicate the

11  process of getting through these motions.

12          THE COURT:  Okay.  I'll hear from the Plaintiffs on

13  this.

14          MR. WOLFF:  Good morning, Your Honor.  This is Nelson

15  Wolff.  Mr. Berra made reference to 10 or 15 individuals that

16  he claims that the Plaintiff identified for the first time in

17  the Rule 26(a) disclosure that was issued 11 days ago, but in

18  fact, I believe what he is pointing to is only six witnesses

19  who are not the Plaintiffs or their next friends or

20  Defendants' witnesses or the Plaintiffs' experts.  Those six

21  witnesses that are at issue -- and Your Honor correctly

22  identified that some of these witnesses are in the St. Louis

23  area.  In fact, four of them are identified as being in the

24  St. Louis area.  Two of them are missionaries.  One is the

25  Archbishop, not the Cardinal, I don't think.  I think it's

9

1   just the office of the Cardinal.  And the other individual is

2   somebody with the St. Louis University School of Public Health

3   who authored a study that has been well-known to Defendants

4   since the beginning of this case.  The study was published in

5   2005.

6          So we also have asked Defendants who among these six

7   individuals, many of whom have been identified for a long

8   time, they actually want to depose, and they have not

9   identified any of them that they want to depose despite 11

10  days passing.  So I don't think that this issue is ripe for

11  Your Honor's consideration.  I think in fact the issue of the

12  fact witness depositions that were identified at Defendants'

13  request on the status report has to do more with the six

14  witnesses that they have identified, including at least one,

15  maybe more, that were identified for the very first time in

16  their 26(a) disclosures that were supplemented right around

17  the same time that we did, and two of those were issued notice

18  of deposition just today or yesterday.  We're still reviewing

19  those, but we believe it's premature at this point in time to

20  talk about extending for two months the discovery deadline

21  with Defendants also requesting additional delays in the

22  briefing scheduling for *Daubert* and motions for summary

23  judgment, which they didn't mention to you but which they

24  raised with us in the meet-and-confer conference yesterday.

25          THE COURT:  Okay.  Well, yeah, this is obviously a

1  problem.

2          MR. BERRA:  If I may, Your Honor, just briefly

3  respond.

4          THE COURT:  Yeah.  Go ahead.

5          MR. BERRA:  There are at least seven people.  There

6  was another individual that Mr. Wolff left off the list.

7  There were seven people not included in the list, but, again,

8  there are some other individuals in that group that we're

9  contemplating about depositions, but our need for depositions

10  of some Peruvians is not factoring into that.  We did discuss

11  with them the fact that we have additional witnesses to depose

12  who are not in this country and who have been challenging to

13  communicate with and certainly challenging to get available

14  for deposition because of the COVID situation in Peru, which

15  is very dramatic and has been impacting a variety of things.

16  There's been a national emergency in Peru for many months down

17  there, but that is not the issue that was brought up.  The

18  issue that we're talking about entirely relates to this group

19  of witnesses.

20          In addition to that, Your Honor, the Plaintiffs

21  have -- have purported to identify virtually the entire

22  community of La Oroya as potential witnesses.  There are

23  dramatic catchall identifications of witnesses in that group,

24  and we're sorting through that and asked the Plaintiffs'

25  lawyers specifically to tell us which other witnesses they

Case: 4:11-cv-00044-CDP  Doc. #: 1124  Filed: 08/04/20  Page: 11 of 32 PageID #: 31781
7/28/2020 Telephonic Status Conference

11

1    were talking about so that we could determine whether or not

2    there was an additional group in there.

3         But our witnesses, the Peruvian witnesses that

4    Mr. Wolff is referring to, we do have some already scheduled,

5    and we are working to get the balance of them scheduled prior

6    to the completion of the deadline.  We did discuss with

7    Plaintiffs' counsel that dealing with all of these in an

8    orderly fashion might be to everyone's benefit, but we have

9    been working and committed to attempting to get those all

10   completed, in fact, by the deadline.  So that is not the issue

11   that's driving the discussion today.

12        And, Your Honor, one other last point is the

13   witnesses that we're talking about that Mr. Wolff is

14   suggesting there are only six -- in fact, seven in the Rule 26

15   disclosures -- there are additional witnesses that are

16   included in the discovery responses that we just received on

17   the 17th.  So we, essentially, received three different sets

18   of responses.  So the additional individuals that I'm talking

19   about -- some of those are included in those responses.  There

20   is a variety of different witness lists that we received from

21   the Plaintiffs that we're in the process of examining.  So I

22   just wanted to make that point as well.

23        THE COURT:  Okay.  Well, you all are going to have to

24   meet and confer on this some more before I try to resolve it

25   and whether there should be an extension.  So what about I

1   talk to you all at -- I don't know -- next week on this issue

2   and give you all time to talk about it and actually identify

3   what it is exactly that everybody thinks they still need to

4   do, and so I don't want to interfere with your deposition

5   schedule, but what about next week sometime?  We could do

6   Thursday or I -- you know, I'm fairly open next week actually.

7   What -- you know, what about having any telephone --

8        MR. BERRA:  I think Wednesday would be better for us,

9   and Mr. Drake can chime in on that, but I think that would be

10  the better day for us, Your Honor, if it works for you.

11       MR. DRAKE:  We do have -- this is Geoffrey Drake,

12  Your Honor.  We do have expert depositions on Wednesday and

13  Thursday in these matters.

14       MR. BERRA:  Yeah.

15       THE COURT:  Would you be ready to talk to me on

16  Tuesday?

17       MR. DRAKE:  I think if that date works for -- I'll

18  let Mr. Berra speak to his schedule, if he has --

19       MR. BERRA:  Yes.

20       MR. DRAKE:  -- on this particular issue, Your Honor.

21       MR. BERRA:  Yes, we can do it then.

22       THE COURT:  Okay.  So Tuesday, you can do it?  Is

23  that -- I can't -- I'm not quite sure I got what you said.

24       MR. DRAKE:  Yes, Your Honor.

25       THE COURT:  Okay.  Let's do Tuesday at noon.  So

Case: 4:11-cv-00044-CDP   Doc. #: 1124   Filed: 08/04/20   Page: 13 of 32 PageID #: 31783
7/28/2020 Telephonic Status Conference

13

1   Tuesday, August the 4th, at 12:00 noon for a telephone hearing

2   conference.  It will be on the record, just as these are, and

3   what I'd like you to do is meet and confer, and if there's

4   anything you can send me, I guess I would say after you've met

5   and conferred, see if you have any joint agreements, and if

6   you do, file them by 5:00 on -- on -- file some kind of a

7   status report by 5:00 on Monday, telling me, you know, what

8   we're going to be talking about, what you've resolved, and

9   what you're still arguing about, and -- and you'll have to --

10  you know, you need to be much more precise than you are now.

11          MR. BERRA:  Okay.

12          THE COURT:  And tell me what the problems are and

13  then tell me each side's proposed solution and -- because the

14  discovery cutoff deadline is coming right up.  So if we're

15  going to change anything, we need to figure it out quickly,

16  but -- so I'll talk to you all, set the next hearing for

17  Tuesday, August the 4th, at 12:00 noon.

18          MR. BERRA:  Thank you, Your Honor.

19          THE COURT:  Okay.  So now tell me about what you all

20  talked about in terms of trials.  I asked you to talk to each

21  other about how things might look at a trial -- you gave me

22  some ideas last time -- and how we would -- how we would do

23  it, whether we should schedule it now or should wait.  So who

24  wants to start off on that -- the Plaintiffs or the

25  Defendants?

1          MR. WOLFF:  I think the Plaintiffs will take a stab

2   at this one, Your Honor.  This is Nelson Wolff.  Following the

3   last conference that we had, I reached out to defense counsel

4   on July 10 with a proposal, to which they responded 12 days

5   ago, and we concluded our discussion just last week or maybe

6   it was yesterday.

7          In any case, Your Honor, to be brief, Plaintiff

8   proposed that out of the 16 Plaintiffs that have been worked

9   up from a medical standpoint that we would propose two

10  separate trials of groups of eight Plaintiffs in order to

11  determine the common questions of law and fact in a way that

12  would be efficient in the way of time and costs but also to

13  provide the Court and the parties with a broader sampling of

14  verdict values to enable mass disposition and valuation of the

15  cases.  Defendants' response was that they only wanted to try

16  one Plaintiff in the first trial.  That's where we stand.

17  There was no need to have a further discussion unless we could

18  reach an agreement on the numbers, and so we wanted to advise

19  you of that status.

20          THE COURT:  Okay.  And if it's one Defendant, you all

21  think somewhere between a month and two months?

22          MS. RENFROE:  Your Honor, this is Tracie Renfroe for

23  the defense.  If you are prepared to hear from us, I'm --

24  I'm -- I would like to address --

25          THE COURT:  Go ahead.  Yeah.

7/28/2020 Telephonic Status Conference

15

1        MS. RENFROE:  -- this issue.  Thank you very much.

2        It is true that the Plaintiffs have proposed two

3   separate trials of eight Plaintiffs each, and it's also true

4   that the defense has proposed as -- as the first trial a

5   single-Plaintiff case, a single-Plaintiff trial.  However, we

6   really have not had any meaningful meet and confer on this

7   issue.  We've simply exchanged emails, and I think that there

8   is some value in at least taking another few weeks to discuss

9   it to see if we could bridge our differences.  I -- I -- we

10  feel very strongly about the importance of a single-Plaintiff

11  trial.  I'm sure the Plaintiffs feel strongly about that it

12  ought to be eight Plaintiffs, but there is room for

13  compromise, I would hope, and what we -- I think the common

14  objective that we both have -- we may not have a lot in

15  common, but I think we both are interested in -- both sides

16  are interested in a trial outcome that can inform all the

17  parties in the most meaningful way to try and set the rest of

18  the docket up for -- for resolution, and that's what we're

19  striving to have.

20        The second consideration that's of paramount

21  importance is the length of the trial.  We are very concerned

22  because while there may be some issues in common, there are

23  more issues that are unique to each of these Plaintiffs, and

24  the nature of the allegations is such that we have to

25  literally look at each particular Plaintiff's lifetime, both

1  of exposure and causation and their ability to -- what they've

2  been able to do in terms of education and employment, and so

3  you're talking -- you're not talking about a one-shot instance

4  about a given Plaintiff's history.  You're talking about

5  looking at each of their lifetimes of both exposure,

6  causation, and to the extent there's harm or damage, and when

7  you talk about doing that for more than one Plaintiff, when

8  we've already got between the Plaintiffs and the defense over

9  20 experts, dozens of fact witnesses likely to be called,

10 you're talking about a very, very extensive, lengthy trial,

11 not to mention the risk of confusion by the jury.

12         So there are a number of issues.  This is very

13 complicated, and I respectfully suggest that we at least take

14 the next few weeks to have some voice-to-voice,

15 lawyer-to-lawyer engagement to see if we can bridge the

16 difference between their proposal and our proposal, and then,

17 hopefully, we could at least narrow our differences and then

18 submit briefs to the Court.  That's the proposal from the

19 defense.

20         MR. WOLFF:  May I respond to that, Your Honor?

21         THE COURT:  Yes, Mr. Wolff.

22         MR. WOLFF:  So the communications that I had were

23 addressed to all defense counsel, and the one who took the

24 lead on that was Mr. Drake.  At no point in time did

25 Ms. Renfroe weigh in or offer any of these suggestions during

1  that time, which spanned a period of two weeks.  This is the

2  very first time that any Defendants are suggesting that there

3  is a willingness to consider a multiple number of Plaintiffs

4  in a trial.  It was a very dismissive email that we received

5  yesterday morning that said Defendants' position is that the

6  first trial should involve only one Plaintiff, and that's it.

7  I don't think that there's genuine interest in moving forward

8  on this.  If there was, then something really should have been

9  done over the period of the last two plus weeks that we've

10  been having these discussions.

11         But as to the substantive issue that Ms. Renfroe

12  raises, these have all been discussed with Defendant.  Yes,

13  it's been done by email, but there was no indication that

14  owned communications would have been any more productive given

15  the definitive final response of only wanting to do one

16  Plaintiff at a time, but we did discuss balancing the risk of

17  confusion, which could be addressed with appropriate

18  limitations and appropriate jury instructions, but there's

19  confusion just in one single case if you look at it from any

20  perspective, particularly Defendants'.  There are complicated

21  environmental and health care issues here, but presenting

22  multiple Plaintiffs who have the same types of issues in their

23  cases doesn't necessarily add significantly to any of that

24  inherent confusion.  That's why both sides have lots of

25  experts to help clarify and make very clear to the jury what

1   these issues are.

2        Adding additional Plaintiffs -- while it will add

3   some time, certainly, it is less time than talking about doing

4   serial cases of individual or smaller groups of Plaintiffs as

5   the Defendant has suggested because the common issues of both

6   law and fact for all of these Plaintiffs predominate the

7   so-called unique issues, which really are just matters of the

8   varying degrees of damages sustained by each of the

9   Plaintiffs.

10        In our rough estimate as to a trial for the eight

11  Plaintiffs that we propose, not yet selected, but eight out of

12  the 16, we believe that with appropriate time constraints and

13  economy of scale that that could be presented within a period

14  of two or three months.  Yes, that is longer than it would be

15  with one, but if we're talking about doing 12 trials or even

16  six trials, four trials, or whatever -- take your number --

17  it's still going to conserve judicial resources and costs to

18  do a group of eight.

19        MS. RENFROE:  Your Honor, if I may respond.  Tracie

20  Renfroe.

21        THE COURT:  Go ahead.

22        MS. RENFROE:  Thank you very much.  I strongly

23  disagree with Mr. Wolff that there -- that the common issues

24  predominate over the individual issues, and this is exactly

25  why, number one, we really do need to have some lawyer

Case: 4:11-cv-00044-CDP   Doc. #: 1124   Filed: 08/04/20   Page: 19 of 32 PageID #: 31789
7/28/2020 Telephonic Status Conference

19

1   engagement and, number two, if we can't reach agreement we

2   need to brief the issues to the Court.  I think everybody is

3   interested in getting a trial structure that will result in

4   a -- a verdict that everyone has confidence in and that will

5   be a meaningful indicator of the value of these cases.  I can

6   assure you that trying eight Plaintiffs with this many

7   experts, this many fact witnesses over -- and each one of

8   these Plaintiff's lifetime -- I don't think a two- to

9   three-month estimate is accurate, and I think we ought to

10  address that in the briefing to the Court if we get -- if

11  we're not able to reach agreement on this.

12          Let me also add we've heard nothing from Mr. Wolff

13  but a "take it or leave it" position.  I don't believe that

14  really is their position, but we've not had the engagement I

15  think we should.  For better or worse, right or wrong, the

16  fact is I think -- and I'm prepared to take this on personally

17  with Mr. Wolff -- that if we can have some discussion, I think

18  we can at least find some common ground on some of the aspects

19  about selecting a trial, whether it's the number of Plaintiffs

20  or how they are to be selected or the issues to be tried, but

21  the exchange of emails between the parties -- while that's a

22  start, we need to be doing more, and that's my suggestion.

23          THE COURT:  So, Ms. Renfroe, under your suggestion,

24  when would you be prepared to do this, and when would you be

25  filing these briefs if you aren't in agreement?

20

1      MS. RENFROE:  Well, I'm prepared to continue

2   discussions with Mr. Wolff this week.  I've got depositions

3   and hearings in another case.  I would like to have the

4   benefit of next week to have discussions with him or anybody

5   on his team, and if at the end of next week or the week after

6   that -- let's say -- let's -- I mean I think we ought to at

7   least give this a meaningful shot and take the first week or

8   two of August.  If we can't close our differences by then, I

9   would hope we could at least narrow them and then be prepared

10  to submit briefing to the Court either by the end of August or

11  early September, bearing in mind that we're also wrapping

12  up -- we're working on our summary judgment briefing, but that

13  would be my suggestion.

14      MR. SCHLICHTER:  Your Honor, this is Jerry

15  Schlichter.  Could I add a point?

16      THE COURT:  Yes.  Go ahead.

17      MR. SCHLICHTER:  This issue of multiple trials --

18  yeah, this issue of multiple trials versus single [audio

19  cutout] is a very repeated issue that comes up as to our

20  cases.  Going back to the first mass tort case --

21      THE COURT:  Mr. Schlichter, Mr. Schlichter, I'm

22  having trouble hearing you.  You seem to be cutting out a

23  little bit --

24      MR. SCHLICHTER:  I'm sorry.  Okay.  I'm sorry.  Can

25  you hear me now?

1      THE COURT:  -- so it's a problem.  Yeah, that's much

2  better.

3      MR. SCHLICHTER:  Yeah.  Going back to the first mass

4  tort case in St. Louis many years ago, which was the Missouri

5  Times Beach dioxin case that Lewis Rice and my office at the

6  time were involved in, this was looked at in-depth with --

7  this was in state court, but Judge Sanders at the time looked

8  all over the country at mass tort cases.  The same arguments

9  were made -- one at a time, which means forever, and the

10  parties don't get a cross-section look at a variety of cases

11  for purposes of disposition in the long term because you can

12  get, obviously, aberrant verdicts.  You get certain facts in

13  one case that are not repeated in another, certain medical

14  conditions, and that's why Judge Sanders, in the first mass

15  tort case in St. Louis, decided to have a multiple-plaintiff

16  trial in that case as well.  That case involved 400 venire

17  people who were called in for the first trial and settled at

18  the courthouse during that process with Lewis Rice on the

19  other side.

20      So in terms of the idea that one case is going to

21  give a look at what these cases might be worth -- to the

22  extent that's a factor, apart from the efficiencies of not

23  having the same experts come in over and over again on air

24  modeling and all the other generic issues that are the same,

25  beyond that, the parties end up with one trial and don't have

22

1   a look the same way they would if we had eight.  So I think

2   that is a very important consideration for the Court's economy

3   and efficiency in trying to resolve this litigation overall.

4           THE COURT:  Okay.

5           MS. RENFROE:  Your Honor, if I may respond --

6           THE COURT:  No.  That's okay.  I've heard enough on

7   this.  What I want you to do is what Ms. Renfroe proposed,

8   that you all discuss what you're doing, talk and see if you

9   can reach any compromise on this, and if not, I would like you

10  all on September 15th to file simultaneous briefs, no more

11  than 10 pages.  We don't need any exhibits because I'm not --

12  whatever you said to each other in your meetings doesn't

13  matter to me at that point; I just want to hear what your

14  final positions are, or, you know, I want to hear what you're

15  saying to me at that point.  So just give me 10 pages each,

16  simultaneous, September 15th, on your positions of trial, and

17  then I will look at that and give you a ruling and figure out

18  what we're going to do.

19          And I -- you know, one of the issues is I can't -- I

20  imagine that it will take -- I suspect scheduling may be a

21  difficult issue for setting this trial, but I -- you know, we

22  need to start working on how this is going to look, so -- and

23  so I -- we'll -- you know, that's what I'd like you to do.  So

24  let's do that.

25          And then I guess, you know, everything -- I mean it's

1   not surprising; I mean, as we all know, when you get closer to

2   the end of these deadlines, everybody starts fighting about

3   the stuff that -- you know, "Oh, my goodness, we've got to get

4   this done," and so you all have been very cooperative lately,

5   and I really appreciate it, and I do understand why, as we're

6   getting close to the end, you're now fighting about

7   everything, but maybe you can work something out on that and

8   some other things.

9          Now, on mediation, have you all -- I assume -- I mean

10  has there been any progress or even a structure set up or a

11  discussion about whether there's anything to be done or you're

12  just going to file the summary judgment motions and

13  everybody's going to dig in their heels, and, you know, we'll

14  worry about mediation maybe later, before trial.  Any

15  conversations or anything you think you can report to me about

16  getting in touch with Mr. Perry or -- I don't know what

17  happened in the *Collins* mediation or if it even went forward.

18  I had an idea maybe it didn't happen.  Let's start with that.

19  What's your report on what happened at the *Collins* mediation?

20  I mean just the results from the --

21          MR. BAYMAN:  Your Honor --

22          THE COURT:  Yeah.  Go ahead.

23          MR. BAYMAN:  Excuse me, Your Honor.  Andrew Bayman

24  for the Defendants.  Unfortunately, due to the spike in COVID,

25  the *Collins* mediation has been postponed.  The parties are

24

1   attempting to schedule something in the middle of September,

2   location to be determined given quarantine rules, and as I may

3   have told the Court, Mr. Juneau is in his eighties and is high

4   risk, and so it had to be postponed, but we are working with

5   the Plaintiffs' lawyers on getting it rescheduled.

6           THE COURT:  And so what -- what -- have you had any

7   discussions with the Plaintiffs' lawyers in this case about

8   trying to set up another mediation, either with John Perry or

9   with someone else?

10          MR. BAYMAN:  We have, Your Honor, and the Defendants

11  are open to having a further dialogue with Mediator Perry and

12  have indicated that.  Mr. Schlichter, as I understand it,

13  called Mr. Dowd and said he thought the parties were

14  significantly far apart that he didn't see it worth the time

15  and expense to do that with Mr. Perry, but the Defendants are

16  open to further dialogue with the mediator, which was our

17  suggestion, or without.

18          MR. SCHLICHTER:  Your Honor, this is Jerry

19  Schlichter.

20          THE COURT:  Yeah.  Go ahead.

21          MR. SCHLICHTER:  The prior mediation was the most

22  expensive mediation I've ever seen.  I could give you the

23  amount if you want to hear it, but it was quite expensive.

24  Defendants would not appear in St. Louis.  The mediator

25  traveled with another lawyer in his office to New York.

25

1        THE COURT:  I don't -- I don't need all the details.

2        MR. SCHLICHTER:  Okay.  All right.

3        THE COURT:  When you tell me it's the most expensive

4   you've ever seen, that means enough for me to know that it was

5   expensive, and there's --

6        MR. SCHLICHTER:  Okay.  So because that process ended

7   with no prospect of settlement and I was -- I've been involved

8   in the process, in the mediation part of this case from the

9   get-go.  After your order or your suggestion that we do

10  another round, I just called -- rather than go through the

11  mediator, I just called their -- King & Spalding's settlement

12  lawyer, Mr. Hooper, directly, and I said, "Let's" -- well, I

13  don't want to go into what I said.  I did that because I

14  wanted to short-circuit going through a process again that

15  would be a waste of time and money.  And we had direct

16  conversations.  After that communication, it was clear to me,

17  to us, that this process is not changed in any way.  There was

18  no change in the positions, and the prospect of anything

19  happening further at this point in time was nil.  So that's --

20  that was from the direct communication with the Defendants'

21  settlement attorney, and we see at no point -- at this point,

22  we see nothing further that's going to be productive by going

23  through a process now.  Obviously, we have been open to

24  settlement in this case from the beginning, but if there were

25  something that were prospect --

26

1          THE COURT:  Can you hold on?  No.  Go ahead.  Sorry.

2    You -- yeah.

3          MR. SCHLICHTER:  If there were a prospect of it, of

4    course, we'd be interested, Your Honor.  [audio cutout]

5    There's no prospect of that at this point, and unless there's

6    a very different posture, it would be a waste of time beyond

7    these direct communications we've had.

8          THE COURT:  Okay.  Well, I think that's all I need to

9    hear at this time about mediation.  I'm glad to know that

10   there is some -- some talk that -- you know, at least one side

11   is saying, "Well, we'll be happy to talk," but -- but, you

12   know, let's see what happens in the *Collins* mediation, see if

13   you all can be informed by that, and I -- you know, we'll --

14   we'll move forward.  We've got -- we know where we're headed

15   now.

16         So the -- hold on just a second.  Let me look at my

17   notes.

18         All right.  So here's -- here's what I have to

19   discuss with you.  I think in terms of follow-up from what

20   we've said here today, I will talk to you all next week, on

21   Tuesday, August the 4th, at noon, in another conference for

22   the purpose of talking about these additional fact

23   depositions, and you'll file something by August 3rd, end of

24   the day, perhaps file it at midnight, but anyhow, that tells

25   me what you've agreed on or what you haven't agreed on or what

1  we're fighting about so I have some idea.

2         And then on the issue of the trial, I want you to

3  continue meeting and conferring and then on the 15th file

4  simultaneous briefs of not more than 10 pages each, with no

5  further briefing, to just tell me what your positions are on

6  how the trial should look, and in terms of number of

7  Plaintiffs, I think that's the big issue.

8         And, you know, I will just tell you that in talking

9  to judges around the country, how well this works is just all

10  over the place, and I think everybody agrees that there's not

11  a perfect solution, and so I just -- you know, I've -- you

12  know, I don't know.  I think I'm not sure how -- I'm not sure

13  what's right on this.  I don't have any preformed opinions.  I

14  hate the thought of saying, okay, we'll just do them one at a

15  time because I don't know how many we'd get through before

16  there would be movement from anybody, but I do think that, you

17  know, I understand the thinking that goes into them, and I

18  hope that you all can reach some agreement or narrow it down,

19  but if you can't, then, you know, tell me what you want and

20  we'll do that.  I'm not going to order you to mediation or

21  anything at this time, not when you're telling me how far

22  apart you are.

23         But the issue hanging out from last -- our last

24  settlement or, I mean, our last status conference had to do

25  with the production of billing records from the -- for the

28

1   expert witnesses in retention agreements, and I looked at the

2   briefs that you all filed on that, and it appears to me that

3   there was a -- there is a difference of opinion on what you

4   agreed to.  No one can -- I mean I don't believe there's a

5   definitive answer on who's right and who's wrong about what

6   your agreement was, and so I am falling back on common sense

7   and the way this works.  Everyone is entitled to cross-examine

8   each other's expert witnesses at trial on their compensation

9   as a matter of showing bias of the experts, and I don't -- it

10  doesn't do anybody any good, and it's very frustrating to sit

11  in a trial; it's frustrating for jurors to have people try to

12  do that and have the expert say, "Oh, I don't know.  Somebody

13  else in my office handles that.  I have no idea."

14        This is information both sides should be armed with

15  when we get to trial.  So I am going to require it to be

16  produced, and I'm going to -- since we've had so many

17  conversations about it, I'm not going to require anybody to

18  file formal requests or briefs or anything else.  We've talked

19  about this.  It's discoverable.  It's admissible.  How much

20  are they making?

21        Now, I want you all to decide how that's going to be

22  because whatever each side does is going to be the same.  So

23  we're going to either -- is it going to be produced for each

24  expert we want their retention agreements, if there's more

25  than one, more than one, all of them, and we want every bill

Case: 4:11-cv-00044-CDP   Doc. #: 1124   Filed: 08/04/20   Page: 29 of 32 PageID #: 31799
7/28/2020 Telephonic Status Conference

29

1    they ever sent itemized by hour, rate, person, et cetera.

2    That's one way to do it.  Another way to do it is to have you

3    all agree on something more summary form that would be binding

4    on the experts.  In other words, I want something -- probably

5    what you'll need to have -- I don't -- you might agree to

6    something different, but is each expert who's actually

7    testifying to sign an affidavit close to trial saying, "This

8    is what I've charged" because if you just turn over the

9    records, the guy on the stand will say, "I don't know.  That's

10   up to somebody else.  I didn't have anything to do with it."

11        I would like you all to be able to show bias and not

12   have anybody wiggle out of it, and maybe once you do this,

13   you'll decide, you know, you don't really need to do that or

14   spend a whole lot of time on it at trial.

15        So I want you all to -- so my ruling is you're going

16   to have to produce evidence of what the compensation was that

17   is in a form that can be used at trial to impeach an expert

18   witness, and so that means something the witness himself or

19   herself will not try to disavow at the time of trial, and I

20   want you all to meet and confer and decide what that is.

21        If you can't reach agreement, then probably what I

22   would require -- I'm not positive, but most likely -- would be

23   the retention agreements and all bills plus an affidavit or

24   declaration from the expert, signed under penalty of perjury,

25   that this is what the expert has charged for the work in the

Case: 4:11-cv-00044-CDP   Doc. #:  1124   Filed: 08/04/20   Page: 30 of 32 PageID #: 31800
7/28/2020 Telephonic Status Conference

30

1   case.

2          But we don't -- we're not going to do that now.

3   We're going to do that when we get closer to trial.  You all

4   just need to have that in your mind and understand that that

5   will be what's required, but -- and I'm not going to set a

6   schedule at this point for when you're going to talk to each

7   other, et cetera, but that is what's going to be required, and

8   I hope that when we get close to trial, you all will make a

9   decision and work with each other and agree on how you'll do

10  it, but if you don't agree, then I've told you what I would

11  rule.  So that's the -- that's that issue.

12         What else is there that we need to discuss at this

13  time?

14         I will talk to you next week about the fact

15  depositions, fact witness depositions that you all have been

16  discussing.  So what I want to talk about is also everything

17  that's left.  Any agreements you have, I'd like to know the

18  status so we won't have further fights.  You know, have you

19  agreed to something in Peru?  Have you not?  Whoever is taking

20  it.  I don't care if it's the things that Plaintiff wants or

21  the things the Defendant wants.  I want to resolve any of that

22  stuff.  So I want you to meet and confer on everything that's

23  left that you think still needs to be done in terms of

24  depositions before the close of discovery.

25         Okay?  So that's what we'll do.  Anything further

31

1   from you all?  From the Plaintiffs, anything further?

2          MR. WOLFF:  No, Your Honor.  Thank you.

3          THE COURT:  From the Defendants, anything further?

4          MS. RENFROE:  No, Your Honor.  Thank you very much.

5          MR. BERRA:  Thank you, Your Honor.

6          THE COURT:  Okay.  Thank you all, and we'll -- I will

7   talk to you next week, and I don't have to have all of you on

8   the line.  I'm happy if you just designate a couple of people.

9   As long as I have one lawyer for each side, I'm happy, okay,

10  but whoever wants to participate may do so.

11         All right.  That -- that concludes this status

12  hearing, and I'm going to end the call.  Thank you.

13      (Proceedings concluded at 10:51 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

32

<u>CERTIFICATE</u>

I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 31 inclusive.

Dated at St. Louis, Missouri, this 3rd day of August, 2020.

*/s/ Gayle D. Madden*

_____

GAYLE D. MADDEN, CSR, RDR, CRR

Official Court Reporter