# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A., *et al.*, | ) | |
| | ) | Case No. 4:11-cv-00044-CDP |
| Plaintiffs, | ) | (CONSOLIDATED) |
| | ) | |
| vs. | ) | |
| | ) | |
| THE DOE RUN RESOURCES | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
THE OPINION TESTIMONY OF JACK V. MATSON UNDER FEDERAL RULE
OF CIVIL PROCEDURE 26, FEDERAL RULE OF EVIDENCE 702, AND *DAUBERT***

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................................1

II.  DR. MATSON'S DISCLOSURE IS IMPROPER UNDER RULE 26 .................................3

    A.   Plaintiffs' Response Proves Dr. Matson Did Not Disclose His
        Opinions in Accordance with Rule 26 ...................................................................3

        1.   Plaintiffs' Cannot Rely on Dr. Matson's Supplemental CSR
            Opinion to Cure His Failure to Disclose a Standard of Care
            Opinion .............................................................................................4

        2.   Dr. Matson Cannot Utilize Rebuttal Reports and Deposition
            Testimony to Disclose Opinions in the First Instance ...........................5

    B.   Substitute Experts Are Not Excused from Complying with Rule 26 ........................5

    C.   Dr. Matson's Rule 26 Violations Are Neither Justified Nor Harmless .....................8

III. PLAINTIFFS ARE WRONG THAT DEFENDANTS' RELIABILITY
    CHALLENGES GO TO WEIGHT, NOT ADMISSIBILITY .............................................11

    A.   Dr. Matson's Failure to Follow His Own Stated Methodology and
        Analyze Applicable Facts Mandates Exclusion of His Opinions ..............................11

    B.   Dr. Matson Failed to Analyze Peruvian Laws and Regulations ...............................11

    C.   Dr. Matson Failed to Conduct a Reliable Analysis of Defendants'
        Community Health Interventions ..........................................................................12

IV.  DR. MATSON'S REBUTTAL REPORTS DO NOT CURE THE
    DEFICIENCIES IN HIS DISCLOSURES AND OPINIONS ...............................................13

V.   DR. MATSON'S CSR OPINION IS NOT ADMISSIBLE ..................................................14

VI.  CONCLUSION ............................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
  829 F. Supp. 2d 802 (D. Minn. 2011) ..................................................................................12

*In re Bair Hugger Forced Air Warming Devices Prods. Liab.*,
  9 F.4th 768 (8th Cir. 2021) ................................................................................................12

*David E. Watson, P.C. v. United States*,
  668 F.3d 1008 (8th Cir. 2012) ...........................................................................................11

*Graystone Funding Co., LLC v. Network Funding, L.P.*,
  2022 WL 1063734 (D. Utah Apr. 8, 2022) .........................................................................15

*Hirata v. S. Nev. Health Dist.*,
  2016 WL 8603655 (D. Nev. Aug. 24, 2016) .......................................................................14

*Hirchak v. W.W. Grainger, Inc.*,
  980 F.3d 605 (8th Cir. 2020) .............................................................................................11

*Indiana Insurance Co. v. Valmont Electric, Inc.*,
  2003 WL 22244787 (S.D. Ind. July 31, 2003)......................................................................6

*Klingenburg v. Vulcan Ladder USA, LLC*,
  936 F.3d 824 (8th Cir. 2019) .............................................................................................12

*Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*,
  2010 WL 3892860 (N.D. Ind. Sept. 30, 2010) .....................................................................5

*Morel v. Daimler-Chrysler Corp.*,
  259 F.R.D. 17 (D.P.R. 2009) ...........................................................................................6, 8

*Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*,
  408 F.3d 410 (8th Cir. 2005) .............................................................................................11

*Palatkevish v. Choupak*,
  2014 WL 5463371 (S.D.N.Y. 2014).....................................................................................6

*Ricks v. Huynh*,
  2021 WL 2432028 (E.D. Va. Apr. 15, 2021) .....................................................................4, 7

*Shipp v. Arnold*,
  2019 WL 4040597 (W.D. Ark. Aug. 27, 2019)..................................................................6, 7

*Sikkelee v. Precision Airmotive Corp.*,
  2021 WL 392101 (M.D. Pa. Feb. 4, 2021) ...................................................................6

*Smith v. Cangieter*,
  462 F.3d 920 (8th Cir. 2006) ..................................................................................5

*United States v. Philip Morris USA Inc.*,
  2022 WL 1101730 (D.D.C. Apr. 13, 2022) .........................................................13

**Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................... *passim*

## I.    INTRODUCTION

Plaintiffs retained Dr. Matson after Dr. Cheremisinoff passed away to opine on the standard of care applicable to Doe Run Peru's operation of the La Oroya Complex.  Rather than conducting his own independent analysis and preparing a report that complied with Federal Rule of Civil Procedure 26(a)(2), Plaintiffs had Dr. Matson simply "adopt" the totality of Dr. Cheremisinoff's previous work in a one-sentence opinion.  Dr. Matson also supplied a supplemental "opinion" addressing Defendants' Corporate Social Responsibility ("CSR").  Defendants moved to exclude the testimony of Dr. Matson because (1) Dr. Matson's December 2020 report violated the requirements of Rule 26(a); (2) Dr. Matson conducted no analysis of his own to support his standard of care opinions, which lack the technical analysis and factual basis to be reliable; and (3) Dr. Matson is not qualified to opine on CSR issues and, regardless, he failed to conduct a reliable CSR analysis.  Plaintiffs' arguments in response are meritless and should be rejected.

*First*, no special rules allow "substitute experts" to avoid the basic disclosure requirements under Rule 26 applicable to all experts, as Plaintiffs assert.  "Substitute experts" still must produce a report that contains a complete statement of all opinions they intend to offer, including the factual bases supporting those opinions, just like everyone else. Dr. Matson's failure to do so warrants exclusion.

Plaintiffs are equally wrong that Dr. Matson's patently deficient disclosure was harmless error because he purportedly disclosed his opinions during his deposition and in his rebuttal reports.  On deposition, Dr. Matson refused to answer even the most basic questions about his opinions and the work performed by Dr. Cheremisinoff that he adopted—literally forcing Defendants to go line by line through almost 1,200 pages of Dr. Cheremisinoff's reports and deposition testimony in an unsuccessful attempt to glean both the opinions Dr. Matson intends to offer and the analysis he conducted to support them.  And now, even in their response brief,

Plaintiffs continue to obfuscate — they **still will not say** what steps Dr. Matson believes Doe Run Peru ("DRP") should have taken to satisfy the standard of care he contrived for this case. Plaintiffs' approach makes a mockery of Rule 26, violates the Federal Rules and established legal precedent, is profoundly prejudicial to Defendants, and cannot be cured.  If allowed, it will subject Defendants to the very "trial by ambush" the Federal Rules are designed to avoid.

*Second*, there is no merit to Plaintiffs' assertion that Defendants' arguments about the reliability of Dr. Matson's opinion testimony go to the weight and not admissibility of those opinions.  Dr. Matson admitted that he did not even attempt to verify or analyze the factual bases for the very opinions of Dr. Cheremisinoff that he purports to adopt.  Dr. Matson did not analyze Peruvian environmental laws and regulations, which he concedes is a required step in any reliable standard-of-care analysis.  He did no analysis of DRP's work to reduce emissions or the practicality of completing certain projects on an earlier timetable.  And he even concedes that he is not aware of any smelter operator in South America that had implemented the projects he says DRP should have implemented on the timeline he says should have been employed. Moreover, he is entirely unqualified to opine on the sufficiency or effectiveness of DRP's community public health and exposure mitigation programs, as proven by his "expert analysis," which consists of nothing more than parroting statements in reports and documents that others wrote.  Given this, Dr. Matson's opinions lack the factual support necessary to satisfy Rule 702 and *Daubert*.

*Finally*, Plaintiffs argue that Dr. Matson is a qualified CSR expert who conducted an appropriate CSR analysis.  But the record demonstrates Dr. Matson has no CSR qualifications or expertise, and he conducted no CSR analysis in this case.  Quoting from corporate documents and spinning them into a narrative is not an expert opinion, much less a reliable analysis of whether Defendants violated CSR principles.  For these reasons, Dr. Matson's testimony must be excluded.

## II.     DR. MATSON'S DISCLOSURE IS IMPROPER UNDER RULE 26

Plaintiffs argue that Dr. Matson complied with his Rule 26 disclosure requirements.  First, they argue that Dr. Matson properly disclosed his opinions, including those opinions he adopted and those he did not adopt from Dr. Cheremisinoff.  Second, Plaintiffs contend that, as a "substitute expert," Dr. Matson was exempt from complying with Rule 26 and was entitled to simply "adopt" Dr. Cheremisinoff's previous work in this case without explanation or specific disclosure.  Third, they argue that any failure by Dr. Matson to properly disclose his opinions was harmless and did not prejudice Defendants.  Plaintiffs are incorrect on each point.

### A.     Plaintiffs' Response Proves Dr. Matson Did Not Disclose His Opinions in Accordance with Rule 26

Plaintiffs assert that Dr. Matson properly disclosed his opinions under Rule 26 because he identified which opinions of Dr. Cheremisinoff he was "adopting" as his own and which he was not.  (Resp. at 14-15.)  But Plaintiffs do not—because they cannot—point to anywhere in Dr. Matson's December 2020 report where he actually identified his standard of care opinion and the basis for it.

As Defendants explained (Br. at 4-6), the only opinions disclosed in Dr. Matson's December 2020 report are: (1) one sentence adopting Dr. Cheremisinoff's work, including 639 pages of expert reports and 502 pages of deposition testimony; and (2) a "supplemental opinion" that "Defendants did not meet their Corporate Social Responsibility (CSR)," which consists of little more than quotations from documents and government reports spun into a narrative form.

Plaintiffs' assertion that Dr. Matson's report describes "a reliable methodology in reaching his standard of care opinions based on the facts of the case" (Resp. at 6-8) is nothing more than lawyer argument that cannot be squared with the report Dr. Matson actually prepared, which has been provided to the Court for review. As even a cursory review of his threadbare report

demonstrates, Dr. Matson did not identify the standard of care he believes applies to DRP's operation of the Complex, much less explain how he arrived at that standard of care conceived specifically for this litigation or what specific steps DRP failed to take to satisfy it. The report does not identify either the pollution control projects he contended DRP should have completed— or the schedule for those projects he believed was necessary to comply with his unstated standard of care. The report contains no analysis or discussion to support his conclusion that the pollution control projects he now claims were necessary could have been completed in the relevant period or any explanation to show the benefits his preferred projects would have had on Plaintiffs and the surrounding community—much less an analysis showing that his projects would have been more beneficial than the steps DRP took to reduce emissions and improve air quality. There is no data in the report. There is no modeling. There is, literally, nothing. This alone warrants exclusion. *See, e.g.*, *Ricks v. Huynh*, 2021 WL 2432028, at \*4 (E.D. Va. Apr. 15, 2021) (excluding substitute expert's report that did not comply with Rule 26, in part, because it "fails to establish the applicable standard of care or how that standard was breached").

### 1. Plaintiffs' Cannot Rely on Dr. Matson's Supplemental CSR Opinion to Cure His Failure to Disclose a Standard of Care Opinion

Plaintiffs provide a lengthy description of the "analysis" Dr. Matson purportedly conducted to support his standard of care opinion (Resp. at 6-8), but ***every bit of it is taken from Dr. Matson's supplemental CSR opinion*** and his improper attempt to spin company documents and government reports. Not one word concerns Dr. Matson's standard of care opinion.

Plaintiffs admit this omission but attempt to gloss over it, saying that "Dr. Matson at times frames his opinion as a CSR opinion" but assert that it is "clearly addressed to the standard of care." (*Id.* at 9.) But Plaintiffs provide no authority or support—other than the unsupported assertions by Dr. Matson himself—that CSR is a subset or component of the standard of care

analysis.  They point to no CSR treatise, textbook, or article and no caselaw supporting this theory. CSR, which is a well-developed and specialized area of expertise, is not the equivalent of the standard of care applicable to a smelter operator simply because Dr. Matson says it is.  Such *ipse dixit* is properly excluded.  *Smith v. Cangieter*, 462 F.3d 920, 924-25 (8th Cir. 2006) (affirming exclusion of opinion connected to the facts by only the expert's *ipse dixit*).

## 2.  Dr. Matson Cannot Utilize Rebuttal Reports and Deposition Testimony to Disclose Opinions in the First Instance

Plaintiffs further argue that Dr. Matson used his deposition testimony and rebuttal reports to "provide further color to his opinions" and "appropriately supplement" them.  (Resp. at 8-9, 26-28.)  But Plaintiffs ignore the case law forbids supplementing required Rule 26 disclosures through deposition testimony and supplemental reports.  (Br. at 15-18.)  And Plaintiffs fail to cite a single case endorsing their contrary approach.  Their attempt to whistle past Rule 26's requirements is both telling and fatal to Dr. Matson's proffered opinion testimony's admissibility.

## B.    Substitute Experts Are Not Excused from Complying with Rule 26

Plaintiffs' suggestion that Dr. Matson's failings should be excused because he is a "substitute expert" and that special rules apply that allow him to simply "adopt" Dr. Cheremisinoff's opinions is baseless.  (Resp. at 14-17.) No expert—*even a substitute expert*— may simply "adopt" the work and conclusions of another expert.  Even substitute experts must perform their own independent analysis and issue a report containing a complete statement of their opinions and the grounds for them.  *See, e.g., Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co*., 2010 WL 3892860, at *4 (N.D. Ind. Sept. 30, 2010) ("The substitute expert must have 'a similar area of expertise' as [the previous expert] and will be permitted to ***conduct his own investigation and reach his own conclusions***, as long as he addresses the same subject matter as [the previous expert's] report without meaningful changes…. ***That is not to say, however, that the***

*substitute expert merely adopt [the previous expert's] opinion verbatim*.  Rather, he will be permitted to review all of the evidence, ***conduct his own independent analysis, and express his opinion in his own words***.") (emphasis added); *Palatkevish v. Choupak*, 2014 WL 5463371, at *1 (S.D.N.Y. 2014) (stating that a substitute expert simply "adopting" the opinions of a previous expert is "inconsistent with the requirement that an appointed expert is to be independent and offer his own opinions based on his experience and expertise in the subject matter").

The cases Plaintiffs cite requiring the scope of substitute experts' reports to be consistent with those of prior experts miss the point and offer no support for their suggestion that a substitute expert may simply adopt without analysis the opinions of his predecessor.  (Resp. at 14-15.)  Nor do they hold that the substitute expert is relieved of the obligation to conduct an independent analysis and prepare an expert report that complies with Rule 26.  In fact, these cases actually support Defendants' contentions.  For example, in *Shipp v. Arnold*, 2019 WL 4040597 (W.D. Ark. Aug. 27, 2019), the court explained the substitute expert must not "simply adopt the prior expert's conclusion verbatim—in effect, doing little more than authenticating and confirming the prior expert's conclusion," but rather must "express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform." *Id.* at *3.  *See also Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 22 (D.P.R. 2009) (same).[1] Dr. Matson did none of this.

Ignoring Defendants' arguments and evidence (Br. at 11-15), Plaintiffs offer a strawman

---

[1] Likewise, in both *Sikkelee v. Precision Airmotive Corp.*, 2021 WL 392101, at *5-8 (M.D. Pa. Feb. 4, 2021), and *Indiana Insurance Co. v. Valmont Electric, Inc.*, 2003 WL 22244787, at *2-6 (S.D. Ind. July 31, 2003), the courts analyzed in detail the expert reports provided by the original and substitute experts to determine if the opinions in those reports were consistent in substance and scope.  The courts' discussions highlight the depth and detail contained in the substitute expert reports—which is entirely lacking in Dr. Matson's December 2020 report.  Neither case stands for the proposition that a substitute expert is excused from doing any work or analysis of his own.

that "there is no rule of law that Dr. Matson needed to spend years recreating all of Dr. Cheremisinoff's work, particularly where Dr. Matson has the same relevant subject matter expertise." (Resp. at 25.)  Defendants do not contend that Dr. Matson was required to "recreate" all of Dr. Cheremisinoff's work.  But to have a reliable basis for his testimony he had to conduct his own analysis to verify and confirm Dr. Cheremisinoff's findings and form his own opinions. He may not merely ***assume***—as he has—that data, analysis, and opinions he never independently verified are reliable and then simply rubber-stamp them.  *See Shipp*, 2019 WL 4040597, at *3.

Plaintiffs' argument that Defendants have not "explain[ed] how the absence of any complained-of information renders his methodology unreliable or undisclosed" (Resp. at 15-16) is also meritless.[2]  Dr. Matson's methodology and his opinions are unreliable because, as Dr. Matson admitted, he conducted no analysis to confirm Dr. Cheremisinoff's opinions before he adopted them.  His opinions also remain undisclosed to this day.  As Defendants explained (Br. at 4-5), Dr. Matson's report provides no information about his opinions in this case.  Dr. Matson then repeatedly ***refused*** at his deposition to state which of Dr. Cheremisinoff's multitude of opinions and analyses—which are riddled with errors—he agreed with and which he did not.  (*Id.* at 5-11.) And when confronted with mistakes Dr. Cheremisinoff made, Dr. Matson hedged, obfuscated, stalled, and often tactically retreated, abandoning opinions and analysis that he previously adopted but were obviously flawed, while nevertheless leaving himself free to testify to any of the other

---

[2] Plaintiffs flip the burden of disclosure and argue it is Defendants' fault because they failed to request additional time to depose Dr. Matson. (Resp. at 4.)  But the issue is not needing additional time to depose Dr. Matson—he has already been deposed for three days.  The issue is Dr. Matson has refused repeatedly to disclose the opinions he is offering in this case by issuing a report that complies with Rule 26.  The case law is clear the burden rests on Plaintiffs to properly disclose their expert's opinions.  *See Ricks*, 2021 WL 2432028, at *4 ("Plaintiff has not offered a justification for the substantial shortcomings in the report itself, nor sought any extension to permit an amended or supplemental report which might address them."); Fed. R. Civ. P. 26(a)(2).

(equally flawed) opinions and analyses spread across Dr. Cheremisinoff's nearly 1,200 pages of expert reports and deposition testimony that Defendants were unable to affirmatively explore. (*Id.*) This is no disclosure at all, it does not comply with the Federal Rules, and it reflects hide-the-ball tactics that the Court should not allow.

## C.    Dr. Matson's Rule 26 Violations Are Neither Justified Nor Harmless

Plaintiffs' suggestion that Dr. Matson's failure to properly disclose his expert opinions should be excused because it is "substantially justified" and "harmless" is equally meritless. (Resp. at 21-25.)  Rule 26 is designed to promote fairness, to avoid surprises, and to allow for the orderly discovery of evidence to be presented.  As federal courts routinely recognize, "[t]he goal of discovery is to make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent."  *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 21 (D.P.R. 2009).  Indeed, the very purpose "of Rule 26(a) is to promote full disclosure of the facts and prevent 'trial by ambush.'"  *Id.* at 20.

Yet in this case, even after 21 hours of deposition questioning, Plaintiffs and Dr. Matson continue to equivocate and ***still will not say what his opinions actually are***.  As noted, Dr. Matson's expert report says nothing at all about what steps he claims Defendants should have taken to comply with his standard of care.  Faced with this utterly inadequate disclosure, Defendants repeatedly pressed Dr. Matson during his depositions to identify the steps he believes Defendants should have taken, when they should have taken them, and the analysis he conducted to support that opinion.  In that context, Dr. Matson ***finally*** identified four discrete fugitive-lead-emission-control projects that he believed Defendants should have implemented sooner than they did.  (Dkt. 1277-31 at 205:4-16, 206:3-18.)  But now, in their response, Plaintiffs assert that is not, in fact, Dr. Matson's standard of care opinion, contending that the projects Dr. Matson identified were simply "examples of how Defendants could have acted sooner to address the fugitive lead

emission problem in La Oroya" and his "actual opinion is not nearly so narrow."  (Resp. at 2 n.4.)

And so, even today, Dr. Matson still has not provided a "complete statement of all opinions [he] will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).

Nor is this the only example of this sort of gamesmanship.  As explained in Defendants' motion, after disclosing no opinions on sulfur dioxide or arsenic emissions in any of his three reports, and initially testifying that he was offering no such opinions, Dr. Matson flip-flopped at the very end of the third day of testimony and offered—for the first time and in response to prodding from Plaintiffs' counsel—opinions on both sulfur dioxide and arsenic.  (Br. at 15-18.) In their response, Plaintiffs claim that Defendants mischaracterize Dr. Matson's testimony, and that he had previously testified his focus simply was not on sulfur dioxide or arsenic emissions. (Resp. at 28.)  But putting aside Dr. Matson's admitted failure to disclose any opinions regarding sulfur dioxide or arsenic emissions in his Rule 26 reports, Plaintiffs' attempt to smooth over Dr. Matson's testimony contradicts his own deposition testimony:

> Q:    Okay.  So are you offering any opinions in this case with respect to emissions of sulfur dioxide or practices to control the emissions of sulfur dioxide?
> **A:    Only if you ask questions about it.**
> [. . .]
> Q:    Are you going to offer any opinions, you know during direct examination at trial concerning arsenic emissions?
> **A:    I really haven't discussed that with the attorneys.**

(Dkt. 1225-2 at 47.)  These statements are unambiguous.  At the time he prepared his required Rule 26 disclosures, he offered no opinions on sulfur dioxide or arsenic emissions.  That he later contradicts this testimony and attempts to offer sulfur dioxide and arsenic opinions—again, without issuing any supplemental report containing such opinions—is a blatant violation of Rule 26.  Plaintiffs cannot invert the standard and put the burden on Defendants to ask the perfect question to allow Dr. Matson to finally reveal what his opinions about sulfur dioxide and arsenic

ultimately are.  Rule 26 places the burden of disclosure affirmatively and unquestionably on Dr. Matson to identify *all* of his opinions in his reports, not in his depositions.  He did not do so. Plaintiffs' hide-and-seek approach to Dr. Matson's disclosures requires exclusion.

This is not some technicality—it is profoundly prejudicial.  After three reports and three days of deposition, Defendants still have no idea what opinions Dr. Matson will be offering at trial. Nowhere has Dr. Matson provided a "complete statement of all opinions [he] will express and the basis and reasons for them," "the facts or data considered [] in forming them," and "any exhibits that will be used to summarize or support them."  *See* Fed. R. Civ. P. 26(a)(2)(B)(1)-(iii). Particularly in a case of this magnitude, Defendants are entitled to know what opinions Plaintiffs' sole standard of care expert will offer at trial.  That they still do not—and that they will be forced to undergo trial by ambush if Dr. Matson is permitted to testify—mandates his exclusion.

Plaintiffs suggest that any harm from Dr. Matson's inadequate disclosures can be cured with another round of depositions since a trial date has not yet been set (Resp. at 23-24), but another round of depositions will not resolve the prejudice caused.  To begin, Dr. Matson has already demonstrated the futility of using the deposition process to discover what his opinions are.  His testimony presents a moving target.  And in his last deposition, Dr. Matson was wildly obstructionist, filibustering at every opportunity and failing to answer the most simple of questions. Given his tactic of forcing Defendants to read Dr. Cheremisinoff's reports to him line-by-line, more depositions will not solve the problem.

More fundamentally, learning Dr. Matson's opinions in a new report or in new depositions would effectively nullify the last two years of expert discovery and mean starting over on the standard of care issue.  Forcing Defendants to have their experts review and respond to yet a fourth report from Dr. Matson, re-depose Dr. Matson and Defendants' experts, have all experts prepare

rebuttal reports, and then have another round of depositions is an extreme, wasteful, and unwarranted remedy for Dr. Matson's failure to comply with Rule 26 requirements.

## III.    PLAINTIFFS ARE WRONG THAT DEFENDANTS' RELIABILITY CHALLENGES GO TO WEIGHT, NOT ADMISSIBILITY

Plaintiffs argue that Defendants' criticisms of Dr. Matson go to the credibility of the testimony, not its reliability or admissibility.  (Resp. at 11.)  This is incorrect.

### A.    Dr. Matson's Failure to Follow His Own Stated Methodology and Analyze Applicable Facts Mandates Exclusion of His Opinions

Plaintiffs assert that any discussion of the "factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility."  (Resp. at 11.)  But this mischaracterizes the standard for exclusion under Federal Rule 702.  The Eighth Circuit has repeatedly affirmed the exclusion of expert testimony as unreliable where an expert has failed to consider sufficient facts. *See, e.g.*, *Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605, 608 (8th Cir. 2020) (affirming exclusion of expert who failed to consider alternative possibilities that undermined its reliability).[3]  And Plaintiffs have no answer to Defendants' arguments and the cases they cite requiring exclusion based on Dr. Matson's failure to conduct any expert analysis (Br. at 19-21) and his failure to consider relevant facts that contradict his opinion (*id.* at 24-26).

### B.    Dr. Matson Failed to Analyze Peruvian Laws and Regulations

Plaintiffs mischaracterize Defendants' arguments regarding Dr. Matson's failure to analyze Peruvian environmental laws and regulations.  (Resp. at 11.)  According to Dr. Matson, the first step in any standard of care analysis is to analyze the environmental laws and regulations of the

---

[3] *See also David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012) (stating "when an expert fails to take into account a plethora of specific facts his or her testimony is properly excluded"); *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 416-17 (8th Cir. 2005) (excluding opinion where expert "addressed none of these relevant facts" and "failed to take into account a plethora of specific facts").

country, province, and city governing a facility's operations.  (Br. at 21-24.)  But Dr. Matson failed

to follow his own methodology, which mandates exclusion.

Plaintiffs do not dispute that an analysis of the governing laws and regulations is required,

but rather argue that Dr. Matson conducted one by considering Peruvian environmental laws and

regulations.  (Resp. at 11.)  But in the limited testimony Plaintiffs cite, Dr. Matson cannot identify

what laws or regulations he analyzed—he simply recalls that Dr. Cheremisinoff referenced some

in his report.  (Br. at 22 n.6.)  Dr. Matson nowhere identifies in any of his three reports or during

his three days of deposition a single Peruvian statute, regulation, ordinance, or policy that he

analyzed in developing his standard of care opinion.  And his testimony is clear that he has no

Peruvian environmental experience at all.  (Br. at 21-23.)

Plaintiffs cannot backpedal from this testimony.  Dr. Matson's **only experience** with Peru

is **this case**, and even then, he performed no independent analysis of Peruvian laws and regulations.

That Dr. Matson can point to nothing other than his own *ipse dixit* to support his opinion that the

Peruvian government got it wrong when it set priorities and sequences for environmental upgrade

projects that differ from his own is proof that his standard of care opinion lacks the necessary

methodology and is so "fundamentally unsupported" and "excessively speculative" that it must be

excluded.  *In re Bair Hugger Forced Air Warming Devices Prods. Liab.*, 9 F.4th 768, 777 (8th Cir.

2021); *see also Klingenburg v.  Vulcan Ladder USA, LLC*, 936 F.3d 824, 829-30 (8th Cir. 2019);

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 824 (D. Minn. 2011).

### C.    Dr. Matson Failed to Conduct a Reliable Analysis of Defendants' Community Health Interventions

Focusing on the handful of documents Dr. Matson did review, Plaintiffs claim that he is

qualified to opine that DRP's community hygiene and community health programs "did not

significantly reduce elevated blood lead levels."  (Resp. at 13.)  But the point is not how many

12

documents written by others Dr. Matson reviewed or parroted. It is that Dr. Matson is not qualified to evaluate or opine on the efficacy of DRP's community health programs and, even if he were, Dr. Matson conducted no ***analysis*** whatsoever to support his opinion. Reading documents and regurgitating their content is not expert analysis and does not satisfy the requirements for admission under Rule 702. The truth is Dr. Matson has no experience or expertise evaluating community health programs to mitigate exposures in contaminated areas.[4] Plaintiffs point to no formal training or a single instance in which he has ***ever*** evaluated or opined on the efficacy of such programs. Nor is there any evidence in the record to show that Dr. Matson conducted any analysis or evaluation of Plaintiffs' blood lead levels or the impacts that the community health intervention programs had over time. This opinion is simply without basis and must be excluded.

## IV.    DR. MATSON'S REBUTTAL REPORTS DO NOT CURE THE DEFICIENCIES IN HIS DISCLOSURES AND OPINIONS

Plaintiffs concede Dr. Matson's December 2020 report—his required Rule 26 disclosure—contains no opinions or analysis showing that DRP could have completed his four preferred fugitive lead emissions projects within the first years of DRP's ownership of the Complex, as they cannot point to anywhere such an opinion is expressed in that report. Instead, citing to his ***rebuttal reports*** to Defendants' experts, Plaintiffs contend Dr. Matson "explain[s] why certain projects could have been completed in those first several years despite other projects happening at the same [time]." (Resp. at 12.) But Plaintiffs cannot use rebuttal disclosures to fill in the gaps left by Dr. Matson's inadequate Rule 26(a) disclosure. *See United States v. Philip Morris USA Inc.*, 2022

---

[4] In fact, when Defendants tried to question Dr. Matson about DRP's community health and exposure-prevention programs Plaintiffs' counsel objected, stating the questions were "way outside the scope of his report. ***[H]e doesn't deal at all with community program-monitored children's blood-lead levels. This is a medical issue, and it's not within the scope of [his] report.***" (Dkt. 1225-3, 1/27/21 Matson Dep. 16:3-22 (emphasis added).)

WL 1101730, at *5 (D.D.C. Apr. 13, 2022) ("If a party attempts to designate the testimony of an expert witness as 'rebuttal' but the testimony in fact introduces evidence beyond the scope of the opposing party's initial expert testimony, the rebuttal expert 'may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a).").  And Plaintiffs cannot use rebuttal opinions on direct examination at trial.  *See Hirata v. S. Nev. Health Dist.*, 2016 WL 8603655, at *1 (D. Nev. Aug. 24, 2016).

Moreover, examination of the rebuttal reports reveals Dr. Matson never actually provides the analysis that Plaintiffs claim.  Rather, Dr. Matson simply states that, in his opinion, "Mr. Connor and Dr. Anderson [Defendants' experts] lack any evidence to support their claims that modernization and maintenance efforts necessary at the CMLO at the time Defendants acquired it prevented Defendants from implementing building enclosures and ventilation systems in the lead circuit along with paving the plant roads." (Dkt. 1225-5 at 9.)  In other words, Dr. Matson provides purely rebuttal testimony opining on his perceived lack of evidence in ***Defendants'*** experts' reports.  Dr. Matson's rebuttal reports lack any actual analysis showing that DRP could meet the schedule he contends was necessary to comply with his standard of care.

## V.    DR. MATSON'S CSR OPINION IS NOT ADMISSIBLE

Plaintiffs offer two reasons why Dr. Matson's CSR opinion should not be excluded, but neither has merit.  First, Plaintiffs' claim that Dr. Matson is qualified to offer CSR opinions because he has taught "collegiate level" courses on CSR, "has personal experience with analyzing CSR standards," and his CSR opinions have been "accepted in a variety of courts" are contradicted by Dr. Matson himself.  (Resp. at 28-29.)  When questioned, Dr. Matson could not identify a single such course he has taught, and he testified he has no formal CSR education, training, or certifications.  (Br. at 29.)  And while he attempted to correct this obvious deficiency by asserting in a rebuttal report that he has CSR experience and courts previously accepted his CSR opinions,

Dr. Matson admitted at his deposition that he has never served as a consultant or advisor on CSR, he identifies no cases in his materials where he ever offered CSR opinions, and Defendants can locate no courts that have accepted such testimony. (*Id.*; Dkt. 1225-6.)

Second, regarding the reliability of his CSR opinions, Plaintiffs do not address the cases Defendants cite requiring exclusion because Dr. Matson's CSR opinion consists solely of quoting select portions of various depositions and documents without offering any actual expert ***analysis***. (Br. at 29.) *See also Graystone Funding Co., LLC v. Network Funding, L.P.*, 2022 WL 1063734, at *13 (D. Utah Apr. 8, 2022) ("Experts may not merely parrot or recite factual evidence, without offering a valid expert opinion based on such evidence. Indeed, an expert witness must add something to the jury's understanding."). Nor do Plaintiffs dispute that Dr. Matson lacked understanding of basic CSR principles applicable to mining operations in Peru such as "social license." (Br. at 29-30.) Rather, Plaintiffs assert that these shortcomings in his CSR opinions are merely "gaps in the factual bases" of his opinions, which go to weight and not admissibility. (Resp. at 29.) But as noted above, a lack of analysis and a failure to consider key facts is grounds for exclusion. *See supra* at 11-13.

Moreover, Plaintiffs' argument conflates the proper CSR methodology with the factual bases for his opinions. According to Dr. Matson, proper CSR methodology must consider and account for fundamental factors such as state sovereignty, national priorities, community engagement, and social license. (Br. at 29-30 (compiling citations).) Dr. Matson's report, however, is silent on these factors. Exclusion is required here because Dr. Matson failed to follow his own methodology that he conceded was necessary to opine on CSR.

## VI.    CONCLUSION

For these reasons, Defendants' Motion to Exclude the Opinion Testimony of Dr. Jack Matson should be granted.

Respectfully submitted,

**KING & SPALDING LLP**

By: /s/ *Geoffrey M. Drake*
Andrew T. Bayman, #043342GA
abayman@kslaw.com
Carmen R. Toledo, #714096GA
ctoledo@kslaw.com
Geoffrey M. Drake, #229229GA
gdrake@kslaw.com
1180 Peachtree Street, N.E.
Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Tracie J. Renfroe, #16777000T
trenfroe@kslaw.com
1100 Louisiana Street
Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Doe Run Cayman Holdings, LLC, Ira L. Rennert, The Doe Run Resources Corporation, Marvin M. Kaiser, Albert Bruce Neil, Jeffrey L. Zelms*

| **LEWIS RICE LLC** | **DOWD BENNETT LLP** |
|---|---|
| Thomas P. Berra, Jr., #43399MO | Edward L. Dowd, Jr. #28785MO |
| tberra@lewisrice.com | edowd@dowdbennett.com |
| Michael J. Hickey, #47136MO | Jeffrey R. Hoops, #69813MO |
| mhickey@lewisrice.com | jhoops@dowdbennett.com |
| 600 Washington Ave., Suite 2500 | 7733 Forsyth Blvd., Suite 1900 |
| St. Louis, MO  63102-2147 | St. Louis, Missouri 63105 |
| Telephone: (314) 444-7600 | Telephone: (314) 889-7300 |
| Facsimile:  (314) 241-6056 | Facsimile:  (314) 863-2111 |
| | |
| *Attorneys for Defendants The Doe Run Resources Corporation, Marvin K. Kaiser, Albert Bruce Neil, and Jeffery L. Zelms* | *Attorneys for Defendants The Renco Group, Inc., DR Acquisition Corp., Ira L. Rennert, and Doe Run Cayman Holdings, LLC* |

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 23rd day of May, 2022 a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Geoffrey M. Drake*