**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

A.O.A., et al.,                              )
                                             )        Case No. 4:11-cv-44 CDP
            Plaintiffs,                      )        (CONSOLIDATED)
                                             )
v.                                           )
                                             )
DOE RUN RESOURCES CORPORATION, )
et al.,                                      )
                                             )
            Defendants.                      )

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT ON FIVE DISCOVERY COHORT PLAINTIFFS WITHOUT MEASURED BLOOD LEAD LEVELS**

Defendants hereby file this Opposition to Plaintiffs' Motion for Reconsideration (ECF Nos. 1546–47), respectfully showing the Court as follows:

## I.        INTRODUCTION

Dissatisfied with this Court's order granting Defendants' motion for summary judgment as to the five cohort Plaintiffs without measured blood lead levels ("BLLs"), Plaintiffs seek the extraordinary relief of reconsideration without actually raising any new grounds for this Court to decide the issue differently.  Plaintiffs complain that the Court's ruling on this question comprised "less than two pages" (ECF No. 1547 at 14) (hereinafter "Motion" or "Mot."), ignoring that they themselves devoted only four pages (of 183 total) to the issue in their opposition papers, failing therein to address, much less distinguish, *any* of the cases on which Defendants and the Court relied in support of summary judgment.  Instead, Plaintiffs want a do-over now, years too late.

Namely, Plaintiffs recant the same arguments they raised previously and that this Court rejected in connection with Defendants' 2021 motion for summary judgment.  Plaintiffs fail to provide new evidence or advance legal theories that could not have been raised before the Court's

1

summary judgment ruling.  Plaintiffs instead seek to supplement their prior opposition with more cases, *all* of which are non-binding, not dispositive, and predate the summary judgment briefing period, or some combination of the three.  This is inappropriate.

Moreover, unlike the cases on which Plaintiffs now rely, this litigation undisputedly concerns potential exposure to lead from myriad sources over time, including but not limited to operations of the La Oroya Complex that pre-date Doe Run Peru's ownership and involvement. This significant fact obligated Plaintiffs to offer individualized evidence of exposure to establish causation and prove their claims.  But without Dr. David MacIntosh's unreliable estimates of these five Plaintiffs' BLLs, which this Court properly excluded under Federal Rule of Evidence 702 in July 2025, Plaintiffs have no such evidence to support the essential element of causation for those Plaintiffs without measured BLLs.  Worse yet, as a last resort Plaintiffs request to present, at some future hearing, unidentified testimonial evidence regarding these Plaintiffs' exposure—all of which, to the extent it exists, was available years before Defendants even filed their motion for summary judgment and yet was never proffered as part of the summary judgment record.

In sum, this Court's determination that there is insufficient evidence of causation as to the five Plaintiffs without measured BLLs was well-reasoned, supported by the applicable case law, and in no way merits the extraordinary relief of reconsideration.  The Court should reject Plaintiffs' last-ditch effort for a do-over and deny Plaintiffs' Motion.

## II.     ARGUMENT

### A.     PLAINTIFFS DO NOT AND CANNOT MEET THEIR HEAVY BURDEN FOR RECONSIDERATION.

A motion to reconsider an interlocutory order is governed by Federal Rule of Civil Procedure 60(b).  *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999); *see also Elder–Keep v. Aksamit*, 460 F.3d 979, 984–85 (8th Cir. 2006) ("[W]e have determined that motions for

reconsideration are 'nothing more than Rule 60(b) motions when directed at non-final orders.'").[1]

Rule 60(b) permits the Court to "relieve a party . . . from a final judgment, order, or proceeding" under certain exceptional circumstances. Fed. R. Civ. P. 60(b). Rather than move under any of the enumerated exceptions under Rule 60(b), including newly discovered evidence (Rule 60(b)(2)), Plaintiffs rely upon the "catch-all" exception in Rule 60(b)(6), which allows reconsideration of a final judgment for "any other reason that justifies relief."

Plaintiffs' Motion should be denied for failing to articulate the precise Rule 60(b)(6) grounds—*i.e.*, the "any other reason"—that justifies the extraordinary relief they seek. At best, Plaintiffs argue that (i) the Court was wrong to conclude that there was no triable issue of causation as to Plaintiffs without measured BLLs, and (ii) this ruling "would wipe out the claims of hundreds of plaintiffs." (Mot. at 14.) But neither of those purported reasons provides proper grounds for a Rule 60(b)(6) motion. Both the United States Court of Appeals for the Eighth Circuit and this Court have held that "[r]elief is available under Rule 60(b)(6) ***only*** where 'exceptional circumstances prevented the moving party from seeking redress through the usual channels.'" *Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 373 (8th Cir. 1994) (quoting *In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir. 1989)) (emphasis added); *see also Whitehead v. Garrett*, No. 4:09CV483 CDP, 2012 WL 3939967, at *1 (E.D. Mo. Sept. 10, 2012) (Perry, J.) ("Relief under Rule 60(b)(6) is only available 'where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate

---

[1] This Court's order granting summary judgment for Defendants as to those Plaintiffs without measured BLLs is a non-final order because these Plaintiffs' actions, including the five discovery cohort Plaintiffs' cases, also involve other Plaintiffs whose claims remain pending. Fed. R. Civ. P. 54(b); *see* Case Nos. 4:12-cv-1345 (Elvis Eduardo Palomino Santos); 4:12-cv-1352 (Wilmer Fortunato Toribio Palomino); 4:13-cv-1596 (Giancarlos Casimir Soto); 4:13-cv-1596 (Jhoan Raymundo Rojas Barona); and 4:15-cv-00705 (Anthony Tamir Mateo Chavez).

3

redress.'") (quoting *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005)).

Plaintiffs do not contend—nor could they—that they lacked a "full and fair" opportunity to litigate the issue now before the Court in opposing summary judgment four years ago. Indeed, they *did* litigate this issue, offering four pages of their opposition to this issue. (ECF No. 1276 at 144–48.) And Plaintiffs cite no case holding that a litigant's mere disappointment with the outcome of prior motion practice—or any purported downstream consequences to the claims of other litigants—provides appropriate grounds for reconsideration under Rule 60(b)(6). In fact, both the Eighth Circuit and this Court have repeatedly rejected similar arguments. *See, e.g.*, *Broadway*, 193 F.3d at 989–90 ("[D]efendants did nothing more than reargue, somewhat more fully, the merits of their claim of qualified immunity. This is not the purpose of Rule 60(b). It authorizes relief based on certain enumerated circumstances (for example, fraud, changed conditions, and the like). It is not a vehicle for simple re-argument on the merits."); *McFarland v. St. Louis Cnty. Fam. Ct. Div.*, No. 4:21-CV-554-CDP, 2024 WL 1485846, at *1 (E.D. Mo. Apr. 5, 2024) (Perry, J.) (rejecting Rule 60(b) motion where it "relie[d] on similar arguments set forth in movant's original petition, which the Court has already addressed"); *Moon v. Boyd*, No. 1:23-CV-71 CDP, 2024 WL 3887390, at *2 (E.D. Mo. Aug. 21, 2024) (Perry, J.) ("A Rule 60(b) motion is not intended to be a method for seeking reconsideration of merit arguments that were previously considered, and rejected, by the Court."); *F.D.I.C. v. Lathrop & Gage, L.C.*, No. 4:08CV2033 FRB, 2009 WL 3334888, at *3 (E.D. Mo. Oct. 14, 2009) ("mere disagreement with the court's legal resolution of . . . contested issues is not a basis upon which to reconsider the decisions" under Rule 60(b)(6)).

Nor do Plaintiffs contend they are providing "newly discovered evidence" warranting reconsideration of this Court's order dismissing those Plaintiffs without measured BLLs. Fed. R. Civ. P. 60(b)(2). Instead, Plaintiffs merely rehash the *same evidence* they cited in opposing

summary judgment, some of which this Court has since excluded in ruling on the Federal Rule of

Civil Procedure 702 motions and all of which the Court already considered:

- Dr. Jill Ryer-Powder's testimony that each discovery cohort Plaintiff was exposed to lead (*compare* Mot. at 3, *with* ECF No. 1276 at 144–145);

- Mr. David Sullivan's testimony about lead concentrations at La Oroya (*compare* Mot. at 2–3, *with* ECF No. 1276 at 145);

- Dr. MacIntosh's prediction that all children in the community would have a BLL greater than 10 μg/dL[2] (*compare* Mot. at 3, 10, *with* ECF No. 1276 at 145);

- Dr. David Bellinger's testimony that the five cohort Plaintiffs without measured BLLs are "comparable" to other Plaintiffs (*compare* Mot. at 3, 10, *with* ECF No. 1276 at 145)[3];

- Medical evaluations from Drs. Howard Hu, Karen Hopkins, and Clemente Vega (*compare* Mot. at 3, 11, *with* ECF No. 1276 at 146); and

- DIGESA and CDC reports (*compare* Mot. at 9, *with* ECF No. 1276 at 147).

This Court has already determined that this evidence was insufficient to establish causation

for the five cohort Plaintiffs without measured BLLs.  (ECF No. 1525 at 62.)  *See Dallas v. Am.*

*Gen. Life & Acc. Ins. Co.*, No. 4:11CV592 CDP, 2012 WL 1025326, at *1 (E.D. Mo. Mar. 26,

2012) (Perry, J.) (declining to reconsider the Court's summary judgment ruling because the

plaintiff improperly "repeat[ed] arguments that have already been considered, and in this case

rejected, by the court."); *Jo Ann Howard & Assocs., P.C. v. Cassity,* No. 4:09CV01252 ERW, 2014

WL 3476937, at *5 (E.D. Mo. July 15, 2014) (a motion that "rehashes and reformulates arguments

previously considered and rejected by this Court" is not proper on reconsideration).

---

[2] The Court excluded Dr. MacIntosh's predictive BLLs for Plaintiffs without measured BLLs. (ECF No. 1506 at 20–21.)  Accordingly, testimony as to those five Plaintiffs, *i.e.*, that they would have had BLLs "greater than 10 μg/dL," is insufficient evidence to support Plaintiffs' Motion. *See infra* Section C.

[3] The Court excluded Dr. Bellinger's specific causation opinions because "plaintiffs insist they did not proffer Dr. Bellinger to render expert opinions on specific causation and he agrees that he will not testify to such." (ECF No. 1506 at 35.)  Accordingly, no testimony from Dr. Bellinger specific to the five Plaintiffs without measured BLLs can support Plaintiffs' Motion.

Plaintiffs also fail to raise any legal argument that they could not have raised in their opposition to Defendants' summary judgment motion.  Indeed, in their opposition, Plaintiffs did not even mention (much less distinguish) Defendants' cited cases establishing that "community wide estimations [are] not probative of an[] individual's claim." (ECF No. 1233 at 96 (citing *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 266 (3d Cir. 2011); *Thomas v. FAG Bearings Corp.*, 846 F. Supp. 1400, 1409 (W.D. Mo. 1994)).  Now, for the first time and three years too late, Plaintiffs attempt to distinguish the cases on which Defendants and this Court relied in support of dismissing these Plaintiffs without measured BLLs.  (*See generally* Mot.)  Because Plaintiffs only offer regurgitated evidence and legal theories that they had a full opportunity to raise in their prior opposition, *but did not*, the Court should decline to reconsider its summary judgment ruling.

**B.    THIS COURT'S DISMISSAL OF PLAINTIFFS WITHOUT MEASURED BLLS WAS WELL-REASONED AND SUPPORTED BY APPLICABLE CASE LAW.**

Setting aside these deficiencies, the Court was correct in determining that in this case "community data … is alone [in]sufficient to support a finding that those five individual plaintiffs were themselves exposed to lead at such levels to cause their claimed impairments." (ECF No. 1524 at 63 (citing *Thomas*, 846 F. Supp. at 1409; *Gates*, 655 F.3d at 266).)  "[A] plaintiff in a toxic tort case" must produce evidence of "the plaintiff's actual level of exposure to the defendant's toxic substance" to establish causation. *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1106–1107 (8th Cir. 1996) (reversing the judgment of the district court where plaintiffs failed to "produce evidence that they were exposed to a hazardous level of formaldehyde" linked to defendant).  In fact, Plaintiffs do not dispute the "rather obvious proposition" that "proof of exposure to the product is an essential element of plaintiff's claims and that without evidence of such exposure plaintiff's claims collapse." *Mascarenas v. Miles, Inc.*, 986 F. Supp. 582, 587 (W.D. Mo. 1997).  Instead, for the first time in their Motion, Plaintiffs attempt to distinguish *Mascarenas* from other

6

cases Defendants offered in support of summary judgment, again based on the *same* medical evaluations and community data that this Court already considered in deciding that Plaintiffs lacked evidence of exposure without measured BLLs.  (*See* Mot. at 12–13.)  But the fact remains: without "individualized exposure data" for those five Plaintiffs, evidence of medical evaluations or community data is not enough to survive summary judgment.  *See Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509, 525 (6th Cir. 2013) (affirming dismissal of medical monitoring claims because plaintiffs lacked "reliable, individualized proof" of exposure to contaminants, and plaintiffs could not "escape this conclusion by offering [a] cancer study incidence report as a substitute for individualized exposure data"); *see also Mascarenas*, 986 F. Supp. at 589–90 (granting summary judgment where evidence that the plaintiff "was sprayed with *some* pesticide" and subsequently developed cancer did not link his exposure to the defendant, even despite expert medical testimony about his condition).

None of the cases Plaintiffs now cite for the first time refute this.  For instance, in *Cunningham v. Spitz* and in *Howell v. Chicago Housing Authority*, the plaintiffs *produced BLL measurements* to prove their lead exposure.  *See Cunningham v. Spitz*, 218 A.D.2d 639, 630 N.Y.S.2d 341 (App. Div. 2nd Dept. 1995) (denying summary judgment because plaintiff's BLL measurement was sufficient evidence that he was exposed to lead); *Howell v. Chi. Hous. Auth.*, 407 Ill. App. 3d 1185, 998 N.E.2d 982, 2011 Ill. App. Unpub. LEXIS 204, *30–32 (2011) (affirming the district court's denial of judgment notwithstanding the verdict because plaintiff's *two* BLL measurements, among other evidence of exposure, was sufficient evidence that he was exposed to lead paint *in utero*).  These cases only undermine Plaintiffs' contentions.

The remaining cases Plaintiffs cite are distinguishable because they involve situations in which circumstantial evidence of exposure was sufficient to prove causation because there were

not myriad alternative sources of exposure like in the instant cases.  For example, in *Bednar v. Bassett Furniture Manufacturing Company*, the Eighth Circuit determined that evidence that the defendant manufactured dressers that emitted dangerous levels of formaldehyde, the lone source of this substance to which the plaintiff was exposed, was sufficient evidence of "the plaintiff's actual level of exposure to the defendant's toxic substance."  147 F.3d 737, 739–40 (8th Cir. 1998) (citing *Wright,* 91 F.3d at 1106).  Similarly, *Lewis v. FAG Bearings Corporation* involved a situation in which there was no evidence of exposure to sources of the at-issue chemical besides the defendant's operations; one operator dumped chemicals from one source into a river adjacent to the plaintiff's well, from which she drank water.  5 S.W.3d 579, 581–585 (Mo. Ct. App. 1999).  And in *Hickerson v. Pride Mobility Products Corporation*, the court explained that "juries may infer causation and the existence of product defects based on circumstantial evidence under a *res ipsa*-type theory such that some product liability claims may be submitted to juries without expert testimony that identifies specific product defects."  470 F.3d 1252, 1258 (8th Cir. 2006) (reversing summary judgment where sufficient evidence existed under *res ipsa* theory that defendant's PowerChair caused a fire).  As the court noted in *Hickerson*, a plaintiff proceeding under a *res ipsa loquitur* theory must "eliminate other possible causes of the injury" to enable a jury to draw a non-speculative inference that only a defect in the defendant's product could have caused the alleged injury.  *Id*. (collecting cases).

But significantly, and in stark contrast to the circumstances present in *Bednar*, *Lewis*, and *Hickerson*, this litigation does ***not*** involve a *res ipsa loquitur* theory.  Plaintiffs admit, and this Court has previously recognized on multiple occasions, that lead from myriad sources independent of the Complex, as well as historical operations of the Complex *pre-dating* Doe Run Peru's ownership, contributed to lead exposure in the La Oroya community.  (ECF No. 1276 at 3–4); *see,*

*e.g.*, ECF No. 1219-3, 6/10/19 2nd Supp. MacIntosh Rpt. at 26 ("[L]ead released from CMLO for the 75-year period before Defendants acquired the facility in 1997 is a potential source of lead exposure that is closely related to but separate from the Defendants."); ECF No. 1506 at 2–3, 42–43.) So, unlike the cases on which Plaintiffs now rely, this litigation concerns complicated issues of exposure to multiple lead sources, as well as multiple operators of the Complex. As such, Plaintiffs were required to offer individualized evidence of exposure to lead from Doe Run Peru's operation of the Complex to prove their claims. *Wright*, 91 F.3d at 1106–1107; *Thomas*, 846 F. Supp at 1409; *Gates*, 655 F.3d at 266. Plaintiffs' Motion papers over this key fact by referring to Plaintiffs' "expos[ure] to unsafe levels of lead from the Complex" (Mot. at 12) without acknowledging the Complex's ownership history or their own experts' concessions concerning sources of lead exposure from multiple operators over time. Accordingly, none of these cases on which they now rely disturb this Court's ruling that "[w]ithout *any* evidence of individual BLLs for those [five] plaintiffs," summary judgment for Defendants is warranted. (ECF No. 1524 at 62–63.)

Finally, as stated above, Plaintiffs had a full and fair opportunity to attempt to distinguish *Gates* and *Thomas* (and all of Defendants' other cited cases) in their opposition to Defendants' summary judgment motion (*see* ECF No. 1276 at 144–148), but they chose not to do so. Accordingly, they have no ability now to raise such arguments belatedly in a Rule 60(b) motion. *See Hagerman*, 839 F.2d at 414 ("A motion to alter or amend judgment cannot be used to raise arguments which could have been raised prior to the issuance of judgment.").

Regardless, Plaintiffs' contention that *Gates* is "not on point" because it concerned questions of class certification is incorrect. (Mot. at 13.) In evaluating whether those plaintiffs offered evidence of "exposure of individual members of the class to vinyl chloride," the *Gates*

9

court necessarily considered "the substantive elements of the plaintiffs' case," *i.e.*, "liability and causation." 655 F.3d at 265, 274.  Like the Plaintiffs without measured BLLs here, the class members in *Gates* could not prove causation with "[a]verages or community-wide estimations," as such "modeling and assumptions" would "not be probative o*f any individual's claim* because any one class member may have an exposure level well above or below the average." *Id.* at 266 (emphasis added).  Thus, the *Gates* court did not merely conclude that the community-wide estimations could not show common, class-wide proof of causation—it could not provide proof of *any* individual class member's causation either.  *See also In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990) ("It is evident that these statistical estimates deal only with general causation, for population-based probability estimates do *not* speak to a probability of causation in any one case; the estimate of relative risk is a property of the studied population, not of an individual's case." (internal quotation omitted) (emphasis in original)).

Similarly, Plaintiffs' belated attempt to distinguish *Thomas* because the five Plaintiffs without BLLs were "individually evaluated" for symptoms of lead exposure is unavailing.  (Mot. at 14.)  Even now, Plaintiffs do not offer any "individualized proof" that the five Plaintiffs "suffered physical injury *as a result of the . . . contamination*." *Thomas*, 846 F. Supp. at 1409.  Drs. Hopkins and Vega did not measure the five Plaintiffs' BLLs and therefore similarly speculated that those Plaintiffs' symptoms match the levels of exposure of *other Plaintiffs* with measured BLLs.  *See* ECF No. 1221-1, Hopkins Dep. at 653:2–654:25 (assessing the existence of brain damage as the same for Plaintiffs without BLLs based on their "estimated levels" of lead exposure); ECF No. 1218-1, Vega Dep. Vol. I at 183:11-15 (relying on other Plaintiffs' measured BLLs for his hypothesis related to Plaintiffs without measured BLLs).  In fact, Dr. Vega outright admitted that he relied on the partial BLLs to make assumptions about "the entire profile" of Plaintiffs before he

ever conducted a single evaluation. *Id.* ("so I had the blood lead levels of a number of, of the plaintiffs while I was, before I did the, the evaluations, *so at that point there's a strong hypotheses on one of the possible explanations for the entire profile…*") (emphasis added). This Court correctly granted summary judgment with respect to those Plaintiffs without BLLs because, like in *Thomas*, Plaintiffs' lack of "individualized proof" is fatal. *Thomas*, 846 F. Supp. at 1407.

**C.     PLAINTIFFS CANNOT SUPPORT THEIR CAUSATION ARGUMENTS WITHOUT BLL MEASUREMENTS.**

Plaintiffs chose to build their case against Defendants on the backbone of quantified BLLs. That was their choice, recognizing the challenges of connecting their alleged harms to lead emissions from the Complex during Doe Run Peru's ownership, given the myriad other lead sources in the community, including from the Complex before Doe Run Peru purchased it in 1997. Despite their claims in the instant Motion, Plaintiffs built their case with the recognition that circumstantial, unquantified evidence of exposure was insufficient in these particular cases to establish causation as to Defendants. This is why Plaintiffs retained Dr. MacIntosh to perform an analysis of the percent of each Plaintiff's BLLs attributable to emissions from the Complex during Doe Run Peru's ownership. Necessarily, the crux of that analysis was a BLL for each Plaintiff. When a Plaintiff had no measured BLL, Dr. MacIntosh had to calculate an estimated BLL. *See, e.g.*, ECF No. 1219-3 at 23–25.

In turn, Plaintiffs' causation experts—Drs. Howard Hu (epidemiologist), Clemente Vega (neuropsychologist), and Karen Hopkins (pediatrician)—relied on Dr. MacIntosh's estimated BLLs in rendering opinions about the cause of these five Plaintiffs' claimed injuries. For example, acknowledging that Plaintiff Elvis Eduardo Palomino Santos (Case No. 4:12-cv-1345) "is not known to have blood lead levels (BLLs) measured during his childhood," Dr. Hu "consulted the results of the extrapolation exercise conducted by David MacIntosh" to estimate the extent of his

lead exposure during Doe Run Peru's operation of the complex.  (Exh. A, 5/9/19 Hu EEPS Report at 3.)  Dr. Hu also exclusively relied on Elvis's estimated BLLs, as calculated by Dr. MacIntosh, when determining that Elvis suffered a loss of at least 6.9 IQ points due to this lead exposure.  (*Id.* at 14.)  Drs. Hopkins and Vega similarly relied on Dr. MacIntosh's predictive BLL figures in opining that Elvis was exposed to toxic levels of lead during Doe Run Peru's operations.  (Exh. B, 2/18/19 Hopkins EEPS Report at 10; Exh. C, 2/18/19 Vega EEPS Report at 15.)  Moreover, Plaintiffs' toxicologist, Dr. Jill E. Ryer-Powder, relied on Dr. MacIntosh's BLL estimates for these five Plaintiffs in opining that they "were exposed to harmful concentrations of lead of such a significant degree that the exposures directly caused or directly contributed to increases in blood lead levels (greater than background levels) that are associated with adverse health effects."  (ECF No. 1211-1, 2/18/19 Ryer-Powder Rep. at 19; ECF No. 1211-4, 6/22/20 Ryer-Powder Rebuttal Rep. at 4.)  In sum, Plaintiffs' entire causation theory is built on the predicate of a measured or estimated BLL.

But as this Court explained in granting summary judgment with respect to these five Plaintiffs (*see* ECF No. 1524 at 62–63), it determined in July 2025 that Dr. MacIntosh's predictive individual BLLs for those Plaintiffs with no measured BLLs were inadmissible under Federal Rule of Evidence 702.  (ECF No. 1506 at 20–21, 77.)  This Court reasoned that asking a jury to assign "predictive" individual BLLs to these Plaintiffs "would be asking it to reach a complex scientific conclusion on mere speculation."  (*Id.* at 21.)  The Court explained that Dr. MacIntosh conceded that children in a community who have reasonably similar levels of lead in their environments nonetheless can have "substantially different BLLs."  (*Id.*)  And while Dr. MacIntosh referenced reports recommending a "default assumption" of upper, median, and low-end BLLs in a given neighborhood based on individual variability factors, applying that assumption to Plaintiffs

12

without measured BLLs "invites speculation as to whether their levels would fall in the predictive range and, if so, where – that is, at the low end, median, or high end," such that his opinions regarding Plaintiffs without measured BLLs must be excluded. (*Id.* at 21, 77.)

Thus, with Dr. MacIntosh's unreliable BLL estimates excluded, these five Plaintiffs lack the foundational element for their causation claims; their house of cards has crumbled. Plaintiffs simply have no evidence to support the critical element of causation as to the five Plaintiffs without measured BLLs. The Court's ruling granting summary judgment as to these five Plaintiffs was correct on the record. And Plaintiffs fail to offer any argument now as to how they can establish causation in this case, based on the expert evidence they adduced, without measured BLLs.

**D.    PLAINTIFFS' UNTIMELY REQUEST TO PRESENT SUPPLEMENTAL EVIDENCE *AFTER* THIS COURT'S SUMMARY JUDGMENT RULING SHOULD BE DENIED OUTRIGHT.**

Plaintiffs submit in a footnote that they would like an opportunity to present additional evidence on behalf of these five Plaintiffs. (Mot. at 14, n.4.) They provide no specifics, instead pointing to unidentified deposition testimony that purportedly shows that "some" of these five Plaintiffs: (1) had measured BLLs, but lost them; (2) have siblings with measured BLLs; or (3) had a medical provider tell them their injuries resulted from lead exposure. (*Id.*)

The time to present any such evidence has long passed. All five Plaintiffs and their guardians were deposed between 2017 and 2019. Plaintiffs did not submit any of this alleged deposition testimony, to the extent it exists, in connection with their opposition to Defendants' motion for summary judgment, filed years after these depositions took place. (ECF No. 1276.) Plaintiffs did include snippets of deposition testimony from other Plaintiffs regarding their individual exposure (*id.* at 146 n.788), but they neglected to include any references that relate to the five cohort Plaintiffs without measured BLLs. This Court was necessarily reliant on the summary judgment record as it existed when briefing concluded on this issue back in May 2022.

Plaintiffs' attempt to supplement this record now is entirely improper.  Plaintiffs do not explain why they failed to offer this evidence in opposing summary judgment.  Worse still, Plaintiffs failed to include this alleged "individual proof of exposure" in the instant Motion, instead seeking yet *another* future opportunity to do so.  (*See* Mot. at 14, n.4.)  Plaintiffs have now missed *multiple* opportunities to provide any evidence to support the claims of these five Plaintiffs without measured BLLs and are not entitled to a third bite at the apple.

## III.    CONCLUSION

For all the reasons set forth herein, this Court should decline to reconsider its ruling granting summary judgment in favor of Defendants as to those Plaintiffs without measured BLLs.

Dated: November 4, 2025

Respectfully submitted,
**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Andrew T. Bayman, #043342GA
abayman@kslaw.com
Carmen R. Toledo, #714096GA
ctoledo@kslaw.com
Geoffrey M. Drake, #229229GA
gdrake@kslaw.com
Mark Sentenac, #987346GA
msentenac@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Tracie J. Renfroe, #16777000TX
trenfroe@kslaw.com
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Doe Run Cayman Holdings, LLC, Ira L. Rennert, The Doe Run Resources Corporation, Marvin K. Kaiser, and Jerry Pyatt*

**DOWD BENNETT LLP**

Edward L. Dowd, Jr. #28785MO
edowd@dowdbennett.com
Jeffrey R. Hoops, #69813MO
jhoops@dowdbennett.com
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111

*Attorneys for Defendants The Renco Group, Inc., DR Acquisition Corp., Ira L. Rennert, and Renco Holdings, Inc.*

**LEWIS RICE LLC**

Thomas P. Berra, Jr., #43399MO
tberra@lewisrice.com
Michael J. Hickey, #47136MO
mhickey@lewisrice.com
600 Washington Ave., Suite 2500
St. Louis, MO 63102-2147
Telephone: (314) 444-7600
Facsimile: (314) 241-6056

*Attorneys for Defendants The Doe Run Resources Corporation, Marvin K. Kaiser, and Jerry Pyatt*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 4th day of November, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Geoffrey M. Drake*