UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.O.A, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:11 CV 44 CDP |
| | ) |
| IRA L. RENNERT, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

On September 9, 2025, I granted in part and denied in part defendants' motions for summary judgment on the remaining claims in this action. (ECF 1524, Memo. & Ord.) Plaintiffs have now filed a motion for reconsideration, asking that I reconsider that part of my ruling that granted defendants summary judgment on the claims of five Discovery Cohort (DC) plaintiffs who do not have measured blood lead levels (BLLs). (*See id.* at pp. 62-63, 80.) I will deny the motion to reconsider. I will also deny plaintiffs' request for oral argument on the motion.

### Legal Standard

Plaintiffs brought their motion under Rules 54(b) and 60(b)(6) of the Federal Rules of Civil Procedure, averring that Rule 54(b) permits me to revisit my interlocutory Order and arguing in substance that they are entitled to relief under Rule 60(b)(6) to correct errors in my Order and to avoid injustice to the parties.

(ECF 1547, Pltfs' Memo. in Supp. at p. 5).  Addressing defendants' responsive argument that plaintiffs cannot meet the Rule 60(b) standard for reconsideration, plaintiffs in their reply brief appear to disavow their earlier reliance on Rule 60(b). (*See* ECF 1574, Pltfs' Reply Memo. at p. 2 ("Because Plaintiffs' motion . . . must . . . be considered pursuant to Rule 54(b), Defendants' arguments pertaining to Rule 60(b) are wholly misplaced.").)

Rule 54(b) permits the Court to "exercise its general discretionary authority to review and revise its interlocutory rulings prior to the entry of final judgment." *Auto Servs. Co., Inc. v. KPMG, LLP*, 537 F.3d 853, 856, 857 (8th Cir. 2008). While the Eighth Circuit construes motions for reconsideration of non-final orders as motions under Rule 60(b), *Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018),[1] it has also agreed that Rule 54(b) is the appropriate Rule under which to address a motion to reconsider such orders.  See *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 n.3 (8th Cir. 2015).  Notably, the standard for considering a motion to reconsider under Rule 54(b) is typically held to be less exacting than the standard for considering a Rule 60(b) motion.  *Ball-Bey v. Chandler*, No. 4:18-CV-1364-SPM, 2023 WL 7280903, at *2 (E.D. Mo. Oct. 2, 2023).

Relief under Rule 60(b)(6) is available only in "extraordinary

---

[1] *See also Kohlbeck v. Wyndham Vacation Resorts, Inc.*, 7 F.4th 729, 734 n.2 (8th Cir. 2021) (to the extent motion for reconsideration was directed at a non-final order, court of appeals construed it as a motion under Rule 60(b)).

circumstances." *Buck v. Davis*, 580 U.S. 100, 123 (2017); *Williams*, 891 F.3d at 706.  While "extraordinary circumstances" may include, in an appropriate case, "the risk of injustice to the parties," *Buck*, 580 U.S. at 123, motions under Rule 60(b) nevertheless serve a limited function:

> to correct manifest errors of law or fact or to present newly discovered evidence.  They are not to be used to introduce new evidence that could have been adduced during pendency of the motion at issue.  A motion for reconsideration is also not the appropriate place to tender new legal theories for the first time.

*Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (internal quotation marks and citations omitted).  Rule 54(b), however, gives the district court greater discretion to reconsider interlocutory orders, which "as a practical matter a district court needs in order to modify orders in response to the changing circumstances of a lawsuit before it."  *Discount Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.*, No. 3:09-CV-05078-DGK, 2010 WL 3522476, at *2 (W.D. Mo. Sept. 2, 2010).  But a court "also has an interest in judicial economy and ensuring respect for the finality of its decisions."  *Id.*  To account for that interest while allowing for correction of mistakes, the court in *Discount Tobacco* devised a standard for reconsidering non-final orders:  the court "may reconsider an interlocutory order only if the moving party demonstrates (1) that it did not have a fair opportunity to argue the matter previously, and (2) that granting the motion is necessary to correct a significant error." *Id.*

In *Dunne v. Resource Converting, LLC*, this Court adopted the standard set out in *Discount Tobacco*, finding it to be appropriately less exacting than the standard for reconsidering a final order while accounting for judicial economy and respect for the finality of judicial decisions. No. 4:16 CV 1351 DDN, 2019 WL 1227456, at *2 (E.D. Mo. Mar. 15, 2019). Going forward from *Dunne*, the Court has applied that standard to motions to reconsider non-final orders. *See*, *e.g.*, *Moore v. Stange*, No. 1:21-CV-114-JSD, 2024 WL 4144098, at *3 (E.D. Mo. Sept. 11, 2024); *Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc.*, No. 4:17-CV-00764 JAR, 2020 WL 833606, at *2 (E.D. Mo. Feb. 20, 2020). For the reasons set out in *Discount Tobacco* and *Dunne*, I will apply that standard here. Accordingly, to prevail on their motion to reconsider, plaintiffs must show that they did not have a fair opportunity to argue the matter previously and that a significant error necessitates granting the motion.

**Background**

In a Memorandum and Order entered July 11, 2025, I granted in part and denied in part defendants' motion to exclude the testimony of plaintiffs' expert Dr. David L. MacIntosh, whom plaintiffs retained to evaluate and render opinions on the DC plaintiffs' BLLs and the extent to which those BLLs were attributable to emissions from the smelting complex during Doe Run Peru's operations. (ECF 1506, Memo. & Ord.) As relevant here, I determined that Dr. MacIntosh's use of a

- 4 -

predictive model in estimating the BLLs of the DC plaintiffs at ages 2, 5, and 7 was generally admissible, as well as his conclusions regarding the predicted range of BLLs for the DC plaintiffs who had measured BLLs on record.  I excluded, however, his predicted ranges of BLLs for the five DC plaintiffs who did not have measured BLLs:

> [A]sking a jury to assign predictive individual BLLs to those DC plaintiffs with *no* measured BLLs would be asking it to reach a complex scientific conclusion on mere speculation.  Dr. MacIntosh acknowledges that children in a community who have reasonably similar levels of lead in their environments nevertheless can have substantially different BLLs.  While Dr. MacIntosh cites reports recommending a "default assumption" of upper, median, and low-end BLLs in any given neighborhood based on individual variability factors such as behavior, physiological characteristics, and building conditions, applying that assumption to those DC plaintiffs with no measured BLLs invites speculation as to whether their levels would fall in the predictive range and, if so, where – that is, at the low end, median, or high end.  Because Dr. MacIntosh's opinions as to those DC plaintiffs' predicted BLLs are speculative at best, they will be excluded.

(*Id.* at pp. 20-21.)  (Citations to record omitted.)

In my Memorandum and Order entered September 9, 2025, I granted defendants summary judgment on those five DC plaintiffs with no measured BLLs, concluding that without *any* evidence of individual BLLs – given the lack of measured BLLs and the exclusion of predictive BLLs – there was too great a risk that a jury's verdict on those plaintiffs' claims would be based on mere speculation.  (ECF 1524 at pp. 62-63.)  I also concluded that evidence of

community exposure to lead was insufficient alone to show that those plaintiffs "were themselves exposed to lead *at such levels* to cause their claimed injuries." (*Id.* at p. 63.)

In their motion to reconsider, plaintiffs challenge only that part of my September 9 ruling that granted defendants summary judgment on the claims of the five DC plaintiffs without measured BLLs, arguing that I erred in concluding that measured BLLs are required to show lead exposure and in failing to consider other evidence that those plaintiffs were exposed to lead that caused their claimed injuries. Plaintiffs argue that failing to cure those manifest errors in my ruling will result in a significant injustice by effectively ending the cases of hundreds of plaintiffs who lack individual BLL measurements. Plaintiffs request a hearing "and an opportunity to present additional evidence [that is] not part of the summary judgment record." (ECF 1547 at p. 14, n.4.)

Plaintiffs go further in their reply brief, characterizing my ruling as requiring measured BLLs "as the *only* way of proving exposure" and arguing that that ruling forecloses other scientific methods of demonstrating the presence of lead in plaintiffs' bodies, such as bone scans. (ECF 1574 at p. 3.) They request that I permit the five affected DC plaintiffs and all other plaintiffs "to prove their exposure through bone lead tests" and allow them to now undergo bone lead testing. (*Id.* at pp. 9, 12.) Plaintiffs alternatively request that I clarify and limit my

- 6 -

ruling to only the five DC plaintiffs without measured BLLs and not to any other plaintiff, given that "[s]uch an expansive ruling – that a plaintiff without contemporaneous blood level measurements can *never* prove exposure to lead – would fly in the face of established law and have far-reaching and unwarranted ramifications."  (*Id.* at p. 12.)

## Discussion

Under the *Discount Tobacco/Dunne* standard, reconsideration of my September 9 Memorandum and Order is not warranted.

First, plaintiffs had a full and fair opportunity to litigate this issue previously and indeed did so.  Defendants squarely addressed the issue in their motion for summary judgment to which plaintiffs responded with much of the same argument and evidence of record they offer here.  Although plaintiffs' motion to reconsider presents their argument in a more developed way – with citation to several additional cases they aver support their position[2] and specific argument challenging the cases defendants cited in their motion for summary judgment – plaintiffs nevertheless previously had a fair opportunity to argue the matter when the issue was ripe before the Court.  I decline to extend them another opportunity. *See Moore*, 2024 WL 4144098, at *3.

---

[2] All but two of the cases plaintiffs cite were decided well before plaintiffs filed their response to defendants' motion for summary judgment.

Turning to the second factor, I have carefully reviewed my September 9 Memorandum and Order and find no error, much less a significant error, in my ruling on the five DC plaintiffs with no measured BLLs.  Contrary to plaintiffs' assertion, I did not hold that measured BLLs are "required" to show lead exposure or that measured BLLs are the "only" way of proving lead exposure.  At no point in my Memorandum and Order did I correlate a lack of measured BLLs with a lack of exposure, either generally or particularly to the plaintiffs in this case.  Instead, I concluded that without evidence of BLLs – either measured or predictive – there was insufficient evidence of record here showing that those five individual plaintiffs were exposed to lead "*at such levels*" to cause their claimed injuries. (ECF 1524 at p. 63.)  I derived that conclusion from the lack of sufficient evidence pertaining to the *level* of lead exposure those plaintiffs experienced individually and not on whether evidence showed mere exposure.

The reasons for excluding Dr. MacIntosh's predictive measures of the five DC plaintiffs' BLLs are thoroughly set out in my July 11 Memorandum and Order, but I restate with particularity the portion of that Order directly relevant to my summary judgment determination in the September 9 Memorandum and Order:

> Dr. MacIntosh acknowledges that children in a community who have reasonably similar levels of lead in their environments nevertheless can have substantially different BLLs.  While Dr. MacIntosh cites reports recommending a "default assumption" of upper, median, and low-end BLLs in any given neighborhood based on individual variability factors such as behavior, physiological characteristics, and

>building conditions, applying that assumption to those DC plaintiffs with no measured BLLs invites speculation as to whether their levels would fall in the predictive range and, if so, where – that is, at the low end, median, or high end.

(ECF 1506 at p. 21.)  (Citations to record omitted.)  The record on defendants' summary judgment motion included substantial evidence of lead in the community to which community members were exposed, including the plaintiffs here.  For 11 of the 16 DC plaintiffs, evidence of measured BLLs showed the levels of lead to which they were exposed individually, which provided a basis upon which Dr. MacIntosh formed a predictive range of BLLs for those plaintiffs.  Notably, despite Dr. MacIntosh's acknowledgement and plaintiffs' recognition that persons in the same community can have "substantially different" BLLs and that certain variables can affect the level of lead to which an individual is actually exposed,[3] plaintiffs' response to defendants' motion for summary judgment did not proffer any evidence identifying variability factors (*e.g.*, behavior, physiological characteristics, building conditions) for any individual plaintiff.  Consequently, regarding the five DC plaintiffs at issue here, the record contained no measured or admissible predictive BLLs *and* no evidence of individual variability factors to account for their individual levels of lead exposure.  As I determined in my

---

[3] *See* ECF 1269, Pltfs' Oppos. to Mot. to Excl. Opns. of Dr. MacIntosh at hp. 19 ("[C]hildren within the same community, even at the same age, can have very different BLLs due to different lifestyles, activities, and biological factors.").

September 9 Memorandum and Order, without such evidence, any jury finding that those plaintiffs were exposed to lead "at such levels" to cause their claimed injuries would be based on speculation.  There was no error, let alone significant error, in making that determination.

I will therefore deny plaintiffs' motion for reconsideration of my September 9 Memorandum and Order.

I will also deny plaintiffs' request for hearing and to supplement the record with deposition testimony they contend will prove their individual levels of exposure.  Plaintiffs provide no reason why they did not previously submit that existing evidence when the issue was squarely before the Court.

Finally, I decline to address plaintiffs' requests first made in their reply brief that I permit the five affected DC plaintiffs and all other plaintiffs to prove their exposure through bone lead tests, allow plaintiffs to now undergo bone lead testing, and that I clarify and limit my holding.  Those requests are based on plaintiffs' misapprehension that my Order broadly held that blood level testing is the sole method of demonstrating lead exposure and that a plaintiff without such testing can never prove their exposure to lead, when plainly it did not.  Besides, "a court generally will not consider an issue raised for the first time in a reply brief." *Powell v. St. Francois Cnty.*, No. 4:14-cv-1230-AGF, 2016 WL 695674, at *1 (E.D. Mo. Feb. 19, 2016).  *See also Bridgeton Landfill, LLC v. Missouri Asphalt*

- 10 -

*Prods., LLC*, No. 4:20 CV 1486 RWS, 2021 WL 663156, at *4 (E.D. Mo. Feb. 19, 2021) (belated prayer for relief raised for the first time in reply brief fails to afford opposing party the opportunity to address the argument).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Reconsideration of Order Granting Summary Judgment on Five Discovery Cohort Plaintiffs Without Measured Blood Lead Levels [1546] is **DENIED.**


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of December, 2025.