IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


A.O.A., ET AL.,                    )
                                   )
     Plaintiffs,                   )
                                   )  No. 4:11-cv-00044-CDP
vs.                                )
                                   )
DOE RUN RESOURCES                  )
CORPORATION, ET AL.,               )
                                   )
     Defendants.


STATUS CONFERENCE

BEFORE THE HONORABLE CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

January 20, 2026


APPEARANCES:

For Plaintiffs:          Jerome J. Schlichter, Esq.
                         Kristine Kraft, Esq.
                         Nathan Stump, Esq.
                         Cort Andrew VanOstran, Esq.
                         Jessica M. Holmes, Esq.
                         SCHLICHTER BOGARD LLC
                         100 S. Fourth Street, Suite 1200
                         St. Louis, MO 63102

(Appearances continued on Page 2.)


Reported by:             PAMELA HARRISON, RDR, CRR, CRC, CCR, CSR
                         Official Court Reporter
                         United States District Court
                         111 South Tenth Street, Third Floor
                         St. Louis, MO 63102
                         (314) 244-7987


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

```
APPEARANCES CONTINUED:


For Defendants:        Thomas P. Berra, Jr., Esq.
                       Andrew T. Bayman, Esq.
                       LEWIS RICE LLC
                       600 Washington, Suite 2500
                       St. Louis, MO 63101

                       Geoffrey M. Drake, Esq.
                       Mark Sentenac, Esq.
                       KING & SPALDING LLP
                       1180 Peachtree Street, N.E., Suite 1600
                       Atlanta, GA 30309

                       Tracie J. Renfroe, Esq.
                       KING & SPALDING, LLP
                       1100 Louisiana Street, Suite 4100
                       Houston, TX 77002

                       Edward L. Dowd, Jr., Esq.
                       DOWD BENNETT LLP
                       7733 Forsyth Boulevard, Suite 1900
                       St. Louis, MO 63105
```

**January 20, 2026**

**(The proceedings commenced at 1:03 p.m.)**

**(The following proceedings were held in open court:)**

THE COURT:  Good morning.  We are here in the A. or Reid case versus Doe Run, which is Case Number 4:11-cv-44.  We are here for a status hearing and talk about scheduling for the rest of this case.

So let me start by asking -- hold on just a second.

Would plaintiffs' counsel please identify yourselves for the record.

MR. SCHLICHTER:  Jerry Schlichter with Schlichter Bogard and Denton for the plaintiffs.

Do you want all of us, Your Honor?

THE COURT:  Yeah, I'd like to know everybody who's --

MR. STUMP:  Good morning, Your Honor.  Nathan Stump on behalf of the plaintiffs.

MS. KRAFT:  Good afternoon.  Kristine Kraft on behalf of the plaintiffs.

MR. VANOSTRAN:  Good afternoon, Judge.  Cort VanOstran on behalf of the plaintiffs.

MS. HOLMES:  Good afternoon.  Jessica Holmes on behalf of the plaintiffs.

THE COURT:  All right.  And then defense counsel, please identify yourselves for the record.

*USA  v. Doe Run Resources Corporation, et al.* | 4:11-cv-00044-CDP    4

**MS. RENFROE:** Good afternoon, Your Honor.  Tracie Renfroe for the defendants.

**MR. SENTENAC:**  Mark Sentenac on behalf of the defendants.

**MR. DOWD:**  Edward Dowd.  Good afternoon, Your Honor.

**THE COURT:**  Good afternoon.

**MR. DOWD:**  On behalf of Ira Rennert.

**MR. BAYMAN:**  Good afternoon, Your Honor.  Andrew Bayman on behalf of the defendants.

**THE COURT:**  All right.  Hold on just a second.

**MR. BERRA:**  Good afternoon, Your Honor.  Tom Berra on behalf of defendants the Doe Run Resources Corporation, Bruce Neil, and Marvin Kaiser.

**THE COURT:**  All right.  Hold on just a second while I find everybody.

Mr. Bayman, right?

**MR. BAYMAN:**  Andrew Bayman, Your Honor, yes.

**THE COURT:**  Yeah.  You were second on my list, but I still couldn't find you.  So sorry about that.

Okay.  Go ahead.

Oh, Tom Berra, I've got you, Mr. Berra.

**MR. BERRA:**  Thank you, Your Honor.

**MR. DRAKE:**  And Geoffrey Drake, King & Spalding, for the defendants.  Good afternoon.

**THE COURT:**  Good afternoon.

Okay.  So we've got a lot to talk about here today, but I would like to start by finding out a little bit on the status of the discovery that I know has been going on.

The joint plan that you filed indicated that pretty much everything was done except the depositions of the experts that we had scheduled to run through the end of February.  And I guess I just want to ask -- let me ask the plaintiffs:  Did all the travel of your plaintiffs and their representatives go okay?

I see nodding.

So all that's done?

**MR. SCHLICHTER:**  Yes, Your Honor.

**THE COURT:**  Okay.  And then --

**MR. SCHLICHTER:**  Not without challenges.

**THE COURT:**  Yeah, I'm not surprised.

And then the defendants' experts and interviews have all happened, and the only -- am I correct that the only thing left are the -- those six or seven expert witnesses?

**MR. BERRA:**  Your Honor, that's correct.

**THE COURT:**  Okay.

**MR. BERRA:**  And the depositions are all noticed.

**THE COURT:**  Okay.  What about the new defendants' expert, that Mr. Machado who substituted?  All that's done with him in terms of deposition and everything?

**MR. STUMP:**  Your Honor, we'll be deposing him this

week.

THE COURT:  But you've got his report?

MR. STUMP:  That's correct.

THE COURT:  Okay.  Anything else like that hanging out that hasn't been done?

So the depositions of that -- the deposition for preserving for trial of Dr. -- or Mr. Bellinger went forward, I take it?  And then the depositions of Mr. -- the two Mr. Rennerts, those went forward?

MR. STUMP:  Yes.

THE COURT:  Okay.  All right.  So I guess that's six experts that are left.

Okay.  So the first thing on my list was the trial -- number of plaintiffs and trial selection and procedure.  And I have looked at the materials you filed, and I don't know that I need argument on it.  It's pretty clear where the disagreements are.

And here's what I'm going to do.  We're going to do a trial of -- as I suggested earlier.  Since there's 10 defendants left, it makes it pretty easy.  We're going to just start with five defendants in the first trial and do five in the second.

And I know there was a debate about how to select who the plaintiffs should be, and I think I will -- I am going to go along with the plan -- the suggestion of the plaintiff

that for the first five, the plaintiffs can select two, and the -- I mean, the plaintiffs can select three, and the defendants can select two.  Those will be simultaneous.  If there is a duplicate, then I'll deal with that and pick someone else.

I want to just make one comment, because this has been repeated many times.  The defendants complain that this isn't fair.  It's not fair because we don't have any of the people we picked in -- or not many in the trial pool that remains.

And I just want to point out for the record, since it apparently is not obvious to the defendants, there is a reason for that, and it is that the defendants chose, in this trial pool, to select people, a number who did not have blood level tests, as their picks and then ask me to grant summary judgment on those clients.

And I did.  And so you got what you asked for.

So there's -- yeah, you don't get any more picks, because I gave you what you wanted already.  So this selection seems fine.  So that's what I want to do for that.

And then looking at the scheduling and the issues, the plaintiff says 8 to 10 weeks.  And I know that's sort of a rough estimate.

Do you-all still think that's appropriate?

**MR. SCHLICHTER:**  We do, Your Honor, for a

five-person trial.

**THE COURT:** For a five-person trial. And I think that seems reasonable to me, knowing what I know about this case. You also said you thought trial -- some kind of trial clock would make sense in the case, and so I've given some thought to that.

Now, in terms of the trial date, it's going to be -- the first trial is going to start on June 22. It might be the 23rd. I have to see whether we'll start on Monday or Tuesday, just depending on what else is going on in the courthouse. But we'll use the first week for jury selection so that you won't actually have to begin testimony until the 29th of June.

I know that the defendants have a lot of conflicts you've told me about, but you've got 5 weeks. This accommodates the conflict that the person that you-all told me was going to be trial counsel, Ms. Renfroe. That accommodates her conflict, and it gives you-all plenty of time to get the rest of the team put together, even though I know some people have other conflicts.

So let me see where I stand on all of this.

Okay. I'll do the exact minutes per side as we get closer to trial. We'll need to have some other conferences in the next few months just to go over things and see if you-all can fine tune it all, the length of time you think we'll start for trial.

My intention at this time is to start the second trial on October 26.  So those are your two dates:  June 22 -- although it may be the 23rd -- or -- and then the second one on October 26, which will give us plenty of time in between to deal with the things we'll undoubtedly need to deal with.  I think the second trial will have to be easier than the first, because we'll have already done a lot of things.  We'll learn a lot on the first.

I do want to talk to you-all -- oh, in terms of a clock, I'll actually set the time limits at a later date, once I see a little more where you-all are headed and talk to you more about your estimates for the time of the trial.

I've done this, you know, quite a bit before, and the thing you-all have to remember is that, you know, a trial day -- if we start at 9:00 and we stop at 5:00, that's 8 hours. And if we take an hour for lunch and two 15-minute recesses and then the other 30 minutes disappears somewhere during the day, and so 6 hours is the most you get in a trial day.  5.5 is actually often closer to it.  So when you figure out the minutes, that's what we're looking at, and I look at what your estimates are for 8 to 10 weeks.

The defendant didn't have an estimate because they think they need to know who the plaintiffs' witnesses are going to be and how many of them there are going to be before they can make an estimate.

But let me do mention a couple of things.

In terms of the time limits, of course, you know, that's going to -- it'll be the amount of time you have on direct, whenever a lawyer is asking questions.  So we include everything in it.

If we have a lot of objections that take up a lot of time, then I have to start allocating it.  But usually, that doesn't happen.

So the other things we need to talk about that are important.

You-all have very complicated schedules for pretrial submissions, but I appreciate that you have agreed on a lot of things, and that's good.

I think that it -- the basic things you propose is that you meet and confer before filing initial -- any of the trial -- pretrial things that we need.  And I think that will be very helpful.

I will come up -- I will give you a schedule once I do the setting for the trial, but I just do want to talk about the submissions first.

Starting at the beginning, jury questionnaires, you-all indicated -- you gave dates for the jury questionnaires, but part of my question is:  What do you think needs to be included in the jury questionnaires?

We routinely screen the jury panel for length of

trial, and we can certainly do that in this case, and that is done -- I mean, we would always do it in a case of this length so that we would get -- you know, the people who actually came in would be people who indicated that they're available for the trial at the time and the length we've told them when we send out the jury summons.

To the extent you want to do additional subject -- you know, case-specific questions -- and I take it from what you filed that you do think that's appropriate -- you're going to need to really work on that, and I'm going to have you start working on that right away.  And the reason is, for this case, usually, the clerks say about 6 weeks before trial is when they would send it out, but -- or we'd need to have it.  We're going to have to do things a little faster -- I mean, a little farther out in this case because it's going to be so long.

The -- if you're going to do a case-specific questionnaire, my concern is that it leads jurors to research the case.  And when you tell them too much about a case, even though we tell them not to do research, they sometimes do.  And I'm concerned about that.  And I have had problems with it in the past.

Most of the time when I've been fairly nonspecific, we've done okay; but when we get specific, we do have jurors who -- you know, one time a juror had researched everything about the case, and he answered his questionnaire.

And I said, "Well, we told you not to do that."

And he said, "Well, I didn't do it until after I'd answered the questionnaire."

So now we tell them don't research it before or after. But we're more concerned about the people who don't tell us. So that's an issue, but I'm going to have you-all set a time to work on it and decide if there's a way to get around that and you can ask the questions you wish to ask.

We obviously have issues with the fact that our jury pool includes municipalities and areas in Missouri that have had experience with Doe Run before in terms of lead mining, the lead cases that have gone on in this state over the Herculaneum and other sites. And so that's one of the questions you-all need to wonder about.

I don't know how it will affect anything, and I'm not saying that just because someone has had experience that they would not be qualified to serve on the jury. They might be fine. But that's the one thing I think -- but there are lots of other things you-all may want to ask questions about, and I do not know how they will be handled.

You know, the -- the number of jurors is a big question, and we'll have to figure that out. The number of panel members that we summons will be a big question to try to figure out for this length of trial.

Additionally, whether people are Spanish speakers is

one of the things I thought was a question.

Again, we want the jurors to accept the evidence that they hear, and if there are people who are native or very good Spanish speakers in the -- in the jury, then we have to find out whether they would listen to the interpreter and not tell the rest of the jurors that somebody said something that is not what the interpreter said.  I just don't know how you deal with that in a long case like this, but it's done all over the country in various times.

Now, in terms of your interpreters, of course, you-all have to pay for those and hire them and build that time into the trial.  And we have a pretty good system, but we'll need to work on it ahead of time where we can provide the plaintiffs with headsets that they can listen to -- you know, where they can hear the interpretation -- I mean, if it's English being spoken, where they can hear the Spanish interpretation, to the extent they need it.

If it's Spanish that's being spoken, everybody is going to hear the English interpretation, because that's going to be spoken for the rest of us.  So we'll have to work on that.

MR. SCHLICHTER:  Your Honor?

THE COURT:  Yes, sir.

MR. SCHLICHTER:  I'm going to ask one question about the mechanics of that.

THE COURT: Uh-huh.

MR. SCHLICHTER: Are you talking about a system like the UN uses where there's an immediate translation, or who does the translating for the people with the headsets?

THE COURT: Well, whoever you hire.

MR. SCHLICHTER: Okay.

THE COURT: Because the parties have to hire who they need for their clients and who they need for their -- if it's a witness, whoever is presenting that witness has to present the interpreter.

I would hope that you and -- that the plaintiffs and the defendants would work together and agree on a set of interpreters, but assuming that the plaintiffs, who are the plaintiffs in this case, will need to hear all of the court, all of it translated, we normally expect simultaneous translation. It depends on the skill of the translator. And so that's a bit of an issue.

When we do it in criminal cases, we use simultaneous translation, but we give a minute. You know, there's a lag. It's not totally simultaneous. It's --

MR. SCHLICHTER: Thank you.

THE COURT: -- I would say not as good as what you see on television from the UN, but it usually works.

And the system we have, we have different headset-type systems, so we'll figure that out. But that's

what we would hope for.

When a person is speaking Spanish in the courtroom, simultaneous translation usually is too distracting for the court reporter and all the people who are trying to listen to the English, so it ends up being not simultaneous. But when it's just for the plaintiffs or the other -- or other witnesses, whoever -- client representatives, anybody who is -- needs to hear the testimony, you know, that's what we'll have to do.

So you-all need to be working on that. I'm glad it's not our job to do it.

We do have, you know -- the court -- we don't have a court interpreter here in our court. We have a telephone system we use for criminal trials when we need it, but it's better in a trial to always have live translators.

Now, I wanted to talk first about the thing I think is going to be contentious.

Oh, I know that the plaintiffs did file a second motion for sanctions. I saw that this morning. And obviously, the defendants need to respond to that in the time set, and we will -- I'll rule on that in due course. So, you know, respond to that, and we'll deal with that.

There are -- in looking at your descriptions of the motions in limine and the defendants say we need briefing of, you know, hundreds of pages for everything -- which I

understand that.  You've said that before, and I have listened to that.  But motions in limine, in general, in this court are what we use to exclude evidence.

It's to say there is some evidence that the other side is going to bring up that we know is inadmissible, and we want you to exclude it at the beginning of the trial so that we don't have to jump up and object, and certainly so that the jury will not be prejudiced by hearing inadmissible evidence in the form of a question.  That's usually what we use it for.

It's not a time to redo motions for summary judgment.  It's not a second bite at the legal issues in the case.

I do understand, I recognize, that the defendant believes that there are some things that must be reargued, and I told you-all earlier that we could deal with this.  And the two issues are the punitive damages which the defendants claim has changed since -- since my prior ruling, and then the Section 1971 or the statutory 1971 affirmative defense of the defendants.

And the defendants say that the law has changed on those and we need to rebrief them.  I'm going to allow another round of briefs on those specific things, but they're going to be very short briefs.  And I'm going to ask you to give me as exhibits the foreign law you're talking about, an official translation of any statute or case -- meaning certified by

somebody saying it's an official translation -- and then very little else.  And they're going to be very short briefs.  I'm not going to do another 1,000-page brief on anything.

And I'll set up a time schedule for this.  It's not going to be next week, but it will be coming up soon.  Because I will rehear -- I will reconsider these things, because you've told me the law has changed.

But that's going to be it on the motions in limine.  Otherwise, it should be things that are evidence-based, not me to tell somebody they can't argue something or argue about the law.  So please remember that.

Question I have for the plaintiffs:  How much of your case do you expect to be in the form of deposition?  A lot?

MR. SCHLICHTER:  Well, it will be a significant part, Your Honor.  We haven't worked line-by-line.

THE COURT:  Right.

MR. SCHLICHTER:  Obviously, the fact witnesses -- there will be some fact witnesses who will testify live.  How many?  It may be around four, but please don't hold us to that.

THE COURT:  I understand, yeah.

MR. SCHLICHTER:  The bulk of the fact witnesses -- and there have been 20 depositions taken -- will be deposition excerpts because they're not within the subpoena power.

THE COURT:  Right.

**MR. SCHLICHTER:**  So how many of those 20 will we use excerpts for -- or from?  It's hard to say now.  It may be a majority of those for excerpts, but we haven't nailed down anything like the precision that we'll have later.

**THE COURT:**  Okay.  And are any -- so -- that's fine.

So what we need to do is figure -- are they all on video?  Are they all video depositions?  There's none that are just reading --

**MR. SCHLICHTER:**  Almost all of them are.

**THE COURT:**  Almost.  If there's anything --

**MR. SCHLICHTER:**  Maybe a couple of them are not.

**THE COURT:**  Okay.  And that's fine.

One of the issues is I don't -- we won't have an interpreter interpreting what's being said on the videotaped deposition or in the deposition, because I don't think we need to, unless you-all choose to do that.

And I assume they're all in English, right?

**MR. SCHLICHTER:**  Yes.

**THE COURT:**  Okay.  The other thing everyone needs to know -- and I know you-all -- I know the St. Louis lawyers are familiar with this, but when we have -- since this is a long trial, I want to say it now, and I'll try to remember to say it again.

When we have depositions being played in a video or read to the jury, I do not have the court reporter take down

what's being said at that time.  They don't take down what's on the video.  They don't take down what's being read from a deposition, because it's already recorded testimony, and that's what the jury is hearing.

For that reason, we try not to have too many stop and argue about things in the middle.  But if we do stop and argue, obviously, the court reporter will pick it up.

It's the party who introduces the evidence to -- their responsibility to provide -- and normally we just do this at the end of each day or even the next day.  It can even be hand-scribbled.  It can be however you want to do it -- a list by page and line of the deposition that was actually read. That list becomes the record of what was there for the Court of Appeals.  And so you-all need to do that.  Don't be surprised. And then make sure that someone has the job of keeping track of exactly what is actually read to the jury.

I see that you have -- you built in some time to meet and confer about deposition designations.  Because if there's a way -- you know, if you can resolve any disputes about what -- what deposition designations you wish to introduce, that will be helpful.

If I have to rule on them, we'll do that before trial so you'll have time to do any editing needed, but I can't -- this case is big enough that we can't have a situation like we frequently have in short trials where people -- civil

trials.  They don't do this in criminal trials.  But where people designate way more than they actually intend to introduce; and then, when they get to trial, they cut it back significantly because they know they're not going to do that to a jury.

We can't -- that's not how we need to do this.  We need to have you-all meet and confer and narrow it in advance so that we're not changing things in the middle of the trial and I'm not having to rule on things in the middle of the trial.  So that's important that you-all work that out.  And it looks like you've made a good stab at it by agreeing on some of the deadlines that you had.

Let me just look at some of this.  Hold on a second.

Jury instructions and verdict forms are a question.  You-all also have provided times when you would meet and confer, except the defendant wants to do the Section 1971 issues first, and I understand that.  But I think a way to do this where you exchange proposed jury instructions and verdict forms -- and I keep calling these verdict directors.

The verdict director, of course, is the actual instruction that says what you have to prove on -- for the elements of the case for each claim.  But the verdict forms are going to be a question.

And part of the issue is whether we may need to end up using special interrogatories on a jury verdict form.  And

so that is something we probably will, I think, given some of the issues in the case.  But perhaps not.  So let's -- I'm going to ask you to do that, to get some proposed jury instructions fairly quickly.

I had suggested this earlier, and you-all convinced me it was impossible, especially with the Section 1981 affirmative defense.  But I may have you do -- give me some, you know, what are the -- what are you saying are the elements of the claims.

Negligence is negligence.  It's pretty straightforward in Missouri.  So that's not going to take forever, but we'll -- I may need to have you get those to me right away.  So that's what we're going to do.

So I think that sounds all right.

Now, the other big issue that I have before I ask you-all for other things -- because I've given you the trial dates today, and I'm going to then do an order or series of orders setting out the other deadlines on the pretrial things.  And they're going to be somewhat the way you-all have suggested.

I'm not going to sit here today and say somebody said 77 days on this thing and somebody else said 53 days, and so what's it going to be?  I'm not going to do that today.  I will do it, but you don't need to -- I don't need to hear argument on it.

The other big issue -- and this is really for the plaintiffs -- what about the travel issues for your clients? Have their visas -- you had given me deadlines -- you know, visa situations, and some of them were expiring last year, and some were expiring -- you know, I just don't know.

So tell me what you've got.  Whoever wants to address that, you can step up to the lectern.  It might be easier.

Ms. Kraft?

MS. KRAFT:  Yes, Your Honor.

We have a handful of clients, depending on who's involved in the first trial.  But we have a handful of clients that will need to renew their visas.  So we'll probably be asking the Court for an order setting the trial date so that we can get the visas.  And we don't anticipate that being a problem at all.

THE COURT:  And how long do the visas last, generally?

MS. KRAFT:  Well, some have lasted -- some are issued up to 10 years, and we have others that have expired.

THE COURT:  Okay.

MS. KRAFT:  So -- but we have only a handful of clients whose visas have expired.

THE COURT:  Okay.

MS. KRAFT:  Yeah, uh-huh.

**THE COURT:** Okay. All right. Is it better for us to do an order for all of them just to last through the year so that you could go ahead and you could just file a motion for me to do an order of those right away, and then you could -- we could have -- an October trial should end before the end of 2026, I would think. Although it's late October. So maybe you would say -- buy a little time into the new year.

**MS. KRAFT:** I think that's an excellent idea.

**THE COURT:** That way you-all can get -- since there's only a handful, you can get started. And then, when you do -- when we do give you the deadlines for plaintiffs' selection -- which will be fairly soon, but we don't need to wait on that.

**MS. KRAFT:** All right. Thank you.

**THE COURT:** Also, start thinking about your issues of the jury questionnaire, start talking about that among yourselves so that you're ready to go on that.

And then -- let me take a look at one more thing.

I expect we will use this courtroom. I do not yet have complete approval for that, but I expect I will because there's no place else we could do it. So -- with five plaintiffs and all the defendants that are here and with all the counsel.

Just a second. Let me look at what else I had myself to ask.

Oh, if anybody is going to be asking for daily copy from the court reporters -- I don't know who our -- we don't know what court reporters will be doing this yet, so rather than talking to the court reporters directly, talk to -- this is Nikki Phillips.  She's the head of my team in the clerk's office.  Talk to her if you think you're going to be needing daily copy, because that does require -- and if you think you're going to need it for the whole trial or part of the trial, let us know, because that obviously requires a personnel issue, and, you know, we'll have to do that.

So we -- you know, we don't know who -- what court reporters will be assigned, and the answer to that question may affect it as well.  We'll try to -- I'm going to try, to the extent we can, for a lengthy trial, to keep the support personnel limited to a few who will rotate, but there will be times when you'll see somebody you've never seen before sitting here in court, either being a court reporter or being the courtroom deputy.

So just know that is probably going to happen.  But we're going to do our best to keep that to a limited pool so that people will know what's going on.  And everybody here, you know, is very capable.  So that shouldn't be a problem.

Okay.  What else?

From the plaintiffs, what else do we need to talk about?

**MR. SCHLICHTER:** Couple things, Your Honor.

With regard to, now, the schedule, we'd like to get an idea from you as to how you intend to handle any posttrial motions after Trial Number 1 and before Trial Number 2.

One of the things you could consider doing is restrict the time for such motions to a more finite period. Because what can be envisioned very easily is we finish the trial, say, in August, or maybe even early September. Posttrial motions are filed, oppositions are filed; maybe there's a reply, maybe there's not a reply allowed. And then we have those pending while we head into the second trial.

What we think is important is that the rule -- those motions be ruled on in due course and that the second trial not get in the way of those rulings.

Now, that would mean both sides have to be working during the trial, perhaps, perhaps not, depending on the time limits, on those posttrial motions and any response.

And if we are going to get decisions after Trial Number 1, it would require the Court, if the Court were inclined and if the Court feels it can do it -- if you feel you can do it, ruling on those motions perhaps while the second trial is going on if we haven't had that all submitted beforehand.

So that's one thing we wanted to bring to your attention. We don't think it would be in the interest of this

overall litigation to wait for rulings on Trial Number 1 until after, say, Trial Number 2.

THE COURT: Yeah. I understand that. That may have been -- I had something that you-all had said that I wrote I didn't understand in this, and it was something the plaintiffs wanted, and that may have been what it was. I think it said something like rule on posttrial motions before the verdict, which I didn't understand.

Did you say something like that? Do you know what I'm talking about?

MR. SCHLICHTER: I don't think we can do.

THE COURT: I didn't think that was what it was.

MR. SCHLICHTER: I'm not sure there's a way to do that, Judge, because we wouldn't know what the appeal would be.

THE COURT: Well, you did say --

MR. SCHLICHTER: I think we talked -- I think what you may be referring to is we suggested that there not be posttrial motions, but I don't know that you have the authority to say that.

But I think considering an expedited process for any posttrial motions by either side is important, in view of the second trial coming up. And there could be a relationship between those posttrial motions and how you would allow the second trial to proceed, or evidentiary questions and so on.

THE COURT: Yeah, I think you're very -- that's

Status Conference - January 20, 2026

correct.  That's why there is a certain amount of time built in between the two dates.  But I think -- I certainly understand that they need to be ruled on, and I'm going to try to -- I will probably try to set some kind of a schedule that is a shortened schedule so that I have time to look at those and rule on them or at least -- depending on what the nature of any posttrial motions are.  But I think that makes sense.

MR. SCHLICHTER:  Yes, because as we're looking at the schedule now, if there isn't an expedited order, an order expediting the process of those motions, we could get into those motions still being filed during the second trial, which we're willing to do.  But in terms of your schedule and your ability to have time to rule on those, it could be a problem if it occurs during the trial.

THE COURT:  Well, and obviously, if we learn any lessons in the first trial, it would be nice to apply them in the second trial and not learn them after all of that.  But I don't know exactly how that will work.  But, yeah, I certainly agree with all of that.

Here's the part I didn't understand:  "Plaintiffs recommend that no motions to stay or extend any trial proceedings shall be filed until after both trials have reached verdict."

So I didn't understand what that meant.

MR. SCHLICHTER:  We are not in that position now,

Judge, given that you set these dates.

THE COURT:  Okay.

MR. SCHLICHTER:  And we also, as we pointed out in our papers, given all these objections and all the scheduling issues and whatever, we also propose, if all those are insurmountable for them, we have one trial of ten --

THE COURT:  Yeah.

MR. SCHLICHTER:  -- and save a whole lot of judicial time.

So given how things have worked out now with your order, that position is no longer our position.

THE COURT:  Right.  And I think two trials makes sense, given there are five plaintiffs each.  We could do ten.  And I'm not sure, as you-all have argued, that it would add that much.  But I think five is going to be sufficient for me to keep my mind around and keep the jury, you know, focused on --

MR. SCHLICHTER:  Yeah.

THE COURT:  -- what's in front of them and not -- you know, it's hard enough to remember, in a long trial like this, who everybody is.  So I'd rather -- I think five is sufficient.  Ten would probably work fine, but that -- I think five is good.

Okay.  What else?

MR. SCHLICHTER:  Second cohort, we think it's

important not to complete these two trials, say, around the end of the year, maybe in the beginning of next year, and then and only then start the process of Cohort Number 2.  Because we saw how long that took and we saw all the argument back and forth and the delays.  And that process itself is going to take quite some time before the cohort is selected, and then we know what has to be done once the cohort is selected:  depositions, visas, passports, the whole process.

So we urge the Court to have us start -- both sides start working now or shortly on developing the second cohort process.  And that way, we can have that underway with the goal toward having a third trial early in the year or at least much quicker than it would be if we only start the process after the completion of these two trials.  So we feel that's very important.

THE COURT:  Okay.

All right.  Anything else from the plaintiffs?

MR. SCHLICHTER:  I don't believe so, Your Honor.

THE COURT:  Okay.

MR. SCHLICHTER:  Thank you.

THE COURT:  From the defendants?

MR. DRAKE:  Good afternoon, Your Honor.  Geoffrey Drake for the defendants.

I really -- I guess I'll address each of those two issues.

On the first one, here, Mr. Schlichter's pointed -- and I think our tendency is to be aligned on the concept of wanting to get through the posttrial motions and get the benefit of the Court's ruling.  I just would request the opportunity, now that we have the dates, to talk to our client about that and our appellate counsel, although it sounds like the Court is inclined to set a schedule at some point in time. I don't know if that needs to be done right now or perhaps at our next conference.

On the second point, though, Your Honor, Mr. Schlichter hasn't raised this idea with us at all of working up a second cohort.  So we haven't met and conferred and haven't had the benefit of doing that.  But I can tell you that my instinct on that, not even having had the chance to talk to my client, is that we would be opposed to that at the moment.

I think both of these trials are going to occupy a considerable amount of time and energy from both of the parties.

On top of that, as Your Honor is probably well aware, the defendants are grappling with the expert discovery that has to be done in the Collins case at the same time, the deadlines of which will intersect and overlap with the trial, which is going to cause some challenges for our experts.  But, you know, we're navigating that, and we'll overcome that, Your

Honor.

But in terms of simultaneously working up a new cohort at the same time that we're in two trials and working up the Collins case, we think that presents some real challenges that we would oppose and object to.

THE COURT: Okay. Yes, Ms. Renfroe.

MS. RENFROE: Thank you, Your Honor. Two important housekeeping issues.

One is, when the Court is in trial, do you envision four days a week or five days a week?

THE COURT: Basically five days a week, but there will be some days that are exceptions. I mean, we'll have to take some days off, and I just can't tell you exactly what they are. But I don't -- it won't be a normal -- I'm not going to, in advance, I don't believe -- and I haven't usually in long trials and haven't needed to -- said, "Okay, we're not having trial on Fridays," or whatever.

So probably there -- and I'll try to -- if there are dates when I know that there's reasons I can't be available or, you know, if you-all have other dates when you think we need to not have trial, we might do that.

But basically, there would be some days off, but my goal would be to keep it to a minimum. So it will be no more than one day every couple of weeks or every three weeks. So a few days off during the trial will happen.

And there are times during a trial when we have to when we weren't planning on it, but it's nice if I can give the jury the dates ahead of time so they know they're not going to have trial on a certain day and that we all know it.  But I'm not going to do it as a regular, you know, Fridays, or whatever.

MS. RENFROE:  Thank you.

THE COURT:  That takes too long.

And we do run 9:00 to 5:00 and try to get as much trial work done as we can, and we expect the lawyers to be here before and after trial days to deal with all the stuff.

I don't -- I do not like dealing with nonjury things while the jury is waiting.  So we try to do that before and after trial as much as possible.

MS. RENFROE:  Understood.  Thank you very much. That's very helpful.

The second issue is the date for the pretrial -- the final pretrial conference.

I know the Court said that you envision having a series of conferences leading up to the final pretrial conference.  I just want to make sure that I can be present at the final pretrial conference.  And I don't know if the Court has a date in mind, but if we could --

THE COURT:  Let me just tell you the answer to that, and that is my assumption in picking this trial date was that

you would not be able to -- because I don't think I'm going to set it more than a month ahead of trial, nor am I going to set it a week before trial.  I'm thinking 2 weeks before trial.  So that's one of the things where you'll have to get your, you know, subordinates to do it or be on the phone, or whatever. And I don't have a specific date in mind.

MS. RENFROE:  Understood.  Thank you, Your Honor. That's all I have.

THE COURT:  Yeah, my assumption was you wouldn't be here, but there -- you've got -- I did count up, and right now, you-all still have 19 lawyers who have entered appearances for these defendants.  So that's a lot of lawyers.  And then, you know, you've got five months to prepare.

MS. RENFROE:  Understood, Your Honor.  Thank you.

Let me check with my colleagues to see if we have anything else.

Thank you so much, Your Honor.  Appreciate it.

MR. SCHLICHTER:  Your Honor, I have one response.

The response is to the point that now the Collins case is the latest reason why they need time on top of some of the other things that they've said.

At some point, that's going to be an issue that's going to require two trials on an ongoing basis at the same time probably.  And that's going to be now another reason, and then I'm sure it will get play with Judge Sippel the opposite

way.  That can't be a reason.

And there's another reason why that can't be a basis because their lawyers are going to be so busy, and that's this -- and we speak to this in the motion for serious sanctions that we filed today for this pattern of conduct, not isolated to the $429,000 fine, to the second motion for sanctions -- which is pending -- for the same conduct that Judge Sippel sanctioned them for in that case.  This is for the whole series of actions they took in Florida by filing two separate lawsuits.

I'm not going to argue that, but what has happened is, after the threat by Judge Sippel to strike their pleadings, after four years of fighting, two different cases they filed down there, dismissed for -- with two -- one was $200, and the other was, I think, $1,000.

So they'll have a whole lot of lawyers out of those 19, or whatever the number is, to work on both cases at the same time.  They're all freed up.

**THE COURT:**  Yeah, I did note that resolution of the Florida cases, which I think was news to everyone up here.

Okay.  What else?

All right.  That's what we'll do.  You'll get orders from me coming up, and I think we've -- you know, there are a lot of things I'm -- like I say, we'll have to work through, but I wanted you-all to have those trial dates, know you're

going to -- that's what's going to happen, start working toward it, and then we will be -- and if you'll get me a motion on the visas soon, I can do that soon, and that will give us -- at least get that hurdle out of the way.  Okay?

All right.  Thank you, all, and I will see you next time.

Court is in recess.

Oh, and the defendants do need to just respond to those motions -- that motion for sanctions in the normal time. I don't want to extend the deadline on that, okay?

**MS. RENFROE:**  Thank you, Your Honor.

**(Off the record at 1:47 p.m.)**

**CERTIFICATE**

I, Pamela Harrison, Registered Diplomat Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 35 inclusive and was delivered electronically and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, 21st of January, 2026.


/s/  Pamela Harrison
_____
Pamela Harrison, RDR, CRR, CRC, CCR, CSR
Official Court Reporter