**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| A.O.A., et al.,          ) | Case No. 4:11CV44 CDP |
|                  ) | (CONSOLIDATED) |
|        Plaintiffs,     ) | |
|                  ) | |
| v.                 ) | |
|                  ) | |
| DOE RUN RESOURCES CORPORATION,) | |
| et al.,              ) | |
|                  ) | |
|        Defendants. | |

**DEFENDANTS' MOTION AND MEMORANDUM OF LAW REQUESTING
RECONSIDERATION OF THE CHOICE OF LAW APPLICABLE TO PUNITIVE
<u>DAMAGES PURSUANT TO RULE 54(b)</u>**

## I.   INTRODUCTION

Defendants move this Court, pursuant to Fed. R. Civ. P. 54(b) and 44.1, to reconsider the portion of its October 16, 2018 order (ECF No. 949) (the "2018 Order") determining that Missouri law applies to the issue of punitive damages in these proceedings.

The Court concluded in the 2018 Order that "the laws of Peru do not actually conflict in any significant, substantive way with Missouri" on the availability of punitive damages. (*Id.* at 49.) Since 2018, however, the Supreme Court of Peru has repeatedly and unequivocally denied that punitive damages are available under Peruvian law. Accordingly, a conflict of laws exists, requiring the Court's reconsideration. Moreover, Plaintiffs reside in Peru and were allegedly injured in Peru; thus, under Missouri choice-of-law principles, Peruvian law presumptively governs. As discussed further below, Plaintiffs cannot overcome this presumption under the relevant Restatement factors—particularly where Peru's strong policy stance outweighs Missouri's weak interest in applying punitive damages under a *derivative* liability theory predicated upon the actions of a Peruvian-based subsidiary that allegedly injured Peruvian citizens. Consistent with the Court's choice-of-law analysis regarding application of Article 1971 immunity, the Court should determine here that Peru has the most significant relationship to the issue of punitive damages.

## II.   ARGUMENT

As the Court recently explained in its December 29, 2025 Order, Fed. R. Civ. P. 54(b) "gives the district court greater discretion to reconsider interlocutory orders, 'which as a practical matter a district court needs in order to modify orders in response to the changing circumstances of a lawsuit before it.'" (ECF No. 1577 at 3 (quoting *Discount Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.*, No. 3:09-CV-05078-DGK, 2010 WL 3522476, at *2 (W.D. Mo. Sept. 2, 2010).) Thus, for motions to reconsider non-final orders, like the 2018 Order, this Court applies

the "less exacting standard" set out in *Discount Tobacco*: this Court may grant reconsideration if the moving party demonstrates that it did not have a fair opportunity to argue the matter previously, and granting the motion is necessary to correct a significant error. (*Id*.)

This Court should reconsider its choice-of-law determination for punitive damages in its 2018 Order because: (1) intervening authority from Peru that did not exist at the time of the 2018 Order demonstrates that punitive damages are prohibited under Peruvian law, thereby creating an indisputable conflict between the laws of Peru and Missouri; and (2) under Missouri's well-settled choice-of-law principles, Peruvian law applies to the issue of punitive damages. Defendants "did not have a fair opportunity to argue the matter previously" because after the Court issued the 2018 Order Peru's Supreme Court clarified that the Peruvian Civil Code precludes punitive damages. Reconsideration is therefore necessary to correct a "significant error" regarding the choice of law applicable to punitive damages. *Discount Tobacco,* 2010 WL 3522476, at *2.

## A.    AUTHORITY ISSUED SINCE 2018 CONFIRMS THAT PERUVIAN LAW CONFLICTS WITH MISSOURI LAW ON PUNITIVE DAMAGES.

As a federal court sitting in Missouri, this Court applies Missouri choice-of-law principles. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). As a threshold matter, the Court determines whether a conflict exists between the laws of the two forums (here, Peru and Missouri, respectively). *Id*. In its 2018 Order, the Court concluded that punitive damages are available in Peru (like in Missouri) based upon the report submitted by Plaintiffs' Peruvian law expert, Mr. Espinoza. (2018 Order at 47 (quoting ECF No. 871-121, Espinoza Rpt. ¶ 5.93).) Mr. Espinoza had cited Peru's Fifth Supreme Jurisdictional Assembly Report on Labor and Pension Matters from August 2017 ("2017 Labor Report") to support his assertion that punitive damages can be imposed as a "private form of punishment" in Peru. (Espinoza Rpt. ¶ 5.93 (citing 2017 Labor Report).) The non-binding 2017 Labor Report was the only reference to punitive damages

2

Plaintiffs were able to muster under Peruvian law; notably, Plaintiffs were unable to locate any Peruvian authority that would allow for punitive damages outside the workplace. And even so, after this Court's 2018 Order, the Supreme Court of Peru has **at least three times** held that punitive damages are unavailable, nullifying the 2017 Labor Report, not only because punitive damages were not available in labor disputes, but because Peru fundamentally prohibits punitive damages and court orders recognizing such damages would violate Peru's Constitution.

Specifically, the Supreme Court of Peru in October 2019 overturned an award of punitive damages "because such compensation is prohibited by our legislation," abrogating the suggestion of the 2017 Labor Report upon which Mr. Espinoza relied.[1] In September 2023, the Supreme Court explicitly rejected the 2017 Labor Report, explaining that "the Peruvian civil liability system does not provide for compensation as a sanction, but only as reparations."[2] The Supreme Court further emphasized in so holding that "the relationship between the victim and the aggressor or the party causing the damage in our civil liability system is compensatory, not punitive." (*Id*. at 17.) The Supreme Court criticized the trial court for awarding punitive damages:

> [B]eyond the trial court's violation of the Constitution, what is evident is an encroachment on legislative authority by creating a factual assumption that not only does not exist in our legal system, but also contradicts the dual-track system of civil liability regulated in the Civil Code—both contractual and non-contractual civil liability. In both systems of civil liability, damages serve a compensatory and restorative purpose, and in no case do they have a punitive or sanctioning purpose.

(*Id.*) In October 2023, the Supreme Court of Peru again expressly rejected the 2017 Labor Report

---

[1] The Permanent Civil Chamber of the Supreme Court of the Republic, Cassation No. 464-2018 La Libertad, at 76 (Oct. 4, 2019) (certified translation and original attached as Ex. A).

[2] Supreme Court of Justice of the Republic, Fourth Provisional Chamber of Constitutional and Social Law, Cassation No. 9579-2019 Lima, at 15 (Sept. 14, 2023) (certified translation and original attached as Ex. B).

and found that "our legal system does not recognize or regulate the concept of punitive damages in labor matters."[3]

Similarly, in August 2023, when addressing proposed legislation seeking to "introduce the concept of punitive damages" into Peru's labor laws, members of Peru's legislature explained: "our civil liability system is based on the traditional principle of damage repair, which has two effects: the obligation to repair the damage caused (losses) and that the scope of the repair does not depend on the severity of the perpetrator's conduct."[4] They noted that Peru does not recognize punitive damages, unlike in the common-law system "more widely applied in the United States." (*Id.* at 3.)

In sum, since the Court's 2018 Order, the Supreme Court of Peru and Peru's legislature have made clear that, as a matter of law, Peru does not allow punitive damages. Thus, the laws of Peru and Missouri pose an actual conflict—indeed, they are diametrically opposed concerning the recoverability of punitive damages. This authority was not available to Defendants or the Court in 2018, and reconsideration is necessary to correct the "significant error" as to the conflict between the laws of Peru and Missouri on punitive damages. *Discount Tobacco,* 2010 WL 3522476, at *2.

**B.    PERUVIAN LAW HAS THE MOST SIGNIFICANT RELATIONSHIP TO THE AVAILABILITY OF PUNITIVE DAMAGES AND MUST GOVERN.**

When a conflict exists, Missouri law applies the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws. *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969) (en banc). In 2023, after determining that "an actual conflict between Peruvian and Missouri law exists" on the issue of Defendants' Article 1971 immunity defense, this Court applied

---

[3] Second Transitory Chamber of Constitutional and Social Law, Supreme Court of Justice of the Republic, Labor Cassation No. 8526-2021 Lima, at 12 (Oct. 8, 2023) (certified translation and original attached as Ex. C).

[4] Congress of the Republic of Peru, Popular Force Parliamentary Group, Legislative Proposal on Punitive Damages in Labor Law, Legislative Proposal No. 5732-2023-CR (Aug. 17, 2023) (internal quotation omitted) (certified translation and original attached as Ex. D).

4

the "most significant relationship" test and concluded correctly that Peruvian law applies. (ECF No. 1322 at 24–26.) The same result should follow for punitive damages based on the Court's reasoning and ample authority construing Missouri law on this issue.

First, "Missouri applies the law of the place of injury, unless some other state has a more significant relationship."[5] *Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014); Restatement (Second) of Conflict of Laws § 146 (1971). The Court correctly explained in its choice-of-law determination on Article 1971 immunity that "plaintiffs' injuries occurred in Peru, so I start with the presumption that Peruvian law applies." (ECF No. 1322 at 25.)

The law of the place of injury is not supplanted merely because the defendant is alleged to have engaged in tortious conduct elsewhere. Restatement (Second) of Conflict of Laws § 146 cmt. e; *see Bayes v. Biomet, Inc.*, No. 4:13-CV-00800-SRC, 2020 WL 5884915, at *2 (E.D. Mo. Oct. 2, 2020) (holding that "[e]ven if the conduct-causing-injury factor weighed clearly in favor of" the jurisdiction where defendant made business decisions, conduct does not overcome the place-of-injury presumption for punitive damages); *Seals v. Wright Med. Tech., Inc.*, No. 4:20-CV-01656-SRC, 2022 WL 16740107, at *4 (E.D. Mo. Nov. 7, 2022) (same). Instead, "[t]he Eighth Circuit

---

[5] Defendants have not located any Eighth Circuit precedent that has allowed for punitive damages in a tort suit where, as here, such damages were unavailable in the place of injury and all injured parties were non-residents of the jurisdiction that recognized punitive damages. The Eighth Circuit and some Missouri state courts have stated that "[w]here the issue involves a right of recovery, as opposed to a question of liability, the domicile of the parties becomes a highly significant factor," *Wilson v. Image Flooring, LLC*, 400 S.W.3d 386, 398 (Mo. Ct. App. 2013); *Rey v. Gen. Motors, LLC,* 76 F.4th 1125, 1132–34 (8th Cir. 2023), but punitive damages do not concern a "right of recovery." *Bradshaw v. Deming*, 837 S.W.2d 592, 594 (Mo. Ct. App. 1992) (purpose of punitive damages is not "compensation of the plaintiff"). In any event, the domiciles of the parties are at best a mixed question here: Plaintiffs all reside in Peru and, as this Court has previously held, "the relationship between the parties is centered in Peru, given that plaintiffs' connection to the Complex is in Peru and their exposure to the toxins emitted by the Complex occurred there." (ECF No. 1322 at 24–25.) Thus, the domiciles-of-the-parties factor is certainly not enough to overcome the presumption that the place of injury governs.

has found that—in applying Missouri choice-of-law rules—the governing punitive damages law is presumptively the place where the injury occurred." *Ridings v. Maurice*, No. 15-00020-CV-W-JTM, 2019 WL 4888910, at \*13 n.9 (W.D. Mo. Aug. 12, 2019); *see also Winter*, 739 F.3d at 410; *Garrett v. Albright*, No. 06-CV-0785, 2008 WL 795613, at \*5 (W.D. Mo. Mar. 21, 2008) ("[T]he Court's reading of Missouri substantive law suggests a *strong presumption* for the application of punitive damages based on where the injury occurred.") (emphasis added).

Second, the presumption that the law of the place of injury governs is overcome only if "another jurisdiction has a more significant relationship to the lawsuit." *Axline v. 3M Co.*, 8 F.4th 667, 675 (8th Cir. 2021). To that end, Restatement § 146 directs courts to evaluate the principles in Restatement § 6, including "the relevant policies of the forum" and "other interested states and the relative interests of those states in the determination of the particular issue." Restatement (Second) of the Conflict of Laws §§ 6, 146.

In the years since the 2018 Order, the Supreme Court of Peru has made clear that Peru's prohibition on punitive damages is a fundamental tenet of the Peruvian civil law system in which "the relationship between the victim and . . . the party causing the damage in our civil liability system is compensatory, not punitive." Ex. B at 17. The Eighth Circuit has ruled directly that a jurisdiction with a "clear" prohibition on punitive damages has a strong policy interest in that policy choice being enforced that may override another jurisdiction's contrary policy interest in applying punitive damages. *See Enron Corp. v. Laws. Title Ins. Corp.*, 940 F.2d 307, 313 (8th Cir. 1991) (determining that district court properly struck punitive damages according to the prohibition under Nebraska law). Like in *Enron*, the emphatic (and repeated) conclusion by Peru's Supreme Court that punitive damages are antithetical to the Peruvian Constitution and civil law system further solidifies Peru as the correct choice of law.

6

By contrast, any interest Missouri has in applying its punitive damages law to Missouri-based conduct is attenuated for several reasons. First, Missouri's interest in applying its own punitive damages law is diminished where, as here, such damages would stem from *derivative* forms of liability (such as veil-piercing or respondeat superior theories of liability). Second, Missouri's interest is further diluted where, as here, the purported agent (*i.e.*, Doe Run Peru) operated entirely in Peru. Indeed, under Supreme Court precedent, Missouri has *no* legitimate interest in applying its punitive damages law to conduct occurring in Peru. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred …. *Nor, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction.*") (emphasis added). Third, as this Court concluded in its choice-of-law determination on Article 1971 immunity, "Article 1971 states a policy of Peru to provide immunity to parties who are exercising a 'right' given to them by the government" and such immunity reflects "a policy decision by Peru that economic interests may override the interests of compensating injured persons." (ECF No. 1322 at 26.) The same logic applies with respect to Peru's prohibition on punitive damages, as other courts have recognized in analogous contexts. *See, e.g.*, *Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 563, 566 n.11 (9th Cir. 2020) (holding that Japan's interest "in limiting liability for defendants engaged in the nuclear-power industry in Japan" was greater than California's interest in compensation for injured *California* residents, and applying Japanese law even though "plaintiffs would not be able to recover punitive damages under Japanese law").

## III.   CONCLUSION

Defendants respectfully request that this Court reconsider its Order from October 16, 2018 (ECF No. 949), determining the choice of law applicable to punitive damages in this case.

7

Dated: March 6th, 2026

Respectfully submitted,

**KING & SPALDING LLP**

By: _/s/ Geoffrey M. Drake_
Andrew T. Bayman, #043342GA
abayman@kslaw.com
Geoffrey M. Drake, #229229GA
gdrake@kslaw.com
Mark Sentenac, #987346GA
msentenac@kslaw.com
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Tracie J. Renfroe, #16777000T
trenfroe@kslaw.com
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

_Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Doe Run Cayman Holdings, LLC, Doe Run Resources Corporation, Ira L. Rennert, Marvin M. Kaiser, and Albert Bruce Neil_

**SIDLEY AUSTIN LLP**

Jennifer L. Saulino
Jennifer.saulino@sidley.com
Richard W. Smith
rwsmith@sidley.com
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736-8649
Facsimile: (202) 736-8711

_Attorneys for Defendants The Renco Group, Inc. and Ira L. Rennert_

**LEWIS RICE LLC**

Thomas P. Berra, Jr., #43399MO
tberra@lewisrice.com

8

Michael J. Hickey, #47136MO
mhickey@lewisrice.com
600 Washington Ave., Suite 2500
St. Louis, Missouri 63102-2147
Telephone: (314) 444-7600
Facsimile: (314) 241-6056

*Attorneys for Defendants Doe Run Resources Corporation, Marvin K. Kaiser, and Albert Bruce Neil*

**DOWD BENNETT LLP**

Edward L. Dowd, Jr., #28785MO
edowd@dowdbennett.com
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111

*Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Doe Run Cayman Holdings, LLC, and Ira L. Rennert*

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of March, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Geoffrey M. Drake*