IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:11-cv-00044-CDP |
| | ) | (CONSOLIDATED) |
| IRA L. RENNERT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
REGARDING ARTICLE 1971 SAFE HARBOR IMMUNITY**

Defendants ask the Court to decide certain issues they raise concerning whether "the La Oroya Complex defaulted on the PAMA." *See* Doc. 1616 at 8.[1] In essence, they want an order that would insulate them from three things: (1) *evidence* that they violated the PAMA, other than an official notice of default from the Peruvian authorities; (2) *liability* for any conduct that occurred before such notice was issued; and (3) *damages* that cannot be directly tied to an official default. *See id.* Underlying their motion is an assumption that they are immune from liability under Article 1971 of the Peruvian civil code unless and only insofar as the Peruvian government formally found them in default of their PAMA obligations (something which they contend has never occurred).

Defendants' motion should be denied because its core premise is wrong. A formal finding by the government of Peru that they defaulted on their PAMA is not a legal prerequisite to the jury determining liability in these cases. Nor is the absence of such a finding an absolute defense. The only "right" conveyed by the PAMA was a 10-year window within which Defendants could avoid *administrative penalties* for failing to meet Peru's emissions standards. That right does not apply

---

[1] All references to page numbers are to the Doc. header page number, not the internal pagination.

1

here; this is not a PAMA enforcement action. The claims to be tried are founded on Missouri negligence law, and they do not depend on the actions or findings of Peruvian regulators.

Defendants contend that "Peru promised to protect any buyer from third-party environmental claims in all but very limited and prescribed circumstances" (Doc. 1616 at 2), but that was a contractual indemnification provision agreed to by Centromin, not statutory immunity. Even if Defendants had fulfilled all their PAMA requirements (which they did not), Article 1971 still would not immunize them for negligently and recklessly injuring the cohort Plaintiffs. There is no safe harbor for companies that harm children, even in Peru.

## I.    Defendants are not immune from suit under Article 1971.

At summary judgment, the Court found that Peruvian law applied to Defendants' purported Article 1971 defense but made no findings about what that defense might entail or whether it could be established in this litigation. *See generally* Doc. 1322 at 21-28. As the Court observed, Article 1971 provides that civil liability cannot be found in "the regular exercise of a right." *Id.* at 21. It "states a policy of Peru to provide immunity to parties who are exercising a 'right' given to them by the government." *Id.* at 26. The "Article is not specific to mining situations," and its "protection is not as broad as defendants urge." *Id.* at 26-27.

### A.    Defendants have not identified an applicable right.

While Defendants vaguely assert that the PAMA provided them a "right," they do not identify what that right is or attempt to define its contours. The PAMA itself contains no reference to any rights conferred. *See generally* Doc. 843-5. Neither do the PAMA regulations. *See generally* Doc. 843-7. Defendants' own expert, Mr. Mendoza, describes the PAMA simply as "a transition tool," as it provided a 10-year administrative grace period within which to bring the Complex into compliance with Peruvian emissions standards. *See* Doc. 1616-5 at 6-7. He likewise does not identify any "right" Defendants were regularly exercising that would implicate Article 1971.

2

**B.**      **Defendants did not have the right to harm children.**

The PAMA could not confer the right to act negligently or recklessly, as there is no such right in Peru. Under Article 1321, those who act with negligence or gross negligence (also called "inexcusable fault") are subject to liability. Exh. 1, Excerpts of Peruvian Civil Code (Eng.) at 6. Article 1969 similarly provides that "[a]nyone who by fraud or fault causes damage to another is obliged to compensate him." *Id.* at 8. Nothing in the PAMA regulations evidences an intent to limit the application of these other laws or to render them subordinate to the PAMA program.

Nor would that have to be the case: Defendants could have fully complied with the PAMA and still have acted negligently or recklessly by failing (as they did) to perform the work they knew was required to protect the children of La Oroya. After all, they repeatedly sought and obtained modifications to the PAMA when it suited their interests and were "not restricted to implementing only PAMA-identified projects." *See* Doc. 1524 at 44. They also could have (and should have) taken greater steps to protect the public from the damaging effects of their pollution, including (as they considered doing) relocating the town of La Oroya.

Certainly, the PAMA could not have given operators an unfettered right to harm people. The Peru environmental code enacted in 1990 (Supreme Decree 613) recognizes that "[a]ll persons have the inalienable right to enjoy an environment that is healthy ... and suitable for living their lives," as well as "the right to demand from the courts rapid and effective action in defense of the environment[.]" Doc. 843-6 at 2. Under that law, the "costs of ... compensation for environmental damages are the responsibility of the party causing the damage." *Id.* at 5. The 1990 law "takes precedence over any other law that conflicts with the protection of the environment and natural resources," *id.* at 4, and acknowledges that, while environmental violations might incur "administrative liability," "***civil or criminal liability ... may arise from the same acts***." *Id.* at 28 (emphasis added).

3

These provisions were not repealed by the 1993 PAMA regulations but rather reaffirmed: "The operator of the mining and metallurgical activity is liable for the emissions, dumping and waste discharged into the environment which occurs as a result of the processes carried out at its facilities." Doc. 843-7 (Supreme Decree 016-93-EM) at 5. The 2005 General Environmental Act (LGA) further reinforced the same principle: "A party that, through the use or utilization of a good or in the performance of an activity, provokes damage to the environment, the quality of life of persons, human health, or property is obligated to bear the costs arising from the damage...." Doc. 843-12 at 32. The LGA also repeated that "administrative liability ... is independent of the civil or criminal liability which could arise from the same facts." Doc. 843-12 at 31.

**C.     Defendants assumed liability to third parties in the Stock Transfer Agreement.**

Defendants have not shown that Peruvian law entitles them to immunity from third-party lawsuits like this one. In fact, the evidence shows that, when they bought the Complex in 1997, Defendants knew the PAMA program was *not* a safe harbor, and that they would almost certainly face "liability for third-party damages attributable to the operation of the Complex while carrying out the upgrades." Doc. 1277-77 at 6. They could foresee there would be "third-party claims arising from the environmental contamination ... that would continue to accumulate during construction of the PAMA projects." *Id.* at 5-6. Accordingly, they negotiated provisions in the Stock Transfer Agreement (STA) that addressed who would be responsible for "the claims of third parties in relation to environmental liabilities" before the PAMA expired. *See* Doc. 1233 at 30-31.

It is not the PAMA but ***the STA*** that Defendants are alluding to when they raise the issue of PAMA default. Under the STA, the contracting parties each set forth the circumstances in which they would "assume liability for any damages and claims by third parties" attributable to Defendants' activities "[*d*]*uring the PAMA period*." *See* Doc. 545-9 at 8-10 (emphasis added). Defendants took responsibility for "damages and claims by third parties" arising from (1) a default

4

on their PAMA **_or_** (2) their "use of standards and practices ... less protective of the environment or public health" than those employed by Centromin. *Id.* at 8 (¶5.3). Centromin took responsibility for everything else. *See id.* at 10 (¶6.2).

Those same STA provisions lie at the heart of the ongoing international arbitration proceeding between Renco and Peru, as the two sides fight over which one will have to bear the costs and any damages awarded in this litigation. In that arbitration proceeding, Defendants have proffered that they "would only agree to take on the financial responsibility of modernizing the Complex if they were ***fully protected from liability*** for third-party damages attributable to the operation of the Complex while carrying out the upgrades, and if they remained protected from liability for third-party damages attributable to residual contamination afterwards. That is precisely what ***the Stock Transfer Agreement*** accomplished." Doc. 1277-77 at 6 (emphasis added).

The STA's apportionment of responsibility for third-party claims between Centromin and Defendants utterly refutes Defendants' contention that they enjoyed "1971 immunity" while they were working on their PAMA projects. *Contra* Doc. 1616 at 2. Even their own expert, Prof. Rosenn, averred that any such immunity required compliance with both the PAMA "***and the STA***." *See* Doc. 1322 at 27 (emphasis added) (quoting Doc. 150-1 at 26, ¶57). While no such immunity exists, the point remains: their own expert has testified that PAMA compliance alone is not enough. More importantly, Defendants' motion fails to explain why they needed to include those contractual indemnification provisions – and why they continue to seek their enforcement in the arbitration – if they enjoyed a "liability shield" under the law. *See* Doc. 1616 at 4. Immunity and indemnity are not the same thing. *Cf. generally Zurich Am. Ins. Co. v. Fluor Corp.*, No. 16-429 (ERW), 2019 U.S. Dist. LEXIS 168333 (E.D. Mo. Sep. 30, 2019) (dispute with insurer over payment of judgment in Herculaneum litigation).

5

**D.      Defendants abused any right they had under the PAMA.**

Defendants also have not shown that they were engaged in the "regular exercise" of a right during the relevant time period. In Peru, environmental harms are considered an abuse of rights. *See* Doc. 871-121 at 19. Peruvian law "does not protect the abusive exercise ... of a right." *Id.* at 10 (quoting Art. II of the Preliminary Title of the Civil Code); *see* Exh. 1 at 3.

When they purchased the Complex, Defendants "knew that the projects outlined in the PAMA were insufficient to adequately reduce toxic emissions, and they were particularly aware that the PAMA plan included only one project that addressed fugitive emissions despite there being 80 uncontrolled sources." Doc. 1524 at 24. A jury could also reasonably find that they intentionally undercapitalized DRP "to increase profitability and minimize costs by maximizing smelter output without implementing emission-reduction systems, thereby exposing the surrounding community to known health risks associated with such output." *Id.* at 27.

Ultimately, Defendants failed to complete all the required PAMA projects, even after receiving multiple extensions. *See* Doc. 1322 at 27-28 (noting this is also Peru's position in the arbitration). Without the completion of the sulfuric acid plants, they could not satisfy the Peruvian air lead standards (except by shutting down operations) and subsequently incurred fines from Peruvian regulators. The jury could also conclude that Defendants "acted recklessly or maliciously, which certainly would not be insulated by PAMA." *Id.* at 28. Indeed, "there is more than sufficient evidence of convincing clarity from which a jury could reasonably conclude that defendants acted with the requisite recklessness to sustain plaintiffs' claim for punitive damages." Doc. 1524 at 72.

**II.      Defendants' three questions are inapposite.**

All of the foregoing demonstrates that the three questions posed in Defendants' motion are fundamentally flawed and need not be answered. No valid basis exists to restrict the evidence the jury can hear regarding Defendants' compliance with the PAMA. The issue of default is not

particularly important, let alone paramount as they claim, and the jury will not need to decide it. On the other hand, how they prioritized and performed their PAMA projects, their communications with Peruvian regulators, and the fines they were assessed for non-compliance with environmental standards will all be relevant for the jury to consider in weighing their conduct. Likewise, because third-party claims for damages could still be brought against Defendants for their negligence and recklessness during the PAMA period, Peruvian law does not limit Plaintiffs from recovering only for damages stemming from PAMA default. *Contra* Doc. 1616 at 8.

The more pressing question is what to do with Defendants' Article 1971 defense, given its inapplicability to the claims at issue. Plaintiffs will seek to address that question at the appropriate time in their motions in limine. *See Countrywide Servs. Corp. v. SIA Ins. Co.*, 235 F.3d 390, 394 (8th Cir. 2000) (district court did not abuse its discretion in excluding evidence to support a meritless affirmative defense); *CRST Expedited, Inc. v. Swift Transp. Co of Ariz., LLC*, No. 17-25, 2019 U.S. Dist. LEXIS 112898, at *5 (N.D. Iowa July 8, 2019) (where affirmative defenses failed as a matter of law, they could not be referenced at trial).

Respectfully submitted,

**SCHLICHTER BOGARD LLC**

March 9, 2026 By: */s/ Nathan D. Stump*
JEROME J. SCHLICHTER #32225 (MO)
KRISTINE K. KRAFT #37971 (MO)
NATHAN D. STUMP #71641 (MO)
CORT A. VANOSTRAN #67276 (MO)
JESSICA HOLMES, *pro hac vice*
100 South 4th Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115 | fax: (314) 621-7151
jschlichter@uselaws.com
kkraft@uselaws.com
nstump@uselaws.com
cvanostran@uselaws.com
jholmes@uselaws.com