UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11 CV 44 CDP |
| | ) | |
| IRA L. RENNERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

In the Memorandum and Order entered October 16, 2018, I concluded that there is no conflict between the relevant Missouri and Peruvian laws as they apply to plaintiffs' asserted claims in this action, including plaintiffs' claim for punitive damages; and that even if there were conflicts, Missouri law applies to the claims. *A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 846-48 (E.D. Mo. 2018).  In the Memorandum and Order entered January 20, 2023, however, I concluded that the law of Peru applied to defendants' affirmative defense that they are entitled to "safe harbor" immunity under Article 1971 of Peru's Civil Code.  (ECF 1322, Memo. & Ord., Jan. 20, 2023, at pp. 17-26.)  Defendants now ask me to reconsider my October 2018 determination that Missouri law applies to plaintiffs' claim for punitive damages, and they separately seek to limit the scope of the evidence and argument that can be presented and considered at trial on their immunity defense.

For the reasons that follow, I continue to conclude that Missouri law applies to plaintiffs' claim for punitive damages in the circumstances of this case, and I will not at this time limit what can be presented and argued on the Article 1971 immunity defense as defendants propose.

A.     Punitive Damages

Defendants contend that the law of Peru regarding punitive damages has substantively changed since my October 2018 ruling and now conflicts with Missouri law.  In view of that circumstance, defendants argue that I should 1) reexamine my conclusion that Missouri law applies to plaintiffs' claim for punitive damages; 2) apply Peruvian law under Missouri's choice-of-law rules; and 3) dismiss plaintiffs' claim for punitive damages under Peruvian law.  In response, plaintiffs first argue that I should summarily deny defendants' motion to reconsider my October 2018 ruling as untimely and inappropriate given that the decisions cited by defendants that purportedly constitute the "new authority" comprise one case from October 2019[1] and three from August through October 2023.  Plaintiffs further contend that, regardless, no conflict exists between Missouri and Peruvian law on punitive damages and that therefore Missouri law continues to apply. Finally, plaintiffs argue that even if a conflict now exists, Missouri law would

---

[1] The October 2019 date appears to be the date the opinion was published in *El Peruano*, the daily official newspaper of Peru.  The date of the decision itself appears to be November 27, 2018.  (ECF 1618-1 at p. 2.)

apply as Missouri has the most significant relationship to the issue.

For purposes of expediency given the upcoming trial and the parties' pretrial deadlines, I will not delve into the minutiae of whether defendants' motion to reconsider this issue of foreign law is timely or appropriate.  *But see* Fed. R. Civ. P. 44.1 adv. cmte. note (1966) (notice of an issue of foreign law must be given in a reasonable time under the circumstances).  Regardless, based on defendants' submissions, I am not convinced that they met their burden to produce sufficient evidence that foreign law applies to the punitive damages issue.  *See A.O.A.*, 350 F. Supp. 3d at 847 ("If the movant fails to prove foreign law with reasonable certainty, a district court should apply the law of the forum.") (listing cases).  The three 2023 cases defendants submit from Peruvian courts involve the specific creature of punitive damages in labor disputes with a passing reference to legislative expressions that civil liability is meant to be compensatory and not punitive in nature.  As to the earlier case published in 2019, the reviewing court cited several reasons for vacating the punitive damages award, including that the defendant did not have the opportunity to defend against punitive damages since plaintiff did not seek them, and that the trial court provided no reasoning in its decision for a punitive damages award.  While the reviewing court likewise referred to a legislative prohibition against punitive damages, it did not provide any analysis or discussion regarding that prohibition that could illuminate a decision now with reasonable certainty that Peruvian law absolutely prohibits punitive

- 3 -

damages in all circumstances, including those alleged in this case.  On this basis alone, it continues to be appropriate to apply Missouri law on the punitive damages issue.  *See A.O.A.*, 350 F. Supp. 3d at 847-48.

Moreover, even if there now exists a conflict of laws on punitive damages, Missouri law continues to control under Missouri's choice-of-law analysis.  As I set out in my January 2023 Memorandum and Order, I apply the most-significant-relationship test from the Restatement (Second) of Conflict of Laws §§ 145, 146 (1971) to determine the applicable law.  (*See* ECF 1322, Memo. & Ord., at pp. 20-21, 24-25.)  To determine which state has the most significant relationship, I must evaluate the relevant contacts according to their "importance with respect to the particular issue."  Restatement (Second) of Conflict of Laws § 145(2) (1971).  The particular issue here is that of punitive damages, which by their very name and nature are intended to punish a tortfeasor when its behavior is found to be especially harmful.  "Punitive damages 'are not compensation for injury.  Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.'"  *International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 48 (1979) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)).  Accordingly, the locus of the conduct sought to be punished takes on heightened importance with respect to the issue of punitive damages.

The reprehensible conduct alleged by the plaintiffs here and the deterrent effect of any punishment therefor occurred and will occur in Missouri, where

- 4 -

plaintiffs allege defendants made the overarching decisions and took the causative actions that ultimately resulted in injury to plaintiffs.  Regardless of the locus of where the injury was felt, the offending conduct giving rise to punitive damages is alleged to have occurred in Missouri.  And, as I previously found in the October 2018 Order,

> Missouri certainly has an interest in deterring malfeasance by its domestic corporations and providing a place of redress for harm caused by its citizens. *Reid-Walen v. Hansen*, 933 F.2d 1390, 1394 (8th Cir. 1991).  Missouri has an interest in applying its tort law because – as the state where defendants are incorporated and the misconduct occurred – Missouri has a greater ability to control corporate behavior by deterrence or punishment than Peru, the place where the injury occurred. *In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d [594,] 615 [7th Cir. (1981)].  The policies that underlie toxic tort law include punishing and deterring wrongdoing, not just compensating the victims, something Missouri has an interest in doing. *See Singh v. Edwards Lifescience Corp.*, 210 P.3d 337, 342 (Wash. Ct. App. 2009) (noting a state has an interest in deterring wrongdoing by its corporations).

*A.O.A.*, 350 F. Supp. 3d at 848.

Accordingly, with respect to the particular issue of punitive damages, Missouri has a more significant relationship than Peru, thereby rebutting any presumption that the law of Peru, as the locus of the injury, applies. *See* Restatement (Second) of the Conflict of Laws § 146 (presumption in favor of applying the law where the injury occurred may be rebutted if "with respect to the particular issue, some other state has a more significant relationship[.]").

Defendants' Motion Requesting Reconsideration of the Choice of Law

- 5 -

Applicable to Punitive Damages is therefore denied.

B.     Article 1971 Defense

I will also deny defendants' "Motion Seeking Clarification" regarding application of the immunity provision of Article 1971 of Peru's Civil Code. Notably, although defendants caption this motion as one seeking clarification, they actually request affirmative relief in the form of limiting argument and evidence to be presented at trial on their Article 1971 defense: specifically, whether and when the Doe Run Peru smelter defaulted on its PAMA obligations and whether plaintiffs' claimed injuries were caused by that default.  But defendants' underlying premise is faulty.  Because I disagree with the argument that liability may attach only if a PAMA default is found, I will not impose the limits they propose.

First, I must address defendants' assertion that I already "found" that PAMA "specifically provided [] a right" that provides safe harbor under Article 1971. (*See* Defts.' Mot. Seeking Clarif., ECF 1616 at header p. 2 (citing ECF 1322 at p. 26).)  That is not correct.  While defendants correctly state that my January 2023 Memorandum and Order held that Article 1971 applies to their immunity defense, and that Article 1971 provides a safe harbor against liability for those who act "in the regular exercise of a right" (*see id.* (citing ECF 1322 at pp. 17, 25)), I did not find that PAMA itself is conclusively a "right" that provides safe harbor under

- 6 -

Article 1971 for all of defendants' conduct that might be proven at trial.[2] Defendants may argue and present evidence that it is, but they are incorrect in their representation that I already made such a finding.

Defendants base their three evidentiary queries on their assertion that they have already proven that compliance with PAMA requirements alone – or at least, without an official Peruvian finding of noncompliance – is a "right" absolving them from any liability for injuries caused by their wrongdoing.  They therefore ask that evidence be limited to 1) only PAMA defaults as determined by a competent Peruvian authority; 2) conduct occurring only after a PAMA default is found, with all prior conduct protected by 1971 immunity; and 3) only those injuries that were caused by the actions that resulted in the PAMA default.

Evidence before the Court shows that the implementation of PAMA was regulatory in nature and subjected violators to administrative penalties after exhaustion of an administrative process.  (*See generally* ECF 1616-5, Chávez Mendoza Decl.)  So a serious question exists as to whether abiding by an administrative regulation alone constitutes "regular exercise of a right" under Article 1971 such that tortfeasors who engage in additional injurious conduct outside that "right" are shielded from any and all liability.  While defendants may

---

[2] Indeed, in that same Memorandum and Order, I explicitly stated that a jury could conclude from the contested evidence that "defendants acted recklessly or maliciously, which certainly would not be insulated by PAMA."  (ECF 1322 at p. 28.)

present evidence and argument that it does, I will not prevent plaintiffs from presenting evidence and argument that it does not.[3]

Moreover, as noted in the January 2023 Memorandum and Order, plaintiffs' claims of negligence are not limited to PAMA projects or to defendants' failure to complete certain of them.  (*See* ECF 1322 at pp. 22-23, 26-28, 54-55, 58-59.) Plaintiffs assert that meeting PAMA obligations was not all that was required to comply with Peruvian law in reducing emissions to levels at or below Peru's environmental standards, and they argue that PAMA did not prevent defendants from taking remedial actions outside the PAMA plan.  So even if defendants complied with PAMA in all respects (which plaintiffs dispute), plaintiffs argue that they were nevertheless negligent not only in their failure to apply practices and implement controls known to reduce emissions, but also in their deliberate increase in production and emissions output with the knowledge that the smelter already emitted contaminants at such levels to cause injury.  Accordingly, because plaintiffs' claims of negligence go well beyond the asserted PAMA "right," I will not limit evidence and argument to defendants' conduct only in relation to PAMA compliance.

The Stock Trade Agreement itself contemplates liability and damages to

---

[3] Notably, Article II of the Civil Code's Preliminary Title states, "The law does not protect the abusive exercise or omission of a right."  (ECF 1619-1 at header p. 3.)

third parties for acts "not related to [the company's] PAMA" as well as for those that result from a default on the company's PAMA obligations. (ECF 545-9 at p. 8, STA at § 5.3.) And the STA sets out various other conditions and provisions regarding assignments of liability and indemnification for both – that is, acts not related to PAMA and acts causing a PAMA default. To limit evidence and argument to only conduct related to a PAMA default and exclude evidence of defendants' alleged injurious conduct not related to PAMA runs counter to the express provisions of the STA.

In sum, this is not a breach-of-PAMA action. It is a negligence action based on defendants' conduct in the emissions of injury-causing contaminants from the Doe Run smelter. Negligent conduct can exist outside the realm of PAMA compliance. Accordingly, to the extent compliance with PAMA may be considered a "right" under Article 1971, Article 1971 does not preclude liability for all wrongful conduct occurring outside that claimed "right," and I will not limit the evidence and argument to only whether and when defendants defaulted on a PAMA obligation or to plaintiffs' injuries caused solely by a PAMA default. To the extent defendants seek further clarity on how they should prove their affirmative defense, I remind them that the burden of proof on this issue is theirs.

Defendants' Motion Seeking Clarification of Legal Issues Related to Application of the Safe Harbor Immunity Provided by Article 1971 is therefore denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion Requesting Reconsideration of the Choice of Law Applicable to Punitive Damages [1618] and Motion Seeking Clarification of Legal Issues Related to Application of the Safe Harbor Immunity Provided by Article 1971 [1616] are **DENIED**.



_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of April, 2026.

- 10 -