**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| A.O.A., *et al.*, | ) | |
| | ) | Case No. 4:11-cv-00044-CDP |
| Plaintiffs, | ) | (CONSOLIDATED) |
| | ) | |
| vs. | ) | |
| | ) | |
| THE DOE RUN RESOURCES | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OMNIBUS MOTION IN LIMINE**

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................... 1

I.    MIL #1: To Exclude Evidence or Argument Concerning Herculaneum ........................... 1

    A.    Evidence or Argument Concerning Herculaneum Is Irrelevant. ........................... 2

    B.    Evidence or Argument Concerning Herculaneum is Inadmissible Character Evidence That Is Not Admissible for Another Legitimate Purpose. .................................................................................................................. 4

    C.    Evidence or Argument Concerning Herculaneum Is Unfairly Prejudicial and Will Result in a Separate Mini-Trial Causing Confusion and Delay. .............. 5

II.    MIL #2: To Exclude Evidence and Argument Concerning Lawsuits, Regulatory Compliance, or Financial Practices and Difficulties Relating to Other Businesses or Facilities Owned or Operated by Defendants ................................................................. 7

III.    MIL #3: To Exclude Evidence and Argument Regarding Non-Peru Regulations ............ 8

IV.    MIL #4: To Exclude Argument That Defendants Acquired the La Oroya Complex to Escape U.S. Environmental Regulations ....................................................................... 10

V.    MIL #5: To Exclude Evidence and Argument Concerning the Personal Financial Status, Wealth, or Assets of Defendants During the Liability Phase ............................... 12

VI.    MIL #6: To Exclude Evidence or Argument Regarding Arbitrations Involving Defendants ........................................................................................................................ 15

VII.    MIL #7: To Exclude Plaintiffs' Deceased and Replaced Expert Dr. Cheremisinoff ........ 17

VIII.    MIL #8: To Exclude Plaintiffs' Undisclosed Witness Christopher Brown ...................... 18

IX.    MIL #9: To Exclude References to the Absence of Witnesses at Trial ............................ 19

X.    MIL #10: To Exclude References to Other Plaintiffs ....................................................... 19

XI.    MIL #11: To Exclude Evidence of Certain Peruvian Criminal Proceedings .................... 20

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*,
No. 17-24223-CIV, 2018 WL 5886663 (S.D. Fla. Nov. 9, 2018) ...........................................20

*Adams v. Toyota Motor Corp.*,
867 F.3d 903 (8th Cir. 2017) ...................................................................................................5

*Am. Home Assur. Co. v. Greater Omaha Packing Co.*,
819 F.3d 417 (8th Cir. 2016) ..............................................................................................7, 12

*Bair v. Callahan*,
664 F.3d 1225 (8th Cir. 2012) ..................................................................................................6

*In re Baycol Prods. Litig.*,
532 F. Supp. 2d 1029 (D. Minn. 2007), *aff'd*, 596 F.3d 884 (8th Cir. 2010) ...........................9

*Blanks v. Fluor*,
450 S.W.3d 308 (Mo. Ct. App. 2014)........................................................................................1

*Burke v. Deere & Co.*,
6 F.3d 497 (8th Cir. 1993) ......................................................................................................13

*C.C. through Ginnever v. Suzuki Mfg. of Am. Corp.*,
No. 4:16CV01271, 2018 WL 4504687 (E.D. Mo. Sept. 20, 2018) ...................................14, 19

*CellTrust Corp. v. ionLake, LLC*,
No. 19-CV-2855, 2023 WL 3052733 (D. Minn. Apr. 23, 2023)...............................................8

*Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*,
818 F.2d 1398 (8th Cir. 1987) ..................................................................................................6

*Collet v. Am. Nat. Stores, Inc.*,
708 S.W. 2d 273 (Mo. Ct. App. 1986)......................................................................................13

*Fireman's Fund Ins. Co. v. Thien*,
63 F.3d 754 (8th Cir. 1995) ......................................................................................................5

*Fluor Corp. v. Zurich Am. Ins. Co.*,
No. 4:16CV00429, 2021 WL 3021973 (E.D. Mo. July 16, 2021)...........................................14

*Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Loc. 901*,
763 F.2d 34 (1st Cir. 1985)......................................................................................................16

ii

*J.B. Hunt Transp., Inc., v. General Motors Corp.*,
    243 F.3d 441 (8th Cir. 2000) ...............................................................................2, 4

*Lovett v. Union Pac. R.R.*,
    201 F.3d 1074 (8th Cir. 2000) .................................................................................2

*Mannino v. McKee Auto Ctr., Inc.*,
    753 F. Supp. 3d 723 (S.D. Iowa 2024) .................................................................19

*McDonald v. City of W. Branch, Mich.*,
    466 U.S. 284 (1984)...............................................................................................16

*McIver v. Murphy-Brown, LLC*,
    980 F.3d 937 (4th Cir. 2020) .................................................................................15

*Middleton v. Roper*,
    No. 4:03CV543 CDP, 2005 WL 2298203 (E.D. Mo. Sept. 21, 2005) ...................10

*Miller v. Polaris Labs., Inc.*,
    No. 1:11-cv-01004, 2016 WL 1639087 (S.D. Ind. Apr. 26, 2016)........................20

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
    406 F.3d 1052 (8th Cir. 2005) .............................................................................7, 8

*Pina v. Am. Shaman Franchise, LLC*,
    No. 21-00772-CV, 2023 WL 2335670 (W.D. Mo. Mar. 2, 2023)...........................14

*Sadler v. Advanced Bionics, LLC*,
    No. 3:11-CV-450, 2013 WL 1340350 (W.D. Ky. Apr. 1, 2013)............................20

*In re Seroquel Prods. Liab. Litig.*,
    No. 6:06–md–1769–Orl–22DAB, 2009 WL 223140 (M.D. Fla. Jan. 30, 2009)......9

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)............................................................................................9, 15

*Steed v. EverHome Mortg. Co.*,
    308 F. App'x 364 (11th Cir. 2009) ........................................................................20

*Stubblefield v. Suzuki Motor Corp.*,
    No. 3:15-cv-18, 2018 WL 4610895 (S.D. Miss. Sept. 25, 2018) ...........................19

*The Renco Group, Inc. and Doe Run Resources Corp. v. Republic of Peru and
    Activos Mineros S.A.C.*,
    PCA Case No. 2019-47.............................................................................................15

*The Renco Group, Inc. v. Republic of Peru*,
    PCA Case No. 2019-46.............................................................................................15

iii

*In re: Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
No. 2436, 2016 WL 807377 (E.D. Pa. Mar. 2, 2016)..............................................................14

*Union Cnty., Iowa v. Piper Jaffray & Co.*,
No. 4:06-CV-374, 2010 WL 11468305 (S.D. Iowa Dec. 4, 2010)............................................8

*Union Elec. Light & Power Co. v. Snyder Est. Co.*,
65 F.2d 297 (8th Cir. 1933) ....................................................................................................14

*United HealthCare Corp. v. Am. Trade Ins. Co.*,
88 F.3d 563 (8th Cir. 1996) ....................................................................................................16

*United States v. Cameron-Ehlen Grp., Inc.*,
No. 13-CV-3003, 2023 WL 36174 (D. Minn. Jan. 4, 2023).....................................................16

*United States v. Hollister*,
746 F.2d 420 (8th Cir. 1984) .....................................................................................................2

*United States v. Johnson*,
439 F.3d 884 (8th Cir. 2006) ..................................................................................................4, 8

*United States v. Jones*,
728 F.3d 763 (8th Cir. 2013) .....................................................................................................7

*United States v. Mullins*,
446 F.3d 750 (8th Cir. 2006) ...................................................................................................10

*United States v. WCI Steel, Inc.*,
No. 4:98-cv-1082 (N.D. Oh. 1998)............................................................................................7

*Vitale v. Electrolux Home Prods.*,
No. 15-cv-01815, 2018 WL 3868671 (E.D. Pa. Aug. 14, 2018)............................................20

*Walls v. Shelby*,
No. 5:11-CV-174-KGB, 2012 WL 6569775 (E.D. Ark. Dec. 17, 2012)..................................4

*In re Wright Med. Tech. Inc.*,
No. 1:13-cv-297, 2015 WL 6690046 (N.D. Ga. Oct. 30, 2015)..............................................20

## Other Authorities

Fed. R. Civ. P. 26.....................................................................................................................18

Fed. R. Civ. P. 37.....................................................................................................................18

Fed. R. Evid. 401 ............................................................................................................ *passim*

Fed. R. Evid. 402 ............................................................................................................ *passim*

Fed. R. Evid. 403 ........................................................................................................ *passim*

Fed. R. Evid. 404 ................................................................................................2, 4, 8, 20

Fed. R. Evid. 609 ...........................................................................................................20

Fed. R. Evid. 702 ...........................................................................................................16

Fed. R. Evid. 802 ......................................................................................................8, 20

Defendants The Renco Group, Inc. ("Renco"), The Doe Run Resources Corp. ("DRRC"), D.R. Acquisition Corp., Doe Run Cayman Holdings LLC, Ira L. Rennert, Marvin K. Kaiser, and Albert Bruce Neil respectfully move to preclude improper evidence and argument.

## ARGUMENT

**I.      MIL #1: To Exclude Evidence or Argument Concerning Herculaneum**

From Plaintiffs' expert reports and witness and exhibit lists, Plaintiffs apparently plan to distract the jury and significantly prejudice Defendants with irrelevant and confusing detours into evidence concerning DRRC's former U.S. lead smelter in Herculaneum, Missouri ("Herculaneum")—which sits 3,500 miles from the smelter in Peru that they allege caused their injuries.  The Court denied discovery into these very issues years ago, and the Court should likewise exclude any evidence about or reference to Herculaneum, including but not limited to: (1) testimony from Leslie Warden, a Herculaneum resident who brought a lawsuit decades ago on behalf of her son based on his exposure to lead from Herculaneum; (2) lawsuits, investigations, regulatory actions, settlements, and judgments related to Herculaneum, such as *Blanks v. Fluor*, 450 S.W.3d 308, 323 (Mo. Ct. App. 2014); (3) press releases and news articles concerning Herculaneum; (4) blood lead studies of area residents, including related evidence alleging health effects from that smelter's emissions; (5) internal company documents relating to Herculaneum, including its operations and emissions-control functions; (6) comparisons between Herculaneum and the La Oroya Complex (or "CMLO"); (7) associated public relations campaigns or political lobbying; and (8) a jar of lead dust purportedly from Herculaneum.

Such evidence lacks any probative value as it is not *substantially similar* and, in fact, bears no relationship to Plaintiffs' claims and/or injuries purportedly sustained from exposure to lead from the La Oroya smelter. Fed. R. Evid. 401, 402. And, even if somehow relevant, such evidence/argument is improper propensity evidence that is not admissible for any legitimate

1

purpose. Fed. R. Evid. 404(b). Moreover, this evidence should also be excluded because it would be unfairly prejudicial, confuse the relevant issues at trial, and result in a distracting, time-consuming Herculaneum-focused mini-trial within the trial; if that were not enough, it also constitutes inadmissible hearsay. Fed. R. Evid. 403, 404(b)(1), and 802.

### A.   Evidence or Argument Concerning Herculaneum Is Irrelevant.

Evidence is relevant only if it tends to make the existence of any fact of consequence more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401, 402; *United States v. Hollister*, 746 F.2d 420, 422 (8th Cir. 1984). A party seeking admission of "similar-incident evidence" must "demonstrate that the circumstances between the two incidents are substantially similar." *Lovett v. Union Pac. R.R.*, 201 F.3d 1074, 1081 (8th Cir. 2000); *J.B. Hunt Transp., Inc., v. General Motors Corp.,* 243 F.3d 441, 445 (8th Cir. 2000) (affirming exclusion of non-substantially similar evidence). Plaintiffs cannot establish the necessary similarity here.

In 2015, Plaintiffs unsuccessfully moved to compel discovery into Herculaneum's operations,[1] arguing it was "highly relevant" to their claims because DRRC also owned and operated Herculaneum, several similar lawsuits were filed regarding the effects of that facility's lead emissions on children in the surrounding area, and the emission reduction measures and policies implemented at Herculaneum would provide "an apt comparison" to those that could or should have been implemented at the CMLO. (Dkt. 242 at 13-14.) Plaintiffs also argued that such discovery would shed light on Defendants' knowledge of the potential harm caused by lead exposure, as well as the ineffectiveness of safety measures implemented in La Oroya. (*Id.* at 14.) Defendants opposed. (Dkt. 254 at 17-20.) Notwithstanding the comparatively low relevance

---

[1] Plaintiffs sought "[d]ocuments that show any emission reduction, control, or prevention mechanism, measure, or policy used or implemented at the lead smelter located in Herculaneum, Missouri." Ex A, Third Set of RFPs, Request No. 18.

threshold for discoverability, and after "fully review[ing] the parties' briefs," this Court denied Plaintiffs' request in its entirety. (Dkt. 283 at 1.) The Court should reject Plaintiffs' attempt to force Defendants to defend against a context-free and fragmentary set of evidence and testimony that Defendants had no reason to develop in discovery because it could not even meet the standard for discoverability.  For the same reasons this evidence was not discoverable, it does not satisfy the demands of Rules 401 and 402 for *admissibility* and should be excluded.

Plaintiffs' claims stem entirely from injuries purportedly sustained from exposure to lead from the CMLO in La Oroya. Plaintiffs have no connection to Herculaneum because, as Plaintiffs have acknowledged (*see* Dkt. 242 at 13), nearly every relevant circumstance regarding the two operations differed.  For example:

- They operated pursuant to entirely different environmental regulations enacted by different countries, with a vastly different history of site-specific pollution. Because of the CMLO's operation for 75 years without environmental controls and pursuant to Peruvian regulations, La Oroya was considered one of the most polluted places in the world.

- The CMLO was "one of the most complex metallurgical facilities in the world, processing complex concentrates with high levels of impurities across multiple interrelated circuits." Ex. B, 3/19/01 Corby Anderson Supp. Report at 38-39. By contrast, Herculaneum "was much simpler. . ., utilizing a single circuit to process concentrates from the Missouri lead belt." *Id.* Consequently, the makeup of the emissions from each facility was necessarily different.

- The CMLO's "location and altitude directly affect[ed] the complexity and time required to design and install emissions controls and modify any metallurgical processes." *Id.* Meanwhile, Herculaneum's "[l]ow elevation and location meant easy access to U.S. infrastructure, engineering services, and suppliers." *Id.* at 38.

- Herculaneum had a separate environmental management team, reporting requirements, and environmental control equipment and procedures.

For these and other reasons, as Louis Marucheau, DRRC's former general counsel, explained, whether certain measures were instituted at Herculaneum has no bearing on Defendants' conduct at the CMLO because "it was an entirely different situation and you couldn't just apply what was done . . . at Herculaneum to Doe Run Peru."  12/14/17 Dep. at 251:8-19, attached as Ex. C.

3

As such, no material comparison can be made between Herculaneum and the CMLO that would meaningfully assist the jury at trial. Fed. R. Evid. 401, 402; *J.B. Hunt,* 243 F.3d at 445. The Court need look no further than its prior ruling—Herculaneum-related evidence is irrelevant for the same reasons it was not even discoverable.

**B.      Evidence or Argument Concerning Herculaneum is Inadmissible Character Evidence That Is Not Admissible for Another Legitimate Purpose.**

Even if somehow relevant, Herculaneum-related evidence should nonetheless be excluded as improper propensity evidence. Rule 404(b)(1) precludes Plaintiffs from using this evidence to suggest that Defendants had a propensity to commit acts similar to those involved at Herculaneum when operating the La Oroya smelter on a separate continent. *See, e.g.*, *United States v. Johnson*, 439 F.3d 884, 887 (8th Cir. 2006) (rule "excludes evidence of specific bad acts used to circumstantially prove a person has a propensity to commit acts of that sort. Propensity evidence . . . [including] examples of specific bad acts, is ordinarily excluded because of the likelihood the jury may misuse it[.]"); *Walls v. Shelby*, No. 5:11-CV-174-KGB, 2012 WL 6569775, at *1 (E.D. Ark. Dec. 17, 2012) ("'no relevant distinction'" between propensity evidence and "'evidence tending to prove a predisposition or inherent tendency'" (quoting *Johnson*, 439 F.3d at 887)).

As previewed in their prior motion to compel, Plaintiffs will likely argue that this array of evidence is admissible to prove Defendants' alleged knowledge of the harms caused to children by lead exposure and what should have been done at the CMLO to better protect human health. Fed. R. Evid. 404(b)(2). But for character evidence to show knowledge, it must be "relevant to a material issue," "similar in kind and not overly remote in time," "supported by sufficient evidence," and not substantially more prejudicial than probative. *Johnson*, 439 F.3d at 887. Given the material differences between Herculaneum and the CMLO, any knowledge gained from the operation of the former cannot simply be imputed to Doe Run Peru's ("DRP") operations. In any

4

event, Plaintiffs can argue Defendants' knowledge from operating lead smelters without

mentioning Herculaneum specifically or introducing exhibits that characterize Herculaneum

pejoratively. Plaintiffs' true reason for focusing on Herculaneum, given its widely publicized

history and its proximity to the trial court, is to invoke an inflammatory response from the jury.

**C.       Evidence or Argument Concerning Herculaneum Is Unfairly Prejudicial and
           Will Result in a Separate Mini-Trial Causing Confusion and Delay.**

Even if somehow relevant and proper as character evidence (it is not), this vast array of

evidence should be excluded because any probative value is outweighed by the danger of unfair

prejudice, confusion of the issues, and undue delay.  Fed. R. Evid. 403.  Since evidence of

"substantially similar incidents" "carries the risk of raising extraneous controversial points,

lead[ing] to a confusion of the issues, and present[ing] undue prejudice," courts carefully consider

whether to admit such evidence. *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914 (8th Cir. 2017).

Aside from inflaming the jury and prejudicing Defendants, Herculaneum-related evidence

would undoubtedly confuse the relevant issues with a sideshow into collateral matters. *See*

*Fireman's Fund Ins. Co. v. Thien,* 63 F.3d 754, 758 (8th Cir. 1995). For example, testimony from

Leslie Warden regarding the lawsuit she brought based on her son's alleged exposure to lead from

Herculaneum is not only prejudicial and irrelevant for all the reasons discussed above, but will

also confuse the issues before the jury and distract them with projects and lawsuits *unrelated to*

*Plaintiffs' claims about lead exposure in Peru*. Compounding the confusion, Herculaneum

changed ownership numerous times.[2] If Herculaneum evidence shows "knowledge," the question

immediately arises: *whose* knowledge? Because this Court rightly rejected Plaintiffs' argument

---

[2] St. Joseph Lead Company, later renamed St. Joe Minerals Corporation, owned and operated Herculaneum from 1895 to 1986. The Doe Run Company partnership, consisting of various entities over time, owned and operated the smelter from 1986 to 1994. In 1994, Renco bought St. Joe Minerals Corporation.  The smelter ceased operations in 2013.

5

that Herculaneum discovery "would provide information on Defendants' knowledge of the potential harm caused by lead exposure and their knowledge of the effectiveness or ineffectiveness of the safety measures implemented in La Oroya" (Dkt. 242 at 14), the record is undeveloped on the question of *which* Defendants obtained *what* knowledge and *when* with respect to Herculaneum. Thus, the jury would be left with mere speculation to bridge this evidentiary gap.

The admission of Herculaneum evidence would also entail a substantial waste of time and cause undue delay. In addition to dozens of exhibits dedicated to Herculaneum, Jack Matson, Plaintiffs' environmental standard-of-care expert, is expected to testify about his subjective belief of Defendants' knowledge and capability with respect to fugitive emissions based on Defendants' Herculaneum experiences. In support of these opinions, Dr. Matson is expected to offer to the jury detailed and technical recitations of the history of emissions and environmental upgrades at, and investigations relevant to, Herculaneum—testimony that will not only confuse the jury about the environmental projects at issue, but also waste the jury's and the Court's time. And if such evidence were admitted, Defendants would be forced to introduce rebuttal evidence—which was never produced, given the prior discovery limitations—that has no bearing on the salient issues in this case. *See Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.,* 818 F.2d 1398, 1404 (8th Cir. 1987) (affirming exclusion of evidence of "pattern of bad dealings" because court "would be forced to permit" introduction of confusing and time-wasting rebuttal evidence). In a trial already forecasted to last 8–10 weeks, these concerns take on added significance.

Because injecting Herculaneum evidence into these proceedings "threatens to raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative," it must be excluded. *See, e.g.*, *Bair v. Callahan,* 664 F.3d 1225, 1230 (8th Cir. 2012) (affirming exclusion under Rule 403 where "mini trials . . . would distract the jury from the real issue in the

6

trial"). While Defendants do not seek the wholesale exclusion of evidence regarding their other operations generally or their knowledge of the smelting industry, the Court should exclude evidence relating to the specific facts underlying the Herculaneum smelter.[3]

**II.     MIL #2: To Exclude Evidence and Argument Concerning Lawsuits, Regulatory Compliance, or Financial Practices and Difficulties Relating to Other Businesses or Facilities Owned or Operated by Defendants**

The Court should also prohibit Plaintiffs from making any reference to, or offering evidence concerning, lawsuits, environmental and/or regulatory compliance issues, or financial practices and difficulties relating to other businesses or facilities owned or operated by certain Defendants, including but not limited to (i) Magnesium Corporation of America and associated bankruptcy proceedings involving alleged siphoning of company funds, *see, e.g.*, *Magnesium Corporation of America*, No. 01-14312 (Bankr. S.D.N.Y.), and (ii) an EPA lawsuit brought against WCI Steel Inc. regarding its management of wastewater ponds nearly three decades ago, *see United States v. WCI Steel, Inc.*, No. 4:98-cv-1082 (N.D. Oh. 1998). Such evidence is inadmissible.

*First*, instead of "mak[ing] the existence of any fact more or less probable than it would be without the evidence," Fed. R. Evid. 401, such "evidence involving . . . non-party companies" "could confuse the jury and [i]s not probative of the central issues in the case." *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1059 (8th Cir. 2005) (affirming exclusion). This is particularly true where, as here, the proponent cannot show that such evidence involves "virtually identical" circumstances. *Id.* This lawsuit hinges on the injuries Plaintiffs

---

[3] Much of the Herculaneum-related evidence Plaintiffs seek to offer is excludable on other grounds.  *See, e.g.*, *Am. Home Assur. Co. v. Greater Omaha Packing Co.*, 819 F.3d 417, 429 (8th Cir. 2016) ("newspaper articles are 'rank hearsay' that do not fit a hearsay exception") (quoting *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010)).  And while the Eighth Circuit has not decided the issue, it has acknowledged that "[a] majority of [its] sister circuits . . . have held that judicial findings of fact are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists." *United States v. Jones*, 728 F.3d 763, 767 (8th Cir. 2013).

allegedly sustained due to lead exposure during the twelve years that DRP operated the Complex. *See, e.g.*, Dkt. 474 ¶¶ 2, 75, 81, 109, 126. Broad evidence of lawsuits and/or regulatory proceedings stemming from different environmental issues at different companies and facilities have no bearing on Defendants' understanding and knowledge of lead-related emissions issues and Peruvian environmental regulations. Nor is such evidence relevant to Plaintiffs' veil-piercing theory, which turns on Defendants' conduct with respect to *DRP*'s operations *in Peru*.

*Second*, even if such evidence were marginally relevant, Rule 404(b) prohibits using "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Any environmental and/or regulatory compliance issues or financial difficulties relating to Defendants' other businesses or facilities involve activities wholly separate from those alleged here. *Johnson*, 439 F.3d at 887. Thus, "the only possible effect of this evidence would be to impermissibly prejudice the jury by attempting to prove that [Defendants], in this case, acted in conformity with other bad acts." *Union Cnty., Iowa v. Piper Jaffray & Co.*, No. 4:06-CV-374, 2010 WL 11468305, at *7 (S.D. Iowa Dec. 4, 2010) (excluding evidence of unrelated regulatory matters and litigation).

*Third*, any prior judgment constitutes impermissible hearsay to the extent that it is offered to prove the truth of the matters asserted in the judgment. Fed. R. Evid. 802; *see supra* note 3.

*Fourth*, any probative value of such evidence "is outweighed by the risks of confusion and excessive consumption of time," since it "may result in a series of abbreviated contests that confuse the jury and lead the jury to consider matters that are neither probative or relevant." *CellTrust Corp. v. ionLake, LLC*, No. 19-CV-2855, 2023 WL 3052733, at *5 (D. Minn. Apr. 23, 2023).

### III.    MIL #3: To Exclude Evidence and Argument Regarding Non-Peru Regulations

The Court should exclude evidence or argument regarding environmental regulations outside Peru and preclude Plaintiffs from arguing whether the operator of the CMLO in Peru

should have complied with regulations other than those imposed by Peru. To prove negligence, Plaintiffs need to establish that DRP did not act as a reasonable smelter operator **in Peru**. Evidence of regulatory schemes outside of Peru—and a Peruvian operator's noncompliance with regulations they were never subject to—is irrelevant, prejudicial, and likely to confuse. Fed. R. Evid. 401, 403.

After owning the CMLO for decades subject only to Peruvian regulations, Peru sold the CMLO to Defendants under the laws of Peru. Defendants were required to follow the laws of Peru—not those of the U.S.—in operating the CMLO.  In 1997, at the time of the acquisition, a smelter with contamination issues like the CMLO would not have existed in the United States. In turn, U.S. or other nations' environmental regulations are not relevant in an action concerning the negligence of DRP—a *Peruvian* company operating under a *Peruvian* regulatory scheme. *Cf. State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred.").

Additionally, because the government of Peru had different priorities and regulations than its counterparts in other countries, the risk of substantial jury confusion over evidence of foreign regulatory standards is particularly acute. *See, e.g., In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) (excluding testimony about foreign regulatory actions, which, "in a case that is governed by domestic law, would likely cause jury confusion"), *aff'd*, 596 F.3d 884 (8th Cir. 2010); *In re Seroquel Prods. Liab. Litig.*, No. 6:06–md–1769–Orl–22DAB, 2009 WL 223140, at *6 (M.D. Fla. Jan. 30, 2009) ("[W]hatever minimal relevance the foreign regulatory actions might have is clearly overwhelmed by the likelihood of jury confusion."). Worse, this evidence poses a high risk of prejudice to Defendants because the jury may well hold them liable for DRP's violating a U.S. regulation that conflicts with the regulations it had to comply with under Peruvian law. Thus, any hypothetical probative value of evidence of foreign regulations is

9

substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403.

## IV.  MIL #4: To Exclude Argument That Defendants Acquired the La Oroya Complex to Escape U.S. Environmental Regulations

Based on discussions with Plaintiffs' counsel, Defendants anticipate that Plaintiffs will attempt to convince the jury that Defendants purchased the CMLO to escape U.S. environmental regulations, arguing that Defendants outsourced environmental damage, "polluted with impunity," or acted with some other similar inflammatory motive with no record basis.  Arguments to the jury must have a foundation in evidence. *See, e.g.*, *Middleton v. Roper*, No. 4:03CV543 CDP, 2005 WL 2298203, at *38 (E.D. Mo. Sept. 21, 2005) (Perry, J.); *United States v. Mullins*, 446 F.3d 750, 761 (8th Cir. 2006). Any argument that Defendants bought the CMLO to evade U.S. regulations rests on nothing more than baseless speculation and innuendo, has no probative value, and would tempt the jury to decide the case based on improper bias. Fed. R. Evid. 401, 402, 403.

Plaintiffs cannot identify a single knowledgeable witness who testified—or offered any support for the notion—that Defendants acquired the CMLO to escape U.S. environmental regulations. Jeffrey Zelms, DRRC's former president, "initiated" the bidding and efforts to acquire the CMLO. Zelms 6/14/17 Dep. at 48:21–25, attached as Ex. D. Mr. Zelms learned the CMLO was for sale through public information and concluded "it was an opportunity for Doe Run Resources." *Id.* at 49:1–6. While Plaintiffs' counsel sought to elicit testimony from Mr. Zelms that conditions for U.S. mining companies were growing more difficult in the mid-1990s and government standards were "getting tighter," Plaintiffs' counsel failed to ask whether these conditions motivated Defendants to acquire the CMLO, let alone whether DRRC sought to escape U.S. regulations or pollute without regulatory constraint. In fact, the evidence points in the opposite direction. Aside from revenue opportunities, Mr. Zelms testified that what motivated

10

acquiring the CMLO was the belief that "[w]e can make this better." *Id.* at 99:13–100:13.

No other competent witnesses offered testimony supporting Plaintiffs' theory that Defendants purchased the CMLO to dodge environmental regulations:

- Ira Rennert testified that when Mr. Zelms presented the purchase opportunity, he deferred to Mr. Zelms's judgment, reiterating that it "appeared to be a good business opportunity" with "the potential for operating profitably and extending the operations of Doe Run interests in the metals industry." I. Rennert 9/13/17 Dep., attached as Ex. E, at 89:25–90:12, 101:24–102:6, 102:8–18.

- Marvin Kaiser, DRRC's Chief Financial Officer, testified that he went with Mr. Zelms to discuss the purchase with Mr. Rennert, who told them "you guys think it's worth looking into, go for it." Kaiser 6/28/17 Dep., attached as Ex. F, at 79:14–23.

- Michael Ryan, who assisted with the financing, similarly testified that DRRC and Renco "were acquiring this company because they recognized that despite hundreds of millions of dollars had to be spent on environmental remediation, there would be a point in time when the company would be a good investment." Ryan 1/30/18 Dep., attached as Ex. G, at 71:7–72:5.

In short, Plaintiffs' counsel had the opportunity to ask Mr. Zelms and other witnesses whether tightening U.S. regulations motivated the acquisition. Counsel either chose not to ask, or asked and received answers that did not support Plaintiffs' theory. *See, e.g.*, I. Rennert 9/13/17 Dep., attached as Ex. E, at 95:13–96:2 ("Q. Are you saying that the lower regulation standards in Peru had nothing to do with your company's interest in the acquisition?  A. Again, I had no idea what the environment regulations were.  I didn't know if they were lower or higher.  I don't think, from our perspective, it had any impact on anything.").

Other facts reveal Plaintiffs' theories of motive as speculative and implausible. From the outset, the PAMA established binding environmental remediation requirements supervised by the Peruvian government. Far from seeking a lawless environment in which to pollute with abandon, Defendants acquired a facility with a detailed, mandatory environmental compliance program. And DRP invested more than $300 million over ten years in modernization projects and environmental

11

improvements, including emissions-control projects that significantly reduced lead emissions and blood lead levels. As Mr. Zelms put it: "For ten years after the acquisition we invested hundreds of millions of dollars in that facility, and every reference point that you would like to look at, from blood leads, to air leads, to arsenic levels, to water contamination, all show very dramatic improvements from what the Government left us." Zelms 6/14/2017 Dep. at 102:7–25. This is not the conduct of a company fleeing regulatory oversight.

Moreover, DRRC purchased a smelter in Glover, Missouri in 1998 soon after acquiring the CMLO and continued to operate Herculaneum in Missouri until 2013. Plaintiffs' far-fetched claim about Defendants seeking a haven outside the United States for their lead pollution lacks any evidentiary foundation—and thus any probative value—for this reason as well.

The suggestion that Defendants purchased a smelter in a developing country to avoid U.S. laws and poison children with impunity is among the most inflammatory arguments imaginable, and not even remotely borne out by the evidence. Such an argument would imperil the jury's ability to evaluate the evidence dispassionately. The Court should preclude it under Rule 403.

## V.   MIL #5: To Exclude Evidence and Argument Concerning the Personal Financial Status, Wealth, or Assets of Defendants During the Liability Phase

As discussed in more detail in Defendants' Motion to Bifurcate, Plaintiffs intend to elicit testimony, offer evidence, and make gratuitous comments and arguments at trial about Defendants Ira Rennert's and Renco's financial status. For example, Plaintiffs may refer to Mr. Rennert (and other family members) as a "billionaire."  And they may attempt to display photos of and articles about his residence, as their exhibit list suggests.[4] *See* ECF No. 1637-2, PLTF-0291, PLTF-0507. Indeed, during Mr. Rennert's supplemental deposition—meant to discern his net worth from 2017

---

[4] Apart from being prejudicial and irrelevant, news articles about Mr. Rennert's assets amount to inadmissible "rank hearsay." *Am. Home Assur. Co.*, 819 F.3d at 429.

12

to the present for the purpose of assessing ability to pay punitive damages—counsel devoted an inordinate amount of time to questioning Mr. Rennert about extraneous details and specific assets, such as whether he maintains a staff at various residences and the size of their rooms, *see, e.g.*, Ex. H, I. Rennert 12/5/25 Dep. Tr. at 41:5-43:20; 80:4-17; the model of his car, *id*. 96:21-97:6; how much he pays to use a private jet, *id*. at 98:22-99:14; and a fur coat, *id*. at 150:15-151:19.

As explained further in the motion to bifurcate, *no* evidence of or arguments based on wealth or financial status should be admitted before the jury has rendered a verdict on liability and compensatory damages.  These types of arguments and evidence are irrelevant to Defendants' liability and, if admitted, will only serve to inflame the jury and unfairly prejudice Defendants.

*First*, evidence of Mr. Rennert's and Renco's net worth does not bear on any of Plaintiffs' theories of liability and is inadmissible under Rules 401 and 402. Net worth sheds no light on Plaintiffs' claims of exposure to lead emitted by the CMLO two decades ago, or whether the alleged lead exposure from the CMLO caused Plaintiffs to sustain injuries. *See, e.g.*, Dkt. No. 474 ¶¶ 2, 75, 81, 109, 126.  The same is true for Plaintiffs' veil piercing theory. Although Plaintiffs maintain that DRP had no will of its own and was undercapitalized, *see* Dkt. No. 474 ¶ 49, that argument relates to DRP's capital—not Mr. Rennert's or Renco's, *see Collet v. Am. Nat. Stores, Inc.*, 708 S.W. 2d 273, 285 (Mo. Ct. App. 1986).  And Plaintiffs have never alleged or argued that Mr. Rennert (or any individual Defendant) intermingled his *personal* funds with those of DRP. *See* Dkt. 949 at 18-27 (order summarizing veil piercing allegations); Dkt. 1276 at 104-06. Nor have Plaintiffs ever presented a shred of evidence that Mr. Rennert used monies derived from Peruvian operations for personal purposes. Courts routinely exclude evidence of a party's personal wealth as "totally irrelevant" to issues of liability and compensatory damages. *Burke v. Deere & Co.*, 6 F.3d 497, 513 (8th Cir. 1993) (citation omitted); *see, e.g.*, *C.C. through Ginnever v. Suzuki*

13

*Mfg. of Am. Corp.*, No. 4:16CV01271, 2018 WL 4504687, at *4 (E.D. Mo. Sept. 20, 2018) (granting motion to exclude "any mention of Defendants' size, wealth, or financial condition" during liability phase of trial); *Pina v. Am. Shaman Franchise, LLC*, No. 21-00772-CV, 2023 WL 2335670, at *5 (W.D. Mo. Mar. 2, 2023) (similar). This Court should do the same.

*Second*, the substantial danger of unfair prejudice to Defendants significantly outweighs any hypothetical marginal relevance of such evidence. The Eighth Circuit has long held that "to permit evidence of the wealth of a party litigant, except where position or wealth is necessarily involved in determining the damages sustained, *is prejudicial error.*" *Union Elec. Light & Power Co. v. Snyder Est. Co.*, 65 F.2d 297, 303 (8th Cir. 1933) (emphasis added). Such evidence "not only t[akes] the jury far from the simple issue to be tried, but it distract[s] their attention from that issue." *Id.* For this reason, courts in this Circuit and around the country have excluded evidence of a defendant's net worth during the liability phase of a mass tort trial. *See, e.g.*, *C.C. through Ginnever*, 2018 WL 4504687, at *4; *In re: Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2436, 2016 WL 807377, at *9 (E.D. Pa. Mar. 2, 2016).

The risk of unfair prejudice here is especially pronounced, where Plaintiffs frame this case as a tale of corporate greed pursued at the expense of Peruvian children. As Judge Webber explained in excluding evidence of the defendant-insurer's wealth during the liability phase of a trial, any "[a]rgument that an insurer chose not to pay a claim in spite of its wealth carries the improper suggestion that a jury should find liability based upon the [defendant]'s wealth." *Fluor Corp. v. Zurich Am. Ins. Co.*, No. 4:16CV00429, 2021 WL 3021973, at *7 (E.D. Mo. July 16, 2021). So too here.  Gratuitous references to and evidence of Mr. Rennert's and Renco's wealth and financial status invite the jury to find liability based on assets or net worth rather than their (and their co-defendants') alleged conduct. Such evidence is patently inadmissible under Rule 403.

14

Further, inflammatory lifestyle evidence about Mr. Rennert's personal assets like coats, vehicles, and homes should be excluded from the punitive damages phase because their limited probative value is substantially outweighed by a danger of unfair prejudice. *See State Farm*, 538 U.S. at 417–18 ("[p]unitive damages pose an acute danger of arbitrary deprivation of property" especially when the jury hears "evidence that has little bearing as to the amount of punitive damages that should be awarded"); *McIver v. Murphy-Brown, LLC*, 980 F.3d 937, 975 (4th Cir. 2020) ("[I]nflammatory financial evidence can be especially destructive in the context of punitive damages because of the leeway given to juries in selecting the appropriate amount necessary[.]"). The jury can be informed of Defendants' net worth without gratuitous lifestyle evidence.

## VI.     MIL #6: To Exclude Evidence or Argument Regarding Arbitrations Involving Defendants

The Court should exclude all references to, evidence of, and arguments regarding arbitrations involving Defendants. Specifically, Defendants seek to exclude argument or evidence regarding the following arbitrations, in which none of the Plaintiffs are parties:

- *The Renco Group v. Republic of Peru*, ICSID Case No. UNCT/13/1 ("Renco I") involved claims made by Renco and DRP against the Republic of Peru and Activos Mineros (Peru's state-owned mining company) arising out of Peru's violations of the United States-Peru Trade Promotion Agreement ("TPA") and international law, as well as breaches by Activos Mineros and Peru of the Stock Transfer Agreement ("STA"). Renco's claims were ultimately dismissed for lack of jurisdiction.

- *The Renco Group, Inc. v. Republic of Peru*, PCA Case No. 2019-46 ("Renco II") involves claims by Renco and DRRC against Activos Mineros and the Republic of Peru, alleging that Peru's actions harmed Renco's investments in Peru, resulting in a breach of the TPA. Hearings were held in 2024, and the panel's decision is pending.

- *The Renco Group, Inc. and Doe Run Resources Corp. v. Republic of Peru and Activos Mineros S.A.C.*, PCA Case No. 2019-47 ("Renco III") involves claims by DRRC and Renco that Activos Mineros (as of 2023, Peru is no longer a respondent) violated the STA and refused to comply with contractual obligations to indemnify for and defend lawsuits brought by third-parties against DRRC and Renco. The panel's decision remains pending. Evidence presented at arbitrations is not held to the Federal Rules of Evidence. Similarly,

15

experts at arbitration are not held to a vetting process or challenges akin to those raised pursuant to Rule 702. *See, e.g.*, *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Loc. 901*, 763 F.2d 34, 38 (1st Cir. 1985). Therefore, any suggestion that the evidence Plaintiffs seek to introduce here should be admitted at trial because it was admitted in a prior arbitration is wrong. *See McDonald v. City of W. Branch, Mich.,* 466 U.S. 284, 291 (1984) ("arbitral factfinding is generally not equivalent to judicial factfinding" because it lacks the complete record, rules of evidence, and "rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath").

Further, arguments and evidence from these arbitrations are irrelevant. The arbitrations involve claims by certain Defendants against Peru and its state mining company for violations of a bilateral treaty and contract—not whether Plaintiffs sustained injuries during DRP's operation of the CMLO. *See United HealthCare Corp. v. Am. Trade Ins. Co.,* 88 F.3d 563, 573 (8th Cir. 1996) (excluding evidence of lawsuit which was not relevant to issues to be decided at trial); *United States v. Cameron-Ehlen Grp., Inc.,* No. 13-CV-3003, 2023 WL 36174, at *16 (D. Minn. Jan. 4, 2023) (evidence of prior litigation between parties excluded as irrelevant). Similarly, Peru's position in the arbitrations has no bearing on the merits of Plaintiffs' claims in this case.

Even if somehow relevant, argument or evidence regarding the arbitrations should still be excluded under Rule 403 as unfairly prejudicial and likely to confuse the issues and waste time. Renco and DRRC should not be forced to litigate their claims against Peru in this forum or defend their decision to seek redress from Peru or Activos Mineros for violations of a contract and/or a bilateral treaty agreement. These disputes belong before the arbitration panels, and this Court should not allow Plaintiffs to use them as a sideshow (*i.e.*, to tell the jury that like Plaintiffs, Peru *also* believes that DRP violated the PAMA, as Plaintiffs suggested during the conferral process).

16

Indeed, Peru's self-serving assertion of PAMA non-compliance when defending claims made by Renco cannot fairly be characterized as the official position of the Peruvian government years, and even decades, earlier, at a time relevant for the jury's determination of Defendants' negligence.

## VII.   MIL #7: To Exclude Plaintiffs' Deceased and Replaced Expert Dr. Cheremisinoff

The Court should exclude the testimony of Dr. Nicholas Cheremisinoff, Plaintiffs' original standard-of-care and environmental liability expert, under Federal Rules of Civil Procedure 26 and 37.  Dr. Cheremisinoff passed away on August 9, 2020.  Following his death, Plaintiffs replaced him with Jack Matson and David Sullivan.  Plaintiffs appointed Mr. Sullivan (who was already an expert in these cases) to address the emissions-inventory component of Dr. Cheremisinoff's work, while Plaintiffs named a new expert, Dr. Matson, to take on the standard-of-care role.  Both experts appear on Plaintiffs' witness list.  Yet so does Dr. Cheremisinoff.  Having made this substitution more than five years ago, Plaintiffs cannot now call Dr. Cheremisinoff at trial.

Plaintiffs' own words were unequivocal and are dispositive.  At a September 3, 2020 status conference shortly after Dr. Cheremisinoff's passing, Plaintiffs' counsel told the Court that they were "in the process of retaining replacement experts."  Sept. 3, 2020 Hr'g Tr. at 5:19–24, attached as Ex. I; *see also id.* at 7:1–9.  Counsel confirmed that Plaintiffs were "continuing to have discussions with the experts who are presently working [] to step in the shoes of Dr. Cheremisinoff."  *Id.* at 21:20–22:4.  And when Plaintiffs formally disclosed their new experts to Defendants, they left no doubt: "Plaintiffs disclose the following Expert Witnesses to replace the late Dr. Nicholas Cheremisinoff."  Dec. 1, 2020 Kraft Ltr., attached as Ex. J.  As recently as its September 9, 2025 Memorandum and Order, the Court acknowledged the replacement: "Plaintiffs secured Dr. Matson as a substitute standard-of-care expert upon the unexpected death of [Cheremisinoff]."  (Dkt. 1524 at 48.)

The impropriety here could not be clearer.  Plaintiffs told this Court—not once, but

17

repeatedly—that Dr. Cheremisinoff was being "replaced." They disclosed substitute experts. They proceeded with litigation for over five years accordingly, as did Defendants—incurring substantial expense to depose the replacement experts, defend against their opinions, and brief *Daubert* motions. But Defendants were denied the chance to exclude Dr. Cheremisinoff under *Daubert*. They had no reason to file a *Daubert* motion because he had been "replaced." The prejudice to Defendants is extreme. If a party could withdraw an expert before *Daubert* briefing, and then resuscitate that expert on the eve of trial, the opposing party would lose its right to have the Court evaluate that expert's opinions for reliability and exclude those opinions found wanting.

The Court should reject Plaintiffs' attempt on the eve of trial to pile deposition testimony from the deceased Dr. Cheremisinoff onto live testimony of Dr. Matson and Mr. Sullivan that Plaintiffs themselves characterized as duplicative of his work. This is precisely the kind of unfair surprise and strategic gamesmanship that Rule 26 prevents.

## VIII.   MIL #8: To Exclude Plaintiffs' Undisclosed Witness Christopher Brown

The Court should similarly exclude Plaintiffs' late-disclosed witness Christopher Brown from testifying under Rules 26 and 37. Mr. Brown apparently served as an assistant to the late Dr. Cheremisinoff. But Mr. Brown appears nowhere in Plaintiffs' discovery disclosures or responses. He was not disclosed in Plaintiffs' July 17, 2020 Amended Rule 26 Initial Disclosures, *see generally* Ex. K, nor mentioned in connection with Plaintiffs' replacing Dr. Cheremisinoff.

Rule 37 provides an automatic sanction in this scenario: "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiffs bear the burden of showing substantial justification or harmlessness, but cannot. Mr. Brown was presumably known to Plaintiffs for years, given their work with Dr. Cheremisinoff. Defendants

18

had no notice that Plaintiffs intended to call him at trial and no opportunity to investigate his background, depose him, uncover biases, or prepare for cross-examination. He has served no expert report. The Court should exclude Mr. Brown under Rules 26 and 37.

## IX. MIL #9: To Exclude References to the Absence of Witnesses at Trial

While all Defendants anticipate being present for some portion of the trial, the Court should preclude any mention of or argument about the amount of time a Defendant or its representative spends at trial (or, if circumstances evolve, a Defendant's lack of presence entirely). The absence of a Defendant or its representatives is irrelevant, and whatever negligible probative value those comments have is substantially outweighed by the risk of unfair prejudice to Defendants. Fed. R. Evid. 401, 403; *see Stubblefield v. Suzuki Motor Corp.*, No. 3:15-cv-18, 2018 WL 4610895, at *6 (S.D. Miss. Sept. 25, 2018) ("[W]hen a corporate representative fails to attend trial, counsel opposite may seek to inflame the jury suggesting that the company does not care about the ailing plaintiff. This . . . would be improper."); *C.C. through Ginnever*, 2018 WL 4504687, at *4 ("Plaintiff shall not mention the absence of Defendants' corporate representatives from the trial."). For their part, Defendants do not intend to comment on any Plaintiff's failure to attend the trial.

## X. MIL #10: To Exclude References to Other Plaintiffs

The Court should exclude any evidence, argument, or reference concerning other lawsuits related to the La Oroya smelter complex and other Plaintiffs involved in litigation against Defendants as irrelevant to any issues in this case and unduly prejudicial. Fed. R. Evid. 401, 403. Evidence of unproven allegations that *other* plaintiffs have made in *other* lawsuits is not probative of these five Plaintiffs' claims. *See, e.g.*, *Mannino v. McKee Auto Ctr., Inc.*, 753 F. Supp. 3d 723, 729 (S.D. Iowa 2024) ("The fact that other individuals have sued Defendants does not establish anything about Defendants' conduct."); *accord In re Wright Med. Tech. Inc.*, No. 1:13-cv-297, 2015 WL 6690046, at *9 (N.D. Ga. Oct. 30, 2015). The mere mention of other lawsuits would

19

unfairly prejudice Defendants, leading a jury to incorrectly assume that Plaintiffs' case must be meritorious based on the number of others who have sued.  *See Sadler v. Advanced Bionics, LLC*, No. 3:11-CV-450, 2013 WL 1340350, at *4 (W.D. Ky. Apr. 1, 2013) ("[E]vidence of the number of other lawsuits filed against Defendant should be excluded as irrelevant and because the risk of unfair prejudice substantially outweighs any probative value of this evidence.").  Moreover, evidence of other litigation related to the La Oroya smelter complex is inadmissible hearsay.  Fed. R. Evid. 802; *see also Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 369 n.2 (11th Cir. 2009) (excluding statements made in pleadings as "clearly hearsay").  On these bases, courts consistently hold that evidence of prior or concurrent litigation is inadmissible.[5]  This Court should do the same.

## XI.    MIL #11: To Exclude Evidence of Certain Peruvian Criminal Proceedings

The Court should exclude any evidence or argument concerning criminal proceedings against any Defendant in Peru. Peruvian authorities opened a criminal investigation arising out of creditor claims incident to DRP's bankruptcy. Evidence about those proceedings is improper propensity evidence under Rule 404(b)(1), inadmissible for "another purpose" under Rule 404(b)(2) because the proceedings post-dated the conduct underlying Plaintiffs' claims, and violates Rule 403.  It is also improper under Rule 609 because a witness's character for truthfulness may be impeached through evidence of a criminal conviction only—not mere investigations.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their omnibus motion *in limine* and exclude the challenged categories of evidence and argument.

---

[5] *See, e.g., A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-CIV, 2018 WL 5886663, at *9 (S.D. Fla. Nov. 9, 2018); *Vitale v. Electrolux Home Prods.*, No. 15-cv-01815, 2018 WL 3868671, at *18 (E.D. Pa. Aug. 14, 2018); *Miller v. Polaris Labs., Inc.*, No. 1:11-cv-01004, 2016 WL 1639087, at *2 (S.D. Ind. Apr. 26, 2016).

Respectfully submitted,

**KING & SPALDING LLP**

By: */s/ Geoffrey M. Drake*
Andrew T. Bayman, #043342GA
abayman@kslaw.com
Geoffrey M. Drake, #229229GA
gdrake@kslaw.com
Mark Sentenac, #987346GA
msentenac@kslaw.com
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Tracie J. Renfroe, #16777000T
trenfroe@kslaw.com
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Defendants The Renco Group, Inc.,
D.R. Acquisition Corp., Doe Run Cayman Holdings,
LLC, Doe Run Resources Corporation, Ira L.
Rennert, Marvin M. Kaiser, and Albert Bruce Neil*

**SIDLEY AUSTIN LLP**

Jennifer L. Saulino
Jennifer.saulino@sidley.com
Richard W. Smith
rwsmith@sidley.com
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736-8649
Facsimile: (202) 736-8711

*Attorneys for Defendants The Renco Group, Inc.
and Ira L. Rennert*

**LEWIS RICE LLC**

Thomas P. Berra, Jr., #43399MO
tberra@lewisrice.com
Michael J. Hickey, #47136MO

21

mhickey@lewisrice.com
600 Washington Ave., Suite 2500
St. Louis, Missouri 63102-2147
Telephone: (314) 444-7600
Facsimile: (314) 241-6056

*Attorneys for Defendants Doe Run Resources
Corporation, Marvin K. Kaiser, and Albert Bruce
Neil*

**DOWD BENNETT LLP**

Edward L. Dowd, Jr., #28785MO
edowd@dowdbennett.com
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111

*Attorneys for Defendants The Renco Group, Inc.,
D.R. Acquisition Corp., Doe Run Cayman Holdings,
LLC, and Ira L. Rennert*

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 28th day of April, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

*/s/ Geoffrey M. Drake*