# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

A.O.A., *et al.*,

        Plaintiffs,

    v.

THE DOE RUN RESOURCES
CORPORATION, *et al.*,

        Defendants.

Case No. 4:11-cv-00044-CDP

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR BIFURCATION OF TRIAL

Plaintiffs intend to introduce evidence that is extremely prejudicial and highly likely to enflame the jury and interfere with its ability to fairly and appropriately apply the law in determining liability. Plaintiffs' exhibit list includes evidence about Defendants'—in particular Ira Rennert's and Renco's—financial condition and assets that is designed to enflame the jury. For example, Plaintiffs want to introduce pictures and valuations of homes and descriptions of clothing, jewelry, and art, along with a Vanity Fair article titled "Devastating Luxury," that describes the "controversial mansion, Fair Field," as decorated "in a style not seen since Louis XIV did up Versailles."

Courts in the Eighth Circuit regularly grant bifurcation to preserve the integrity of the liability phase in cases where the evidence is much less inflammatory than that Plaintiffs want to put before the jury here. In fact, in Missouri state courts, bifurcation is automatic at the request of a party. *See* Mo. Ann. Stat. § 510.263(1) ("All actions tried

before a jury involving punitive damages … shall be conducted in a bifurcated trial before the same jury if requested by any party."). The Court should follow suit and bifurcate determination of the amount of punitive damages from the liability phase.

Not only will bifurcation prevent extremely prejudicial evidence from infecting the liability phase, it will also prevent juror confusion and create an efficient process. This is the paradigmatic case in which bifurcation is not only appropriate but essential: the inflammatory evidence has zero relevance to the merits of the claims that will be before the jury in the liability phase. In other words, bifurcation can *only* promote the aims of fairness and efficiency, with no counterbalance weighing against bifurcation.

## ARGUMENT

### I.     LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) allows courts to bifurcate trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Under Rule 42(b), courts should consider "the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1202 (8th Cir. 1990); *see also Van Orden v. Schaefer*, No. 4:09-CV-00971, 2014 WL 7335150, at *1 (E.D. Mo. Dec. 19, 2014) (noting courts consider "the separability of the issues; simplification of discovery and conservation of resources; prejudice to the parties; and the effect of bifurcation on the potential for settlement." (citation omitted)).

A key issue is whether bifurcation is necessary to avoid prejudice. *See Fluor Corp. v. Zurich Am. Ins. Co.*, No. 4:16-CV-00429, 2021 WL 3021973, at *12 (E.D. Mo. July 16, 2021); *Van Orden*, 2014 WL 7335150, at *1. Bifurcation of liability from punitive damages

- 2 -

prevents prejudice by ensuring that evidence that may only be relevant to punitive damages has no "adverse effect on jury deliberations concerning liability and compensatory damages." *Fluor Corp.*, 2021 WL 3021973, at *13; *see also Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir. 1997) (recognizing that "because the trial was bifurcated, there [wa]s no risk that the liability and compensatory damages determination was affected" by alleged error in the punitive damages phase); *Chism v. CNH Am. LLC*, No. 2:07-CV-00150, 2009 WL 890523, at *5 (E.D. Ark. Mar. 30, 2009) (bifurcation "prevent[s] any prejudice on the liability and compensatory damages phase from evidence admitted during the punitive damage phase"). If, on the other hand, a trial is not bifurcated and inflammatory evidence is introduced, a new trial may be required. *See Silbergleit v. First Interstate Bank of Fargo, N.A.*, 37 F.3d 394, 397 (8th Cir. 1994) (granting new trial on all issues when prejudicial evidence, including evidence of wealth, was put before the jury before the jury determined liability and compensatory damages); *Union Elec. Light & Power Co. v. Snyder Est. Co.*, 65 F.2d 297, 303 (8th Cir. 1933) (holding "[t]o permit evidence of the wealth of a party litigant, except where position or wealth is necessarily involved in determining the damages sustained, is prejudicial error" and reversing and remanding with instructions to grant a new trial).

A motion to bifurcate can be made at any time prior to trial and is often resolved alongside motions in limine. *See* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2388 (3d ed.) (a motion to bifurcate "is not subject to any particular time constraint and properly may be made at a pretrial conference"); *see, e.g., Gulchuk v. Titan Surgical Grp., LLC*, No. 23-03122, 2024 WL 6951276, at *8 (W.D. Mo. Sept. 4, 2024) (considering bifurcation and

- 3 -

motions in limine); *Fluor Corp.*, 2021 WL 3021973, at *1 (same).

## II.   BIFURCATION WILL AVOID UNDUE PREJUDICE

Bifurcation is necessary to avoid undue prejudice here. Plaintiffs have indicated that they intend to introduce highly inflammatory evidence that has no connection to liability and that could only possibly be justified as related to punitive damages.

Plaintiffs have focused on Defendants' wealth and financial condition. For example, Plaintiffs' counsel recently spent approximately five hours deposing Rennert on his and Renco's wealth and financial condition. *See* Ex. A (Excerpts of I. Rennert Dep., Dec. 5, 2025). Counsel repeatedly questioned Rennert about whether he is a "billionaire," as well as about  his wife's clothes and jewelry, his homes—their value and details about their features—his collection of fine art, and his vehicles. *See, e.g.*, *id.* at 12:20, 21:6-8, 21:21-22:6 (questioning about whether Rennert is a billionaire); 82:2-24 (questioning about square feet of Park Avenue apartment); 95:17-96:20 (questioning about number of cars); 98:22-99:8 (questioning regarding private jet); *id.* at 95:17-22, 122:3-123-23 (questioning about Fairfield home in the Hamptons, including private synagogue and size of garage); 149:14-151:19 (questioning about a lynx coat and diamond jewelry); 113:9-18 (questioning about art collection).

Plaintiffs' exhibit list includes documents concerning these same things. For example, Plaintiffs listed exterior photographs of the Fairfield home.. Ex. B  (exhibit list); Ex. C (PLTF-1449, photos). Plaintiffs' exhibit list also includes articles describing the home, along with loaded commentary that compares the home to Versailles, or "the Sun King's palace," and asserts that it "violates the spirit of [the Hamptons] with a swagger

both novel and obscene." Ex. D (PLTF-0507, Vanity Fair article) (describing home as "the largest private residence in America, reportedly with 29 bedrooms, 40 bathrooms, a bowling alley, squash and basketball courts, a theater, and a vast parking garage"); *see also* Ex. E (PLTF-0291, The Wall Street Journal article) (describing "multiple dining rooms, study areas attached to some bedrooms, two bowling alleys, [and] courts for basketball and handball"). Setting aside their inadmissibility, *see* MIL #5, that Plaintiffs put these pieces of published commentary on their exhibit list is instructive.

Plaintiffs also listed as exhibits, for example, an "Estimate of Ira L. Rennert's assets," Ex. F (PLTF-1448), an assessment of Rennert's Park Avenue apartment, Ex. G (PLTF-1177 ), an itemized list of jewelry and furs, including a $73,850 diamond bracelet and $10,000 lynx coat, Ex. H (PLTF-1446), a statement of transactions for artwork and antiques, Ex. I, (PLTF-1443 ), a valuation of art located at Renco's Rockefeller Plaza office, Ex. J, (PLTF-1445 ), a list of art in the Fairfield home, Ex. K (PLTF-1450), Rennert's individual tax return for 2023, Ex. L (T2204), and Renco's financial statements, Ex. M (PLTF-1444 ). Plaintiffs also recently requested Renco's updated financial statements "[i]n order to properly evaluate Renco's financial status for the punitive damages portion of this matter." Ex. N (April 21, 2026 Ltr. from Kristine K. Kraft).

None of this evidence has any relevance to any issue the jury will assess in determining liability or compensatory damages. The Court recently considered the elements of the Plaintiffs' remaining claims at summary judgment. *See* Dkt. 1524 at 12-13 (negligence), 15 (piercing the corporate veil), 34 (agency), 41 (direct participation liability

for breach of assumed duties to third parties relating to foreseeable harms). Rennert and Renco's wealth and financial condition are irrelevant to all of them.

Even if evidence of Rennert and Renco's wealth and financial condition had any relevance to liability, "[a]ny attenuated relevance is outweighed by the danger of unfair prejudice" to Defendants. *Fluor Corp.*, 2021 WL 3021973, at *7. Evidence of wealth is widely recognized as "designed to impassion and prejudice the jury." *Silbergleit*, 37 F.3d at 397. Among other things, "references to the large size and wealth of a defendant are likely to provoke a jury to apply the 'deep pocket' theory of liability and to enhance the size of the verdict." *Wilkinson v. Stanley Fastening Sys., L.P.*, 693 S.W.3d 166, 176 (Mo. Ct. App. 2024).

In fact, the Eighth Circuit has vacated a jury verdict and remanded for a new trial after finding plaintiff's "references to [defendant] as a millionaire," among other things, were "highly prejudicial." *Silbergleit*, 37 F.3d at 398. The risk of prejudice from suggesting a defendant is a billionaire is even greater: "[o]ur culture today is very much impacted by the characterization of entities or people as 'billionaires'"—a characterization often "not intended or viewed in a positive light." *Wilkinson*, 693 S.W.3d at 176 (finding trial court manifestly erred in denying mistrial after plaintiff's attorney made two references to a manufacturer as a "billion-dollar company" in an unbifurcated trial); *see, e.g.*, Ex. A (I. Rennert Dep., Dec. 5, 2025), at 12:20, 21:6-8, 21:21-22:6 (questioning from Plaintiffs' counsel about whether Rennert is a billionaire); Ex. O (A. Rennert Dep., Dec. 19, 2025 Tr.), at 184:4-13, 184:20-25 (same). Prejudice is exacerbated for out-of-state defendants like Rennert and Renco. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, No. 01-1289, 538

U.S. 408, 417 (2003) ("[E]vidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences.").

Courts in the Eighth Circuit regularly bifurcate trials in order to exclude prejudicial evidence of wealth from the liability phase of trial, even when that evidence is much less charged than the evidence here. *See, e.g.*, *Gulchuk v. Titan Surgical Grp., LLC*, No. 23-03122, 2024 WL 6951276, at *8 (W.D. Mo. Sept. 4, 2024) (granting motion to bifurcate and excluding "reference to or evidence about punitive damages" including "Defendant's Financial Worth" from liability phase); *Fluor Corp.*, 2021 WL 3021973, at *13 (bifurcating trial and excluding evidence of financial condition and wealth of an insurance company in liability phase because evidence "could have an adverse effect on jury deliberations concerning liability and compensatory damages"); *C.C. ex rel. Ginnever v. Suzuki Mfg. of Am. Corp.*, No. 4:16-CV-0127, 2018 WL 4504687, at *4 (E.D. Mo. Sept. 20, 2018) (bifurcating trial and excluding evidence of defendant's "Size, Wealth or Financial Condition" from first phase of trial "because it is more prejudicial than probative and it is irrelevant" to liability); *Chism*, 2009 WL 890523, at *5 (granting motion to bifurcate where plaintiffs sought to introduce "evidence of the financial condition" of defendant and finding "bifurcation of liability and compensatory damages issues from the punitive damages issue would prevent prejudice and comport with Arkansas law.").

Bifurcation would also comport with Missouri law here. Missouri courts *must* exclude financial condition evidence from the liability phase. Mo. Ann. Stat. § 510.263(2) ("Evidence of defendant's financial condition shall not be admissible in the first stage of

such trial unless admissible for a proper purpose other than the amount of punitive damages."). The Eighth Circuit has therefore recognized that, while Missouri law is not controlling on this issue, parties in Missouri federal court "should not [be] surprised by a bifurcated trial." *Riggs v. Gibbs*, 66 F.4th 716, 718 n.2 (8th Cir. 2023). Here, where the Court has held that "with respect to the particular issue of punitive damages, Missouri has a more significant relationship than Peru," such that Missouri substantive law governs punitive damages, Dkt. 1628 at 5–6, the Court should use the procedure that Missouri has decided should be used when its substantive law is applied in Missouri courts.

It is hard to imagine evidence of wealth more calculated to "have an adverse effect on jury deliberations concerning liability and compensatory damages" than the evidence Plaintiffs intend to put before the jury here. *Fluor Corp.*, 2021 WL 3021973, at \*13. The Court should therefore bifurcate the trial to prevent "risk that the liability and compensatory damages determination [will be] affected" by inflammatory evidence that has no relevance to liability and compensatory damages. *Parsons*, 122 F.3d at 529.[1]

### III.    BIFURCATION WILL PROMOTE JUDICIAL ECONOMY AND AVOID JUROR CONFUSION.

Bifurcation will also prevent juror confusion and create a more efficient process. Bifurcation is appropriate where consideration of evidence could confuse the jury in its determinations concerning liability and compensatory damages. *See Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, No. 4:06-CV-01191, 2008 WL 382385, at \*2 (E.D. Mo. Feb.

---

[1] To be clear, some of the inflammatory net worth evidence Plaintiffs seek to introduce is unduly prejudicial such that it should also be excluded from the punitive damages phase. *See* MIL #5.

12, 2008) (finding that "the risk of overburdening the jury outweighs the slight inconvenience involved in the overlap of evidence"); *see also Lin v. Darren Beavers and Hi-Tech Testing Serv., Inc.*, No. 08-CV-4033, 2009 WL 361247, *1 (W.D. Ark. Jan. 30, 2009) (granting motion to bifurcate because evidence of both defendants' financial conditions "could have a prejudicial or confusing effect on jury deliberations concerning liability and compensatory damages").

Here, there is *no* overlap between evidence going to Rennert's and Renco's net worth, which plainly is not relevant to anything beyond punitive damages, and evidence relevant to liability. Defendants recognize that certain evidence—such as certain evidence going to foreseeability—may be relevant to both liability and punitive damages. Any such overlapping evidence may be "introduced in the first phase of the trial [and] may be used to prove whether punitive damages should be granted." *C.C.*, 2018 WL 4504687, at *3. But inflammatory evidence with no relevance to the liability phase—such as evidence of Rennert and Renco's wealth and financial status—should not be introduced until the second phase of trial. *See id.*

Bifurcating trial in this manner will allow the jury to focus on the main issues in this case, and the jury will only be required to consider evidence relevant only to the amount of punitive damages if they first find a Defendant liable. This will potentially save the Court and the jury needless testimony and exhibits and shorten trial. In short, maintaining the distinction between evidence on compensatory and punitive damages will simplify the trial.

- 9 -

# CONCLUSION

For these reasons, this Court should bifurcate the punitive damages phase of trial pursuant to Federal Rule of Civil Procedure 42(b) and exclude evidence of and references to the wealth or financial status of Rennert and Renco from the liability phase.

Dated: April 28, 2026

By: */s/ Jennifer L. Saulino*

**KING & SPALDING LLP**

Andrew T. Bayman, #043342GA
abayman@kslaw.com
Geoffrey M. Drake, #229229GA
gdrake@kslaw.com
Mark Sentenac, #987346GA
msentenac@kslaw.com
1180 Peachtree Street, N.E.
Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Tracie J. Renfroe, #16777000T
trenfroe@kslaw.com
1100 Louisiana Street
Suite 4000
Houston, TX 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Doe Run Cayman Holdings, LLC, The Doe Run Resources Corporation, Ira L. Rennert, Marvin M. Kaiser, and Albert Bruce Neil*

**DOWD BENNETT LLP**

**SIDLEY AUSTIN LLP**

Jennifer L. Saulino (D.C. Bar No. 479390)
jennifer.saulino@sidley.com
Richard W. Smith (D.C. Bar No. 465563)
rwsmith@sidley.com
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Defendants The Renco Group, Inc. and Ira L. Rennert*

**LEWIS RICE LLC**

Thomas P. Berra, Jr., #43399MO
tberra@lewisrice.com
Michael J. Hickey, #47136MO
mhickey@lewisrice.com
600 Washington Ave., Suite 2500
St. Louis, MO 63102-2147
Telephone: (314) 444-7600
Facsimile: (314) 241-6056

*Attorneys for Defendants The Doe Run Resources Corporation, Marvin K. Kaiser, and Albert Bruce Neil*

- 10 -

- 11 -

Edward L. Dowd, Jr. #28785MO
edowd@dowdbennett.com
Jeffrey R. Hoops, #69813MO
jhoops@dowdbennett.com
7733 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)

*Attorneys for Defendants The Renco Group,
Inc., DR Acquisition Corp., Ira L. Rennert,
and Doe Run Cayman Holdings, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this was filed on April 28, 2026 via the ECF/CM system with the Clerk of the Court, which will serve Notice of Electronic Filing upon counsel of record.

By: /s/ Jennifer L. Saulino