IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-cv-00044-CDP |
| | ) | (CONSOLIDATED) |
| IRA RENNERT, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OMNIBUS MOTION *IN LIMINE*
AND MEMORANDUM IN SUPPORT**

Pursuant to the Court's Order (Doc. 1590),[1] Plaintiffs D'Alessandro Farith Godoy Cuadrado, Jhonatan Raul Espinoza Laureano, Medaly Xiomara Ortega Rodrigo, Roberto Luis Espinoza Yantas, and Geanfranco Sergio Agui Yupanqui ("Plaintiffs") respectfully move this Court *in limine* to enter an Order precluding introduction by Defendants of any of the following:

- Evidence and testimony regarding the substance of Article 1971 of Peru's Civil Code;

- Testimony by Mr. Ángel Chávez Mendoza or any other undisclosed expert witness;

- Evidence, testimony, or argument regarding charitable acts or environmental projects not specifically directed to reduce lead emissions or ameliorate a specific health effect of lead in children;

- Evidence and testimony regarding whether Defendants may or should be indemnified for liability in this action;

- Evidence and testimony regarding client recruitment efforts by Plaintiffs' counsel;

- █████████████████████████████████████

- Evidence that Plaintiffs did not comply with recommendations of expert witnesses; and

---

[1] In accordance with the Court's instruction, the parties met and conferred via video conference on April 13, 20, and 27. This omnibus submission addresses unresolved issues.

1

- Evidence or argument regarding a Plaintiff's absence from the courtroom.

The above matters are not relevant to any issue to be determined by the jury, are highly prejudicial, and must be excluded pursuant to Federal Rules of Evidence 401, 402, 403, and/or 404.

## LEGAL STANDARD

Evidence is only relevant if it could make a consequential fact more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Evidence that is not relevant is inadmissible. *See* Fed. R. Evid. 402. Furthermore, even relevant evidence should be excluded where its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, [or] misleading the jury . . . ." *See* Fed. R. Evid. 403. Therefore, the probative value of proffered evidence must be weighed against any negative consequences of admitting the evidence, including risk of unfair prejudice. *Id.*

## MOTIONS *IN LIMINE*

**I.  Motion to Exclude Any Evidence or Testimony Regarding Peru's Substantive Law**

Defendants intend to argue to the jury that they are immune from liability under Article 1971.1 of Peru's Civil Code because their conduct was in "the regular exercise of a right" supposedly granted by the PAMA. *See generally* Doc. 1440-2 (Defendants' Memorandum of Law in Support of Renewed Motion for Summary Judgment Under Article 1971), Doc. 1616 (Defendants' Motion to Clarify Legal Issues Related to Application of the Safe Harbor Immunity Provided by Article 1971). Evidence regarding whether Article 1971 affords an affirmative defense applicable to Defendants' conduct should be precluded. Instead, the Court should find pursuant to Rule 44.1 that the defense is unavailable. *See* Fed. R. Civ. P. 44.1.

A determination as to the contours of an Article 1971 affirmative defense presents a legal question to be addressed by the Court. The record and law support that the defense is inapplicable to Defendants' conduct. Article 1971 is therefore irrelevant. Conversely, presenting a complex

2

legal question to the jury would create significant confusion as to which law applies, which will be highly prejudicial to Plaintiffs. Further, if this spurious affirmative defense is presented to the jury, the entire trial could devolve into a mock administrative enforcement proceeding.

### a. *The contours of Article 1971 are a legal question that cannot be presented to a jury.*

The Court recently acknowledged that "a serious question exists as to whether abiding by an administrative regulation alone constitutes 'regular exercise of a right' under Article 1971 such that tortfeasors who engage in additional injurious conduct outside that 'right' are shielded from any and all liability." Doc. 1628 (Court's Memorandum and Order of April 10, 2026) at 7. This is plainly a question as to the substance of foreign law.

Federal Rule of Civil Procedure 44.1 specifies that "a court's determination of foreign law 'must be treated as a ruling on a question of law,' rather than as a finding of fact." *Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 42 (2018); Fed. R. Civ. P. 44.1; *see also* Doc. 284 at 3 ("the determination of foreign law is a question of law—not fact"). Accordingly, questions of foreign law are to be determined by the Court, not the jury. *See* Doc. 1322 at 51 ("the determination of foreign law is a ruling on a question of law made by the Court"). Because the substance of foreign law is an issue to be determined by the Court, the question as to whether Article 1971 can offer legal protection for Defendants' operations while a PAMA was in place is a question for the Court alone. *See, e.g., Linde v. Arab Bank, PLC*, 944 F. Supp. 2d 217, 218 (E.D.N.Y. 2013) (disallowing evidence of foreign law to be presented to jury). Accordingly, the Court should preclude evidence as to the substance of Article 1971 from jury review.

Indeed, exclusion *in limine* is a recognized mechanism for precluding questions of foreign law—such as the availability of an Article 1971 defense—from presentation to a jury. *See Katzenmeier v. Blackpowder Prods.*, No. 06-169, 2008 U.S. Dist. LEXIS 122281, at *7–9 (S.D.

3

Iowa Nov. 25, 2008) (granting, in part, motion *in limine* to exclude evidence concerning Spanish and European law because "[e]vidence of stricter Spanish or European laws and regulations is likely to confuse and mislead the jury to defendants' unfair prejudice," *id.* at \*6). In *Katzenmeier*, the court  determined that foreign law was not applicable in part because the record "simply [did] not permit a reliable determination" by the court as to what those laws required. *Id.* at 7. Likewise here, Defendants have not developed a record sufficient to show that an Article 1971 defense is applicable. *See* Doc. 1628 at 7 (acknowledging that serious questions regarding Article 1971 still remain). Nor can they. As Plaintiffs have previously explained (and reiterate below), Defendants' conduct is *not* protected by Article 1971, and evidence of the contours of Article 1971 will only confuse the jury.

Even outside the context of foreign law disputes, courts may exercise a gatekeeping function to exclude evidence of specious affirmative defenses.  *See Countrywide Servs. Corp. v. SIA Ins. Co.*, 235 F.3d 390, 394 (8th Cir. 2000) (district court did not abuse its discretion in excluding evidence to support a meritless affirmative defense).

   b. ***Testimony and evidence on Article 1971 must be excluded because the record does not support a finding by the Court that Article 1971 applies as a defense.***

Article 1971 is inapplicable and provides no defense to Defendants because (a) causing injury through negligent operation of a lead smelter is a hazardous activity subject to strict liability under Peruvian law; (b) an administrative license to operate a smelter is not a "right" to endanger children; (c) the PAMA could not and did not permit Defendants' negligence, let alone reckless conduct; (d) Defendants' contracting in connection with the purchase of the smelter belies any argument that they believed they had immunity; and (e) Defendants abused any hypothetical right by shirking obligations, continually requesting extensions, and *never* achieving actual compliance

4

with the PAMA. Given the foregoing, allowing the jury to hear evidence regarding this groundless retreat into inapplicable foreign law would be improper.

    *1. Article 1971.1 immunity is inapplicable to offenses involving hazardous activity.*

Under Peruvian law, Article 1971 is not a defense applicable to negligent operation of a lead smelter because lead smelting is a hazardous activity subject to strict liability. As Defendants' own expert explained, Article 1970 of Peru's Civil Code provides that "[w]hoever causes damage to another through a hazardous or dangerous good, or by the exercise of a hazardous or dangerous activity, is obliged to repair the damage . . .  Liability under this provision is strict or objective." Doc. 150-1 (2014 Expert Report of Keith S. Rosenn) at 22. Defendants' expert Dr. Rosenn explained that Defendants cannot avoid liability for a strict liability offense by disproving negligence or intentional misconduct, and that the available defenses for strict liability offenses are the Article 1972 defenses of force majeure events, acts of a third party, and imprudence of the victim. *Id*. As Plaintiffs' expert Dr. Espinoza explained, "data extracted from social experience, as well as from the interpretation of the legal precepts of the Peruvian legal system," supports that Defendants' "mining activity qualifies as a risky activity." Doc. 640-97 (2017 Expert Report of Juan Alejandro Espinoza Espinoza) at 11.

Tellingly, Defendants Renco and Doe Run Resources Corporation affirmatively argue in an ongoing arbitration in Peru that "DRP was subject to Article 1970 (strict liability) in the operation of the smelters for alleged damage to the local population caused by pollutants." *See* Claimants' Rejoinder to Jurisdiction at 17, *The Renco Group, Inc. v. The Republic of Peru,* PCA Case Nos. 2019-46 & 2019-47 (Perm. Ct. Arb. Nov. 7, 2023).[2] In fact, one of Defendants' key arguments in their Peru arbitration rests on the notion that the smelter's operation was a hazardous

---

[2]  Available at https://pcacases.com/web/sendAttach/52184.

activity subject to strict liability. *See* Claimants' Reply to Liability and Response to Jurisdiction at 10, *The Renco Group, Inc. v. The Republic of Peru & Activos Mineros S.A.C.*, PCA Case No. 2019-47 (May 1, 2023)[3] ("Article 1970—which in conjunction with a retention of liabilities by Centromin, makes Respondents liable to the Missouri Plaintiffs—forms the basis of Claimants' claim for subrogation.").

As Defendants have themselves made clear: Defendants' misconduct would be a strict liability offense in Peru. Accordingly, no Article 1971 immunity defense would be available even if Defendants could identify a relevant "right" to poison children.

   2.   *An administrative permit is not a "right" under Article 1971.*

Even if an Article 1971 defense could shield Defendants' conduct, the PAMA would not constitute a "right" under Article 1971.1. The closest thing to a "right" conveyed by the PAMA was a 10-year window within which Defendants could avoid *administrative penalties* by undertaking certain obligations (which they failed, regardless). Indeed, Defendants themselves described the PAMA as follows: "the PAMA functions as the equivalent of an operating permit with which the operator must comply."[4]

But protection from administrative penalty and immunity from civil liability are not the same. In fact, the Peru environmental code enacted in 1990 (Supreme Decree 613) expressly distinguishes between "administrative liability" and "civil or criminal liability" that "may arise

---

[3]   Available at https://pcacases.com/web/sendAttach/45277.

[4]   The Doe Run Resources Corp., Registration Statement (Form S-4) (May 14, 1998), https://www.sec.gov/Archives/edgar/data/1061112/0001047469-98-018990.txt. In later filings, Defendants modified this language to read "Once approved, the PAMA, *as modified from time to time*, functions as the equivalent of an operating permit with which the operator must comply." The Doe Run Res. Corp., Annual Report (Form 10-K) (June 14, 2004), https://www.sec.gov/Archives/edgar/data/1061112/000104746904019129/a2136340z10-k.htm (emphasis added).

from the same acts." Doc. 843-6 at 28. This 1990 law "takes precedence over any other law that conflicts with the protection of the environment and natural resources." *Id.* at 4. Further, Peru's 2005 General Environmental Act (LGA) reinforces that "administrative liability . . . is independent of the civil or criminal liability which could arise from the same facts." Doc. 843-12 at 31.

In short, the argument that any PAMA provides immunity from civil liability for negligent conduct is absurd, and akin to arguing that an individual who holds a driver's license is immune from civil liability for injuries caused by their negligent driving simply because they held a license to operate a motor vehicle. This is wholly unsupported in logic or the law. Defendants knew as much. In describing the risk factors for Doe Run Resources Corporation associated with Doe Run Peru's operations, Defendants noted that "Doe Run Peru also is subject to claims for alleged personal injury and property and other damages resulting from release of certain substances into the environment, including lead . . ."[5] Defendants nowhere suggested that the PAMA conveyed any "right" that protected them from liability for personal injury claims.[6]

> ### 3. *Defendants acknowledged that the PAMA was not a liability shield.*

Defendants deliberately contracted with the Peruvian government in connection with their acquisition of the La Oroya Complex to allocate responsibility for civil liability resulting from the smelter's operations. Indeed, Defendants insisted upon—and Peru acquiesced to—contractual indemnification provisions for activity that did not fall within the two specific carve-outs: (1) a default on their PAMA or (2) acts not related to the PAMA to the extent they involved "use of standards and practices . . . less protective of the environment or public health" than those employed by Centromin. *See* Doc. 545-9 (Stock Transfer Agreement) at 8; Doc. 909-11 at 19

---

[5] The Doe Run Resources Corp., Registration Statement (Form S-4) (May 14, 1998), https://www.sec.gov/Archives/edgar/data/1061112/0001047469-98-018990.txt.
[6] *Id.*

("Under the purchase agreement related to the acquisition of the La Oroya assets in October of 1997, Centromin, the prior owner of the La Oroya smelter and Cobriza mine, agreed to indemnify Doe Run Peru against [certain] environmental liability[.]"). Indemnification, of course, would be unnecessary if Defendants actually enjoyed immunity under the law.

To this day, Defendants are arbitrating to enforce the indemnification provisions of the STA. *See generally The Renco Group, Inc. v. Republic of Peru & Activos Mineros S.A.C.*, PCA Case No. 2019-47.[7] Those proceedings, in which Defendants and the Peruvian government dispute whether the STA guaranteed indemnification by Peru for the claims raised in these lawsuits because of the involvement of the PAMA, demonstrate that neither Defendants nor Peru believe the STA or the PAMA offered any "right" of absolute immunity. *Id.* Defendants now try to confuse the issue and use the PAMA as both sword and shield, but indemnification and immunity are not the same thing. *See, e.g., Lewis v. Clarke*, 581 U.S. 155, 167–68 (2017).

### 4. The PAMA did not authorize negligence.

The PAMA could not and did not confer a right to act negligently. To the contrary. The 1993 regulation that instituted the requirement of PAMAs begins with the rule that "[t]he operator of the mining and metallurgical activity is liable for the emissions, dumping and waste discharged into the environment which occurs as a result of the processes carried out at its facilities." Doc. 843-7 (Supreme Decree 016-93-EM) at Art. 5. And this Court already determined that "[n]egligent conduct can exist outside the realm of PAMA compliance." Doc. 1628 at 9.

### 5. Defendants abused the PAMA and lost any possible immunity.

An Article 1971 defense assumes that Defendants operated in the "*regular* exercise of a right." Doc. 1619-1 at 8 (emphasis added). This is because Peruvian law "does not protect the

---

[7]   Available at https://pca-cpa.org/cn/cases/235/.

abusive exercise . . . of a right." Doc. 871-121 at 10 (quoting Art. II of the Preliminary Title of the Civil Code). But Defendants abused the PAMA by, *inter alia*, repeatedly modifying the agreement to delay their investment obligations and maximize short-term profits.[8] By 2004, DRP had invested a mere $40.3 million of the $174 million it was committed to spending on PAMA projects.[9] Moreover, Defendants failed to complete the projects required by the PAMA altogether. *See* Doc. 1322 at 27–28 (noting this is also Peru's position in the arbitration).

Critically, Defendants failed to take necessary steps to control fugitive emissions. When they purchased the smelter, Defendants "knew that the projects outlined in the PAMA were insufficient to adequately reduce toxic emissions, and they were particularly aware that the PAMA plan included only one project that addressed fugitive emissions despite there being 80 uncontrolled sources." Doc. 1524 at 24. Rather than make improvements, Defendants' goal for the first year of the smelter's operation was to maximize production while minimizing expenditures.[10] Defendants' negligence didn't go unnoticed. Peru's regulatory agency understood that Defendants were shirking their PAMA responsibilities, and, following an assessment in 2003, issued a resolution noting increases in production and worsening air quality.[11] The Peruvian regulators noted that the air quality around La Oroya had worsened with regard to lead, creating "grave damage to the environment and the health of the population."[12]

---

[8] *See e.g.*, RENCOGRP-002468 (February 2004 letter from Bruce Neil to the Ministry of Energy and Mining requesting PAMA modification), excerpt attached hereto as Exhibit 1; *see also, e.g.,* Doc, 909-32 (December 2005 PAMA extension request).

[9] Exhibit 1 at 18–19.

[10] Doc. 909-24, Business Plan & Budget 1998, prepared Oct. 31, 1997.

[11] DRRC-00565301(Ministry of Energy and Mines Report No. 501-2003 MEM-DGM-FMI/MA), attached hereto as Exhibit 2.

[12] *Id.*, at ¶ 2.7.

Compounding matters, Defendants intentionally undercapitalized Doe Run Peru "to increase profitability and minimize costs by maximizing smelter output without implementing emission-reduction systems, thereby exposing the surrounding community to known health risks associated with such output." Doc. 1524 at 27. For example, Doe Run Corporation saddled Doe Run Peru with interest payments on a $125 million intercompany loan equal to $7 million every six months.[13] Doe Run Peru never had the use of that $125 million; immediately after depositing the money with Doe Run Peru, Defendants loaned it back, interest free, to themselves.[14]

To the extent Article 1971.1 conferred any "right," (it did not), Defendants' abusive exercise thereof rendered it moot. Indeed, the Court has already expressly held that recklessness would not be protected by the PAMA. Doc. 1628 at 7, n. 2; Doc. 1322 at 28.

### c. *Discussion of Article 1971 would be highly prejudicial to Plaintiffs.*

Given all of the foregoing, discussion or evidence of Article 1971 would be highly prejudicial because it would incorrectly imply the possibility of Defendants' immunity and massively confuse the jury as to the applicable legal standards. "Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues." *United States v. Condon*, 720 F.3d 748, 755 (8th Cir. 2013) (citation omitted). Evidence that risks confusing the legal question to be decided presents "a strong likelihood of unfair prejudice." *See Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758–59 (8th Cir. 1995) (excluding evidence where "the likelihood of unfair prejudice, confusion, and waste of time outweighs the probativity of that evidence").

---

[13] *See, e.g.*, Deposition of Doe Run Peru Treasurer Eric Peitz at 70:10–20, attached hereto as Exhibit 3.
[14] *Id.* at 68:17–70:7.

Furthermore, both the requirements of the PAMA and the details of the efforts Defendants purportedly undertook to comply with the PAMA are factually dense and technically complex. *See* Doc. 1322 at 28 (noting density of factual issues relevant to Article 1971 defense). If Defendants are allowed to introduce evidence and arguments relating to Article 1971, the trial will devolve into a weeks-long sideshow on the PAMA's provisions and exercises in statutory interpretation wholly inappropriate for a jury. *Cf. Toppert v. Nw. Mech., Inc.*, No. 12-009, 2013 U.S. Dist. LEXIS 192762, at \*5 (S.D. Iowa Aug. 23, 2013) (excluding evidence of administrative finding because it would require evidence on "the limitations of the findings and the investigation," what the finding meant, and "the differences between such a finding and the findings to be made by the jury").

Here, the evidence clearly supports that Article 1971 is irrelevant to the question that matters: whether Defendants are liable to Plaintiffs for negligence. Defendants have not and cannot establish that Article 1971 is applicable. Thus, exclusion *in limine* is proper. *Katzenmeier*, No. 06-169, 2008 U.S. Dist. LEXIS 122281, at \*7–9 (excluding evidence of foreign law where record did not support foreign law determination by court). The risk of prejudice, on the other hand, is extreme. Testimony regarding Article 1971 would very likely confuse the jury as to the applicable law, imply a fabricated authorization by the Peruvian government to act negligently, and distract from the core evidence in the case.

Argument, mention, or suggestion of the inapplicable Article 1971 defense should be excluded under Rule 403.

## II. Motion to Exclude Testimony by Mr. Ángel Chávez Mendoza or Any Other Undisclosed Expert Witness

Relatedly, the Court should exclude testimony by Mr. Ángel Chávez Mendoza, an expert on Peruvian law whom Defendants indicated they plan to introduce for the first time barely two months before trial commences. Doc. 1638 (Defendants' Trial Witness List). Under the Federal

Rules of Civil Procedure, a party must disclose the identity of any expert witness it may use at trial and generally must accompany this disclosure with a written report prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2). The report must contain, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them." *Id.* at 26(a)(2)(B)(i–ii). Defendants made no such disclosures regarding Mr. Mendoza. Plaintiffs have not had the opportunity to review reports by Mr. Mendoza or to depose him, as allowed by Rule 26(b). Fed. R. Civ. P. 26(b)(4)(A). Thus, expert testimony by Mr. Mendoza runs directly afoul of Rule 26 and should be disallowed.

Moreover, "questions of foreign law are not to be determined through a proffer of expert testimony given to the jury." *Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 286 (E.D.N.Y. 2011) (disallowing testimony by experts on foreign law).[15]

Mr. Mendoza should not be permitted to testify.  If the Court does not exclude testimony by Mr. Mendoza, Plaintiffs request the opportunity to present their own expert witness on the relevant issues in the interest of parity and fairness.

### III.   Motion to Exclude Any Evidence of Charitable Acts or Environmental Projects by Defendants Not Specifically Directed to Reduce Lead Emissions or to Ameliorate a Specific Health Effect of Lead in Children

Any evidence of charitable acts or environmental initiatives by Defendants that were not specifically directed to reduce lead emissions from the La Oroya Complex or ameliorate the specific health effects of lead on children living near the La Oroya Complex should be excluded.

***First***, this exclusion should encompass charitable contributions, community development initiatives, and unrelated health initiatives, including, *inter alia*, surgeries for children born with

---

[15] Plaintiffs are unaware of any information known to Mr. Mendoza that might make him an appropriate fact witness in this case; but to the extent Defendants attempt to introduce him as such, Plaintiffs likewise request his testimony be excluded because he was not timely disclosed to Plaintiffs pursuant to Rule 26(a).

physical abnormalities like cleft palates, building or revitalizing parks or green spaces, building or repairing schools and community centers, setting up general health clinics, or planning community social events like arts and crafts fairs, jewelry-making lessons, or cooking classes.

Unrelated good or charitable acts are irrelevant under Rule 401 because they do not tend to make any relevant fact more or less probable and are not of any consequence to determining the action. Fed. R. Evid. 401; *Niver v. Travelers Indem. Co.*, 433 F. Supp. 2d 968, 994–95 (N.D. Iowa 2006) ("The court finds that unrelated 'good acts' simply are not relevant pursuant to Rule 401, and therefore, not admissible pursuant to Rule 402."). Evidence of good or charitable acts is likewise irrelevant in opposing punitive damages. *Id.* at 1000-1001 (granting motion *in limine* regarding any argument that defendant "should not be subject to punitive damages because of its charitable contributions, civic activities, or other 'good acts' unrelated to its bad faith conduct in this case"). Conversely, evidence of unrelated charitable acts would be highly prejudicial to Plaintiffs. Such evidence could lead a jury to a verdict based on an incorrect basis like sympathy, rather than the facts of the case. Rule 403 "protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *United States v. Ridings*, 75 F.4th 902, 906 (8th Cir. 2023), citing *United States v. Myers*, 503 F.3d 676, 682 (8th Cir. 2007).

Because evidence of charitable acts is entirely irrelevant, any probative value is readily outweighed by these significant risks of prejudice. Separately, charitable acts in the community as evidence of character or propensity is specifically excluded by Rule 404. *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other . . . act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Thus, courts regularly find such evidence inadmissible. For example, in *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litig.*, the court found that "[e]vidence of

Defendants' charitable acts that are unrelated to the development of its devices is propensity evidence, attempting to induce the jury to conclude that because Defendants have a good corporate character, it is unlikely that they behaved poorly in manufacturing and marketing the [device at issue]." 510 F. Supp. 3d 538, 546 (S.D. Ohio 2020). Here, Defendants' unrelated charitable acts are similarly irrelevant. They could only confuse the jury into rendering a verdict with an improper basis.

*Second*, this exclusion should encompass evidence of progress toward any environmental initiatives not specifically addressing lead emissions from the La Oroya complex. In its summary judgment opinion, the Court cabined recovery in this action to injuries caused by lead emissions and dismissed any claims regarding exposure to sulfur dioxide, arsenic, or cadmium. Doc. 1524 at 60–66. Accordingly, any actions Defendants contemplated or undertook to address emissions of sulfur dioxide, arsenic, or cadmium are irrelevant. *Cf. Crabbs v. Pitts*, No. 16-0387, 2018 U.S. Dist. LEXIS 181353, at *29 (S.D. Ohio Oct. 23, 2018) (granting motion to exclude all evidence relating to dismissed claims not specifically related to the pending claims). Similarly, allowing evidence of Defendants' general environmental improvement efforts—including completion of PAMA projects with no direct bearing on Defendants' excessive lead emissions—lacks probative value and would be highly prejudicial. Per the Court's order, Plaintiffs may only recover for injuries related to lead exposure. Mitigation efforts relating to other metals, or to other environmental impacts generally, have no bearing on these injuries. Evidence as to such efforts carries significant risk of confusing a jury as to the relevant remediation efforts, *i.e.*, efforts to mitigate lead emissions. Moreover, allowing Defendants to detail irrelevant efforts relating to dismissed claims will cause undue delay and waste of time. *See Pitts*, 2018 U.S. Dist. LEXIS 181353, at *29.

14

In sum, evidence of unrelated good or charitable acts by Defendants, including environmental initiatives, that were not directly intended to reduce lead exposure or ameliorate specific health effects of lead are irrelevant and likely to unfairly prejudice the jury's impression of Defendants. This evidence should be excluded under Rules 401, 402, 403, and 404.

**IV.    Motion to Exclude Any Evidence, Testimony, or Argument Concerning Indemnification for Liability in this Action**

Evidence or argument suggesting Defendants should or will be indemnified by Centromin, the government of Peru, or any other individual or entity for liability in this action, pursuant to the Stock Transfer Agreement or any other contractual agreement or legal arrangement, is irrelevant, prejudicial, and likely to confuse the jury. The (questionable) fact of indemnification has no probative value. Defendants are pursuing indemnification in separate proceedings. *See generally The Renco Group, Inc. v. The Republic of Peru & Activos Mineros S.A.C.*, PCA Case No. 2019-47. Thus, indemnification is not at issue in these proceedings, and the jury will not have to decide issues relating to indemnification or whether indemnification is proper.

Conversely, mention of indemnification would be highly prejudicial. "The general rule in the state courts and under Fed. R. Civ. P. 61 is that interjection of the fact that the defendant is protected by insurance or other indemnity may be prejudicial error requiring reversal." *Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir. 1986). This is black letter law. In *Ventura v. Kyle*, the Eighth Circuit held that a new trial was warranted due to counsel's closing remarks about insurance. 825 F.3d 876, 886 (8th Cir. 2016). In *Halladay v. Verschoor*, the court found it "utterly repugnant to a fair trial or . . . a just verdict" for the jury to hear that "the damages sued for . . . will be taken care of by an insurance . . . company," and observed that "it has been almost universally held that the receipt of such evidence constitutes prejudicial error sufficient to require reversal." 381 F.2d 100, 112 (8th Cir. 1967).

15

Here, any suggestion that the Peruvian government could ultimately be responsible for damages would be further prejudicial because a jury might be less likely to award an appropriate measure of damages if it believes money may be coming from a government. In addition, the indemnification provisions of the STA are complicated and technical, as evidenced by the years-long arbitration in Peru attempting to parse the agreements between the parties. Delving into the details of the indemnification agreements would unnecessarily waste trial time.

Finally, evidence of indemnification would be extraordinarily prejudicial in this case because a jury could conflate indemnification with immunity, as Defendants have attempted to do repeatedly throughout this litigation. *See e.g.*, Doc. 1616 at 3–4 (conflating contractual indemnification with legal immunity). Of course, the STA is a contract and cannot confer legal immunity of any kind with respect to third-party litigation. Accordingly, the prejudicial impact of argument, suggestion, or mention that Defendants may be indemnified by a governmental entity far outweighs any probative value. This evidence must therefore be excluded under Rule 403.

V.  **Motion to Exclude Evidence and Testimony Regarding Client Recruitment by Plaintiffs' Counsel**

Evidence of any efforts by Plaintiffs' counsel to recruit clients or educate about the litigation is irrelevant. Plaintiffs' decisions to hire counsel, as well as their considerations or discussions prior to filing these lawsuits, have no bearing on any claims or defenses in this action. *Enslein v. Di Mase*, No. 16-902, 2019 U.S. Dist. LEXIS 154872, at *17 (W.D. Mo. Sep. 11, 2019) ("Plaintiff's possible or perceived motive for filing this lawsuit is irrelevant to the claims being tried . . . Likewise, evidence and argument about Plaintiff's decision to hire counsel, their payment relationship, and his pre-Complaint investigation are not relevant[.]"). Indeed, "[i]t is well-established that in ordinary litigation . . . the plaintiff's motive in bringing suit is not relevant to

16

the subject matter of the litigation." *Aleman v. Volvo Cars of N. Am., LLC*, No. 19-831, 2020 U.S. Dist. LEXIS 150405, at *3 (C.D. Cal. Apr. 15, 2020) (citation omitted).

Furthermore, any probative value of such evidence is outweighed by the unfair prejudice that would arise from any insinuation that the litigation is lawyer driven. "[G]iven the often negative public sentiment towards plaintiffs' lawyers, this evidence may prejudice the jury unfairly and could become a time-consuming sideshow." *Aleman*, 2020 U.S. Dist. LEXIS 150405, at *3 (citation omitted); *see also Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 271–73 (S.D.N.Y. 2015) (evidence and commentary on lawyer-driven lawsuits is "categorically irrelevant" and "can serve only to confuse, inflame, and introduce unfair prejudice").

Evidence or testimony regarding any efforts by Plaintiffs' counsel, its affiliated entities, or any other law firm to educate potential clients about litigation against Defendants or recruit clients in the communities surrounding La Oroya should be excluded under Rules 401, 402, and 403. Such evidence has no probative value and risks prejudice.



## VII.    Motion to Exclude Any Argument that Plaintiffs Failed to Comply with the Recommendations of Any Expert Witness

Several of the expert reports in this action contain "recommendations" for Plaintiffs. Specifically, the reports by Dr. Clemente Vega include a section entitled "Recommendations," which outlines "measures [that] would be appropriate to address [Plaintiff's] neuropsychological difficulties described above."[16] Defendants should be precluded from arguing that Plaintiffs failed to comply with the recommendations in the expert reports. These recommendations did not create any legal duty on Plaintiffs. Indeed, the experts did not opine that any of the measures enumerated would undo the injuries suffered by Plaintiffs or that they would necessarily relieve Plaintiffs' symptoms. Furthermore, Plaintiffs may not have had the resources or ability to implement the

---

[16] *See e.g.*, Feb. 18, 2019 Report of Dr. Clemente Vega regarding Roberto Luis Espinoza Yantas, Supplement to Findings of Independent Neuropsychological Assessment and Expert Opinions, at 17–20 (excerpted hereto as Exhibit 4).

experts' recommendations, especially as minors, as the recommendations involve significant cooperation of educators, caregivers, and medical professionals. Thus, whether and to what extent the Plaintiffs implemented Dr. Vega's—or any expert's—recommendations is irrelevant to this action. *Cf. Nielson v. Union Pac. R.R. Co.*, 2024 U.S. Dist. LEXIS 185182, at *14 (D. Neb. Oct. 10, 2024) (granting motion *in limine* to exclude "evidence that [plaintiff] failed to follow medical advice"). Furthermore, this argument would be prejudicial to Plaintiffs as it risks suggesting to a jury that Plaintiffs are partially responsible for their own injuries. This prejudice outweighs any potential probative value under Rule 403.

**VIII.   Motion to Exclude Any Argument Based on a Plaintiff's Absence from the Courtroom**

Some Plaintiffs may be unable to attend every day of trial, which is expected to last for eight to ten weeks. Plaintiffs are people of limited economic means who will be traveling from Peru to testify. Many have family or other commitments that would make a long stay in a foreign country burdensome. While Plaintiffs anticipate that every Plaintiff will be present at trial for some amount of time, certain Plaintiffs may be required to return to Peru during the trial to avoid hardships with jobs, including risk of job loss, and/or to care for family members. Some of these Plaintiffs may even take two trips to St. Louis for this trial. This should not be held against them. Defendants should be precluded from presenting evidence or argument concerning the absence of any Plaintiff from the courtroom under Rule 403.

**CONCLUSION**

Plaintiffs respectfully request the Court grant each Motion *in Limine*.

19

Respectfully submitted,

**SCHLICHTER BOGARD LLC**

  /s/ *Cort A. VanOstran*
Cort A. VanOstran, #67276 (MO)
Jerome J. Schlichter, #32225 (MO)
Nathan D. Stump, #71641 (MO)
Kristine K. Kraft, #37971 (MO)
Rachel Berger, #77248 (MO)
Jason Kempf, #6295144 (IL)
Amy Ritter, # 71143 (MO
Jessie Holmes, *pro hac vice*
100 South 4th St., Suite 1200
St. Louis, Missouri 63102
(314) 621-6115
jschlichter@uselaws.com
kkraft@uselaws.com
nstump@uselaws.com
cvanostran@uselaws.com
rberger@uselaws.com
jkempf@uselaws.com
aritter@uselaws.com
jholmes@uselaws.com

*Attorneys for Plaintiffs*

# EXHIBIT 1

REDACTED

# EXHIBIT 2

REDACTED

# EXHIBIT 3

REDACTED

# EXHIBIT 4

REDACTED