**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| A.O.A., *et al.*, | ) | |
| | ) | Case No. 4:11-cv-00044-CDP |
| Plaintiffs, | ) | (CONSOLIDATED) |
| | ) | |
| vs. | ) | |
| | ) | |
| THE DOE RUN RESOURCES | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION IN LIMINE

## TABLE OF CONTENTS

ARGUMENT ............................................................................................................................. 1

I.      The Court Should Reject Plaintiffs' Untimely Effort to Seek Judgment on Article 1971 Immunity. ........................................................................................................................ 1

        A.      Plaintiffs' Failure to Seek Judgment and this Court's Rulings Doom Their Motion. ................................................................................................................. 1

        B.      Plaintiffs' Arguments for the "Inapplicability" of Article 1971 Are Unavailing. ... 3

        C.      Plaintiffs Cannot Salvage Their Argument by Claiming Prejudice Under Rule 403 ........................................................................................................................ 8

II.     The Court Should Deny Plaintiffs' Motion to Exclude Mr. Mendoza's Testimony. ......... 8

III.    The Court Should Deny Plaintiffs' Motion to Exclude Evidence of Defendants' Non-Lead-Related Charitable Acts and Environmental Projects. ............................................... 12

IV.     Plaintiffs' Motion on "Indemnification" Evidence Should Be Denied in Part. ................ 16

V.      Plaintiffs' Motion on Recruitment by Plaintiffs' Counsel Should Be Denied in Part. ..... 17

█████   ████████████████████████████████████████████████████████████████ .................................................................. 18

VII.    The Court Should Deny Plaintiffs' Motion to Exclude Evidence and Argument of Their Failure to Comply with Recommendations of Their Examining Experts. .............. 19

VIII.   Plaintiffs' Motion to Exclude Argument Based on a Plaintiff's Absence from the Courtroom Rises or Falls with Defendants' Corresponding Motion. ............................... 20

CONCLUSION ...................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aleman v. Volvo Cars of N. Am, LLC,*
   2020 WL 4742814 (C.D. Cal. Apr. 15, 2020) ............................................................. 18

*Apotex, Inc. v. Cephalon, Inc.,*
   2017 WL 2362400 (E.D. Pa. May 31, 2017) ............................................................. 16

*In re Baycol Prods. Litig.,*
   532 F. Supp. 2d 1029 (D. Minn. 2007) ..................................................................... 3

*Bayes et al v. Biomet, Inc.,*
   No. 4:13-cv-00800, Dkt. 266 (E.D. Mo., Sept. 25, 2020) ...................................... 15

*Bliss v. BNSF Ry. Co.,*
   2013 WL 5570231 (D. Neb. Oct. 9, 2013) ............................................................... 2

*Burton v. American Cyanamid,*
   341 F. Supp. 3d 941 (E.D. Wis. 2018) ............................................................... 19, 20

*CRST Expedited, Inc. v. Swift Transp. Co. of Ariz., LLC,*
   2019 WL 2929516 (N.D. Iowa July 8, 2019) ........................................................... 8

*In re Davol, Inc./C.R. Bard, Inc.,*
   510 F. Supp. 3d 538 (S.D. Ohio 2020) ................................................................... 15

*Engineered Prods. Co. v. Donaldson Co.,*
   313 F. Supp. 2d 951 (N.D. Iowa 2004) .............................................................. 10, 11

*Enslein Trustee for Xurex, Inc. v. Di Mase,*
   2019 WL 4306973 (W.D. Mo. Sept. 11, 2019) ....................................................... 18

*Ford v. GACS, Inc.,*
   265 F.3d 670 (8th Cir. 2001) ................................................................................... 19

*In re Genetically Modified Rice Litig.,*
   666 F. Supp. 2d 1004 (E.D. Mo. 2009) (Perry, J.) ................................................... 1

*Golan v. Veritas Ent., LLC,*
   2017 WL 3278953 (E.D. Mo. Aug. 2, 2017) .......................................................... 15

*Hart v. RCI Hosp. Holdings, Inc.,*
   90 F. Supp. 3d 250 (S.D.N.Y. 2015) ....................................................................... 18

*Intelligent Verification Sys., LLC v. Microsoft Corp.,*
   2015 WL 1518099 (E.D. Va. Mar. 31, 2015) ......................................................... 16

*Katzenmeier v. Blackpowder Prods., Inc.*,
  2008 WL 8586676 (S.D. Iowa Nov. 25, 2008) ................................................ 3

*Linde v. Arab Bank, PLC*,
  944 F. Supp. 2d 217 (E.D.N.Y. 2013) ........................................................... 3

*Microsource, LLC v. Eco World Grp., LLC*,
  587 F. Supp. 3d 770 (N.D. Iowa 2022) ......................................................... 9

*Moore v. Missouri-Nebraska Exp., Inc.*,
  892 S.W.2d 696 (Mo. Ct. App. 1994) ........................................................... 14

*Niver v. Travelers Indem. Co. of Ill.*,
  433 F. Supp. 2d 968 (N.D. Iowa 2006) ......................................................... 15

*Skinner v. Leggett & Platt, Inc.*,
  325 S.W.3d 520 (Mo. Ct. App. 2010) ........................................................... 19

*Speed Rmg Partners, LLC v. Arctic Cat Inc.*,
  2022 WL 19333766 (D. Minn. Nov. 29, 2022) .............................................. 17

*Symington v. Daisy Mfg. Co.*,
  360 F. Supp. 2d 1027 (D.N.D. 2005) ............................................................ 11

*United States v. Blamah*,
  143 F.4th 1010 (8th Cir. 2025) ................................................................... 8

*In re Walterman Implement, Inc.*,
  2007 WL 2935451 (Bankr. N.D. Iowa Sept. 28, 2007) ................................. 11

*Estate of West v. Domina Law Grp., PC*,
  2019 WL 10888714 (D. Neb. May 21, 2019) ................................................ 11

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................... 2

Mo. Rev. Stat. § 537.765.3(6) ............................................................................. 19

**Other Authorities**

Fed. R. Civ. P. 12(f) ............................................................................................ 1

Fed. R. Civ. P. 26 .......................................................................................*passim*

Fed. R. Civ. P. 37 ......................................................................................... 9, 10

Fed. R. Civ. P. 44.1 ............................................................................................. 9

Fed. R. Civ. P. 56 ............................................................................................... 1

iii

Fed. R. Evid. 401 ................................................................................................ 17, 19

Fed. R. Evid. 402 ............................................................................................... 17, 194

Fed. R. Evid. 403 .................................................................................................*passim*

Fed. R. Evid. 404 ..................................................................................................... 19

Defendants The Renco Group, Inc. ("Renco"), The Doe Run Resources Corp. ("DRRC"), D.R. Acquisition Corp., Doe Run Cayman Holdings LLC, Ira L. Rennert, Marvin K. Kaiser, and Albert Bruce Neil respectfully submit this opposition to Plaintiffs' omnibus motion *in limine*.

## ARGUMENT

**I.     The Court Should Reject Plaintiffs' Untimely Effort to Seek Judgment on Article 1971 Immunity.**

This Court has repeatedly held that "Article 1971 provides a safe harbor against liability for those who act 'in the regular exercise of a right'" and, accordingly, "Defendants may argue and present evidence" that the Environmental Adaptation and Management Program (the "PAMA") adopted for the La Oroya facility specifically provided such a right. Dkt. 1628 at 6–8.

Under the guise of a motion *in limine* to exclude "any evidence or testimony regarding Peru's substantive law" and "evidence regarding whether Article 1971 affords an affirmative defense," Dkt. 1651 ("Pls.' MIL") at 2, Plaintiffs now ask the Court to reverse those rulings for various reasons. Because none withstands scrutiny, the Court should reject Plaintiffs' belated effort to obtain reconsideration of its prior rulings.

**A. Plaintiffs' Failure to Seek Judgment and this Court's Rulings Doom Their Motion.**

Plaintiffs have been on notice of Defendants' position that "Plaintiffs' claims are barred, in whole or in part, by Article 1971 of Peru's Civil Code" for nearly a decade. *See, e.g.*, Dkt. 970 (Answer), ¶ 22. Yet, for the first time, Plaintiffs now seek to dismiss the Article 1971 defense as a matter of law. Despite claiming that the defense is "irrelevant," "spurious," "specious," and "absurd," Pls.' MIL at 2–4, 7, Plaintiffs never moved to strike the defense under Federal Rule of Civil Procedure 12(f). Nor did Plaintiffs seek summary judgment on the affirmative defense under Rule 56. *Cf. In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1014 (E.D. Mo. 2009) (Perry, J.) ("I will grant plaintiffs' motions for summary judgment directed to certain affirmative

1

defenses."). Moreover, even after the Court certified its Peruvian law summary judgment order under 28 U.S.C. § 1292(b) and reminded the parties that "'any issue fairly included within the certified order'" could be addressed in that appeal, Plaintiffs elected not to appeal the Court's conclusions that Peruvian law applied to Article 1971 immunity. Dkt. 1322 at 79 & n.52. Plaintiffs provide no rationale for waiting until the eve of trial to seek dismissal of the Article 1971 defense, let alone a legal justification that could excuse their untimely argument.

Indeed, this Court has reiterated time and again that the Article 1971 safe harbor presents triable issues for the jury. For instance, in its January 20, 2023 Order, the Court held that Peruvian law applied to Defendants' claim of Article 1971 immunity and "numerous genuine issues of material fact remain in dispute about whether Article 1971 precludes defendants' liability." Dkt. 1322 (Order on Defs.' Mot. for App. of Peruvian Law & Summ. Judg.) at 4; *see id*. at 17, 27 ("This factually dense question must remain for trial[.]"). After Defendants moved for leave to file a renewed summary judgment motion, the Court held that the motion was untimely, but that it was ***not*** "barring defendants from arguing or presenting evidence on this aspect of their affirmative defense" and that "the matter will be taken up at the trial." Dkt. 1441 (Mar. 7, 2025 Order) at 3. Most recently, in addressing supplemental briefing on the Article 1971 issue, this Court declined to "limit what can be presented and argued on the Article 1971 immunity defense," finding that Defendants "may present evidence and argument" that "abiding by an administrative regulation alone constitutes 'regular exercise of a right' under Article 1971." Dkt. 1628 at 2, 7–8.

In short, Plaintiffs' Motion fails right out of the gate, and no further analysis is needed to deny Plaintiffs' eleventh-hour bid to dismiss Defendants' Article 1971 defense. *See Bliss v. BNSF Ry. Co*., 2013 WL 5570231, at *2 (D. Neb. Oct. 9, 2013) ("[C]ourts should not effectively convert a motion in limine into one for summary judgment.").

2

Moreover, Plaintiffs' cited authority does not even support their request. In *Katzenmeier v. Blackpowder Prods., Inc.*, 2008 WL 8586676 (S.D. Iowa Nov. 25, 2008), the plaintiffs sought to introduce evidence of foreign law concerning firearm testing, even though the case was "governed by domestic law standards." *Id*. at *2. The court concluded that "[e]vidence of *stricter* Spanish or European laws and regulations is likely to confuse and mislead the jury." *Id*. (emphasis added). That ruling was correct: indeed, Defendants have moved on similar grounds to preclude evidence of non-Peruvian regulations unrelated to Article 1971, relying on some of the same authority cited in *Katzenmeier*. *See* Dkt. 1645 at 8–10 (citing *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007)). But *Katzenmeier* only undermines Plaintiffs' contention with respect to Article 1971, since this Court has already determined that *Peruvian* law controls that question. Dkt. 1628 at 8; Dkt. 1441 at 2; Dkt. 1322 at 27. Thus, Peruvian law evidence or argument on Article 1971 will not mislead or confuse the jury.

Plaintiffs' reliance on *Linde v. Arab Bank, PLC*, 944 F. Supp. 2d 217 (E.D.N.Y. 2013), is similarly misplaced. For starters, there the court did not address a motion *in limine* at all. *See id*. at 218. And only United States law governed that action, leading the court to reason that "whether foreign law permitted [defendant] to provide financial services to terrorists" was irrelevant to the defendant's mental state and, in fact, might well lead the jury to ignore United States law "in favor of the foreign laws [defendant] chose to follow." *Id*. As such, the court rejected the defendant's argument as an "invitation to nullification." *Id*. There is no such risk here: the Court has already concluded that Peruvian law controls whether Defendants are immune under Article 1971.

**B. Plaintiffs' Arguments for the "Inapplicability" of Article 1971 Are Unavailing.**

Even if Plaintiffs' request were timely and the Court had not already refuted it, Plaintiffs' arguments concerning the purported inapplicability of Article 1971 lack merit for several reasons.

*First*, Plaintiffs claim that Article 1971 is somehow inapplicable to hazardous activities but

fail to cite any evidence in support. Pls.' MIL at 5. Instead, Plaintiffs distort Defendants' expert's opinion regarding the availability of strict liability under Peruvian law and mischaracterize statements from ongoing arbitration proceedings. As an initial matter, Prof. Rosenn's observation that Article 1970 of Peru's Civil Code imposes strict liability on "[w]homever causes damage to another through a hazardous or dangerous good," Pls.' MIL at 5 (citing Dkt. 150-1 at 22), does not mean that *lead smelting* is a hazardous activity. Indeed, Prof. Rosenn's report noted that "Peru has no specific list of dangerous or hazardous activities or goods" and found no reported decisions from Peruvian high courts imposing strict liability for non-employee plaintiffs on the grounds that "mining or smelting is a hazardous activity." Dkt. 150-1 at 22–23. Nor did Plaintiffs' expert cite any authority to the contrary. *See* Dkt. 640-97 (Expert Rpt. of Juan Alejandro Espinoza Espinoza) at 10–11. Indeed, the government of Peru expressly permitted Doe Run Peru's ("DRP") smelting activity in the PAMA, recognizing even that certain amounts of lead emissions would occur while DRP modernized and upgraded the facility. But, perhaps most critically, Plaintiffs point to no expert opinions discussing how Article 1970 interacts with Article 1971 immunity, much less any support for their claim that strict liability bears on their remaining negligence claims.

Plaintiffs also claim that Defendants have argued in separate arbitration proceedings that DRP was subject to strict liability under Article 1970 and, thus, cannot be immune under Article 1971. Pls.' MIL at 5–6. But neither of the arbitration briefs Plaintiffs cite actually supports their position. In the first, claimants argued that "Renco and DRRC have shown that Centromin assumed DRP's Article 1970 strict liability duty for the PAMA period"—but this is consistent with Defendants' position that DRP's compliance with its PAMA obligations immunized Defendants under Article 1971, including from Article 1970 strict liability that Centromin assumed. *See* Ex. A at 14, *available at* https://pcacases.com/web/sendAttach/52184. Plaintiffs also argue that "[a]s

4

Defendants have themselves made clear [in the arbitration briefing]: Defendants' misconduct would be a strict liability offense in Peru." Pls.' MIL at 6. But Defendants stated precisely the opposite in the second brief cited by Plaintiffs, emphasizing that "Claimants do not concede that the operations of the Complex constitute a risky or dangerous activity within the ambit of Article 1970." *See* Ex. B at 13 n.15, *available at* https://pcacases.com/web/ sendAttach/45277. And even if Peru's strict liability law were somehow relevant, Plaintiffs forfeited that argument by arguing that *Missouri's* strict liability law applied. *See* Dkt. 725 at 168–70; *see also* Dkt. 949 (Mot. to Dismiss Order) at 37 ("Because the strict liability counts fail to state a claim even under Missouri or New York law, I need not consider whether a similar claim could survive under Peruvian law."). Plaintiffs' strict liability arguments are a red herring.

*Second*, Plaintiffs claim that "the PAMA would not constitute a 'right' under Article 1971.1" and that, at best, it provided a ten-year window to avoid administrative penalties, not tort liability. Pls.' MIL at 6. Again, Plaintiffs cite no expert opinion in support of this assertion. They ignore Prof. Rosenn's opinion that "Article 1971 is a declaration that persons who are regularly exercising a legal right are immune from liability for any damages they may cause to third parties, including for claims sounding in negligence, or strict or objective liability." Dkt. 843-17. They also ignore their own expert's (conveniently recanted) opinions that Article 1971 "exempts the responsible party from the obligation to compensate in the case where the harm originates 'in the regular exercise of a right'" and that DRP's commercial activity "has been permanently legitimized and validated by the Peruvian State through its continuous modifications and expansions of the PAMA … for which [DRP] can be defended as operating 'in the regular exercise of a right' granted by the State of Peru." Dkt. 51-47 at 5. Their argument also contradicts this Court's prior ruling that "Article 1971 states a policy of Peru to provide immunity to parties who are exercising a 'right'

5

given to them by the government" and "[i]n the context of this case, that immunity would deprive injured Peruvian citizens of compensation that would otherwise be available to them." Dkt. 1322 at 26. Clearly, if the Article 1971 safe harbor conferred immunity only with respect to administrative penalties, as Plaintiffs now contend, such immunity would not "deprive injured Peruvian citizens of compensation [i.e., civil damages] that would otherwise be available to them."

Unable to grapple with the experts' opinions or the Court's orders, Plaintiffs instead misleadingly quote language from DRRC's 1998 Registration Statement (Form S-4) while omitting the key qualifying language. Specifically, Plaintiffs argue that Defendants somehow conceded that the PAMA did not provide immunity from personal injury claims because the Registration Statement provided that "Doe Run Peru is subject to claims for alleged personal injury and property and other damages resulting from release of certain substances into the environment, including lead . . . ." Pls.' MIL at 7. But here is how that sentence reads in its entirety:

> Doe Run Peru also is subject to claims for alleged personal injury and property and other damages resulting from release of certain substances into the environment, including lead, ***to the extent such liabilities were not retained and are not satisfied by Centromin.***

Ex. C, DRRC Registration Statement (Form S-4) (May 14, 1998) (emphasis added), *available at* https://www.sec.gov/Archives/edgar/data/1061112/0001047469-98-018990.txt.[1] In other words,

---

[1] This statement is also consistent with the Peruvian Government's contemporaneous statements:

> Would CENTROMIN accept responsibility for all the contaminated land, water and air until the end of the period covered by the PAMA or how can it determine which part corresponds to whom?

> **ANSWER**

> ***Affirmative, provided that [DRP] would fulfill the PAMA's obligations which are their responsibility, otherwise, [DRP] will be responsible from the date of non-compliance of the obligation, according to the competent authority's opinion.***

CEPRI-Centromin Peru S.A., Consultations and Answers – 2nd Round, RENCOGRP004694 (Answer to Question No. 41), Dkt. 1616-1 at 42.

6

read in context, the document says precisely the opposite of what Plaintiffs suggest.

*Third*, and relatedly, Plaintiffs argue that Defendants implicitly "acknowledged that the PAMA was not a liability shield" by obtaining contractual indemnity from Peru via the Stock Transfer Agreement ("STA"). Pls.' MIL at 7–8. As Defendants previously showed, however, the STA provided DRP with *additional* protection by providing indemnity even for acts "not related to" the PAMA (*i.e.*, acts not "in the regular exercise of a right"), provided certain conditions were met. *See* Dkt. 545-9, ¶ 5.3 (emphasis added); *see also* Dkt. 1621 at 5. Rather than being mutually exclusive, legal immunity afforded by the PAMA and contractual indemnification provided by the STA were mutually reinforcing safeguards that provided essential layers of protection for prospective buyers given the CMLO's history of unregulated lead emissions.

*Fourth*, Plaintiffs argue that Article 1971 immunity is inapplicable because the PAMA "did not confer a right to act negligently." Pls.' MIL at 8. Not only has there been no finding that Defendants acted negligently—that decision lies with the jury—but the Court has found a triable issue of fact such that Defendants "may present evidence and argument" that the PAMA shields them "from any and all liability." Dkt. 1628 at 6–7.

*Finally*, Plaintiffs contend that Article 1971 immunity is inapplicable because Defendants purportedly "abused the PAMA" by "repeatedly modifying the agreement." Pls.' MIL at 9. But Plaintiffs do not contend—nor could they—that the PAMA was modified without the Peruvian Government's express approval. Nor do Plaintiffs provide any authority supporting the theory that the "right" provided under Article 1971 is static and unalterable. In any event, this Court has already held that Plaintiffs may present evidence and argument that Article 1971 does not protect "tortfeasors who engage in additional injurious conduct outside that 'right'" and, in turn, that "defendants may present evidence and argument" that "abiding by an administrative regulation

7

alone constitutes 'regular exercise of a right' under Article 1971." Dkt. 1628 at 7–8. Once again, and particularly given the procedural history discussed above, Plaintiffs' attempt to convert a motion *in limine* into a dispositive motion should be rejected.

### C. Plaintiffs Cannot Salvage Their Argument by Claiming Prejudice Under Rule 403.

In a last-ditch argument, Plaintiffs contend that Article 1971 evidence would be highly prejudicial under Rule 403. But evidence concerning an affirmative defense is not unduly prejudicial just because it rebuts a plaintiff's showing. *United States v. Blamah*, 143 F.4th 1010, 1017 (8th Cir. 2025) ("Rule 403 does not [] protect[] against evidence that is merely prejudicial in the sense of being detrimental to a party's case."). On the contrary, courts are loath to exclude an affirmative defense absent a ruling that it fails as a matter of law. *See CRST Expedited, Inc. v. Swift Transp. Co. of Ariz., LLC*, 2019 WL 2929516, at *2 (N.D. Iowa July 8, 2019) (excluding only affirmative defenses that failed as a matter of law and permitting "relevant" ones).

Plaintiffs also claim that evidence and argument concerning Article 1971 will confuse the jury because "both the requirements of the PAMA and the details of the efforts Defendants purportedly undertook to comply with the PAMA are factually dense and technically complex." Pls.' MIL at 11. Of course, the same is true of Plaintiffs' evidence seeking to establish liability. Plaintiffs also contend that "[t]estimony regarding Article 1971 would very likely confuse the jury as to the applicable law." *Id*. But it is Plaintiffs who appear to be confused about the applicable law, as this Court has consistently reaffirmed that Peruvian law applies to the Article 1971 question. *See* Dkt. 1322 at 24–25; Dkt. 1441 at 2; Dkt. 1628 at 1. Plaintiffs' hollow invocation of Rule 403, unsupported by any concrete showing of prejudice or juror confusion, fails.

### II.   The Court Should Deny Plaintiffs' Motion to Exclude Mr. Mendoza's Testimony.

Plaintiffs move to exclude the testimony of Mr. Angel Chavez Mendoza on three grounds: (1) Defendants failed to timely disclose him as an expert under Federal Rule of Civil Procedure

8

26; (2) Defendants never served a formal expert report for Mr. Mendoza under Rule 26(a)(2)(B); and (3) questions of foreign law are not for the jury. None of these arguments warrants exclusion.

*First*, Defendants were substantially justified in not disclosing Mr. Mendoza sooner, and any delay is harmless to Plaintiffs, such that Rule 37(c)(1) does not support exclusion. Substantial justification occurs when a party "only had reason to name an expert to address a proffered defense after the Court ruled in a certain matter." *Microsource, LLC v. Eco World Grp., LLC*, 587 F. Supp. 3d 770, 816–17 (N.D. Iowa 2022). That is precisely the case here.

For years, the parties shared the assumption that the Court would resolve the contours of Defendants' Article 1971's safe-harbor defense as an issue of foreign law under Rule 44.1. After the Court held that "genuine issues of material fact exist on the Article 1971 defense," Dkt. 1322 (Jan. 20, 2023 Order) at 17, Defendants sought leave to file a renewed summary judgment motion, in which they argued that the Court's order "squarely raise[d] the question—not previously before the Court—of the proper exclusive legal process for determining PAMA compliance under Peruvian law." Dkt. 1440 at 3. In support of that motion, Defendants submitted a 16-page declaration from Mr. Mendoza, filed on March 5, 2025. After the Court determined that the motion was untimely, Dkt. 1441, Defendants sought additional briefing on the legal contours of Article 1971 because "[c]larifying the legal and evidentiary requirements related to establishing the Article 1971 immunity defense will significantly impact the evidence at trial." Dkt. 1578 (Jan 13, 2026 Joint Proposed Trial Plan) at 16. The Court permitted further briefing on the issue, Dkt. 1592, and Defendants filed a motion seeking rulings on "three significant legal questions" left unanswered by the Court's January 20, 2023 Order "so the parties will know in advance of trial how the Article 1971 safe harbor immunity will be applied and what, in particular, must be proven to successfully invoke [it]." Dkt. 1616 at 1–2. They further re-submitted Mr. Mendoza's March

9

2025 declaration. Dkt. 1616-5. In response, Plaintiffs submitted a declaration from their own Peruvian law witness. *See* Dkt. 1623-1.

In denying Defendants' motion on April 10, 2026, the Court ruled, as discussed above, that both sides may present evidence and argument on whether Defendants are entitled to immunity under Article 1971. Dkt. 1628 at 7–8; *supra* at 2. In particular, the Court held that "Defendants may argue and present evidence" that "the PAMA itself is conclusively a 'right' that provides safe harbor under Article 1971 for all defendants' conduct that might be proven at trial." *Id.* at 6–7. The Court also held that "defendants may present evidence and argument" that "abiding by an administrative regulation alone constitutes 'regular exercise of a right' under Article 1971 such that tortfeasors who engage in additional injurious conduct outside that 'right' are shielded from any and all liability." *Id.* at 7–8. The language of the Court's order leaves no doubt: both sides may present evidence and argument **to the jury** on whether DRP acted in the regular exercise of a right under Article 1971. Because this evidence—i.e., that "the PAMA itself is conclusively a 'right'" and that "abiding by [it] constitutes 'regular exercise of a right'"—turns on Peruvian law, Defendants' counsel promptly informed Plaintiffs' counsel following the Court's ruling that Defendants would include Mr. Mendoza on their witness list. *See* Dkt. 1638. Any failure to disclose Mr. Mendoza as a trial witness earlier was thus substantially justified.

Any late disclosure is also "harmless" under Rule 37. Mr. Mendoza's 16-page declaration has been known to Plaintiffs for more than a year—and, indeed, they offered a competing declaration from a Peruvian law witness of their own. The Court relied on Mr. Mendoza's declaration, citing his description of the PAMA's administrative-enforcement structure as "[e]vidence before the Court." Dkt. 1628 at 7. When, as here, an opposing party has "plenty of time" to prepare for a witness's testimony at trial, an untimely disclosure is harmless. *Engineered*

10

*Prods. Co. v. Donaldson Co.*, 313 F. Supp. 2d 951, 1005–06 (N.D. Iowa 2004) (declining to exclude supplemental expert report submitted nearly a year after court's ruling permitted relevant defense where opposing party had many months to prepare to respond to expert's supplemental opinions at trial). Plaintiffs cannot credibly claim prejudice from testimony that they have known about for over a year, that they responded to with a competing witness's testimony, and that the Court already considered as evidence in a significant pre-trial ruling.

Nor did Defendants' disclosure of Mr. Mendoza impede Plaintiffs from seeking to call their competing Peruvian law witness at trial. Fully aware of the Court's April 10, 2026 order and informed that Defendants would list Mr. Mendoza, Plaintiffs chose not to disclose their Peruvian-law witness for trial. Plaintiffs may not believe that their witness can offer convincing testimony to rebut Mr. Mendoza's, but that does not transform Defendants' disclosure into prejudice.

*Second*, Plaintiffs' preoccupation with Mr. Mendoza's failure to serve a formal Rule 26(a)(2)(B) expert report elevates form over substance. Courts routinely decline to exclude where, even without a formal report, the opposing party has "notice of the substance of the expert's testimony … so that they have a meaningful opportunity to cross-examine and otherwise rebut the expert at trial." *Estate of West v. Domina Law Grp., PC*, 2019 WL 10888714, at *11 (D. Neb. May 21, 2019); *see also Symington v. Daisy Mfg. Co.*, 360 F. Supp. 2d 1027, 1030 (D.N.D. 2005) (no prejudice where opposing party "had the substance of th[e] report" before operative deadline); *In re Walterman Implement, Inc.*, 2007 WL 2935451, at *2 (Bankr. N.D. Iowa Sept. 28, 2007) (expert affidavit may not have "strictly compl[ied] with the structural requirements of Rule 26(a)(2)(B)" but sufficiently "put Defendant on notice of [the expert's] opinion and the reasons therefor").

Mr. Mendoza's declaration contains the hallmarks of a formal Rule 26 expert report and put Plaintiffs on notice of each opinion he will offer. It provides Mr. Mendoza's qualifications,

11

Mendoza Decl. ¶¶ 1–4 & Annex I; identifies the statutes, regulations, and other materials on which he relies, *id.* ¶ 6; and sets forth a complete statement of his opinions regarding the PAMA regulatory framework, how the competent authority (MEM, and later OSINERGMIN/OEFA) determines non-compliance, and the absence of such a determination as to the CMLO during DRP's operations. *See id.* ¶¶ 11–22, 33–35. Plaintiffs have ample material on which to cross-examine Mr. Mendoza notwithstanding his lack of a formal Rule 26 report.

*Finally*, Plaintiffs' assertion that "questions of foreign law are not to be determined through a proffer of expert testimony given to the jury" misses the point. Pls.' MIL at 12. The Court has determined that whether and to what extent Article 1971 applies in this case turns on "factually dense" questions, including the PAMA's administrative framework, the procedures for determining non-compliance, and the historical record of enforcement. Dkt. 1322 at 17, 27. Mr. Mendoza's testimony goes directly to these matters.

## III. The Court Should Deny Plaintiffs' Motion to Exclude Evidence of Defendants' Non-Lead-Related Charitable Acts and Environmental Projects.

In moving to exclude two categories of evidence—(i) environmental remediation projects and upgrades not specifically directed to lead emissions, and (ii) community health and wellness projects—Plaintiffs seek to exclude directly relevant evidence that is essential to the jury's understanding of the facts. Both categories of evidence are directly relevant to and rebut Plaintiffs' assertions that Defendants undercapitalized and siphoned funds from DRP, that DRP was negligent, and that punitive damages are warranted, just as they support Defendants' Article 1971 affirmative defense. The Court should deny Plaintiffs' Motion in relevant part.

*Undercapitalization and Siphoning:* Plaintiffs' claims of veil-piercing liability and direct negligence are premised on their allegation that Defendants undercapitalized and siphoned money from DRP, supposedly at the expense of environmental investments and to prioritize profits. *See,*

12

*e.g.*, Dkt. 1524 at 20–21, 23–26 (jury to evaluate whether DRP was "undercapitalized as a stand-alone entity, especially regarding its environmental obligations"); *id.* at 46 (Plaintiffs' negligence theories are based on evidence of "agreements to funnel money from DRP up the Renco/Doe Run chain of companies"). Those claims require evidence of DRP's capital expenditures during that same period, in particular its investments in environmental remediation and related smelter upgrades ($313 million) and community health and wellness projects ($30 million), which exceeded DRP's net income, what Peru estimated would be required under the original PAMA ($108 million), and what DRP in acquiring the Complex agreed to invest in environmental studies and "safety, health, [and] social programs," among other things ($120 million). *See* Morelock Report, filed under seal at Dkt. 1229-17, at 57–58, 63; Ex. D (SPA) at §§ 4.1, 4.5. That DRP spent hundreds of millions of dollars on environmental improvement, safety, and community health projects, well in excess of what it originally agreed to, is highly relevant to—and severely weakens—Plaintiffs' claims that DRP was inadequately financed.

*DRP's Negligence:* Plaintiffs' negligence claim also implicates the reasonableness of DRP's prioritization of certain environmental remediation and smelter upgrade projects. The jury will consider whether DRP's prioritization of projects relating to safety and various environmental exposures was reasonable. Plaintiffs wrongly assert that their failure to prove the threshold element of causation to recover damages for other exposures, Dkt. 1524 at 59 (Order on MSJ), means that company conduct to ameliorate those contaminants is irrelevant to their remaining lead-based claims. To the contrary, the jury must consider that the Peruvian Government required DRP to prioritize environmental projects relating to other exposures such as arsenic, sulfur dioxide, and cadmium, and that DRP addressed those projects to the tune of hundreds of millions of dollars in the prescribed order.

13

Defendants' community health and wellness projects are similarly relevant. For example, independent environmental consultants advised DRP to "continu[e] and expand[] many of the community-based programs that help to reduce lead exposures and the associated health burden," given that community blood lead levels would remain elevated despite reductions in CMLO lead emissions. *See* Integral Report at xxxvi, excerpts attached as Ex. E. Plaintiffs will attempt to use these and other consulting reports as evidence that Defendants were on notice of the need to prioritize fugitive emissions projects. That DRP followed consultants' recommendations as to community-based health improvement programs is clearly relevant. Indeed, Defendants' experts (including John Connor and Chip Pitts) will explain to the jury how these community wellness efforts bear on the overall industry standards applicable to lead smelter operators.[2]

*Punitive damages:* Evidence of non-lead-related environmental remediation and smelter upgrades as well as community health and wellness projects is also highly relevant to the jury's consideration of punitive damages. When evaluating entitlement to punitive damages, "[m]itigating circumstances, those which make defendant's conduct less culpable, must be taken into consideration." *Moore v. Missouri-Nebraska Exp., Inc.*, 892 S.W.2d 696, 713 (Mo. Ct. App. 1994). Evidence of environmental projects designed to limit health hazards of other toxic emissions and evidence of relevant and related community and charitable actions in La Oroya bear directly on Plaintiffs' claims that Defendants showed a "complete indifference to" and "conscious disregard of" the safety of La Oroya residents by "cho[o]s[ing] profits over safety." *See* Dkt. 1276

---

[2] Additionally, Plaintiffs' motion *in limine* fails on its own terms because many of the projects it labels as "non-lead-related" were, in fact, related to ameliorating the effects of lead on La Oroya's children. For example, Plaintiffs seek to exclude DRP's efforts in revitalizing parks or greens spaces, building or repairing schools and community centers, and setting up general health clinics. But in fact, these initiatives directly remediated the impacts of lead and other contamination on the infrastructure and public spaces in the community—with a specific focus on children—from the prior 75 years of environmental pollution by DRP's predecessor smelter operators.

at 164–66; M.A.I. 10.07 (punitive damages require "complete indifference to or conscious disregard for the safety of others").

*PAMA-Compliance Affirmative Defense:* Lastly, because many of the environmental remediation and smelter upgrade projects Plaintiffs seek to exclude were mandated by the PAMA, DRP's completion of those projects is plainly relevant to Defendants' affirmative defense of PAMA compliance under Article 1971.

Unlike in the decisions they cite—none of which involved claims premised on undercapitalization or siphoning of funds—the acts Plaintiffs seek to exclude here are not "unrelated to [the] conduct in this case." *Niver v. Travelers Indem. Co. of Ill.*, 433 F. Supp. 2d 968, 994–95 (N.D. Iowa 2006); *see also In re Davol, Inc./C.R. Bard, Inc.*, 510 F. Supp. 3d 538, 546 (S.D. Ohio 2020) ("Defendants' charitable acts that are *unrelated to the development of its devices* is propensity evidence, attempting to induce the jury to conclude that because Defendants have a *good corporate character*, it is unlikely that they behaved poorly in manufacturing and marketing the [medical device]." (emphases added)). DRP's non-lead-related environmental upgrades and community wellness efforts are not offered as propensity evidence of "good corporate character generally," untethered from the conduct at issue in the case. Rather, this evidence shows DRP's capitalization and its significant investments to benefit the health of the very community whose health Plaintiffs contend DRP unlawfully subordinated to its pursuit of profit.

When evidence of company investments and charitable acts is even arguably relevant to disputed issues, courts deny motions *in limine* seeking to exclude such evidence. *See, e.g.*, *Golan v. Veritas Ent., LLC*, 2017 WL 3278953, at *3 (E.D. Mo. Aug. 2, 2017) (permitting evidence of "charitable work and work for non-profits" that was relevant to issues in the case); *Bayes et al v. Biomet, Inc.*, No. 4:13-cv-00800, Dkt. 266 at 44–45 (E.D. Mo., Sept. 25, 2020) (denying motion

15

*in limine* to exclude evidence of "good deeds or corporate philanthropy"); *Apotex, Inc. v. Cephalon, Inc.*, 2017 WL 2362400, at *7 (E.D. Pa. May 31, 2017) (denying motion *in limine* and explaining "these types of rulings require evaluation of the specific piece of challenged evidence or line of questioning and the purpose for which it is being offered"); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 WL 1518099, at *11 (E.D. Va. Mar. 31, 2015) (denying motion *in limine* and refusing to sanction a "broad exclusion" of evidence of "charitable acts and similar matters"). This Court should follow suit.

Finally, admitting this evidence does not offend Rule 403. On the contrary, in a case about DRP's supposed financial inability to meet the community's environmental and health needs and Defendants' alleged disregard of those needs, excluding evidence about DRP's environmental upgrades of the CMLO and its expenditures to improve community health would irreparably prejudice *Defendants*. Allowing Plaintiffs to argue that DRP was deprived by its corporate parents of financial resources needed for lead emission projects—while shielding the jury from the reality of DRP's expenditures on other pressing environmental and community projects—would leave the jury with the false, misleading, and unfairly prejudicial impression that DRP could not and did not do anything to address the environmental and human needs of La Oroya.

## IV.    Plaintiffs' Motion on "Indemnification" Evidence Should Be Denied in Part.

Defendants do not intend to argue or offer evidence specific to the contractual question whether they are owed indemnification for Plaintiffs' claims in this lawsuit. To that limited extent, Defendants do not oppose this aspect of Plaintiffs' Motion. But since Plaintiffs' Motion sweeps more broadly in seeking to preclude any "details" of "indemnification provisions of the STA" (Pls.' MIL at 16), the Court should deny the motion in relevant part.

Two of the central issues in this case are whether and to what extent legacy lead emissions from Cerro de Pasco's and Centromin's 75 years of operation of the CMLO before DRP entered

16

the scene caused Plaintiffs' injuries, and whether Centromin's or the Peruvian Government's failure to perform their contractual obligations caused or contributed to Plaintiffs' injuries. Defendants purchased the CMLO subject to the STA's provisions outlining the parties' respective obligations for past emissions impacts and environmental remediation (such as Centromin's obligations to remediate soil contamination). Thus, evidence concerning Centromin's and the Peruvian Government's environmental and community health obligations under the STA—and whether they fulfilled those obligations—is relevant to both causation of Plaintiffs' injuries and whether Defendants were negligent. *See* Fed. R. Evid. 401, 402.

Nor is there anything unduly prejudicial or confusing about this evidence merely because it may relate to contractual terms. *See, e.g.*, *Speed Rmg Partners, LLC v. Arctic Cat Inc.,* 2022 WL 19333766, at *6 (D. Minn. Nov. 29, 2022) (denying motion *in limine* on "contract-interpretation issue" terms because *"[i]t is for the jury to decide* whether [defendant] agreed to manufacture the [product]") (emphasis added). Defendants have no need to use the word "indemnification" or argue who should pay any plaintiff verdict, laying to rest Plaintiffs' fears about "extraordinar[]y prejudic[e]" were the jury to conflate indemnification with immunity. Pls.' MIL at 16.

## V.   Plaintiffs' Motion on Recruitment by Plaintiffs' Counsel Should Be Denied in Part.

Defendants do not intend to offer any evidence, testimony, or argument about the tactics Plaintiffs' counsel or others at their behest may have engaged in to recruit Peruvian individuals, or Plaintiffs in particular, for this litigation unless Plaintiffs open the door to this evidence.[3] Plaintiffs' Motion should be denied to the extent it seeks to preclude limited inquiry on cross-examination

---

[3] Plaintiffs apparently intend to elicit testimony from witnesses such as Cardinal Barreto, Rev. Ellie Stock, and Rev. Hunter Farrell about their work in the La Oroya community and the lengths to which they went to raise awareness of community health concerns in La Oroya, purportedly over DRP's opposition. If Plaintiffs elicit this testimony, Defendants should not then be precluded from offering evidence about litigation-recruitment efforts.

17

about the general circumstances by which Plaintiffs or their parents came to believe that DRP's operations were responsible for their injuries. *See* Pls.' MIL at 16 (seeking broadly to exclude evidence of Plaintiffs' pre-suit "considerations").

Whether Plaintiffs or their parents learned of the alleged connection between their injuries and DRP's operations from NGOs, litigation experts, Plaintiffs' anticipated trial witnesses, lawyers, or someone else, it is plainly relevant that Plaintiffs and their parents were *not* told by their treating doctors that lead exposure caused their injuries. That medical professionals retained and compensated by Plaintiffs' counsel are the only ones who have offered that opinion is highly probative of causation and Plaintiffs' experts' credibility.[4] To the extent Plaintiffs' Motion targets such questioning simply because it may reveal counsel's role in Plaintiffs' case, it should be denied.



---

[4] Plaintiffs' cited authorities are inapposite—they concern exclusion of evidence about the payment relationship between the plaintiff and counsel, specific attorney advertisements, "commentary or arguments generally as to lawyer-driven lawsuits," and privileged information about a plaintiff's decision to hire counsel. *See Enslein Trustee for Xurex, Inc. v. Di Mase*, 2019 WL 4306973, at *5–6 (W.D. Mo. Sept. 11, 2019); *Aleman v. Volvo Cars of N. Am, LLC*, 2020 WL 4742814, at *1 (C.D. Cal. Apr. 15, 2020); *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 271–73 (S.D.N.Y. 2015). Defendants have no intention of broaching any of these topics at trial.

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████.

**VII.** **The Court Should Deny Plaintiffs' Motion to Exclude Evidence and Argument of Their Failure to Comply with Recommendations of Their Examining Experts.**

Plaintiffs next seek to bar Defendants from arguing or introducing evidence that Plaintiffs failed to follow the recommendations offered by their own experts. But this evidence bears directly on Plaintiffs' failure to mitigate damages and their experts' credibility, and is thus admissible.

Certain of Plaintiffs' expert witnesses, such as Dr. Clemente Vega, examined Plaintiffs and—while not offering such opinions originally—supplemented their reports to recommend specific interventions to ameliorate Plaintiffs' alleged injuries, including prescription eyeglasses, follow-up care for headaches, psychotherapy, pharmacological consultations, and behavioral and classroom interventions. Plaintiffs and their parents were never told about these recommendations and, in turn, never followed them. This evidence is classic damages mitigation evidence. *See, e.g.*, *Skinner v. Leggett & Platt, Inc.*, 325 S.W.3d 520, 523 (Mo. Ct. App. 2010) ("The failure of a party to follow doctors' instructions has previously been recognized as appropriate to submit to the jury as comparative fault."); *see also Ford v. GACS, Inc.*, 265 F.3d 670, 679 (8th Cir. 2001) (plaintiffs have a duty under Missouri law to mitigate, and damages that could reasonably have been mitigated are not recoverable) (citing Mo. Rev. Stat. § 537.765.3(6)).

Courts have allowed such evidence in lead exposure cases. For example, in *Burton v. American Cyanamid*, 341 F. Supp. 3d 941, 949–50 (E.D. Wis. 2018), the court denied the plaintiffs' summary judgment motion on the mitigation defense where "testifying experts recommended that [plaintiff] seek psychological treatment" "after examining him," and yet the plaintiff did not seek such treatment. This was "sufficient for a jury to find" a breach of the duty

19

to mitigate. *Id.* And, the court held, the duty to mitigate by following doctors' treatment recommendations extended to minor plaintiffs through the conduct of their parents. *Id.* Plaintiffs' failure to follow their experts' recommendations is thus relevant and highly probative of damages.

This evidence is also relevant for another reason. Plaintiffs' experts chose to supplement their opinions with these recommendations, hoping to burnish their credibility. Yet, despite not following these recommendations, Plaintiffs' conditions continue to improve. Realizing that these opinions may not prove helpful to them, Plaintiffs want their experts to get a do-over. But they cannot shield the jury from their experts' credibility problems and non-viable recommendations.

Plaintiffs' Rule 403 objection fails. Plaintiffs contend that the evidence risks suggesting to the jury "that Plaintiffs are partially responsible for their own injuries." Pls.' MIL at 19. But that is no Rule 403 problem; it is merely the ordinary consequence of mitigation. That a jury might conclude Plaintiffs bear some responsibility for failing to pursue recommended treatment is precisely the inference that Missouri's comparative-fault statute allows. Moreover, Plaintiffs can easily introduce evidence as to why their failure to follow these recommendations was reasonable.

**VIII.  Plaintiffs' Motion to Exclude Argument Based on a Plaintiff's Absence from the Courtroom Rises or Falls with Defendants' Corresponding Motion.**

Defendants agree that commenting on the absence from trial of *any* party for *any* period of time is irrelevant and prejudicial—no matter the party's individual circumstances. Defendants filed a corresponding motion to exclude such commentary as to party representatives. *See* Defs.' MIL No. 9. The Court should thus grant both motions. But if it denies Defendants' motion, the Court should likewise deny Plaintiffs' so that both sides may reference party absences at trial.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' omnibus motion *in limine* in relevant part.

20

Respectfully submitted,

**KING & SPALDING LLP**

By: */s/ Geoffrey M. Drake*
Andrew T. Bayman, #043342GA
abayman@kslaw.com
Geoffrey M. Drake, #229229GA
gdrake@kslaw.com
Mark Sentenac, #987346GA
msentenac@kslaw.com
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Tracie J. Renfroe, #16777000T
trenfroe@kslaw.com
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Defendants The Renco Group, Inc.,
D.R. Acquisition Corp., Doe Run Cayman Holdings,
LLC, Doe Run Resources Corporation, Ira L.
Rennert, Marvin M. Kaiser, and Albert Bruce Neil*

**SIDLEY AUSTIN LLP**

Jennifer L. Saulino
Jennifer.saulino@sidley.com
Richard W. Smith
rwsmith@sidley.com
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736-8649
Facsimile: (202) 736-8711

*Attorneys for Defendants The Renco Group, Inc.
and Ira L. Rennert*

**LEWIS RICE LLC**

Thomas P. Berra, Jr., #43399MO
tberra@lewisrice.com
Michael J. Hickey, #47136MO
mhickey@lewisrice.com
600 Washington Ave., Suite 2500
St. Louis, Missouri 63102-2147
Telephone: (314) 444-7600
Facsimile: (314) 241-6056

*Attorneys for Defendants Doe Run Resources Corporation, Marvin K. Kaiser, and Albert Bruce Neil*

**DOWD BENNETT LLP**

Edward L. Dowd, Jr., #28785MO
edowd@dowdbennett.com
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111

*Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Doe Run Cayman Holdings, LLC, and Ira L. Rennert*

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of May, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, and served by email to all counsel of record.

*/s/ Geoffrey M. Drake*

23