IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-cv-00044-CDP |
| | ) | (CONSOLIDATED) |
| IRA L. RENNERT, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO BIFURCATE (DOC. 1646)**

Bifurcation should be denied. Defendants seek to divorce the jury's determination of punitive damages from the evidence of their liability due to what they label "highly inflammatory evidence" concerning Renco and Rennert's wealth and financial condition. *See generally* Doc. 1647. Their motion collapses the 30-year history of this case (from Defendants' purchase of the La Oroya smelter in 1997 through the present) and asks the Court to treat evidence of the Defendants' financial condition at *every point* in that timeline exactly the same. But Defendants' financial condition, particularly during the time they operated the Complex, is directly relevant to Plaintiffs' case on liability. ████████████████████████████████████

████████████████████████████████████████████████████████

Similarly, Defendants' use of intercompany agreements and other financial chicanery to enrich themselves while undercapitalizing Doe Run Peru informs the negligence and veil piercing claims.

Far from being necessary, bifurcation will only cause delay and confusion, and no party will be unduly prejudiced by a standard liability-and-damages trial. For these and other reasons set forth herein, Plaintiffs oppose Defendants' motion.

Case No.: 4:11-cv-00044-CDP
(Consolidated)

## LEGAL STANDARDS

Federal Rule of Civil Procedure 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counter-claims, or third-party claims." Fed. R. Civ. P. 42(b). "The decision of whether to isolate the punitive damages phase of the trial is within the sound discretion of the trial court." *Scott v. Dyno Nobel, Inc.*, No. 16-1440 (HEA), 2022 U.S. Dist. LEXIS 158199, *13 (E.D. Mo. Sep. 1, 2022) (citing *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1213–14 (8th Cir. 1999)). Although Missouri law dictates certain proceedings are to be bifurcated, "the Eighth Circuit has found that § 510.263 is a procedural rule that does not supersede the Federal Rules of Civil Procedure." *E.g.*, *Smith v. Bentley*, No. 20-804 (JMB), 2022 U.S. Dist. LEXIS 89918, *2–4 (E.D. Mo. May 19, 2022) (citing *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)).

Separating issues for trial is "not to be routinely ordered." Fed. R. Civ. P. 42 advisory committee's note to 1966 amendment. The party moving for bifurcation bears the burden of proving that bifurcation is appropriate. *Cf. Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) (district court did not abuse its discretion by refusing to bifurcate claims because the movant did not show prejudice). In exercising its discretion, the Court should consider "the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201–02 (8th Cir. 1990). The potential benefits of bifurcation must outweigh the potential detriment. *Bancorp Services, LLC v. Sun Life Assurance Co. of Canada*, No. 00-1073 (CEJ), 2006 U.S. Dist. LEXIS 20737, *5 (E.D. Mo. April 14, 2006). "A case-by-case analysis of relevant facts and circumstances is required[.]" *G-Met, LLC v. St. Paul Mercury Ins. Co.*, No. 17-70, 2017 U.S. Dist. LEXIS 184844, at *3 (W.D. Mo. Nov. 8, 2017) (citation omitted).

## ARGUMENT

Bifurcating the issue of punitive damages would be impractical and inefficient, as Plaintiffs will rely on much the same evidence to show Defendants' negligence and their liability for punitive damages. For both, the focus will be on Defendants' knowledge and course of conduct. "In a negligence action [in Missouri], punitive damages may be awarded if the defendant knew or had reason to know a high degree of probability existed that an action would result in injury." *Montoya v. Sloan Valve Co.*, No. 20-1108 (AGF), 2022 U.S. Dist. LEXIS 201311, *17–18 (E.D. Mo. Nov. 4, 2022) (citing *In re NuvaRing*, 957 F. Supp. 2d 1110, 1117 (E.D. Mo. 2013) and *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc.*, 700 S.W.2d 426, 436 (Mo. 1985)). "[A] submissible case of punitive damages is made if the evidence and inferences drawn therefrom are 'sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference.'" *Sloan Valve Co.*, 2022 U.S. Dist. LEXIS 201311, at *18 (citation omitted).

There is significant overlap between liability and the punitive aspects of this matter, including Defendants' knowledge that lead is harmful to children, Defendants' knowledge that uncontrolled fugitive emissions were spewing lead into the La Oroya community, and Defendants' knowledge that they should have (but did not) relocate families away from the metallurgical smelter. Defendants' financial information is likewise integral to showing the flow of payments between Doe Run Peru (DRP) and Renco, Renco's undercapitalization of DRP, and other facts relevant to Plaintiffs' veil-piercing allegations, such as Renco's control. Defendants' financial condition also explains *why* they made certain decisions—including decisions on behalf of DRP— that left DRP in a compromised financial state and unable to fulfill its environmental obligations.

All of these issues (and many more) are relevant to proving both Defendants' negligence and their conscious disregard for the Plaintiffs' wellbeing. Evidence of Defendants' financial condition is relevant to liability and punitive damages. Where evidence is common to both the liability and punitive stages of a trial, bifurcation is disfavored. *See HBE Corp.*, 135 F.3d at 551 (no abuse of discretion where contested evidence was relevant on issues of liability and punitive damages); *Smith*, 2022 U.S. Dist. LEXIS 89918, at *2–3; *United States EEOC v. AutoZone, Inc.*, 2023 U.S. Dist. LEXIS 233284, at *5–6 (N.D. Ill. Sep. 7, 2023) (rejecting Defendants' request to bifurcate punitive damages portion because "evidence related to punitive damages substantially overlap[ped] with evidence related to liability, and thus [would] be presented before the jury during the first phase regardless of bifurcation"); *Estate of Thompson v. Kawasaki Heavy Indus.*, 933 F. Supp. 2d 1111, 1137–38 (N.D. Iowa 2013) (bifurcation unwarranted where the same evidence establishes both claims for negligence and for punitive damages).

## I. Evidence of Defendants' financial condition is relevant to liability and punitive damages.

### A. *The Fairfield Estate*

Defendants seek to exclude any mention of Rennert's mansion in the Hamptons during the liability phase of the trial, positing that it is irrelevant. *See* Doc. 1647 at 4–6. ██████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

The Fairfield estate, then, is not mere evidence of Rennert's wealth or Renco's net worth. It is also evidence of Defendants' financial condition and their priorities at a critical time in the case.

███████████████████████████████████████████████████

████████████████████████████████ Indeed, evidence concerning the mansion at Fairfield is relevant and probative on the issues of (1) control, (2) liability, (3) the need for punitive damages, and (4) the proper measure of such damages.

### B. *Other evidence of Defendants' net worth from 1997–2009*

Defendants' net worth at the time DRP operated the Complex is also relevant to show that they had the financial ability to control lead emissions and protect children in La Oroya. For example, the evidence will show that Defendants considered but did not pursue purchasing the homes of La Oroya residents to protect them from the Complex's emissions. *See, e.g.*, Ex. 6, La Oroya Metallurgical Complex Business Plan 1997–2011, June 1996 (excerpted) at PDF 7 ("Housing should not be located within 5 km of a metallurgical complex. Thus much of La Oroya city should be moved to a new community, such as Curipata."); *see also* Ex. 7, *Devastating Luxury*, Vanity Fair (July 2003) at PDF 10 (quoting Buckley: "Centromin had decided to move the whole town seven kilometers away. * * * This was just before we took over. Then we were asked, 'Will Doe Run move the town?' We said we're neutral. That's for the government to do."). The fact that Defendants could afford the cost of such a proposition is relevant to their liability for negligence and whether they acted with conscious disregard for safety.

Evidence of the assets these Defendants controlled will be relevant to both liability and the appropriate *amount* of punitive damages—the matters are inextricably interwoven. Indeed, this Court has previously observed that corporate financial information "is relevant to both punitive damages and the corporate governance and control of Doe Run Peru by the upstream Doe Run/Renco entities, including Ira Rennert." Doc. 1517 at 2–3. That is why this case cannot be cleanly divided into a liability phase and a phase on the amount of punitive damages. Evidence of

Defendants' convoluted financial structure is relevant to piercing the corporate veil, which requires consideration of a great many factors, several of which are related to a company's financial condition. *Cf. Commonwealth Land Title Ins. Co. v. Miceli*, 480 S.W.3d 354, 370–72 (Mo. Ct. App. 2015) (quoting 18 C.J.S. Corporations § 16 (2015) ("Because disregarding corporate separateness as an equitable remedy is one that differs with the circumstances of each case, no single factor or even combination of factors is dispositive[.]").

For example, evidence of undercapitalization informs the issue of liability and the question of punitive damages. Under Missouri law, "[m]aking a corporation a supplemental part of an economic unit and operating it without sufficient funds to meet obligations to those who must deal with it would be circumstantial evidence tending to show either an improper purpose or reckless disregard of the rights of others." *May Dep't Stores Co. v. Union Elec. Light & Power Co.*, 341 Mo. 299, 327, 107 S.W.2d 41, 55 (1937). Defendants did this by undercapitalizing DRP at its inception, siphoning its profits, and burdening it with a heavy debt load. Evidence of these facts will be relevant to Plaintiffs' veil piercing claims, as well as their conscious disregard for children's well-being and the appropriate measure of punitive damages.

The evidentiary record includes many examples of control and undercapitalization that support piercing the corporate veil. *See* Doc. 1276 at 36–37. At summary judgment, the Court observed that "plaintiffs have presented evidence that defendants' business model was to create and structure DRP from its inception to be undercapitalized as a stand-alone entity, especially regarding its environmental obligations." Doc. 1524 at 20. "Whether and to what extent the Renco-planned financial structure of DRP caused it to be undercapitalized regarding these obligations are questions to be resolved at trial." *Id.* at 21. Evidence of the financial condition of the Defendants is, by extension, necessary to resolve those questions. *Cf. DeWitt Truck Brokers v. W. Ray*

*Flemming Fruit Co.*, 540 F.2d 681, 687, 686–88 (4th Cir. 1976) (court pierced corporate veil where individual defendant was withdrawing some $15,000 per year from the corporation and corporation could only afford such disbursements by withholding payments due the plaintiff).

Much of Plaintiffs' evidence speaks to control of the various corporate Defendants by Rennert, but it also instructs the jury as to what assets might be considered in awarding punitive damages. Defendants have elected not to clearly define and articulate their net worth. *See* pp. 9–10*, infra.* Therefore, the jury will need to hear evidence of the complex web through which the Defendants operated their subsidiary—and will also need to understand which components of that web must be assessed in evaluating an appropriate measure of punitive damages. The Court should not entertain further inefficiency and delay by requiring the redundant presentation of evidence and testimony of witnesses. *See generally O'Dell*, 904 F.2d 1194; *Weitz Co., LLC v. MH Wash., LLC*, No. 06-0559-CV-W-DGK, 2008 U.S. Dist. LEXIS 70942, at *7 (W.D. Mo. Sep. 20, 2008) ("Bifurcation is not appropriate here because it would result in duplicative litigation and the loss of judicial economy.").

Finally, Defendants have already indicated their intent to introduce evidence of their supposedly generous spending. *See, e.g.*, Defendants' Exhibit List noting "Report to Our Community," Exs. O14, T22, U22, V22, W22, X22, Y22, Z22, A23, B23, C23, E23, F23. While they should not be allowed to tout "charitable" or environmental spending in Peru unrelated to reducing lead emissions or ameliorating the effects thereof (*see* Plaintiffs' Motions *in Limine*, Doc. 1651-1, at 12–15), if that evidence comes in, the jury should also be allowed to know the value of that spending relative to Defendants' total assets. For Defendants worth as much as Rennert and Renco, the amount they spent on charitable acts in Peru was miniscule.

## II.     Defendants' concerns about "inflammatory evidence" are overstated.

Defendants have not shown that the probative value of the Defendants' financial condition at any point in time is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; *see also Cham v. ECI Mgmt. Corp.*, 353 Ga. App. 162, 171–72 (2019) (courts should conduct Rule 403 analysis before excluding evidence of a party's wealth). While Defendants protest "argument, questioning, or references concerning ... Renco's or Rennert's wealth," the unavoidable reality is that the jury will already be aware from relevant, admissible evidence that Ira Rennert is a wealthy man. They will hear that he is the head of a large corporate empire based in New York, and that he regularly flew to Missouri and Peru for board meetings on his corporate jet. The defense will not be unfairly prejudiced by the introduction of additional probative evidence to establish Defendants' current net worth. Bifurcation, therefore, would not meaningfully avoid prejudice but would only needlessly prolong the trial.

The notion that Plaintiffs seek to introduce "highly inflammatory" evidence not germane to liability, particularly evidence "focused on Defendants' wealth and financial condition," fails under closer scrutiny. *Contra* Doc. 1647 at 4. Defendants rely largely on Plaintiffs' recent supplemental deposition of Ira Rennert, suggesting something improper in the questions posed. *See id.* But that was a deposition specifically limited to the topic of Rennert's net worth—it was the whole purpose of the deposition to gain precisely such information. *See, e.g.*, Doc. 1490 (Case Management Order) and Doc. 1511 at 5 (opposing Defendants' motion for protective order and setting forth the need for supplemental discovery). █████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

███████████████████████████████

███████

Case No.: 4:11-cv-00044-CDP
(Consolidated)



—precisely the type of discovery which the Court had already ordered Defendants to provide. *See* Doc. 1572 at 25:21–26:2 (Transcript of Expedited Hearing) (Court commenting: "And by that I am including house, houses,

Case No.: 4:11-cv-00044-CDP
(Consolidated)

apartments, other places of abode; personal things like, you know, furnishings and jewelry, to the extent they exist, and the artwork, certainly; airplanes, cars, those sorts of things. Personal property."). Defendants can no doubt short-circuit some of this evidence-gathering inquiry at trial by having Rennert more prepared to provide a reliable estimate of his net worth.

Defendants mischaracterize the Eighth Circuit's decision in *Silbergleit v. First Interstate Bank, N.A.*, 37 F.3d 394 (8th Cir. 1994). The word "bifurcate" never appears in that opinion; a limiting instruction was the only preemptive remedy discussed. *See id.* at 396. And that is for good reason, as the case addressed references by *defense* counsel to the *plaintiff's* wealth in an age discrimination suit, not "references to [defendant] as a millionaire" where punitive damages were at play. *Contra* Doc. 1647 at 6. Moreover, a fair reading of the decision shows that the panel was equally or more concerned with the defendant's inappropriate references to the plaintiff's religion. *Id.* at 397 ("We believe, however, that the mix of religion, wealth and receipt of unemployment benefits presented a powerful combination of irrelevant evidence having no bearing on the merits of the case, that were designed to impassion and prejudice the jury against Silbergleit.").

*Silbergleit* is inapposite, and the other cases Defendants cite are not much better. *Riggs* mentions that counsel should not have been surprised by a bifurcated trial but expressly recognized that Missouri law is not controlling on the matter. *Riggs v. Gibbs*, 66 F.4th 716, 718 n.2 (8th Cir. 2023) ("we recognize that Missouri law is not controlling"). In *Wilkinson*, the appellate court faulted plaintiff's counsel for making multiple references to the defendant as a "billion-dollar company," but that was after the trial court had entered an order forbidding any reference to the financial condition of the company. *See Wilkinson v. Stanley Fastening Sys.*, L.P., 693 S.W.3d 166, 167 (Mo. Ct. App. 2024) (references were "in express violation of the trial court's order in

limine"). Punitive damages were not an issue in that case, and the statements were not relevant to any fact in dispute.

Defendants' cases stand in sharp contrast to the instant matter, where evidence of the Defendants' financial condition and corporate maneuvering are inherently and inextricably tied to their relevant decision-making—and their negligence—leading to Plaintiffs' injury. Defendants offer no other more compelling authorities for their arguments (because none exist), instead resorting to a little-cited Eighth Circuit case from 1933 which itself implicitly acknowledges that "where position or wealth is *necessarily involved* in determining the damages sustained," it is permissible evidence. *Union Elec. Light & Power Co. v. Snyder Estate Co.*, 65 F.2d 297, 303 (8th Cir. 1933) (emphasis added). Such is the case here.

## CONCLUSION

For all the reasons offered above, the Court should deny Defendants' motion. Bifurcation of the specific matters raised in Defendants' motion—to wit, argument concerning the amount of punitive damages that should be awarded and evidence concerning Renco's or Rennert's present wealth or net worth—is unwarranted. At most, if the Court determines some restriction is required, a limiting instruction would be sufficient. *E.g.*, *Tupea v. Kline*, 736 F. Supp. 3d 381, 387–88 (E.D. Va. 2024) (observing that a Rule 105 limiting instruction "can 'minimize the risk of prejudice' that arises when claims are not bifurcated") (quoting *Benjamin v. Sparks*, 986 F.3d 332, 346 (4th Cir. 2021)).

Respectfully submitted,

**SCHLICHTER BOGARD LLC**

May 12, 2026

  /s/ *Cort A. VanOstran*
Cort A. VanOstran, #67276 (MO)
Jerome J. Schlichter, #32225 (MO)
Nathan D. Stump, #71641 (MO)
Kristine K. Kraft, #37971 (MO)
Rachel Berger, #77248 (MO)
100 South 4th St., Suite 1200
St. Louis, Missouri 63102
(314) 621-6115
jschlichter@uselaws.com
kkraft@uselaws.com
nstump@uselaws.com
cvanostran@uselaws.com
rberger@uselaws.com

*Attorneys for Plaintiffs*

Case No.: 4:11-cv-00044-CDP
(Consolidated)