**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

A.O.A., *et al.*,

            Plaintiffs,

      v.

THE DOE RUN RESOURCES
CORPORATION, *et al*.,

            Defendants.

Case No. 4:11-cv-00044-CDP

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR
BIFURCATION OF TRIAL**

Plaintiffs' Response makes clear that they plan to invite the jury to *determine liability* based on Rennert's and Renco's net worth and assets, including what Plaintiffs call a "massive house," "lavish vacation home," and "grand estate." Resp. at 1, 5-6, 9. Plaintiffs cite the Vanity Fair article that makes Louis XIV and Versailles comparisons as an example of what "the evidence will show," Resp. at 6, and they provide no explanation of any proper purpose for evidence of furs, jewelry, and art on their exhibit list.

Allowing the jury to rely on any of this highly prejudicial evidence in determining liability or actual damages would be prejudicial error. It "is nearly always improper for counsel to make an argument referring to the size and wealth of a party." *Wilkinson v. Stanley Fastening Sys., L.P.*, 693 S.W. 3d 166, 171 (Mo. Ct. App. 2024). This case is no exception. Plaintiffs cannot point to a single issue other than the amount of punitive damages for which it would be proper for the jury to consider evidence of Rennert's or

Renco's wealth or financial status, from any time period. They try, but, as explained below, each of their theories fails as a matter of law.

To be clear, Defendants are not arguing that other categories of evidence potentially relevant to both liability and the amount of punitive damages should be excluded from the liability phase. That includes evidence relevant to alleged knowledge of fugitive emissions, the alleged "flow of payments between Doe Run Peru (DRP) and Renco" or to the alleged "undercapitalization of DRP." *Contra* Resp. at 3. But evidence of the financial status and wealth of Rennert and Renco has no place in determining liability or actual damages and should be introduced, if at all, during a separate phase of trial.

Bifurcating trial in this way will not lead to duplication of evidence. The bifurcated second phase for punitives—if needed—will follow immediately after the verdict in the liability stage, and the jury will be permitted to consider the evidence it has already heard along with the bifurcated evidence in deciding the amount of any punitive damages. To the contrary, bifurcation may well shorten and simplify trial, depending on the jury's decisions in the initial phase of trial.

## ARGUMENT

### I.     THE EVIDENCE PLAINTIFFS WANT TO RELY ON IS HIGHLY PREJUDICIAL.

Plaintiffs cannot dispute the long-recognized reality that evidence of wealth and net worth can "impassion and prejudice the jury," *Silbergleit v. First Interstate Bank of Fargo, N.A.*, 37 F.3d 394, 397 (8th Cir. 1994), and "creates the potential that juries will use their verdicts to express biases," *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417

- 2 -

(2003). Plaintiffs also have no response to the numerous decisions from this and other courts in the Eighth Circuit that have bifurcated trials to avoid contaminating liability determinations with prejudicial evidence of wealth and financial status. *Compare* Mot. at 7 (listing cases granting bifurcation); *with* Resp. (not citing or addressing these cases).

Nor can they dispute that the bifurcation Defendants request would be automatic if a Missouri court were applying the Missouri substantive law this Court has held is controlling on punitive damages. *See* Dkt. 1628 at 5–6. The Court has held that Missouri has an overriding interest in this dispute, and Missouri has recognized that bifurcation is important to protecting defendants' rights to a fair trial under Missouri's substantive tort law. The Court should not disregard a protection Missouri has put in place to prevent juries from misapplying the same law the jury will apply here. *Cf. Specialty Surplus Ins. Co. v. Second Chance, Inc.*, 2006 WL 8454865, at *1 (W.D. Wash. May 23, 2006) (holding a New York discovery rule limiting discovery into wealth was "intimately bound up with Plaintiff's right to defend itself on the merits" and applying it in federal court).

Plaintiffs assert that despite all of the caselaw recognizing the extremely prejudicial effect of such evidence, their evidence of Rennert's and Renco's net worth and assets will not be unduly prejudicial. They argue that it is "unavoidable" that the jury will "be aware" that "Ira Rennert is a wealthy man," the "head of a large corporate empire based in New York" who "flew to Missouri and Peru for board meetings on his corporate jet," so that additional evidence of wealth and lifestyle will not be prejudicial. Resp. at 9. This argument makes little sense. For one thing, it assumes that the jury will see the very evidence Defendants are seeking to exclude from the liability phase. It is not "unavoidable" for the

jury to learn about a corporate jet or about Rennert's wealth before rendering their verdict on liability; it should be avoided. While it is true that the jury will learn of Rennert's roles at Defendant companies, that is different from evidence about his net worth, whether he is a "billionaire," and about his wife's clothes and the places where he lives and works.

And this argument says nothing about Renco. Courts regularly exclude evidence of corporate defendants' size and financial status from the liability phase. *See, e.g.*, *Fluor Corp. v. Zurich Am. Ins.*, 2021 WL 3021973, at *7-8 (E.D. Mo. July 16, 2021) (bifurcating and excluding from liability phase evidence of an insurance company's net worth); *C.C. ex rel. Ginnever v. Suzuki Mfg. of Am. Corp.*, No. 4:16-CV-0127, 2018 WL 4504687, at *4 (E.D. Mo. Sept. 20, 2018) (bifurcating and excluding from liability phase evidence of manufacturing company's size, wealth, or financial condition).

Plaintiffs next say it is Defendants' fault that Plaintiffs pursued and included on their exhibit list highly inflammatory evidence. They claim they were "forced to belabor the issue of Mr. Rennert's assets" because, in their view, Rennert did not provide complete answers to questions about his net worth in a recent deposition. Resp. at 9. Plaintiffs' complaints about Rennert's deposition are baseless. Rennert testified comprehensively regarding his and Renco's net worth and the value of their assets, as did Ari Rennert. *See* Resp. Ex. 1 (excerpts of I. Rennert Dec. 5, 2025 Dep.) at 15:19-17:7; Ex. A (excerpts of I. Rennert Dec. 5, 2025 Dep.) at 22:7-23:21, 198:23-199:9; Ex. B (excerpts of A. Rennert Dec. 19, 2025 Dep.) at 59:18-61:15.

But putting that aside, Plaintiffs miss the point. Any and all evidence of Rennert's and Renco's wealth and financial status is irrelevant and unduly prejudicial to the liability

- 4 -

phase. Courts regularly bifurcate trials to prevent juries from hearing simple statements about the size, net worth, or financial status of a defendant before rendering a liability verdict. *See, e.g.*, *Fluor Corp.*, 2021 WL 3021973, at *8; *C.C. ex rel. Ginnever*, 2018 WL 4504687, at *4. In other words, bifurcating trial would be necessary even if Plaintiffs were not planning to try to introduce exceptionally evocative evidence relating to Rennert's lifestyle and personal possessions (in fact, the Court should exclude the unnecessary and prejudicial evidence of lifestyle and personal assets that Plaintiffs want to rely on from the punitive damages phase as well). But here, Plaintiffs compound the need for bifurcation by seeking to introduce not just simple statements about net worth, but evidence that has no value other than to inflame the jury.

The risk of undue prejudice from evidence of Rennert's and Renco's net worth and financial status is also particularly intolerable here because of its potential to impact the jury's verdicts relating to other Defendants (for example, Doe Run Resources). It is unlawful for a jury to consider evidence of a parent company's wealth in assessing a subsidiary's liability. *See Gearhart v. Uniden Corp. of Am.*, 781 F.2d 147, 153 (8th Cir. 1986), *disapproved of in part on other grounds by Lippard v. Houdaille Indus., Inc.*, 715 S.W.2d 491 (Mo. 1986).

Finally, *Silbergleit* is not "inapposite." *Contra* Resp. at 11. The party described as a millionaire in *Silbergleit* was the plaintiff, but that was not material to the outcome. The Eighth Circuit explained that referring to a party "as a millionaire" is "highly prejudicial," and that a trial court has a "duty to prevent the jury from considering [such] extraneous issues and to guard against the influences of passion and prejudice." 37 F.3d at 398. That

is equally true for defendants. *See Wilkinson*, 693 S.W.3d at 171. *Silbergleit* supports the uncontroversial proposition, recognized again and again in the caselaw, that references to the wealth of a party "are 'dangerous and harmful indulgences, potent in exciting sympathy or prejudice." *Wilkinson*, 693 S.W.3d at 171-72. "Once a jury's attention has been directed to the financial status of the parties, the risk is great that the verdict may have resulted from bias and prejudice relating to a party's wealth and not from the evidence and applicable law." *Id.* Bifurcation is necessary to avoid that great risk here.

## II. THE EVIDENCE PLAINTIFFS WANT TO RELY ON IS NOT RELEVANT TO ANY ISSUE OTHER THAN THE AMOUNT OF PUNITIVE DAMAGES.

Unable to dispute that courts frequently bifurcate trial and exclude evidence relating to financial status or wealth from the liability phase, Plaintiffs say that this case is different. Here, they claim, "Plaintiffs will rely on much the same evidence to show Defendants' negligence and their liability for punitive damages." Resp. at 3. That cannot be true. It would be improper as a matter of law for the jury to rely on evidence of Rennert's or Renco's wealth or financial status in determining liability on any of Plaintiffs' theories. Unsurprisingly, Plaintiffs therefore do not point to any case in which a court held that wealth or financial status is relevant to the merits of the claims Plaintiffs assert.[1]

---

[1] *See, e.g.*, *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998) (not considering evidence of financial status and finding "evidence of racially discriminatory conduct was relevant on issues of liability … and punitive damages"); *Smith v. Bentley*, No. 4:20-CV-804, 2022 WL 1591847, at *1 (E.D. Mo. May 19, 2022) (declining to bifurcate when plaintiff sought to "introduce one piece of evidence" showing a corporate defendant's net worth, but acknowledging net worth was not relevant to liability and damages and agreeing to so instruct the jury); *E.E.O.C. v. AutoZone, Inc.*, No. 14-3385, 2023 WL 9284451, at *2 (N.D. Ill. Sept. 7, 2023) (finding net worth relevant to a claim under the Americans with Disabilities Act, because such a claim requires the jury to consider whether a defendant would suffer undue hardship, in light of the defendant's resources, as a result

*First*, Plaintiffs say evidence of Rennert's and Renco's financial status is relevant to negligence and recklessness. They say that whether "DRP was (intentionally) starved for cash to perform even the minimal environmental compliance *while Renco and Rennert enjoyed considerable wealth* is highly probative of Defendants' liability." Resp. at 5 (emphasis added); *see also id.* ("Whether Defendants should have answered DRP's call for a working capital infusion *when they clearly had the financial wherewithal to do it* is a question the jury should be allowed to consider in determining whether they were negligent and reckless."). Similarly, Plaintiffs claim that "[t]he fact that Defendants could afford the cost of [purchasing homes of La Oroya residents] is relevant to their liability for negligence and whether they acted with conscious disregard for safety." Resp. at 6. And, in particular, Plaintiffs say the jury should consider "Renco's ability to fund the construction of Fairfield" while DRP was operating La Oroya. Resp. at 5.

To be clear, Plaintiffs point to no evidence that the Fairfield house, or any other asset Plaintiffs want to introduce evidence of, was purchased with funds from Doe Run Peru, or that Defendants took any action related to Doe Run Peru because of the Fairfield house or any other asset. There is no such evidence. As Plaintiffs' response makes clear, their argument is simply that because Renco and Rennert had money, including money to build or purchase other assets, they were negligent and reckless for not directing that money to the projects Plaintiffs argue they should have personally funded in La Oroya. Resp. at 5.

---

of granting an accommodation); *Est. of Thompson v. Kawasaki Heavy Indus., Ltd.*, 933 F. Supp. 2d 1111, 1138 (N.D. Iowa 2013) (finding evidence of decision-making process was relevant to merits of design-defect claim, but that net worth was relevant only to the amount of punitive damages and stating court would so instruct the jury).

That is not consistent with the laws of Missouri or any other state.

Plaintiffs' theory is exactly the kind of "'deep pocket' theory of liability" that, if presented to the jury, would warrant a mistrial. *See Wilkinson*, 693 S.W.3d at 176.; *see also Green v. Ralston Purina Co.*, 376 S.W.2d 119, 127 (Mo. 1964). The standard for negligence does not vary based on a specific defendant's wealth. It is "objective." *Bayes v. Biomet, Inc.*, 2021 WL 3330911, at *4 (E.D. Mo. Aug. 2, 2021). As the Missouri Supreme Court made clear a century ago, a "defendant's liability for negligence or the amount of plaintiff's recovery … are in no wise dependent on the poverty of the plaintiff or the wealth of the defendant." *Fowler v. Burris*, 186 Mo. App. 347, 171 S.W. 620, 620–21 (1914).

Courts therefore do not allow juries to consider wealth in determining liability for negligence. *See id.*; *Wilkinson*, 693 S.W.3d at 176. For example, in *Wilkinson*, the plaintiff argued that the defendant company had negligently designed a stapler by failing to include available safety devices. *Id.* at 168. Under Plaintiffs' theory, the *Wilkinson* plaintiff would have been entitled to argue that the defendant did not invest in safety devices "when they clearly had the financial wherewithal to do it." Resp. at 5. Instead, the court found plaintiff's references to the defendant as "a billion-dollar company" were "prohibited by … Missouri law" and warranted a mistrial. *Wilkinson*, 693 S.W.3d at 170. Plaintiffs cannot rely on Rennert's or Renco's financial status to prove negligence.[2]

---

[2] Plaintiffs also fundamentally misunderstand what the law requires of corporate parents and shareholders. Parent corporations and their shareholders are not required to contribute their personal funds and assets to prop up a subsidiary. Corporations "exist in order to facilitate limited investment in commercial enterprises while shielding an entrepreneur's personal wealth from the risk of paying for corporate indebtedness." *Lego A/S v. Best-Lock Const. Toys, Inc.*, 886 F. Supp. 2d 65, 77 (D. Conn. 2012).

The same is true for recklessness. In *Fluor*, in fact, a court in this district rejected the argument that evidence of financial condition was relevant to prove that a defendant "intentionally disregarded" the plaintiff's best interests in a case alleging bad faith failure to settle. 2021 WL 3021973, at *12. The plaintiff argued that the evidence was "relevant to [the defendant's] state of mind and financial incentive" and would "show [the defendant] could have contributed to the settlement, but simply chose not to." *Id.* at *7. The court rejected that theory, noting that under such a "broad theory, an insurer's financial condition would be admissible in every action for bad faith." *Id.* The same is true here. If it were enough to allege that a defendant "had the wealth to" take an action "yet chose not to do so," a defendant's "financial condition would be admissible" to prove liability for punitives essentially every time a plaintiff alleged recklessness. *Id.* It is not. *See id.*; *Tillery v. Lynn*, 607 F. Supp. 399, 403 (S.D.N.Y. 1985) (recognizing a "defendant's wealth should not be a weapon to be used by plaintiff to enable him to induce the jury to find the defendant guilty of malice, thus entitling plaintiff to punitive damages."); *Campen v. Stone*, 635 P.2d 1121, 1129 (Wyo. 1981) (same). In fact, in Missouri state courts, juries determine "the liability of a defendant for punitive damages" without considering any "[e]vidence of defendant's financial condition" as a matter of course. Mo. Rev. Code § 510.263.

*Second*, Plaintiffs suggest that evidence of Rennert's and Renco's wealth and financial status are relevant to Plaintiffs' veil piercing claims. Again, not so. Defendants' motion is directed to the wealth and financial status *of Renco and Rennert*—an ultimate parent company and a shareholder. Whether a subsidiary is undercapitalized is determined based on the capitalization *of the subsidiary*, without reference to the assets of the parent

- 9 -

or shareholders.  *Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 310 (8th Cir. 1992) (undercapitalization relates to whether the parent established a "financially responsible subsidiary," meaning a subsidiary with "sufficient funds to meet obligations to those who must deal with it"); *see also Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273, 286–87 (Mo. App. E.D. 1986) (evaluating *subsidiary's* capitalization and assets, not the parent's). None of the *Collet* factors takes into account a parent's or shareholder's financial status. 708 S.W.2d at 286–87. The wealth of a parent or shareholder simply is not relevant to whether the corporate veil should be pierced. *See Radaszewski*, 981 F.2d at 306 (unless the elements of piercing the corporate veil are met, "[s]ome injuries are going to go unredressed because of the insolvency of the corporate defendant immediately involved, even when its shareholders have plenty of money"). Plaintiffs point to no support for their assertion that a parent's or shareholder's wealth is relevant to piercing the corporate veil. They offer only a "Cf." citation to a case that did not address the wealth or assets of the parent company. Resp. at 7 (citing *Commonwealth Land Title Ins. v. Miceli*, 480 S.W. 3d 354, 370–72 (Mo. Ct. App. 2015)).

*Third*, Plaintiffs assert that the Fairfield house is relevant to establishing Rennert's control of Renco. Resp. 5-6. But Plaintiffs point to no law and no evidence to support this theory (in fact, there is no legal citation at all in Plaintiffs' section on the Fairfield house). *See id.* at 4-6. Regardless, any control by Rennert over Renco as to the construction of Fairfield is not at issue in this case. *Collet* makes clear that the control at issue in determining whether to pierce the corporate veil is "complete domination … *in respect to the transaction attacked.*"  *Collet*, 708 S.W.2d at 284 (emphasis added). The transaction

attacked here is not the construction of the Fairfield house, and Plaintiffs have never come up with anything beyond wild speculation to link the Fairfield house in any way to profits from Doe Run Peru. Nor could they—it is simply not true. Fairfield is irrelevant to Plaintiffs' case, and the jury cannot be permitted to consider this highly prejudicial evidence based on no more than the Plaintiffs' speculation.

*Finally*, Plaintiffs argue that net worth evidence should be admitted if Defendants are permitted to introduce evidence of their spending on non-lead specific environmental remediation and charitable acts in Peru, so that the jury can compare that spending to Defendants' total assets. Resp. at 8. But as explained above, negligence is an objective standard based on what an "ordinarily careful" person would have done. *Bayes*, 2021 WL 3330911 at *4. Compliance with applicable regulatory and legal obligations—which is one of the things Defendants' environmental and charitable spending is relevant to (*see* Def's MIL Opp. at 5)—is relevant to what an ordinarily careful person would have done. *See Bayes*, 2021 WL 3330911, at *4. The percentage of a specific defendant's overall net worth that the defendant spent, on the other hand, says nothing about what an ordinarily careful person would do and is not relevant. *See Wilkinson*, 693 S.W.3d at 171-72.

All of Plaintiffs' attempts to link evidence of Rennert's and Renco's net worth and wealth to anything properly before the jury, other than the amount of punitive damages, fail. The evidence is not relevant to liability or compensatory damages at all. And the danger of unfair prejudice it poses is huge. *See Fluor Corp.*, 2021 WL 3021973, at *7. In this circumstance, a jury instruction would be inadequate to cure prejudice to Defendants. *See, e.g.*, *Silbergleit*, 37 F.3d at 397 (holding "instruct[ing] the jury to disregard the

evidence of … wealth" failed to cure prejudice when the court "later allowed another question to be answered … on this subject"); *Mack v. Specialized Loan Serv.*, No. 420-CV-00766, 2022 WL 1552142, at \*2 (E.D. Tex. Apr. 26, 2022) (rejecting argument that an instruction would be sufficient). The Court should therefore bifurcate trial.

### III.   BIFURCATION WILL PROMOTE JUDICIAL ECONOMY AND AVOID JUROR CONFUSION.

Plaintiffs' response confirms that bifurcation can only create efficiencies here. As explained above, there is *no* overlap between evidence of Rennert's and Renco's net worth, which has no relevance to anything beyond determining the amount of punitive damages, and evidence relevant to liability and compensatory damages.

Plaintiffs' response is based on a misunderstanding of Defendants' motion. Plaintiffs claim *other* categories of evidence that are not evidence of Rennert's or Renco's net worth may be relevant to determining both liability and punitive damages. *See* Resp. 3-4. For example, they point to evidence of knowledge "that lead is harmful," of "uncontrolled fugitive emissions," or "that [Defendants] should have (but did not) relocate families," and evidence related to the "flow of payments between Doe Run Peru (DRP) and Renco" or of "undercapitalization of DRP." *Id.* Resp. at 3. But Defendants have not asked the Court to exclude these categories of evidence from the liability phase. Defendants are only asking the Court to bifurcate trial to have a separate phase relating to the *amount* of punitive damages, which will likely consist of evidence relating to net worth and wealth. The same jury can hear net worth evidence in a second phase of trial, without duplication of previously admitted evidence.

- 12 -

Indeed, Plaintiffs do not dispute that evidence relevant to both phases of the case may be "introduced in the first phase of the trial" while inflammatory evidence of Rennert's and Renco's wealth and financial status can be introduced only if necessary in a second phase of trial. *C.C.*, 2018 WL 4504687, at *3. In short, "there should be no delay [if] a jury decides punitive damages should be awarded." *Campen*, 635 P.2d at 1131. "The evidence of a defendant's wealth can be submitted right then, and the jury can deliberate further on the proper amount to be awarded." *Id.*

## CONCLUSION

This Court should bifurcate trial and exclude evidence of and references to the wealth or financial status of Rennert and Renco from the liability phase.

Dated: May 22, 2026                          By: */s/ Jennifer L. Saulino*

**KING & SPALDING LLP**

Andrew T. Bayman, #043342GA
abayman@kslaw.com
Geoffrey M. Drake, #229229GA
gdrake@kslaw.com
Mark Sentenac, #987346GA
msentenac@kslaw.com
1180 Peachtree Street, N.E.
Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Tracie J. Renfroe, #16777000T
trenfroe@kslaw.com
1100 Louisiana Street
Suite 4000

**SIDLEY AUSTIN LLP**

Jennifer L. Saulino (D.C. Bar No. 479390)
jennifer.saulino@sidley.com
Richard W. Smith (D.C. Bar No. 465563)
rwsmith@sidley.com
Jillian S. Stonecipher (D.C. Bar No. 1030214)
jstonecipher@sidley.com
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Defendants The Renco Group, Inc. and Ira L. Rennert*

**LEWIS RICE LLC**

- 13 -

Houston, TX 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Doe Run Cayman Holdings, LLC, The Doe Run Resources Corporation, Ira L. Rennert, Marvin M. Kaiser, and Albert Bruce Neil*

**DOWD BENNETT LLP**

Edward L. Dowd, Jr. #28785MO
edowd@dowdbennett.com
Jeffrey R. Hoops, #69813MO
jhoops@dowdbennett.com
7733 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)

*Attorneys for Defendants The Renco Group, Inc., DR Acquisition Corp., Ira L. Rennert, and Doe Run Cayman Holdings, LLC*

Thomas P. Berra, Jr., #43399MO
tberra@lewisrice.com
Michael J. Hickey, #47136MO
mhickey@lewisrice.com
600 Washington Ave., Suite 2500
St. Louis, MO 63102-2147
Telephone: (314) 444-7600
Facsimile: (314) 241-6056

*Attorneys for Defendants The Doe Run Resources Corporation, Marvin K. Kaiser, and Albert Bruce Neil*

- 14 -

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this was filed on May 22, 2026 via the ECF/CM system with the Clerk of the Court, which will serve Notice of Electronic Filing upon counsel of record.

By: */s/ Jennifer L. Saulino*