UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |
|---|---|
| A.O.A., *et al.*,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>IRA L. RENNERT, *et al.*,<br><br>                    Defendants. | Case No. 4:11-cv-00044-CDP<br>(CONSOLIDATED) |

## TRIAL BRIEF OF DEFENDANTS THE RENCO GROUP, INC. AND IRA L. RENNERT

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................1

II.    FACTUAL BACKGROUND....................................................................................2

       A.    Rennert And Renco Invest In A Variety of Industries..............................2

       B.    Rennert's And Renco's Connections To Doe Run Peru Were Attenuated..............3

III.   ARGUMENT............................................................................................................4

       A.    Plaintiffs Cannot Meet Their Heavy Burden To Pierce The Corporate Veil..........4

       B.    Plaintiffs Cannot Meet Their Burden To Prove Direct Negligence Against
             Rennert Or Renco. ....................................................................................7

       C.    Financial And Personal Information About Rennert And Renco Should Not
             Be Permitted To Inflame The Jury Or To Reach The Public. ..............................10

IV.    CONCLUSION.......................................................................................................10

i

## TABLE OF AUTHORITIES

**Cases**

*A.O.A. v. Rennert*,
  2025 WL 2606548 (E.D. Mo. Sept. 9, 2025)........................................................................9

*A.O.A. v. Rennert*,
  350 F. Supp. 3d 818 (E.D. Mo. 2018).................................................................................8

*Adelstein v. Jefferson Bank & Tr. Co.*,
  377 S.W.2d 247 (Mo. 1964) ...............................................................................................5

*Am. Recreation Prod., Inc. v. Novus Prod. Co., LLC*,
  2006 WL 3247246 (E.D. Mo. Nov. 8, 2006).......................................................................7

*Cent. Cooling & Supply Co. v. Dir. of Revenue, State of Mo.*,
  648 S.W.2d 546 (Mo. 1982)................................................................................................7

*Doe 1631 v. Quest Diagnostics, Inc.*,
  395 S.W.3d 8 (Mo. 2013) ...................................................................................................6

*Douglas v. Imerys Talc American, Inc.*,
  2019 WL 626427 (E.D. Mo. Feb.14, 2019).........................................................................7

*Fairbanks v. Chambers*,
  665 S.W.2d 33 (Mo. Ct. App. 1984)................................................................................5, 6

*Goellner-Grant v. Platinum Equity LLC*,
  341 F. Supp. 3d 1022 (E.D. Mo. 2018)...............................................................................5

*Grease Monkey Int'l, Inc. v. Godat*,
  916 S.W.2d 257 (Mo. Ct. App. 1995)...............................................................................4, 5

*Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*,
  700 S.W.2d 426 (Mo. 1985) (en banc) ...............................................................................9

*Huard v. Shreveport Pirates, Inc.*,
  147 F.3d 406 (5th Cir. 1998) ..............................................................................................5

*Lego A/S v. Best-Lock Const. Toys, Inc.*,
  886 F. Supp. 2d 65 (D. Conn. 2012)...................................................................................5

*Marshall v. Anderson Excavating & Wrecking Co.*,
  901 F.3d 936 (8th Cir. 2018) ..............................................................................................5

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001)................................................................................................8

*Pennington v. Fluor Corp.*,
    19 F.4th 589 (4th Cir. 2021) ...................................................................................................8

*Thomas Berkeley Consulting Eng'r, Inc. v. Zerman*,
    911 S.W.2d 692 (Mo. Ct. App. 1995)....................................................................................5

*In re Tronox Inc.*,
    855 F.3d 84 (2d Cir. 2017).....................................................................................................6

*United States v. Bestfoods*,
    524 U.S. 51 (1998)..................................................................................................................1

## I.   INTRODUCTION

Defendants Renco and Ira Rennert —the two out-of-state investor Defendants—join their co-Defendants' trial brief in full. Renco and Rennert write separately to address two issues of particular importance to the out-of-state investors: *first*, Plaintiffs' attempt to collapse the distinct corporate entities and individuals into one undifferentiated defendant group; *second*, Plaintiffs' intent to improperly inject evidence of Renco's and Rennert's wealth and Rennert's personal life into the liability and compensatory damages phases of trial.

Plaintiffs' legal and factual theories depend on misleadingly blurring the distinctions between separate corporate entities. But "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation ... is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting William O. Douglas & Carrol M. Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193, 193 (1929)).  There are narrow exceptions to that rule, but Plaintiffs must prove those exceptions under the correct legal standards, with specific evidence as to each Defendant, including Renco and Rennert.  Plaintiffs cannot just lump all Defendants together.

To reach Renco based on alleged conduct by Doe Run Peru, Plaintiffs must first prove that Doe Run Peru was negligent and that its negligence caused Plaintiffs' injuries. They must then prove, entity by entity, that each relevant corporate veil may be pierced before liability can move up the corporate chain to Renco and Rennert. And on their direct-negligence theories, Plaintiffs cannot simply ignore the corporate form either: to hold a parent liable for the actions of a subsidiary, a plaintiff must always prove a deviation from the corporate norm, such as a parent's inappropriate direct interference in the affairs of the subsidiary. Beyond that, Plaintiffs must prove conduct by Renco or Rennert that violated the standard of care applicable to an ultimate parent company and investor. Plaintiffs cannot carry these burdens through undifferentiated assertions

1

about the collective defendant group. And they must articulate their legal theory for each claim against each Defendant—something they have never done with any specificity.

Nor may Plaintiffs use evidence of wealth to fill the gaps in their case (or to inflate any compensatory damages award). Plaintiffs have aggressively pursued discovery into Rennert's and Renco's financial status and assets and have made clear that they intend to put that evidence before the jury. As explained in Defendants' motion to bifurcate and reply in support of that motion, Plaintiffs' approach is improper: Deep pockets are not evidence of liability. For the reasons set forth in Defendants' motion to bifurcate and reply in support of that motion, trial should be bifurcated, and evidence of Renco's and Rennert's financial condition should be excluded from the liability and compensatory-damages phases. Unnecessary, cumulative, and highly inflammatory evidence of wealth should be excluded altogether. In addition, it may be necessary to seal the courtroom during portions of Rennert's testimony and any other testimony about his personal finances and assets to protect his privacy and personal safety.

## II.    FACTUAL BACKGROUND

The evidence at trial will show that Renco and Rennert were investors who were removed from Doe Run Peru in the corporate structure and not directly or improperly involved in Doe Run Peru's operation of the La Oroya Complex. Plaintiffs cannot come forward with sufficient evidence for the jury to hold either Renco or Rennert liable for actions of a Peruvian subsidiary of a subsidiary.

### A.    Rennert And Renco Invest In A Variety Of Industries

Rennert is an American businessman and investor based in New York.  After putting himself through business school at New York University in 1956, Rennert began investing in businesses across a range of industries, and has continued to do so.  His expertise is in investing and financing, not the operations of the diverse companies in which he invests.

Renco is a private investment holding company founded by Rennert in 1975 and headquartered in New York. Renco is owned by investors[1] and has a board of directors. Renco has invested in a diverse portfolio of companies, including businesses in the clothing and passenger transportation industries. Renco has no particular technical expertise in these areas, just as it had no particular technical expertise in the extremely complex operations of Doe Run Peru. It thus relies on the management teams at the investment companies it owns to operate those companies.

**B.      Rennert's And Renco's Connections To Doe Run Peru Were Attenuated**

Plaintiffs' allegations focus on a former subsidiary of subsidiaries of Renco: Doe Run Peru. Doe Run Peru was incorporated in Peru, with all of the formalities that go with incorporation. Doe Run Peru was a large operation that was important to the economy of the area at the time.  It employed approximately 3,500 people.  It had its own officers, managers, and employees, who managed the company's highly complex business and operated the company's La Oroya Complex.

Neither Rennert nor Renco had a direct corporate or shareholder relationship with Doe Run Peru, and neither received money directly from Doe Run Peru. Rennert served as chairman of co-defendant Doe Run Resources and of certain other Renco subsidiary companies, but he held no title at Doe Run Peru, owned no interest in Doe Run Peru, and received no money directly from Doe Run Peru. Renco likewise had no direct corporate relationship with Doe Run Peru, no ownership interest in Doe Run Peru, and received no money directly from Doe Run Peru: it received no dividends from Doe Run Peru, and there were no intercompany agreements or intercompany payments between Renco and Doe Run Peru.

Plaintiffs may point to intercompany payments made by Doe Run Peru, but those payments

---

[1] 0.5% is owned by the Ira Rennert Revocable Trust with Rennert as the sole beneficiary; 94.9% is owned by the Ira Rennert Irrevocable Trust with Rennert's three children as equal beneficiaries; about 1.2% is in grantor retained annuity trusts, one for each of the three children; and 1% is owned by the Ingeborg Rennert Trust with Rennert's wife as the beneficiary.

3

do not directly link Renco and Rennert to Doe Run Peru. Any such payments were made under intercompany agreements involving Doe Run Peru and Doe Run Resources and Doe Run Mining—not agreements between Doe Run Peru and Renco or Rennert. Plaintiffs may also point to a $125 million loan from Doe Run Peru to Doe Run Mining after Doe Run Mining's acquisition of Doe Run Peru. But Renco and Rennert did not receive any of that money either. Doe Run Mining used the funds to pay down a portion of a bank loan it had used in its acquisition of Doe Run Peru. Plaintiffs have also tried to connect the Fairfield house owned by Renco to Doe Run Peru, but they have failed to establish any such connection.

The bottom line is that Rennert and Renco were removed from Doe Run Peru. They did not own it directly, operate its complex, or receive money from it. Rennert and Renco were investors who reviewed Doe Run Peru's operations from the perspective of an ultimate parent corporation and of a shareholder of that parent.

## III.  **ARGUMENT**

### A.   **Plaintiffs Cannot Meet Their Heavy Burden To Pierce The Corporate Veil**

"In the eyes of the law, two different corporations are two different persons." *Grease Monkey Int'l, Inc. v. Godat*, 916 S.W.2d 257, 262 (Mo. Ct. App. 1995) (quoting *Blum v. Airport Terminal Services Inc.*, 762 S.W.2d 67, 73 (Mo. App. E.D. 1988)). That is true even when one corporation wholly owns another. *Id.* Similarly, a "corporation is regarded as a wholly and separate legal entity, distinct from the members who compose it" even if there "is but a single stockholder." *Thomas Berkeley Consulting Eng'r, Inc. v. Zerman*, 911 S.W.2d 692, 696 (Mo. Ct. App. 1995); *see also Adelstein v. Jefferson Bank & Tr. Co.*, 377 S.W.2d 247, 251 (Mo. 1964). Missouri law thus treats veil piercing as "an 'extraordinary measure' reserved for 'exceptional circumstances.'" *Goellner-Grant v. Platinum Equity LLC*, 341 F. Supp. 3d 1022, 1029 (E.D. Mo. 2018); *see also, e.g.*, *Fairbanks v. Chambers*, 665 S.W.2d 33, 37 (Mo. Ct. App. 1984).

4

These standards serve an important purpose. "[Corporations] exist in order to facilitate limited investment in commercial enterprises while shielding an entrepreneur's personal wealth from the risk of paying for corporate indebtedness." *Lego A/S v. Best-Lock Const. Toys, Inc.*, 886 F. Supp. 2d 65, 77 (D. Conn. 2012). Protecting investors from liability "encourages business and industry, including investment in high-risk ventures, as investors can make capital contributions to corporations without endangering their personal wealth." *Huard v. Shreveport Pirates, Inc.*, 147 F.3d 406, 409 (5th Cir. 1998).

Plaintiffs therefore bear a heavy burden here. *Fairbanks*, 665 S.W.2d at 37; *see Marshall v. Anderson Excavating & Wrecking Co.*, 901 F.3d 936, 943 (8th Cir. 2018).

To pierce a corporate veil under Missouri law, Plaintiff must prove three separate elements:

1. Complete Domination and Control: Plaintiffs must show "complete domination, not only of finances, but of policy and business practice," such that the subsidiary "had at the time no separate mind, will or existence of its own." *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. 2013).

2. Fraudulent or Unjust Use of Corporate Control: Missouri law is clear that "[a] mere showing that one individual has absolute control of a corporation does not without more justify disregarding legal forms." *Fairbanks*, 665 S.W.2d at *37. Instead, Plaintiffs must establish that the control was "used … to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights," *Doe 1631*, 395 S.W.3d at 18; *see also, e.g.*, *Fairbanks*, 665 S.W.2d at 37 ("The corporate cloak was used as a subterfuge to defeat public convenience, to justify wrong or to perpetuate fraud.").

3. Proximate Cause: "The control and breach of duty must proximately cause the injury or unjust loss complained of." *Doe 1631*, 395 S.W.3d at 18.

Importantly, Plaintiffs must prove each of these elements as to each corporate entity whose veil they seek to pierce.  To hold Renco liable for the acts of Doe Run Peru, in other words, Plaintiffs must establish a chain of veil piercing through each intermediary: Doe Run Peru, Doe Run Cayman Ltd., Doe Run Resources, and DR Acquisition Corp. prior to March 2007; and Doe Run Peru, Doe Run Cayman Ltd., Doe Run Cayman Holdings, and DR Acquisition Corp. after

5

March 2007. *See, e.g., In re Tronox Inc.*, 855 F.3d 84, 106 n.27 (2d Cir. 2017) (applying New York law) (noting that "proving these claims against [the ultimate parent] requires establishing a chain of liability from the original tortfeasors to [the ultimate parent]," and that plaintiffs "would need two veil-piercings or findings of alter-ego liability" to do so).[2]

Plaintiffs' burden is even greater as to Rennert. To hold Rennert personally liable, Plaintiffs must not only pierce the veils of each intermediate entity up to Renco, *but also* separately pierce the veil between Renco and Rennert, under New York law. *See Douglas v. Imerys Talc America, Inc.*, No. 4:18-CV-1141, 2019 WL 626427, at *6 (E.D. Mo. Feb. 14, 2019) ("Missouri courts apply the 'internal affairs' doctrine when requested to pierce the corporate veil."); *Am. Recreation Prod., Inc. v. Novus Prod. Co., LLC*, 2006 WL 3247246, at *2 (E.D. Mo. Nov. 8, 2006) (stating that "[u]nder the internal affairs doctrine, the applicable law in ... adjudicating a veil piercing claim is the state law under which the corporation exists").

The evidence at trial will show that Plaintiffs cannot meet these demanding standards. For example, and strikingly, Plaintiffs cannot show that *any* separate corporation in the chain was used as a subterfuge to commit a wrong, much less *every* separate corporation. It is entirely proper to use the corporate form for the "purpose of gaining a business advantage" or to maintain an entity "as a separate entity free from shareholder responsibility for the corporation's debts." *Cent. Cooling & Supply Co. v. Dir. of Revenue, State of Mo.*, 648 S.W.2d 546, 547–48 (Mo. 1982); 1 Fletcher Cyc. Corp. § 14. Plaintiffs cannot show an improper purpose here at every level. In fact, Plaintiffs have hardly tried to develop the evidence that would be necessary. All but ignoring the other entities in the corporate chain, Plaintiffs have focused on arguing that Doe Run Peru was

---

[2] Plaintiffs concede that "there is no difference between the veil piercing test or standard of review in New York as compared to Missouri," ECF No. 640 at 129 n.34; *see also* ECF No. 1276 at 48 (citing New York law in opposing summary judgment on corporate veil piercing).

6

undercapitalized and that this gives rise to an inference that Doe Run Peru was created for an improper purpose or with reckless disregard for others' rights.  But the evidence will show that Doe Run Peru was adequately capitalized at its creation and for years after its inception.  What is more, Doe Run Peru used that capital to invest hundreds of millions of dollars in improvements to the Complex and in safety and environmental projects.  Regardless, any evidence that Doe Run Peru was undercapitalized will not help Plaintiffs prove that any of the other corporate entities in the chain were a subterfuge or a sham. There is no evidence, for example, that Renco used the corporate form of Doe Run Resources for an improper purpose, including no evidence that Doe Run Resources was undercapitalized. Trial will reveal similar failures of proof on the other elements Plaintiffs must prove.

B.     **Plaintiffs Cannot Meet Their Burden To Prove Direct Negligence Against Rennert Or Renco**

When Plaintiffs seek to hold a parent company or director directly liable for actions taken through a subsidiary, they run into similarly stringent legal standards. Indeed, "direct liability is rarely used independently to hold parents liable for their subsidiary's actions." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 487 (3d Cir. 2001).

Plaintiffs hang onto several "confusing and overlapping" direct liability theories. *See A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 846 (E.D. Mo. 2018) ("Because of the confusing and overlapping nature of these counts, I am somewhat skeptical that plaintiffs will be able to sort them out to present them to a jury in any reasonable manner when the cases go to trial."). But each of those theories has important legal commonalities, any of which should be fatal to Plaintiffs' case:

*First*, none of Plaintiffs' direct liability theories allows them to ignore corporate formalities. Plaintiffs allege that they were harmed by emissions from Doe Run Peru's facility. Direct liability of parents for the actions of subsidiaries like Doe Run Peru is "a narrow test, one

that is designed to apply in the unusual case where a company commits a wrongful act through the legal form of a distinct entity." *Pennington v. Fluor Corp.*, 19 F.4th 589, 598 (4th Cir. 2021). It involves abuse of the corporate form, arising when "the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." *Pearson*, 247 F.3d at 487. In other words, direct liability exists not where the parent has "acted on its own (in which case there would be no need even to consider the subsidiary's actions)" or "in its capacity as owner of the subsidiary;" but rather where the parent "has forced the subsidiary to take the complained-of action, in disregard of the subsidiary's distinct legal personality." *Id.*; *see also A.O.A.*, 350 F. Supp. 3d at 846. Plaintiffs cannot show that Renco or Rennert abused the corporate form to force Doe Run Peru to take any complained-of action.

Plaintiffs cannot be permitted to present additional direct negligence theories to the jury that ignore the corporate form. The doctrines of piercing the corporate veil and of direct liability are narrow exceptions to the bedrock rule that a parent is not liable for the acts of its subsidiaries, and both exceptions require the jury to acknowledge the corporate form and find some abuse of it.

*Second*, as this Court has emphasized, direct liability "rests on the defendant's own conduct." *A.O.A. v. Rennert*, 2025 WL 2606548, at *15 (E.D. Mo. Sept. 9, 2025). Thus, for each Defendant, Plaintiffs will need to prove that the particular Defendant took specific actions or made specific omissions that directly caused the Plaintiffs' injuries. *See id.* Again, it will not be enough for Plaintiffs to make generalized assertions about the conduct of the Defendants as a group.

*Third*, under Missouri law, the standards of care and breach are context- and defendant-specific. That is, the degree of care used by an ordinarily careful person depends on the circumstances that are known or should be known to that person, and varies in proportion to the harm that person reasonably should foresee. *Hoover's Dairy, Inc. v. Mid-Am. Dairymen,*

*Inc./Special Prods., Inc.*, 700 S.W.2d 426, 431–33 (Mo. 1985) (en banc) ("[T]he duty of a person to use care and his liability for negligence depend upon the tendency of his acts under the circumstances as they are known or should be known to him." (quoting 57 Am. Jur. 2d Negligence § 54 (1971)). There is a difference between what Rennert and Renco, as out of state investors, knew or should have known and the harm they should have foreseen and what, for example, Doe Run Peru should have known and foreseen as the operator of La Oroya. Plaintiffs therefore cannot be permitted to conflate Rennert and Renco with Doe Run Peru or any other subsidiary.

That is what Plaintiffs appear poised to do. Plaintiffs have never clearly articulated a theory for what Rennert and Renco specifically, given their roles in the corporate structure, were required to do. *See, e.g.*,  Dkt. 1276 at  116 (vaguely discussing actions of "the corporate Defendants" together), 135 (asserting vaguely that Rennert had the means to "do something"). And Plaintiffs' expert has only offered opinions regarding the standard of care applicable to a company operating a smelter complex, not the standard for an ultimate parent company or an investor at the top of a corporate chain. *See* Dkt. 1524 at 48 (summarizing Dr. Matson's opinion that Defendants did not exercise reasonable care because they "fail[ed] to apply practices and implement controls recognized by industry and authoritative sources to reduce air emissions, in particular lead"). Because, as the Court has held, "the relevant facts at issue in this case are so technical or complex that expert testimony on the standard of care is necessary," *id.* at 46, Plaintiffs' failure of proof on the applicable standard of care for Rennert and Renco is fatal to their negligence-based claims.

On top of all of this, for Plaintiffs' novel "breach of assumed duties" claim, Plaintiffs will additionally need to prove that the particular defendant made an affirmative "undertak[ing] to perform a duty owed by [the subsidiary] to the [Plaintiffs]." *A.O.A.*, 2025 WL 2606548, at *15

9

(quoting Restatement (Second) of Torts § 324A (1965)).[3] Plaintiffs cannot make such a showing.

### C. Financial And Personal Information About Rennert And Renco Should Not Be Permitted To Inflame The Jury Or To Reach The Public.

Plaintiffs have made clear that they will attempt to persuade the jury to use the financial status and wealth of Rennert and Renco to find Defendants liable.  *See* Dkt. 1675 (Resp. to Mot. to Bifurcate).  Much of what Plaintiffs plan to present is inadmissible in any phase of the trial.  But even evidence of wealth and financial status that might be proper for a jury to consider in determining the amount of punitive damages would be highly prejudicial to other determinations the jury will make.  Putting that inflammatory evidence in front of the jury before the jury renders a verdict on liability and compensatory damages would be highly prejudicial, incite bias, and risk polluting the jury's verdict.  And, as Defendants explained in their briefs in support of their motion to bifurcate, Plaintiffs' position is incompatible with Missouri law: evidence of Rennert's and Renco's financial status and net worth is not relevant to, and cannot be considered by the jury in determining liability or compensatory damages. *See* Dkts. 1647 & 1691. Trial must be bifurcated to prevent irrelevant and unduly prejudicial evidence regarding net worth and financial status from infecting the jury's determinations on liability and compensatory damages. *See id.*

Further, to the extent evidence of Rennert's sensitive private financial information will be introduced, in any phase of trial, the courtroom may need to be sealed to protect his privacy and personal safety. At an appropriate time, Rennert may move to seal the courtroom for portions of testimony.

### IV. CONCLUSION

Defendants will be prepared to discuss the topics in this brief at the pre-trial conference.

---

[3] Defendants maintain their argument that this theory of liability is not viable under Missouri law and should not be presented to the jury.

Dated: May 26, 2026

By: */s/ Jennifer L. Saulino*

**SIDLEY AUSTIN LLP**

Jennifer L. Saulino (D.C. Bar No. 479390)
jennifer.saulino@sidley.com
Richard W. Smith (D.C. Bar No. 465563)
rwsmith@sidley.com
Jillian S. Stonecipher (D.C. Bar No. 1030214)
jstonecipher@sidley.com
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Defendants The Renco Group, Inc. and Ira L. Rennert*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of May, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.


Dated: May 26, 2026                    By: */s/ Jennifer L. Saulino*