UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11 CV 44 CDP |
| | ) | |
| IRA L. RENNERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **<u>MEMORANDUM AND ORDER</u>**

In April 2022, defendants The Renco Group, Inc., and Doe Run Resources

Corporation filed two separate court actions in Florida relating to alleged

irregularities in plaintiffs' representatives' efforts in Peru to recruit people to

participate in this case and the companion case of *J.Y.C.C., et al. v. Doe Run Res.*

*Corp., et al.*, Case No. 4:15CV1704 RWS (E.D. Mo.) (the *Collins* case).  Plaintiffs

now seek sanctions against defendants for pursuing those actions, asserting that

they did so as an end run around discovery orders that Judge Sippel entered in the

*Collins* case and that I entered in this case.  The *Collins* plaintiffs made similar

end-run allegations before Judge Sippel, which were the subject of extensive

litigation and motion practice in that case.

In a *Collins* order entered October 29, 2025, Judge Sippel addressed

defendants' alleged conduct in the Florida actions and threatened significant

sanctions – including the possibility of striking defendants' pleadings in *Collins* – if the claimed discovery abuses continued. *See* No. 4:15CV1704 RWS, ECF 970, Memo. & Ord. (Oct. 29, 2025). After Judge Sippel entered that order, defendants quickly undertook to dispose of the Florida actions, settling the state-court case for $1200 and moving to voluntarily dismiss the federal action brought under 29 U.S.C. § 1782. Arguing that defendants' immediate dispositive conduct in response to Judge Sippel's order shows that defendants indeed pursued the Florida actions to circumvent this Court's discovery orders and obtain advantage in this litigation, the plaintiffs here move for sanctions for defendants' abuse of the judicial process. They ask that I strike defendants' pleadings in this case, enter judgment for each plaintiff, and proceed to trial on only the amount of compensatory and punitive damages.[1] Alternatively, plaintiffs ask that I direct defendants to pay plaintiffs' costs incurred in this case and in both Florida actions, and instruct the jury at trial that it may consider defendants' abuse of the judicial process.

When viewed in the context of this case, that is, No. 4:11CV44 CDP over which I have authority, I agree that sanctions are warranted for certain conduct defendants undertook in the Florida § 1782 action that was in direct contravention

---

[1] The first trial in this case is set to begin June 23, 2026.

of their counsel's representations to me made on the record at a joint hearing held in October 2022 – specifically, their assurances that plaintiffs' counsel in *this* case could participate in the Florida actions to assert claims of privilege on behalf of their clients, when in fact defendants took every action possible to prevent plaintiffs from being able to make those arguments in the Florida court.  As set out in more detail below, defendants vigorously opposed plaintiffs' counsel's motion to intervene in the § 1782 action, which directly defied their representation to me as officers of the Court and thereby warrants sanctions.

While plaintiffs also allege that defendants, by their conduct in the Florida actions, committed several violations of Judge Sippel's orders in *Collins,* there is no assertion that such conduct offended orders entered in *this* case, No. 4:11CV44 CDP.  As explained below, it is not for me to decide whether and in what form sanctions should be imposed for defendants' alleged violations of Judge Sippel's orders and supervision in *Collins*.

I will therefore grant plaintiffs' motion to the extent they seek sanctions for defendants' conduct in opposing plaintiffs' motion to intervene in the Florida court, which conduct directly contradicted their representation to me at the October 2022 hearing.  I will deny the motion in all other respects.  I will give plaintiffs time to provide sufficient information and documentation from which I can assess an appropriate sanction.  Defendants will have an opportunity to respond.

**Procedural Background**[2]

As early as June 2019, defendants' representatives received a report of possible irregularities in the recruitment of plaintiffs in Peru to participate in this and the *Collins* litigation.  Because of that report, defendants hired the Jones Day law firm to investigate the alleged irregularities.  With the information gleaned from the Jones Day investigation, Renco and Doe Run Resources filed a complaint with Peru's Provincial Prosecutor in the District of Junin on January 8, 2021, alleging criminal offenses relating to plaintiff recruitment.  Based on that complaint, the prosecutor opened a criminal investigation on January 21, 2021.

That information did not come to the Court's attention until October 2021 when defendants filed the Jones Day Report ("Report") in this case and in the *Collins* case.  They filed the Report as a "Notice" and requested that Judge Sippel and I hold a joint status conference.  Defendants did not seek any relief other than a status conference, nor did they identify the purpose of the proposed conference.

When the Report was filed, Judge Sippel already had a status conference scheduled on the *Collins* docket for November 15, 2021, and both sides in that case

---

[2] For purposes of this background summary, I take judicial notice of the proceedings in the *Collins* case as well as the proceedings in *In Re Matter of the Ex Parte Appl. of The Renco Grp., Inc. & Doe Run Res. Corp. for an Order to Take Discovery Pursuant to 29 U.S.C. § 1782*, Case No. 1:22CV21115 JAL (S.D. Fla. 2022), as both matters relate directly to the issues raised by the parties and addressed in this Memorandum and Order.  *See Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996).

included the Report on the proposed agenda for that conference. I did not participate in that conference, nor did I schedule a conference of my own in this case. At the *Collins* conference, defendants' counsel stated that they had conferred with counsel for the *Collins* plaintiffs[3] on how the Report may impact the discovery schedule in that case and that they sought a joint conference to receive guidance from the Court on how to proceed. No. 4:15CV1704 RWS, ECF 553, Status Conf. Tr. at pp. 7, 10-11 (Nov. 15, 2021). What then immediately followed in *Collins* was a vigorous schedule that involved extensive motion practice, conferences, and hearings whereupon Judge Sippel ordered a detailed verification process for the 108 trial pool plaintiffs in that case. Judge Sippel repeatedly stated that defendants' allegations of irregularities would be addressed in the ordinary course if discovery of those trial pool plaintiffs exposed specific instances of improper conduct in plaintiff recruitment. *See*, *e.g.*, *id.*, ECF 618, Status Conf. Tr. at pp. 6-8 (Mar. 24, 2022).

At the time defendants filed the Jones Day Report in October 2021, the Initial Discovery Cohort Plaintiffs had not yet been selected in the *Collins* case. Consequently, comprehensive individualized discovery had not yet begun. In this case (4:11CV44 CDP), however, all discovery on the Initial Discovery Cohort

---

[3] The *Collins* plaintiffs are represented by different counsel than the plaintiffs in this case. Counsel for defendants, however, are largely the same in both cases in relevant respects.

Plaintiffs had been completed – including depositions of the Cohort Plaintiffs and their parent/guardian representatives, independent medical examinations, expert reports and depositions, etc.  And motions for summary judgment and expert-related *Daubert* motions were filed November 15, 2021 – the same day as Judge Sippel's conference in *Collins*.  In other words, the concerns raised to Judge Sippel at his November 2021 conference on how to proceed with discovery before pursuing dispositive motion practice was not an issue in this case.  Indeed, other than defendants' October 2021 Notice wherein they made a cursory and non-descriptive request to have a joint status conference, the record in *this* case was silent on the Jones Day Report and purported recruitment irregularities – much unlike the record in the *Collins* case.

In April 2022, defendants Renco and Doe Run Resources filed the two Florida actions that are the subject of plaintiffs' current motion for sanctions.  On April 12, 2022, defendants filed an *ex parte* motion in the United States District Court, Southern District of Florida, to take discovery of a former attorney, Victor Careaga, who worked on both this case and the *Collins* case.  *See In Re Matter of the Ex Parte Appl. of The Renco Grp., Inc. & Doe Run Res. Corp. for an Order to Take Discovery Pursuant to 29 U.S.C. § 1782*, Case No. 1:22CV21115 JAL (S.D. Fla. 2022).  In that action, defendants invoked 29 U.S.C. § 1782 to obtain discovery to provide to the Peruvian prosecutor in the criminal investigation that

had begun in Peru at defendants' behest in 2021.  Defendants specifically sought to depose Careaga and obtain any and all documents regarding plaintiff recruitment in Peru.  The district court in Florida granted that *ex parte* motion on June 8, 2022.

The second action was a malicious prosecution case that defendants filed in Florida state court on April 29, 2022, against Careaga and another Florida attorney, Louis Thaler, for their recruitment activities in Peru.  *See Doe Run Res. Corp., et al. v. Thaler, et al.*, No. 2022-007907-CA-01 (Fla. 11th Cir. 2022).  As with the federal § 1782 action, defendants sought discovery that pertained generally to recruiting plaintiffs in Peru to participate in this case and the *Collins* case.

In July 2022, the *Collins* plaintiffs filed a motion for anti-suit injunction under the All Writs Act, 28 U.S.C. § 1651(a), asking Judge Sippel to halt the defendants from proceeding in the Florida actions to obtain discovery in contravention of his protective orders in *Collins* that limited discovery pertaining to alleged recruitment irregularities to only the 108 *Collins* trial pool plaintiffs.  Although no similar motion was filed in this case (4:11CV44 CDP), Judge Sippel and I decided to preside together over a joint hearing on the motion, as the issues involved matters affecting both cases – especially issues of privilege.  The Clerk of Court was directed to provide plaintiffs' counsel in this case with the relevant documents and orders from the *Collins* case so they could be informed as to what gave rise to the dispute.

The joint hearing was held on October 28, 2022.  *Collins* counsel argued the substance of the motion for anti-suit injunction.  When I asked counsel in this case, 4:11CV44 CDP, if they wished to be heard, they responded, "You know, we've been watching all this from a distance, as we're trying to do again here today.  It's not our motion, it's not our fight."  ECF 1318, Hrg. Tr. at p. 17 (Oct. 28, 2022).  When asked about some of the plaintiffs at issue being former clients, counsel continued, "[F]rom what we can tell, nothing that would be sought in discovery in Florida would be communications related to our clients or our case.  Certainly if they would be, we would oppose it."  *Id.* at p. 18.  While counsel acknowledged that they were concerned about attorney-client and work-product privileges and protections, they reiterated that the motion before the Court was "not [their] motion" and thus they could represent to the Court only that they were "deeply concerned" by the allegations that defendants were conducting an end run around the Court's orders.  *Id.*

At that hearing, defendants' counsel stated that, with regard to the malicious prosecution case, whether the scope of discovery exceeds the limitations of Judge Sippel's discovery orders was a question for the Florida court to decide, as relevant "pattern and practice" evidence may involve plaintiffs other than the *Collins* trial pool plaintiffs and those dismissed from the case.  ECF 1318, Hrg. Tr. at pp. 22-24 (Oct. 28, 2022).  When I expressed my continued concern regarding privilege

- 8 -

issues and the manner by which those privileges could be invoked by persons not parties to those Florida actions, such as the plaintiffs here, counsel for plaintiffs in this case shared that the broad discovery sought in the federal § 1782 action involved their firm, their plaintiffs, and attorney-client communications.  In response, defendants' counsel assured me that plaintiffs and their counsel would have the opportunity to participate in the Florida litigation to raise privilege issues. *Id.* at pp. 43-44, 53.

On January 26, 2023, Judge Sippel denied the *Collins* plaintiffs' motion for anti-suit injunction, concluding that defendants had the "right to attempt to assert malicious prosecution claims against former plaintiffs and have the right to seek discovery in aid of the criminal investigation underway in Peru."  No. 4:15CV1704 RWS, ECF 718, Memo. & Ord. at p. 4. (Jan. 26, 2023).  But Judge Sippel cautioned that, in so doing, defendants could not ignore his rulings that limited discovery from current plaintiffs.  *Id.*  Judge Sippel credited defendants' representations that the discovery sought in the Florida actions was directed only at plaintiffs whose cases had been dismissed.  And he also acknowledged and credited defendants' representations that any overbroad discovery requests would be subject to assertions of attorney-client and work-product objections that plaintiffs could assert and submit to the Florida courts.  *Id.*  To assure those protections, Judge Sippel ordered defendants to provide to plaintiffs' counsel in

both this case and the *Collins* case all subpoena and discovery requests made in the Florida actions. *Id.* at pp. 4-5.

In May 2023, over defendants' objections, the Florida § 1782 court granted the *Collins* counsel's motion to intervene in that action for purposes of asserting work-product protection as well as attorney-client privilege, but with conditions. Defendants likewise objected to the motion to intervene filed by counsel for the plaintiffs here, and the court likewise overruled those objections and granted counsel's motion for the same purpose – to assert work-product and attorney-client privileges – and with the same conditions as imposed on the *Collins* counsel.[4] Litigation then ensued in that court regarding those claimed privileges. In the end, on November 29, 2023, the Florida § 1782 court denied counsel's assertions of both work-product and attorney-client privilege. To the extent those privileges were asserted by plaintiffs' counsel here, the court found that the information provided by counsel was deficient and unsupported, and thus could not provide a basis upon which the court could discern whether privilege existed. The Eleventh Circuit Court of Appeals affirmed. *In re Renco Grp. Inc.*, 164 F.4th 1336 (11th Cir. 2026).

After the joint hearing in October 2022, the ongoing Florida litigation and

---

[4] I am unaware if counsel moved to intervene in the state-court malicious prosecution case.

privilege issues remained largely quiet in both this and the *Collins* case.  In September 2025, however, the *Collins* plaintiffs moved for sanctions, arguing that defendants' discovery efforts in the Florida § 1782 action continued to encroach upon work-product and attorney-client privileges, with defendants' counsel disparaging plaintiffs' counsel's continued participation in that court on those issues.  In their motion for sanctions, the *Collins* plaintiffs argued that defendants' discovery conduct in the Florida litigation and their reasons therefor were in direct contravention of Judge Sippel's discovery orders that limited discovery and credited defendants' representations that plaintiffs could argue those privilege issues in the Florida courts.

Upon consideration of the parties' arguments and the evidence submitted on the *Collins* motion for sanctions, Judge Sippel issued the October 29, 2025, order referenced above.  In that order, Judge Sippel found that defendants' overbroad discovery efforts in the Florida actions were "tantamount to a vexatious multiplication of litigation," created discovery conflicts with his previous rulings, and could be found to directly run afoul of his discovery orders in *Collins*.  No. 4:15CV1704 RWS, ECF 970, Memo. & Ord. at pp. 6, 8-9 (Oct. 29, 2025).  To that end, Judge Sippel cautioned that:

> Any attempts by Defendants to circumvent my discovery orders in this case, or to circumvent Plaintiffs' ability to assert attorney-client and work-product privileges on behalf of their active plaintiffs, will be met with sanctions, including the possibility of striking Defendants'

- 11 -

pleadings in this matter and proceeding with trials solely on damages given Defendants' repeated disregard of my orders in this case.

*Id.* at p. 9 (citation modified).

In early November 2025, defendants settled with Careaga and Thaler in the malicious prosecution case for an aggregate amount of $1200. Defendants also moved to voluntarily dismiss the federal § 1782 action.

On January 20, 2026, plaintiffs in this case filed the instant motion seeking compensatory and punitive sanctions for defendants' discovery conduct in the Florida actions, asserting that defendants abused the judicial processes of this Court thereby. Plaintiffs argue that defendants' immediate dispositive action upon the filing of Judge Sippel's cautionary order demonstrates the surreptitious nature of those Florida proceedings in seeking an end run around the discovery orders entered here. They ask that I strike defendants' pleadings in this case, enter judgment for each plaintiff, and proceed to trial on only the amount of damages. Alternatively, plaintiffs ask that I direct defendants to pay the entirety of plaintiffs' costs incurred in this case and in both Florida actions and, further, instruct the jury at trial that it may consider defendants' abuse of the judicial process.[5] Finally, in their reply brief, plaintiffs add a new request for relief in seeking an order requiring

---

[5] Plaintiffs also seek $429,260 in punitive sanctions, which was the subject of an earlier motion for sanctions. I recently ruled that motion so will not address that specific request here.

that defendant Ira L. Rennert be present in the courtroom throughout the duration of the trials that are scheduled to begin June 23 and October 26, 2026.

**Discussion**

In a recent order finding that plaintiffs were entitled to sanctions for conduct unrelated to the issues here, I set out the distinction between compensatory and punitive sanctions, noting that compensatory sanctions may go no further than redressing the wronged party for losses sustained as a direct result of the offending party's misbehavior, while anything in addition is considered punitive which requires a level of proof akin to that for criminal proceedings. *See* ECF 1679, Memo. & Ord. (May 13, 2026) (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017)). Plaintiffs appear to seek both types of sanctions here.

Plaintiffs allege that defendants have engaged in abusive conduct "since 2022" by seeking impermissible discovery through the guise of the Florida actions in violation of this Court's orders, thereby circumventing the Court's supervision over this litigation. Plaintiffs argue that defendants' sanctioned violations of earlier discovery and sealing orders in this and Judge Sippel's case underscore the egregiousness of their continued abuse of the judicial process, warranting extraordinary sanctions.

In *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994), the Supreme Court recognized that, in the context of using the contempt

- 13 -

power to impose sanctions, "sanctioning the contumacious conduct" is left to the "offended judge." *Id.* at 831.  While I understand that contempt is "classically" used to enforce orders compelling or forbidding a single, discrete act, *id*. at 835, neither of which is present here, I consider the Supreme Court's assignment of imposing sanctions to the "offended judge" applicable to the circumstances here, where plaintiffs allege willful, disobedient, and abusive conduct occurring in more than one pending action before more than one judge.  Accordingly, in determining whether to impose sanctions in *this* case, that is, No. 4:11CV44 CDP over which I have authority, I look to whether defendants' alleged conduct offended my orders or my supervision of the case and, if so, to what degree.  Whether defendants' alleged conduct was an affront to Judge Sippel and his orders and supervision in *Collins* is not for me to decide.

As described above, the extensive motion practice and litigation that addressed defendants' Florida conduct occurred in the *Collins* case, with Judge Sippel entering specific orders on the issues that the parties presented to him, including how the Florida actions would affect discovery and dispositive-motion practice in *Collins*.   In this case, however, other than the October 2021 non-descript "Notice" and defendants' two motions seeking relief from earlier-entered

- 14 -

protective orders,[6] no party to *this* case presented any issue to me relating to the Florida actions until plaintiffs filed this motion for sanctions in January 2026.  The joint hearing in October 2022 was held on the motion for anti-suit injunction filed in *Collins*.  My involvement in that hearing was to provide counsel here the opportunity to address how this case and their clients were affected by the issues raised in that motion.  As stated by counsel, while they were concerned about attorney-client and work-product privileges affected by the Florida cases, the motion before the Court was not their motion and they were watching from a distance.

In short, while plaintiffs' current motion for sanctions alleges several violations of Judge Sippel's orders in *Collins*, there is no assertion that orders entered in *this* case were offended by defendants' Florida conduct.

Regarding my supervision and authority over the case, however, plaintiffs argue that defendants' mere instigation of the Florida actions itself constitutes an abuse of the judicial process as their purpose was to obtain discovery that was otherwise prohibited in this and the *Collins* case, as shown by defendants' dispositive actions upon entry of Judge Sippel's October 29 order.  Plaintiffs seek

---

[6] I denied the first motion in December 2023 (*see* ECF 1399) and granted in part and denied in part the second motion in August 2025 (*see* ECF 1516).  Plaintiffs do not allege that defendants violated either of those orders.

compensatory sanctions to recover their fees and costs incurred in those Florida actions. Plaintiffs also seek punitive sanctions, asking me to strike defendants' pleadings in this case or award their total fees and costs incurred in *this* action in addition to the compensatory fees from the Florida actions.

Whether compensatory or punitive, plaintiffs' broad sanctions request is based on their assertion that defendants brought the Florida actions in 2022 for an improper purpose to circumvent this Court's orders and supervision of this litigation. For me to impose sanctions on that assertion – which itself appears to amount to a claim of malicious prosecution – separate and extensive litigation would be necessary, with required application of criminal standards of proof for punitive sanctions.[7] Against the backdrop of Judge Sippel's previous finding that defendants had the right to attempt to assert malicious prosecution claims and to seek discovery under 29 U.S.C. § 1782, plaintiffs' broad "yeah-but" assertions of improper conduct in defendants' bringing those actions are insufficient to warrant the near case-ending sanctions they request.

I agree, however, that defendants' conduct in opposing plaintiffs' counsel's motion to intervene in the § 1782 action was directly contrary to their

---

[7] To the extent plaintiffs ask me to strike defendants' pleadings, enter judgment for each plaintiff on liability, and proceed to trial on only damages, that separate criminal-type mini-trial would have to begin and end before the present trial setting of June 23, 2026.

representation to me at the October 2022 hearing that plaintiffs' counsel would have "every ability, right, and power to go to" the presiding judge in that action to assert their claims of privilege.  ECF 1318, Hrg. Tr. at p. 43 (Oct. 28, 2022). Regardless of whether plaintiffs' claims of privilege would be meritorious or viable – which the Florida district court and Eleventh Circuit ultimately found they were not – defendants' conduct in opposing plaintiffs' motion to intervene in the first place was in direct contravention of their representation to me as officers of the Court, which warrants sanctions.  I do not fault defendants for opposing plaintiffs' actual claims of privilege before the Florida courts; only their attempt to thwart plaintiffs' ability to raise them.

To the extent plaintiffs appear to challenge the substance of defendants' opposition to their claims of privilege, I decline plaintiffs' invitation for me to revisit the "Florida court's decision not to extend privilege protections" to certain documents.  (Pltfs' Reply, ECF 1609-1 at p. 3.)  I will likewise decline their offer for me to review the asserted privileged documents *in camera*.  (*Id.* at p. 3, n.3.) To ask me to review documents either sought or produced in the Florida action to discern their privileged nature would be tantamount to my interjecting in a foreign court on matters that have already been litigated and determined – both in the trial court and on appeal.  I will not relitigate those courts' conclusions.

Accordingly, for the reasons set out above, I conclude that defendants'

opposition to plaintiffs' intervention in the Florida § 1782 action was in direct and willful contravention of defendants' on-the-record representation to this Court assuring plaintiffs' ability, right, and power to so intervene to seek protections of privileges attributable to and accrued in this case. I will therefore grant plaintiffs' motion to the extent they seek sanctions for that wrongful behavior. In all other respects, the motion is denied.

Plaintiffs are granted 30 days to file a verified statement of the attorneys' fees and costs they reasonably incurred that were caused solely because of defendants' opposition to plaintiffs' motion to intervene in the Florida § 1782 action. As this sanction represents only a small portion of plaintiffs' requested relief, I will not permit their requested fees and costs to include all those incurred in investigating, preparing, and litigating this motion for sanctions. I will, however, permit plaintiffs to request the fees incurred in preparing their statement. Any statement of attorneys' fees must be supported by sufficient detailed documentation from which I can determine the hourly rates charged and by whom, and whether the hours were reasonably expended. Defendants may have 30 days to respond to plaintiffs' submission. No reply or supplemental briefs will be permitted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Sanctions [1580] is

- 18 -

**GRANTED in part and DENIED in part** as set out in this Memorandum and Order.

 **IT IS FURTHER ORDERED** that **within thirty (30) days of the date of this Memorandum and Order**, plaintiffs shall file a verified statement of attorneys' fees and costs they reasonably incurred that were caused because of defendants' opposition to plaintiffs' motion to intervene in the Florida § 1782 case.

 **IT IS FURTHER ORDERED** that defendants shall have thirty (30) days to respond to plaintiffs' submissions.

 No reply or supplemental briefs will be permitted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of May, 2026.