**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| A.O.A., *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 4:11-cv-00044-CDP |
| DOE RUN RESOURCES CORPORATION, *et al.*, | |
| *Defendants*. | |

**STATEMENT OF INTEREST OF THE UNITED STATES**

The position of the United States Department of State is that this case should be

dismissed because this case raises important foreign relations and international comity

issues.[1]  The United States recognizes that trial is soon to start and that the Court has

already issued rulings on the doctrine of international comity based on the parties'

submissions.[2] Nevertheless, pursuant to 28 U.S.C. § 517,[3] the United States submits this

---

[1] In addressing these issues, the United States wishes to make clear, given the Court's earlier observations about its lack of participation, that the decision not to address other legal doctrines should not be understood to indicate any view regarding their application by the district court or the parties.

[2] In earlier opinions in the above-captioned matter, the Court engaged in an analysis of the comity doctrine and noted that "[t]he State Department ha[d] not expressed any position on this litigation" and that "the most important aspect of a comity analysis is to determine the sovereign interests." *A.O.A.*, *et al.*, *v. Rennert*, *et al.*, 350 F. Supp. 3d. 818, 850 (E.D. Mo. 2017); *see also A.O.A. v. Rennert*, No. 4:11 CV 44 CDP, 2023 WL 346001 at *25 (E.D. Mo. Jan. 20, 2023)*, aff'd sub nom. Reid v. Doe Run Res. Corp.*, 110 F.4th 1049 (8th Cir. 2024).

[3] Section 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

Statement of Interest to ensure, in future proceedings in this case, that the Court possesses its views.

The President recently designated Peru a major non-NATO ally to advance and protect shared security priorities, including regional stability and counternarcotics efforts, and to foster, among other opportunities, expedited licensing for satellite technology, cooperative research and development, commercial leasing of defense articles, and counterterrorism efforts.  *See* 22 U.S.C. § 2321k; 10 U.S.C. § 2350a; Presidential Determination No. 2026-04, 91 FR 3019 (Jan. 14, 2026); Message from the President of the United States Transmitting a Notice of Intent to Designate the Republic of Peru as a Major Non-NATO Ally, H.R. Doc. No. 119-116, at 1 (2025). Against this backdrop, the Department of State has advised that the adjudication of state common law tort claims made on behalf of Peruvian citizens for environmental injuries suffered in Peru and for conduct that is directly subject to the Peruvian government's regulatory and enforcement authority raises significant comity concerns as it facially questions the adequacy of Peru's regulatory, judicial, and other institutions. Lawsuits like these that appear to be premised on the notion that the Government of Peru is unable or unwilling to enforce or adjudicate its own laws and regulations have the potential for obvious and deeply negative consequences for American foreign relations.

Additionally, based on the foreign policy considerations elaborated in this submission, the Department of State believes that Peruvian courts should resolve disputes arising in Peru when they have jurisdiction and capacity to resolve such disputes fairly. Moreover, the mere fact that domestic law of a foreign state does not provide for a viable

substantive claim does not necessarily imply that a foreign jurisdiction's courts are inadequate.

The Department of State also notes that lawsuits like these have the potential for deterring present and future U.S. investments in Peru.  Expanding opportunities for U.S. business abroad, and particularly U.S. private sector investment in infrastructure sectors abroad, is a U.S. foreign policy goal.  Such investments deepen the United States's strategic engagement with key allies, like Peru.  In short, the continued litigation of these claims, which involve Peruvian citizens who suffered injury in Peru, would negatively impact foreign relations with the Government of Peru.

These foreign policy concerns, and the potential adverse impacts on U.S. foreign policy, are heightened in cases such as this one given the tenuous alleged connection to actions taken in the United States. This is, at its core, a lawsuit about alleged environmental damage that occurred abroad stemming from a formerly state-run facility that had been subject to investment by a U.S. company operating under Peruvian law, through a Peruvian subsidiary. Yet Plaintiffs are Peruvian nationals residing in Peru—with no apparent ties to the United States or Missouri—who are suing over harms allegedly suffered in Peru because of the alleged conduct of those Defendants. The fact that a domestic state's tort law provides a viable substantive claim that a foreign state's legal system may lack is not a sufficient reason to permit suits in the United States about conduct occurring abroad. To find otherwise creates an incentive for foreign nationals to shift their legal disputes to the United States in a manner that intertwines the courts of the United States in foreign disputes that can adversely impact foreign relations.

Here, Plaintiffs allege that these U.S. companies operated a metallurgical facility in La Oroya, Peru in a manner that resulted in Plaintiffs' exposure to toxic substances, resulting in serious medical and developmental injuries. The alleged injuries occurred exclusively in Peru. Yet Plaintiffs have brought claims under Missouri tort law, despite their own lack of ties to Missouri, purportedly due to corporate decisions made in the United States. According to Defendants, they engaged in these investments and took on operations in part because of special protections to be afforded under Peruvian law, which makes the application of state tort law to torts that occurred abroad an odd fit. To be sure, U.S. companies may be subject to litigation in the United States when there are credible allegations of actions taken in the United States. However, the Department of State has observed that the United States has an interest in foreign courts being able to resolve disputes, like this one, which primarily arise in foreign countries, and that only have minimal connections to the United States.[4] Nor is it sound policy in the Department of State's view to permit foreign citizens to litigate in the United States based on claims with only a tenuous connection to the forum, particularly where the Peruvian courts offer a viable and adequate forum for resolution of the dispute.

Finally, the interests of Peru are also an important factor that the Court previously considered. *A.O.A.*, 350 F. Supp. 3d. at 850. In May of 2019 the Department of State advised that the Government of Peru does not have any specific interest for this case to be seen in a Peruvian jurisdiction and did not appear to take the position that the claims submitted in this case affected the sovereign interests of Peru. Prior to this submission, the

---

[4] The United States takes no position on whether the facts that have been alleged in the complaints or developed in discovery are sufficient to create a triable question of fact on the allegations in this case.

Department of State informed the Department of Justice that it understands that the Government of Peru maintains this view. Nevertheless, the State Department's foreign policy views should be given significant weight by the Court. *See Republic of Austria v. Altmann*, 541 U.S. 677, 702 (2004) ("Should the State Department choose to express its opinion on the implications of exercising jurisdiction over particular petitioners in connection with their alleged conduct, that opinion might well be entitled to deference as the considered judgment of the Executive on a particular question of foreign policy.").

Dated:  June 18, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

*/s/ Pierce J. Anon*
PIERCE J. ANON
N.Y. Bar No. 6184303
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
(202) 305-7573
Pierce.Anon@usdoj.gov

*Counsel for Defendants*